UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF MINORITY
VETERANS,
PO Box 11661
Shorewood, WI 53211

      Plaintiff,

        v.

THE UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS,
810 Vermont Avenue, NW
Washington, DC  20420,

      Defendant.

Civ. No. 21-1298

**Complaint for Declaratory and Injunctive Relief**

**Complaint**

1.     This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking the release of records related to the United States Department of Veterans Affairs (VA) Office of Inspector General (OIG).

2.     The United States Department of Veterans Affairs Police Force (VA Police) provides security and law enforcement services across 1,200 VA healthcare facilities and clinic properties throughout the United States. According to VA officials' testimony to Congress, approximately 4,000 officers serve millions of former service members and employees.

3.     Federal law authorizes VA police officers to engage in a variety of security duties while enforcing federal law and state and local traffic laws on all VA owned property. Additionally, they are authorized to effect arrests for the violation of federal law and carry firearms at any time and place within their official capacity, including in VA medical facilities.

4.     Due to the statuses of former service members who utilize VA healthcare, VA Police presence may impose unique burdens on patients. Low income, under and uninsured, Black, Latinx, Native American, Asian American, transgender, or unhoused patients look to VA care to meet their unique health needs. Reports of racial profiling and physical assaults suggest police presence creates a barrier to accessing care. Without transparency and release of government documents, the scope of the problem is largely unknown.

1

5.      Congress has expressed concern over use of force, behavioral record flags, and inadequate oversight of the VA Police Force. In response, the United States Department of Veterans Affairs Office of Inspector General (OIG), among others, investigated and reported on policies related to "disruptive" behavior by patients on multiple occasions. These reports and Congressional hearings focused on staffing, lack of oversight, and a lack of centralized management within the VA Police Department across the country. Most recently, in 2020, the OIG issued a report finding that the VA Police management system needs improvement. See e.g., *Oversight Hearing: Examining VA's Police Force Before the H. Subcomm. on Oversight and Investigation*, 116th Cong. (2019); OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., *Management of Disruptive Patient Behavior at VA Medical Facilities* (Mar. 7, 2013); OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., *Healthcare Inspection: Management of Disruptive Patient Behavior in VA Medical Facilities* (Jan. 30, 2018); OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., *Inadequate Governance of the VA Police Program at Medical Facilities* (Dec. 13, 2018); OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., *VA Police Management Systems Needs Improvement* (Jun. 17, 2020).

6.      On April 8, 2021, US Representative Kathleen Rice (NY) introduced the VA Police Improvement and Accountability Act. H.R. 2429, 117th Congress §1 (2021). The bill would require VA police to implement the use of body cameras, address police staffing needs at VA facilities, and improve transparency for the law enforcement operations of the VA.

## Jurisdiction and Venue

1.      This Court has jurisdiction over the parties and subject matter pursuant to 5 U.S.C. § 552(a)(4)(B).

2.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## Parties

3.      Plaintiff National Association of Minority Veterans is a leading advocacy organization for minority veterans with its headquarters located at Milwaukee, Wisconsin. NAMEVTS works to ensure that all veterans of color have the information, resources, and support to improve the quality of their lives and the condition of their communities. A key goal is ensuring that vulnerable populations have a voice and say in legislation impacting them and their communities. NAMVETS has had a longstanding concern for potential mistreatment of their

members by VA Police. The information requested will assist Plaintiff advocate for the well-being and safety of minority veterans seeking medical care within VA facilities. NAMVETS will be better able to ensure all veterans of color have the access to information they need to make meaningful contributions to Congressional legislation and help maintain the long history of quality care and support from VA facilities.

4. Defendant Department of Veterans Affairs (VA) is an agency of the United States.

5. The Department of Veterans Affairs, Office of Inspector General (OIG) is a component of the VA.

6. The VA, OSP, and/or OIG have possession, custody, and control of the records Plaintiff seeks.

### Statement of Facts

7. On November 11, 2020, Plaintiff submitted a FOIA request to the VA seeking, inter alia, records concerning notice, discussion of, and compliance with OIG guidelines and recommendations issued between 2014 and 2020.

8. The request specifically identified (but did not limited itself to) and sought records related to two OIG reports: *Management of Disruptive Patient Behavior at VA Medical Facilities*, issued in 2013, and *VA Police Management Systems Needs Improvement*, issued in 2020.

9. A true and correct copy of Plaintiff's request is attached as Exhibit A.

10. On December 23, 2020, OIG acknowledged receipt, noted that portions of the request were assigned to OIG, and assigned the request FOIA Tracking Number 21-00112-FOIA.

11. The December 23, 2020, OIG letter also claims that "this project and all information gathered were legally destroyed on 1/18/2019, since they have reached the end of their record retention period established by the National Archives and Records Administration (NARA)."

12. The OIG thus issued a "'no records' found" response.

13. A true and correct copy of the OIG's December 23, 2020, letter is attached as Exhibit B.

14. Plaintiff filed a timely administrative appeal on January 25, 2021.

15. In the appeal, Plaintiffs noted that while records related to the 2013 *Management of Disruptive Patient Behavior at VA Medical Facilities* report were likely properly destroyed in 2019 and Plaintiff no longer sought records related to that report, records should not have yet been destroyed for OIG reports issued in 2018 and 2020 and that were responsive to Plaintiff's request.

Nor should other records related to reports published in the last seven years, unknown to Plaintiff, have been destroyed.

16.    A true and correct copy of Plaintiff's January 25, 2021, administrative appeal is attached as Exhibit C.

17.    OIG responded to Plaintiff's appeal three days later. It reiterated that records related to the 2013 report were destroyed and simply ignored the 2018 and 2020 reports. It then denied Plaintiff's appeal.

18.    A true and correct copy of OIG's January 28, 2021 denial of Plaintiff's administrative appeal is attached as Exhibit D.

19.    Plaintiff exhausted its administrative remedies with regard to its request to the OIG of the VA.

20.    The VA OIG continues to wrongfully withhold the requested records from Plaintiff.

## Count I: Violation of FOIA

21.    Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

22.    The VA has wrongfully withheld agency records requested by Plaintiff.

23.    Plaintiff has exhausted applicable administrative remedies with respect to the VA's wrongful withholding of the requested records.

24.    Plaintiff and the public have been and will continue to be irreparably harmed until the VA is ordered to comply with Plaintiff's FOIA request.

25.    Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

## Request for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)    Declare the VA's failure to comply with FOIA to be unlawful;

(2)    Enjoin the VA from continuing to withhold the public records responsive to Plaintiff's FOIA request and otherwise order the VA to produce the requested public records without further delay;

(3)    Grant Plaintiff an award of attorney fees and other litigation costs reasonably incurred in this action, to the extent permitted by law; and

(4)     Grant Plaintiff such other and further relief which the Court deems proper.

Date:   May 11, 2021                    Respectfully submitted,

                                        /s/ Matthew Strugar
                                        Matthew Strugar (D.C. Bar No. 1010198)
                                        Law Office of Matthew Strugar
                                        3435 Wilshire Blvd., Suite 2910
                                        Los Angeles, CA 90010
                                        323-696-2299
                                        matthew@matthewstrugar.com


                                        /s/Sunita Patel
                                        Sunita Patel (D.C. Bar No. 1026102, *admission application
                                        forthcoming*)
                                        Courtney Bachman (*pro hac vice application forthcoming*)
                                        UCLA Veterans Legal Clinic
                                        907 Westwood Blvd., #444
                                        Los Angeles, CA 90024

# Exhibit A



UCLA School of Law

VETERANS LEGAL CLINIC                                               907 WESTWOOD BLVD. #444
                                                                   LOS ANGELES, CA 90024

November 11, 2020

FOIA Office for the Department of Veterans Affairs
Office of Operations, Security, and Preparedness (OSP)
VA Central Office
810 Vermont Avenue, NW
(007) VACO
Washington, DC 20420
vacoospfoia@va.gov

### Re: Request Under Freedom of Information Act

To Whom It May Concern:

     This letter constitutes a request ("Request"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for Records in the possession of the U.S. Department of Veterans Affairs ("VA"). The Request is submitted on behalf of the National Association of Minority Veterans (NAMVETS) and UCLA Veterans Legal Clinic ("Requesters"). Pursuant to the FOIA, please direct this Request to all appropriate offices and departments within the agency, including but not limited to the Office for the Veterans Health Administration, Department of Veterans Affairs Office of Operations, Security, and Preparedness (OSP), the Office of Security and Law Enforcement (OS&LE), Office of Research Management, Office of the Inspector General, and relevant Regional Veterans Integrated Service Network (VISN) personnel.

### Purpose of Request:

     Access to healthcare is vital now that the COVID-19 pandemic has taken the lives of more than 230,000 Americans.[1] For the veteran population alone, there have been at least 70,708 cases and 4,223 deaths linked to COVID-19.[2] The underlying comorbidity rates and unique experiences of veterans – including toxic exposure, chronic stress, PTSD, co-occurring disorders, and chronic pain – further puts veterans at risk of contracting the deadly virus.[3] As a result, the VA has taken important steps to reducing potential COVID-19 exposure and minimizing barriers to accessing first-class healthcare for veterans through measures such as telehealth appointments.

     Not only does the COVID-19 pandemic pose a threat to medically vulnerable veterans, these veterans are also disproportionately likely to experience police violence.[4] The protests following the George Floyd killing have pushed police violence against Black Americans into the forefront of the

---

[1] *Covid in the U.S.: Latest Map and Case Count*, N.Y. TIMES (updated Nov. 9, 2020) https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

[2] Department of Veterans Affairs, *Department of Veterans Affairs COVID-19 National Summary*, U.S. DEPARTMENT OF VETERANS AFFAIRS (Nov. 11, 2020), https://www.accesstocare.va.gov/Healthcare/COVID19NationalSummary .

[3] *See, e.g.*, Abbie Bennett, *Veterans exposed to burn pits could be at higher risk for COVID-19*, CONNECTING VETS (March 27, 2020), https://connectingvets.radio.com/articles/veterans-exposed-to-burn-pits-could-be-at-risk-for-covid19.

[4] *See, e.g.*, Jasper Craven, *Abusing Those Who Served*, THE INTERCEPT ((July 8, 2019), https://theintercept.com/2019/07/08/veterans-affairs-police-va/; *Police Shootings Database 2015-2020*, WASH. POST (Oct. 15, 2020), https://www.washingtonpost.com/graphics/investigations/police-shootings-database/.

FOIA Office for the Department of Veterans Affairs
November 11, 2020

American consciousness. For some veterans, the VA Police Force has been another potential barrier to accessing the excellent care the VA provides.

In particular, the practices surrounding the Category I Record Flag System and Disruptive Behavioral Managment system the VA uses a system of flags and electronic reporting. These interventions involve the VA Police Force, VA Office of Inspector General officers, and sometimes municipal police departments. Although the stated laudable goals of the behavioral flag directive are to reduce veteran suicide and ensure employee safety, the threshold of behavior that leads to receiving a flag is very low; patients are often not informed of their right to contest the designation; and the flags are not reviewed on a regular basis as required by federal regulation.[5] Veterans report experiencing the systems as surveillance and profiling. Requstors are concerned that unhoused, Black, transgender, and disabled veterans are disproportionately flagged. Without more information, Requestors are limited in their ability to research and understand the reasons for potential disparities in record flags. Requestors are limited in their ability to inform the public or respond to members and clients.

A proposed bill, H.R. 7784, the VA Police Improvement and Accountability Act, by Representative Kathleen Hill (D-NY-14) marks an attempt to highlight police conduct at VA facilities. In order to be involved, veterans and their advocates require access to the information and documents regarding VA police practices, policies, and procedures. More information regarding VA policing is necessary to meaningfully engage in the democratic process of proposed VA police reform measures. The lack of current information limits the ability for any VA police reform to be effective.

### I.    Defined Terms

A. "Records" includes all documentation or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, transcripts, video and audio recordings, emails, faxes, files, guidance, guidelines, directives, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, studies, and other similar information, dating back to the year 2012.

B. "VA" refers to the U.S. Department of Veterans Affairs and any subcomponents of that department, including the Department of Veterans Affairs Office of Operations, Security, and Preparedness ("OSP") and the Office of Security and Law Enforcement (OS&LE).

C. "VA Police" "VA Police Force" or "VAPF" refers to the law enforcement agency of the VA, including all police officers, executive officers, detectives, and other staff members, employed for the purposes of law enforcement by the VA nationwide. Where applicable, OIG Officers, university police, or private security utilized in VAPF operations are within the scope of this Request.

D. "VA Facilities" refers to all property within the jurisdiction of the Department of Veterans Affairs, nationwide, unless narrowed by the terms of this Request.

E. "Vulnerable Populations" includes, but is not limited to, undocumented veterans, women veterans, LGBTQIA+ veterans, transgender veterans, disabled veterans, veterans with mental health diagnosis or complex trauma, unhoused veterans, and non-white veterans. "Non-White" veterans includes biracial and White Hispanic veterans.

---

[5] E.g., Department of Veterans Affairs, Office of the Inspector General, *Management of Disruptive Patient Behavior at VA Medical Facilities* (2013).

FOIA Office for the Department of Veterans Affairs
November 11, 2020

## II.   REQUEST FOR INFORMATION AND RECORDS

A.  Any and all Records concerning the behavioral record flag policies and procedures utilized by the VAPD and VHA staff including, but not limited to:
1.  Policies and procedures related to "disruptive behavior flags;"
2.  Each Veterans Integrated Service Networks' (VISNs) guidelines and procedures outlining the process for authorizing placement of record flags, notifying veterans of the flags, and the process for appealing and removing them;
3.  VA and VHA definitions and applications of "disruptive behavior" as applied in each VISN and any uniform definitions across the VA, including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).[6]

B.  Any and all Records concerning Disruptive Behavior Committees/Boards (DBC/Bs) policies and procedures including, but not limited to records related to:
1.  issuance of Orders of Behavioral Restriction or placement of Category I or Category II record flags; and
2.  reevaluation of previously issued Red Flags by the DBC/B.

C.  Any and all records concerning the placement, use, and outcomes of Panic Alarms activation by VA staff and VA police, including, but not limited to:
1.  VA Police policies and procedures relating to the activation of Panic Alarms, including but not limited to stationary, electronic personal, and computer-based Panic Alarms; and
2.  VA guidelines and procedures for Panic alarm testing.
3.  arrests made following the use of a panic alarm or security alarm triggered by a staff member.

D.  Any and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020 including, but not limited to:
1.  Implementation of recommended designated manager of the records management systems for the VAPF;[7] and
2.  Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement;[8] and
3.  Development and implementation of a plan for resolving issues with the police records management system.[9]

## III.   RECORDS RELATED TO DATA AND STATISTICS

A.  **National and Regional Data and Statistics:** Requester seeks any and all Records containing data or statistics prepared, compiled, or maintained by the VA or any agency

---

[6] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *Management of Disruptive Patient Behavior at VA Medical Facilities* (2013).
[7] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *VA Police Management System Needs Improvement* (2020)
[8] Id.
[9] Id.

FOIA Office for the Department of Veterans Affairs
November 11, 2020

or subdivision thereof, pertaining to the VA Police, beginning in year 2010 to the present. Requesters seek such national, State, or VISN Records. Requesters seek such Records encompassing information on and off VA property. Such Records should include information related to numbers of police officers, citations, arrests (on and off VA property; subject to a judicial warrant and warrantless), searches of persons and property, use of force, weapons use, numbers of complaints against VAPF officers.

B. **District Court Violation Notices:**
1. Records that contain data or statistical information on the total amount of District Court Violation Notices VA Police issued in each state, VISN, or facility.
2. Records that contain data or numerical information for District Court Violation Notices involving VA Police officers in connection with local, state, other federal, OIG, or university police.

C. **Vehicle Removal:**
1. Records that contain data or statistical information on the total vehicles removed from VA Property.
2. Records that contain data or numerical information for vehicle removal involving VA Police officers in connection with local, state, other federal, OIG, private security, or university police.

D. **Traffic Enforcement:**
1. Records that contain data or statistical information on citations for traffic or parking violations on or around VA medical facility property in each state, whether issued by VA Police,other authorized law enforcement or private security.
2. Records that contain data or numerical information for traffic enforcement involving VA Police officers in connection with local, state, other federal, OIG, or universitypolice.

E. **Panic Button Data:**
1. Records that contain data or statistical information on the usage of Panic Alarms by VA staff or VA police in VA facilities in each state.
2. Records that contain data or statistical information on the testing of Panic Alarms in each state, VISN, and/or Facility.
3. Records that contain data or numerical information for panic buttons involving VA Police officers in connection with local, state, other federal, OIG, or university police.

F. **Behavioral Record Flag Data**
1. Records that contain data or statistical information on the issuance of Behavioral Red Flags and/or Patient Record Flags to veterans who are members of Vulnerable Population in VA Facilities in each state, VISN, and/or Facility.
2. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that currently have Behavioral Red Flags and/or Patient Record Flags
3. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that have had their Behavioral Red Flags and/or Patient Record Flags removed.
4. Records that contain data or numerical information for Behavioral Record Flags involving VA Police officers in connection with local, state, other federal, OIG, or university police.

FOIA Office for the Department of Veterans Affairs
November 11, 2020

    5.  Previously compiled data, records, or other information relied upon by the
      a.  Office of the Inspector General
      b.  Government Accountability Office
      c.  Office of Security and Law Enforcement
      d.  Office of Operations, Security, and Preparedness.

  G.  **Disruptive Behavior Committee/Board Data**
    1.  Records that contain data or statistical information on the attendance of DBC/Bs in VA Facilities in each state, VISN, and/or Facility.
    2.  Records that contain data or statistical information on the issuance of Orders of Behavioral Restriction (OBR).

  H.  **Uniform Monthly Crime Reports** for VA Facilities in Ohio, New York, Florida, and California from 2010 to present.

## Fee Waiver

As a qualifying "educational institution," requester UCLA School of Law Veterans Legal Clinic is entitled to a waiver of search fees. *See* 38 C.F.R. §1.561(e)(1). FOIA regulation requires such fee waiver for an "institution of professional education.. . . which operates a program or programs of scholarly research." *Id.* 38 C.F.R. §1.561(e)(1). To qualify for this waiver, the FOIA Officer must also decide the records are sought to "further scholarly research goal of the instituion" and not in the commergial interest of the instiution or the. Individual goal of the requestor. UCLA School of Law offers J.D. and LLM programs to students who seek professional licensing as lawyers and advocates. As part of an R1 instiution, faculty and students publish rigorous scholarly research in many fields. In addition, the records obtained here will be used in scholarly pursuits of the clinic faculty who publish reports and scholarly research. The Veterans Legal Clinic also uses its research in news reports and media interviews. UCLA School of Law has no commercial interest and requesters have no individual goals in making the request.

In addition, a fee waiver is appropriate when "(1) the disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and (2) is not primarily in the commercial interests of the requester." 5 U.S.C. § 552(a)(4)(A)(iii) (numbers added). "[F]ee-waiver applications are to be 'liberally construed' in favor of finding that requesters meet FOIA's two-prong test." *Nat'l Sec. Counselors v. United States Dep't of Justice,* 848 F.3d 467, 473 (D.C. Cir. 2017). The Department of Veterans Affairs ("VA") has identified six factors for when the conditions for a fee waiver are met. *See* 38 C.F.R. § 1.561(n). As explained below, all six of these factors support a fee waiver here.

To begin, this request is in the "public interest." As a request related to potential abuse of authority by VA police, the Request satisfies the first part of the test because "the subject of the requested records concerns the operations or activities of the government." 38 C.F.R. § 1.561(n)(3)(i) (internal quotation marks omitted).

Second, the "informative value of the information to be disclosed" serves the "public interest." 38 C.F.R. § 1.561(n)(3)(ii). That is so because the records sought would illuminate the events and policies surrounding the VAPF in a historic moment when scrutiny and concern regarding racialized policing is at the forefront of public attention. In addition, the documents aid the democratic process. They will be used by NAMVETS, veterans' organizations and advocates to influence pending legislation and Congressional hearings related to VA policing. And because much of the requested information is not now "in the public domain," something "new would be added to the public's understanding" by the release records. *Id.*

Third, "disclosure of the requested information will contribute to [the] public understanding," and, thus, the "public interest." 38 C.F.R. § 1.561(n)(3)(iii). To facilitate that understanding, UCLA

FOIA Office for the Department of Veterans Affairs
November 11, 2020

School of Law Criminal Justice Program and Veterans Legal Clinic have both agreed to digitally host the records sought under I.D(c)-(i) of this Request. The Criminal Justice Program, in particular, "produces timely, impactful and collaborative research in diverse areas of criminal justice."[10] Thus, with their assistance, "a reasonably broad audience of persons interested in" VA police policies will gain access to the records requested here. 38 C.F.R. § 1.561(n)(3)(iii).

Fourth, the "contribution to [the] public understanding" offered by this Request is "significant." 38 C.F.R. § 1.561(n)(3)(iv). As mentioned above, much of the information requested here is not in the public domain. Thus, upon its disclosure, the public stands to gain important new insights into VA Police policies beyond "the level of [] understanding existing prior to the disclosure." *Id.* Accordingly, this request is in the "public interest" and, therefore, satisfies the first prong of 5 U.S.C. § 552(a)(4)(A)(iii).

Fifth and sixth, Requester has not filed this request for any "commercial interest," 38 C.F.R. § 1.561 (n)(4)(i)-(ii), because they do not seek to use any of the requested information to "further[] his . . . commercial, trade, or profit interests," 38 C.F.R. § 1.561(b)(2).

Thus, this Request satisfies both prongs of 5 U.S.C. § 552(a)(4)(A)(iii). Requesters are therefore, entitled to a fee waiver.

**Requesters**

National Association of Minority Veterans (NAMVETS) works to ensure that all veterans of color have the information, resources and support to improve the quality of their lives and the condition of their communities. A key goal is ensuring that vulnerable veterans have a voice and say in legislation impacting them and their communities. NAMVETS has had a longstanding concern for potential mistreatment of their members by VA Police.  NAMVETS will be better able to ensure all veterans of color have the access to information they need to make meaningful contributions to Congressional legislation, and help maintain the long history of quality care and support from VA facilities.

UCLA Veterans Legal Clinic provides educational opportunities to UCLA law students and holistic legal services and advocates on behalf of vulnerable veterans in Los Angeles, California. A goal of the Veterans Legal Clinic is ensuring that all veterans have access to the quality healthcare provided by VA facilities. To this end, the Veterans Legal Clinic provides educational information to veterans on legislative measures and processes. Further, it provides strategic research to clients and faculty pursue publication of veterans related scholarship and public education reports.

**Expedited Processing**

Expedited processing of this request is required because there is a "compelling need" for the information. 5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need" is established when there exists an "urgency to inform the public concerning actual or alleged Federal Government activity," when the requester is a "person primarily engaged in disseminating information," 28 C.F.R. § 16.5(e)(1)(ii), and also when there exists "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv).

The first reason the requested records present a "compelling need" is to engage with the urgent police reform movement to curtail police violence and excessive surveillance, primarily against Black people. Currently pending legislation in the U.S. Congress presents a timely opportunity for VA police reform. In  July of 2020 Representative Katherine Rice (D-NY-4) introduced the VA Police Improvement and Accountability Act,[11] which will aims to "improve the staffing, transparency, and accountability of

---

[10] UCLA School of Law Criminal Justice Program Webpage, available at
https://law.ucla.edu/centers/criminal-justice/criminal-justice-program/about.
[11] H.R. 7784

FOIA Office for the Department of Veterans Affairs
November 11, 2020

the law enforcement operations of the Department of Veterans Affairs, and for other purposes."[12] The proposed bill requires the VA to designate an employee at VA facilities to oversee the police force at those facilities, document their actions and procedures, and create transparency. Releasing data and other information maintained by the VA and other government offices promotes the bill's intent of creating more transparency surrounding VA police procedures and practices.

In additional to the federal legislation, many municipalities engage in police operations and information sharing with VA police through agreements and informal relationships. Very little information on the efficacy or potential harms is available to historically marginalized veterans. Without further information regarding the VA police practices, veterans and their advocates are limited when engaging in the public debate or engage their elected representatives, VA medical directors, and local police leadership. In addition, during this time of unprecedented need for access to the high-quality healthcare the VA provides veterans, any potential barrier to that access is of exceptional public interest.[13] Thus, Requestors show "urgency to infrorm the public concerning actual or alleged Federal Government activity."

Requestors likewise satisfy the requirement of "primarily engaged in dissemination information." By its nature, a university such as UCLA is engaged in the collection, analysis, and dissemination of information to the public, and the UCLA School of Law includes several institutes and programs that serve the role of disseminating high-quality research reports relevant to veterans, Black people, and justice-involved individuals. NAMVETS disseminates and shares information with its members, primarily minority veterans, across the country. The Requestor need not be a member of the media or have the sole occupation of dissemination of information to satisfy this requirement.

The Request also satisfies the "compelling need" standard through the alternative test as "a matter of widespread and exceptional medial interest" affecting "public confidence." In the current moment, police reform and violence against historically marginalized groups has taken center stage. The Request allows the Requestors to spotlight police conduct towards vulnerable veterans. NAMVETS is particularly well positioned to inform veterans about the practices of the VA Police Force and work with VA officials to implement meaningful reform, not only measures of transparency and oversight. Several media accounts of harm and misconduct by VA police are suggestive of the widespread interest specifically in the VA Police.[14]

Finally, in addition to the media interest surrounding police reform, whether VA policing interferes with veterans' access to health care during the COVID-19 pandemic presents another matter of "exeptional interest." For the veteran population alone, there have been at least 70,708 cases and 4,223 deaths linked to COVID-19.[15]  The combination of the two concerns presents "possible questions about the government's integrity which affect public confidence."

For these reasons, this Request satisfies the requirements of expedited processing.

**Form of Production**

Requesters ask that any Records that exist in electronic form be provided in electronic format via electronic mail or on a compact disc. If Records cannot be provided in electronic form or in hard copy, Requesters seek the opportunity to view the Records in the VA's offices. Given the COVID-19 pandemic, Requesters seek the opportunity to either review Records in VA offices at a later date, when businesses are open, or alternative means of review to be established.

---

[12] *Id*.
[13] 28 C.F.R. § 16.5(d)(1)(iv).
[14] *See* 28 C.F.R. § 16.5(e)(3) Jasper Craven, *Abusing Those Who Served*, Intercept (Jul. 8, 2019, 7:00 AM), https://theintercept.com/2019/07/08/veterans-affairs-police-va/.
[15] Department of Veterans Affairs, *Department of Veterans Affairs COVID-19 National Summary*, U.S. DEPARTMENT OF VETERANS AFFAIRS (Nov. 11, 2020), https://www.accesstocare.va.gov/Healthcare/COVID19NationalSummary .

FOIA Office for the Department of Veterans Affairs
November 11, 2020

      Finally, pursuant to the applicable regulations and statute, Requesters expect the determination of this Request for documents within twenty business days. See 5 U.S.C. § 552(a)(6)(A)(i). If this Request is denied in whole or in part, Requesters ask that VA justify all deletions by reference to specific exemptions to FOIA. Requesters expect the release of all segregable portions of otherwise exempt material. Requesters reserve the right to appeal a decision to respond without any information.

      Should you have any questions in processing this Request, or should you require clarification on the scope of the request, contact Professor Sunita Patel via email at patel@law.ucla.edu, by mail at the address below or by telephone at (310)-206-3151.

Please furnish all applicable Records to:
      907 Westwood Blvd., #444
      Los Angeles, CA 90024

Thank you for your assistance and prompt attention to this matter.

Sincerely,

Sunita Patel
Jaz Buckley
Emily Olivencia-Audet
UCLA Veterans Legal Clinic

Damon Dorsey
Horace Walker
National Association of Minority Veterans (NAMVETS)

cc:

FOIA Office for the Veterans Health Administration
VA Central Office
810 Vermont Avenue, NW
(10P2Cl) VACO
Washington, DC 20420
vhafoia2@va.gov

FOIA Office for the Department of Veterans Affairs
Office of Security and Law Enforcement (OS&LE)
VA Central Office
810 Vermont Avenue, NW
Washington, DC 204020

Exhibit B



**Department of Veterans Affairs**
**Office of Inspector General**
**Washington, DC  20420**

December 23, 2020

Sunita Patel
385 Charles E. Young Drive East
Los Angeles, CA 90095
Sent via email to: patel@law.ucla.edu

Dear Ms. Patel:

This is in response to your Freedom of Information Act (FOIA) request dated November 11, 2020 in which you asked for a copy of all records concerning behavioral record flags policies and procedures.  Portions of your request was referred to the Office of Inspector General (OIG) for a search to be performed.  Specifically, the portions relating to all records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020.

Your request was received in this office on November 20, 2020 and we assigned it FOIA Tracking Number 21-00112-FOIA. Please refer to this number whenever communicating with VA OIG about your request.

Please be advised this project and all information gathered were legally destroyed on 1/18/2019, since they have reached the end of their records retention period established by the National Archives and Records Administration (NARA).  Consequently, we must provide a "no records" found response.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. 552(c) (2006 & Supp. IV 2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may appeal the determination made in this response to: Department of Veterans Affairs, Office of Inspector General, Office of Counselor (50C), 810 Vermont Avenue NW, Washington, DC 20420, or by email to: VAOIGFOIA-Appeals@va.gov, or by fax to: (202) 495-5867. If you should choose to make an appeal, your appeal must be sent no later than ninety (90) calendar days after the date of this letter. Your appeal must

include the assigned FOIA Tracking Number and any reason(s) why you believe the response was in error. If you choose to appeal only a portion of the determination, you must specify which part of the determination you are appealing. The appeal should include a copy of the request and VA's response. The appeal should be marked, or subject-titled, "Freedom of Information Act Appeal."


Sincerely,


Ruthlee G. Bellamy
Supervisory Government Information Specialist
VA OIG Release of Information Office

Exhibit C

January 25, 2021

Department of Veterans Affairs,
Office of Inspector General, Office of Counselor (50C),
810 Vermont Avenue NW,
Washington, DC 20420

**Re:**     **Freedom of Information Act Appeal-- FOIA Request 21-00112-FOIA**

Dear Ms. Bellamy:

We write in response to your December 23, 2020 letter responding to our original FOIA request dated November 11, 2020 (FOIA Tracking Number 21-00112-FOIA). We appreciate your timely response. We believe your "no records" found response was in error.

As a preliminary matter, we made two requests related to OIG in our November 11 letter. In Part II A.3, we asked for a copy of all records concerning behavioral record flag policies and procedures utilized by VAPD and VHA staff including definitions of "disruptive behavior" recommended by OIG in 2013 and, in Part II D, we requested records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations between 2014 and 2020.

In Part II A.3, we requested any information concerning behavioral record flag policies related to definitions recommended by the Office of Inspector General (OIG) in the 2013 report, *Management of Disruptive Patient Behavior at VA Medical Facilities*. Based on your December 23 response, we recognize that the information gathered for the 2013 report was legally destroyed on January 18, 2019. We no longer seek that data, however, for the benefit of our academic analysis at UCLA School of Law, we request a list of the thirty facilities examined in the 2013 report.

Instead, and consistent with our November 11 FOIA request, we would like to see any data that examines behavioral record flag policies from relevant OIG reports including OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., HEALTHCARE INSPECTION: MANAGEMENT OF DISRUPTIVE PATIENT BEHAVIOR IN VA MEDICAL FACILITIES (Jan. 30, 2018), OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., INADEQUATE GOVERNANCE OF THE VA POLICE PROGRAM AT MEDICAL FACILITIES (Dec. 13, 2018),  and OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., VA POLICE MANAGEMENT SYSTEM NEEDS IMPROVEMENT (Jun. 17, 2020). Specifically, this includes but is not limited to, any data collected or used for "Issue 2: Patient Record Flag Placement, Follow-up, and Notification" in the January 30, 2018 OIG report.

Our request in Part II D was not limited to the 2013 report mentioned in Part II, A.3. We believe records should exist concerning notice, discussion of, and compliance with OIG guidelines and recommendations between 2014 and 2020 including:

> 1. Implementation of recommended designated manager of the records management systems for the VAPF; and
>
> 2. Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement; and
>
> 3. Development and implementation of a plan for resolving issues with the police records management system.

Particularly, we are interested in any related data collected or compiled for the January 30, 2018, December 13, 2018, and June 17, 2020 OIG reports including the aggregate data by facility compiled for Table 1: Facilities' Policies, Assessments, and Committees and Table 2: Electronic Health Record Review Results in the 2018 report: *Healthcare Inspection: Management of Disruptive Patient Behavior in VA Medical Facilities*. This data will greatly benefit our academic analysis.

Lastly, we request any data collected from the above cited reports concerning vulnerable populations. "Vulnerable Populations" include, but is not limited to, undocumented veterans, women veterans, LGBTQIA+ veterans, transgender veterans, disabled veterans, veterans with mental health diagnosis or complex trauma, unhoused veterans, and non-white veterans. "Non-White" veterans include biracial and White Hispanic veterans.

Thank you for your assistance and prompt attention to this matter.


Sincerely,

*Courtney M. Bachman*

Courtney Bachman
Sunita Patel
UCLA Veterans Legal Clinic

Matthew Strugar
Law Offices of Matthew Strugar


(on behalf of )
Damon Dorsey
Horace Walker
National Association of Minority Veterans (NAMVETS)

Exhibit D



**Department of Veterans Affairs**
**Office of Inspector General**
**Washington, DC  20420**

January 28, 2021

Sunita Patel
Veterans Legal Clinic, UCLA School of Law
385 Charles E. Young Drive East
Los Angeles, CA 90095
[Sent via: patel@law.ucla.edu]

Ref:  FOIA Appeal # 21-00010-APP for FOIA # 21-00112-FOIA

Ms. Patel:

This letter responds to your FOIA appeal, received on January 25, 2021, of the referenced Department of Veterans Affairs Office of the Inspector General (VA OIG) FOIA response. As background, your November 11, 2020 FOIA request was directed to the VA Central Office.  The request was referred to the Veterans Health Administration (VHA) FOIA Office on November 17, 2020 for any portions that relate to VHA records, then to the VA OIG on November 20, 2020 for any portions that relate to VA OIG records.  Regarding VA OIG records, your request reads as follows:  "Any and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020 including, but not limited to: 1. Implementation of recommended designated manager of the records management systems for the VAPF; and 2. Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement; and 3. Development and implementation of a plan for resolving issues with the police records management system."  As further explanation, your request referenced two VA OIG reports: *Management of Disruptive Patient Behavior at VA Medical Facilities* (2013) and *VA Police Management System Needs Improvement* (2020).

On December 23, 2020, the VA OIG FOIA Office sent the response letter, which advised you that supporting records for the VA OIG report cited in your request, *Disruptive Patient Behavior at VA Medical Facilities* (2013) were no longer available, consistent with National Archives record retention policies and that consequently they must issue a "no records" response.  In your appeal of the "no records" response, you argue that only part of your request can be denied under this explanation.

Your appeal challenges the adequacy and reasonableness of the search conducted by the FOIA staff.  Courts have found record searches to be adequate when, among other things, they are based on a reasonable interpretation of the scope of the subject matter of the request. *See, e.g., Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009).  VA regulations require that a proper FOIA request must sufficiently describe the records sought.  *See*, 38 C.F.R. §1.554.  Courts have found that a description of a requested record is sufficient if it enables a professional agency employee familiar with the subject area to locate the record with a reasonable amount of effort.  *See, e.g., Ferri v. DOJ*, 573 F. Supp. 852, 859 (W.D. Pa. 1983).  Although not specifically stated in the response letter, the FOIA file shows the FOIA staff reasonably searched the relevant VA OIG systems for records responsive to the portions of your request that relate to VA OIG records.  Therefore, after a review of the FOIA file, including the request, and the relevant VA OIG record system, I find the search by the FOIA staff was adequate and reasonable.

As a separate matter, your appeal letter adds new descriptors to the records you request and could indicate you intend to submit a new FOIA request.  This appeal response is limited to the original request and the subsequent "no records" response regarding VA OIG records.  If you intend to file a new request, please submit it directly to the VA OIG FOIA staff, which can be reached via email at: VAOIGFOIA-PA@va.gov.

Therefore, after a review of the appeal and the FOIA file, I find the FOIA response was proper and the appeal is denied.  This is the final decision of the Department of Veterans Affairs on your appeal.  The FOIA requires that I advise that, if you believe the Department erred in this decision, you have the right to file a complaint with the appropriate United States District Court.  The FOIA also requires I advise that FOIA requesters may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer as non-exclusive alternatives to litigation.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.  Please note that OGIS does not have the authority to mediate Privacy Act requests.

Respectfully,

*Christopher Connor*

Christopher Connor
Chief, Information Release Office (50CI)

Copy to:  VA OIG FOIA Office