UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS, | |
| *Plaintiff*, | |
| v. | Civil Action No. 21-1298 (RC) |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | |
| *Defendant*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

STATEMENT OF FACTS ................................................................................................... 1

LEGAL STANDARD.......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.   Parts II and III.A-G of the Request Fail to Reasonably Describe the Records Sought ........... 8

    A.   Whether a Request Enables an Agency to Readily Identify the Records Sought.............. 9

    B.   Whether a Request Enables an Agency to Readily Ascertain Where Responsive
         Records Would Be Found............................................................................... 13

    C.   Whether the Request is Limited to Particular Kinds of "Records" ................................. 14

    D.   Whether a Request is Temporally Broad ....................................................................... 15

II.   OIG Properly Declined to Conduct a Futile Search for Records It Knew It Lacked.............. 16

III.  OIG Conducted an Adequate Search for Records Responsive to Part II.A.3 ........................ 20

IV.  OIG Had No Duty to Search for Records First Identified in the Administrative Appeal....... 23

V.   The Fact That Responsive Records May Exist Does Not Mean That OIG's Search Was
     Inadequate ........................................................................................................ 23

CONCLUSION................................................................................................................... 24

APPENDIX......................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*All Party Parliamentary Grp. on Extraordinary Rendition v. Dep't of Def.*,
 134 F. Supp. 3d 201 (D.D.C. 2015) ........................................................................... 19

*Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*,
 Civ. A. No. 21-01364 (TNM), 2021 WL 5231939 (D.D.C. Nov. 10, 2021) .................... passim

*Am.-Arab v. Dep't of Homeland Sec.*,
 516 F. Supp. 2d 83 (D.D.C. 2007) ............................................................................. 22

*Assassination Archives v. CIA*,
 720 F. Supp. 217 (D.D.C. 1989) ............................................................................... 15

*Benjamin v. Dep't of State*,
 178 F. Supp. 3d 1 (D.D.C. 2016) ................................................................................ 8

*Boggs v. United States*,
 987 F. Supp. 11 (D.D.C. 1997) ................................................................................. 10

*CNN, Inc. v. FBI*,
 271 F. Supp. 3d 108 (D.D.C. 2017) ........................................................................... 13

*Coss v. Dep't of Just.*,
 98 F. Supp. 3d 28 (D.D.C. 2015) ............................................................................... 26

*Cunningham v. Dep't of Just.*,
 40 F. Supp. 3d 71 (D.D.C. 2014) ............................................................................... 22

*Dale v. IRS*,
 238 F. Supp. 2d 99 (D.D.C. 2002) ......................................................................... 13, 16

*Defs. of Wildlife v. U.S. Border Patrol*,
 623 F. Supp. 2d 83 (D.D.C. 2009) ............................................................................. 10

*DiBacco v. U.S. Army*,
 795 F.3d 178 (D.C. Cir. 2015) ............................................................................... 23, 26

*Earle v. Dep't of Just.*,
 217 F. Supp. 3d 117 (D.D.C. 2016) ........................................................................... 22

*Ecological Rts. Found. v. EPA*,
 Civ. A. No. 19-980 (BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021) ................................. 26

**Cases (cont.)**

*Fonda v. CIA*,
    434 F. Supp. 498 (D.D.C. 1977) ........................................................................................ 13

*Freedom Watch, Inc. v. Dep't of State*,
    925 F. Supp. 2d 55 (D.D.C. 2013) ............................................................................... 13, 17

*Hall v. Ford*,
    856 F.2d 255 (D.C. Cir. 1988) .......................................................................................... 9

*Hodge v. FBI*,
    703 F.3d 575 (D.C. Cir. 2013) ......................................................................................... 23

*In re Clinton*,
    970 F.3d 357 (D.C. Cir. 2020) ......................................................................................... 26

*Inst. for Just. v. IRS*,
    941 F.3d 567 (D.C. Cir. 2019) ......................................................................................... 24

*Iturralde v. Comptroller of the Currency*,
    315 F.3d 311 (D.C. Cir. 2003) .................................................................................... 23, 25

*James Madison Project v. CIA*,
    Civ. A. No. 08-1323, 2009 WL 2777961 (E.D. Va. Aug. 31, 2009) ................................. 13, 16

*Jenkins v. Dep't of Just.*,
    263 F. Supp. 3d 231 (D.D.C. 2017) ................................................................................. 19

*Kowalczyk v. Dep't of Just.*,
    73 F.3d 386 (D.C. Cir. 1996) .......................................................................................... 25

*L. Offs. of Snider & Assocs., LLC. v. Gates*,
    45 F. Supp. 3d 100 (D.D.C. 2014) ................................................................................... 22

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ......................................................................................... 23

*Latham v. Dep't of Just.*,
    658 F. Supp. 2d 155 (D.D.C. 2009) ............................................................................ 13, 16

*Leopold v. CIA*,
    177 F. Supp. 3d 479 (D.D.C. 2016) ................................................................................. 25

*Am. Fed. Gov't Emps., Loc. 2782 v. Dep't of Com.*,
    907 F.2d 203 (D.C. Cir. 1990) ......................................................................................... 17

**Cases (cont.)**

*Louise Trauma Ctr., LLC v. Dep't of Just.*,
    Civ. A. No. 20-3517 (RC), 2022 WL 278771 (D.D.C. Jan. 30, 2022) ..................................... 25

*Marks v. Dep't of Just.*,
    578 F.2d 261 (9th Cir. 1978) ........................................................................................ 16

*Mason v. Callaway*,
    554 F.2d 129 (4th Cir. 1977) ........................................................................................ 13

*Maynard v. CIA*,
    986 F.2d 547 (1st Cir. 1993) ........................................................................................ 24

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) ..................................................................................... 9

*Nat'l Sec. Couns. v. CIA*,
    969 F.3d 406 (D.C. Cir. 2020) ............................................................................... 11, 16

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ........................................................................... 19, 23, 24

*People for the Ethical Treatment of Animals, Inc. v. Dep't of Agric.*,
    7 F. Supp. 3d 1 (D.D.C. 2013) ....................................................................................... 9

*Pinson v. Dep't of Just.*,
    245 F. Supp. 3d 225 (D.D.C. 2017) ....................................................................... 11, 14, 25

*Pinson v. Dep't of Just.*,
    Civ. A. No. 12-1872 (RC), 2017 WL 6887041 (D.D.C. Aug. 31, 2017) ................................ 19

*Reyes v. EPA*,
    991 F. Supp. 2d 20 (D.D.C. 2014) ................................................................................. 19

*Richardson v. Capital One, N.A.*,
    839 F. Supp. 2d 197 (D.D.C. 2012) ................................................................................. 9

*Rodriguez v. FBI*,
    Civ. A. No. 16-02465 (APM), 2018 WL 6591659 (D.D.C. Dec. 14, 2018) ........................... 9

*Sack v. CIA*,
    53 F. Supp. 3d 154 (D.D.C. 2014) ............................................................................. 12, 15

*Sack v. Dep'f of Def.*,
    6 F. Supp. 3d 78 (D.D.C. 2013) ................................................................................... 22

**Cases (cont.)**

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ......................................................................... 23, 24

*Shapiro v. CIA*,
   170 F. Supp. 3d 147 (D.D.C. 2016) ......................................................................... 12

*Stein v. CIA*,
   454 F. Supp. 3d 1 (D.D.C. 2020) ............................................................................. 21

*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) ......................................................................... 11, 16

*Truitt v. Dep't of State*,
   897 F.2d 540 (D.C. Cir. 1990) ......................................................................... 11, 15

*Weisberg v. Dep't of Just.*,
   627 F.2d 365 (D.C. Cir. 1980) ................................................................................. 8

*Williams v. Ashcroft*,
   30 F. App'x 5 (D.C. Cir. 2002) ............................................................................... 26

*Wilson v. Dep't of Transp.*,
   730 F. Supp. 2d 140 (D.D.C. 2010) ........................................................................ 10

*Wren v. Dep't of Just.*,
   282 F. Supp. 3d 216 (D.D.C. 2017) ........................................................................ 25

**Statutes**

5 U.S.C. § 552 ......................................................................................................... 4

5 U.S.C. § 552(a)(3)(A) ......................................................................................... 11

**Other Authorities**

*Federal Workforce Data*, Off. of Personnel Mgmt. ................................................ 17

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................. 8

The Department of Veterans Affairs ("VA"), by and through the undersigned counsel, respectfully files this memorandum of points and authorities in support of its motion for summary judgment. Plaintiff National Association of Minority Veterans submitted a request to VA under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking, in relevant part, certain records concerning VA's response to guidance and recommendations issued by VA's Office of Inspector General ("OIG"). But broad swaths of the FOIA request failed to reasonably describe the records sought and thus did not trigger a duty to search for responsive records. OIG determined, moreover, that it did not possess any records responsive to numerous parts of the FOIA request, making any search for responsive records futile. OIG identified one part of the FOIA request that sought records that it believed it might have and conducted a search for such records, only to learn that they had been destroyed pursuant to record retention policies. In its administrative appeal of OIG's response to its FOIA request, and then in a separate FOIA request filed after this case began, the Association sought records that its original FOIA request had not reasonably described. For the reasons explained in further detail below, this Court should grant VA summary judgment.

## STATEMENT OF FACTS

On November 11, 2020, the Association submitted a FOIA request to VA, directed "to all appropriate offices and departments of the agency." Statement of Material Facts ("SUMF") ¶ 1. The request sought various records, including certain records concerning VA's responses to OIG guidelines and recommendations. SUMF ¶ 1. Part I of the request offered the following definitions:

A. 'Records" includes all documentation or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, transcripts, video and audio recordings, emails, faxes, files, guidance, guidelines, directives, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, studies, and other similar information, dating back to the year 2012.

B.  "VA" refers to the U.S. Department of Veterans Affairs and any subcomponents of that department, including the Department of Veterans Affairs Office of Operations, Security, and Preparedness ("OSP") and the Office of Security and Law Enforcement (OS&LE).

SUMF ¶ 2. The remainder of the FOIA request sought the following categories of records:

## II.    REQUEST FOR INFORMATION AND RECORDS

A.  Any and all Records concerning the behavioral record flag policies and procedures utilized by the VAPD and VHA staff including, but not limited to:
1.  Policies and procedures related to "disruptive behavior flags;"
2.  Each Veterans Integrated Service Networks' (VISNs) guidelines and procedures outlining the process for authorizing placement of record flags, notifying veterans of the flags, and the process for appealing and removing them;
3.  VA and VHA definitions and applications of "disruptive behavior" as applied in each VISN and any uniform definitions across the VA, including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).[6]

B.  Any and all Records concerning Disruptive Behavior Committees/Boards (DBC/Bs) policies and procedures including, but not limited to records related to:
1.  issuance of Orders of Behavioral Restriction or placement of Category I or Category II record flags; and
2.  reevaluation of previously issued Red Flags by the DBC/B.

C.  Any and all records concerning the placement, use, and outcomes of Panic Alarms activation by VA staff and VA police, including, but not limited to:
1.  VA Police policies and procedures relating to the activation of Panic Alarms, including but not limited to stationary, electronic personal, and computer-based Panic Alarms; and
2.  VA guidelines and procedures for Panic alarm testing.
3.  arrests made following the use of a panic alarm or security alarm triggered by a staff member.

D.  Any and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020 including, but not limited to:
1.  Implementation of recommended designated manager of the records management systems for the VAPF;[7] and
2.  Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement;[8] and
3.  Development and implementation of a plan for resolving issues with the police records management system.[9]

### III.   RECORDS RELATED TO DATA AND STATISTICS

A. **National and Regional Data and Statistics:** Requester seeks any and all Records containing data or statistics prepared, compiled, or maintained by the VA or any agency or subdivision thereof, pertaining to the VA Police, beginning in year 2010 to the present. Requesters seek such national, State, or VISN Records. Requesters seek such Records encompassing information on and off VA property. Such Records should include information related to numbers of police officers, citations, arrests (on and off VA property; subject to a judicial warrant and warrantless), searches of persons and property, use of force, weapons use, numbers of complaints against VAPF officers.

B. **District Court Violation Notices:**
   1. Records that contain data or statistical information on the total amount of District Court Violation Notices VA Police issued in each state, VISN, or facility.
   2. Records that contain data or numerical information for District Court Violation Notices involving VA Police officers in connection with local, state, other federal, OIG, or university police.

C. **Vehicle Removal:**
   1. Records that contain data or statistical information on the total vehicles removed from VA Property.
   2. Records that contain data or numerical information for vehicle removal involving VA Police officers in connection with local, state, other federal, OIG, private security, or university police.

D. **Traffic Enforcement:**
   1. Records that contain data or statistical information on citations for traffic or parking violations on or around VA medical facility property in each state, whether issued by VA Police, other authorized law enforcement or private security.
   2. Records that contain data or numerical information for traffic enforcement involving VA Police officers in connection with local, state, other federal, OIG, or university police.

E. **Panic Button Data:**
   1. Records that contain data or statistical information on the usage of Panic Alarms by VA staff or VA police in VA facilities in each state.
   2. Records that contain data or statistical information on the testing of Panic Alarms in each state, VISN, and/or Facility.
   3. Records that contain data or numerical information for panic buttons involving VA Police officers in connection with local, state, other federal, OIG, or university police.

F. **Behavioral Record Flag Data**
   1. Records that contain data or statistical information on the issuance of Behavioral Red Flags and/or Patient Record Flags to veterans who are members of Vulnerable Population in VA Facilities in each state, VISN, and/or Facility.

2. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that currently have Behavioral Red Flags and/or Patient Record Flags

3. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that have had their Behavioral Red Flags and/or Patient Record Flags removed.

4. Records that contain data or numerical information for Behavioral Record Flags involving VA Police officers in connection with local, state, other federal, OIG, or university police.

5. Previously compiled data, records, or other information relied upon by the
   a. Office of the Inspector General
   b. Government Accountability Office
   c. Office of Security and Law Enforcement
   d. Office of Operations, Security, and Preparedness.

G. **Disruptive Behavior Committee/Board Data**
   1. Records that contain data or statistical information on the attendance of DBC/Bs in VA Facilities in each state, VISN, and/or Facility.
   2. Records that contain data or statistical information on the issuance of Orders of Behavioral Restriction (OBR).

H. **Uniform Monthly Crime Reports** for VA Facilities in Ohio, New York, Florida, and California from 2010 to present.

[6] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *Management of Disruptive Patient Behavior at VA Medical Facilities*
[7] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *VA Police Management System Needs Improvement* (2020)
[8] Id.
[9] Id.

SUMF ¶ 3.

OIG received the Association's FOIA request on November 20, 2020. SUMF ¶ 4. On December 23, 2020, it acknowledged receipt of the request, and assigned it a tracking number of 21-00112-FOIA. SUMF ¶ 5. OIG informed the Association that "this project and all information gathered were legally destroyed on 1/18/2019, since they have reached the end of their record retention period established by the National Archives and Records Administration (NARA)." SUMF ¶ 12. OIG issued a "no records found" response to the Association's request. SUMF ¶ 13.

The Association filed an administrative appeal on January 25, 2021. SUMF ¶ 14. In its appeal letter, the Association stated, "We believe records should exist concerning notice, discussion of, and compliance with OIG guidelines and recommendations between 2014 and 2020." SUMF ¶ 15. OIG denied the appeal three days later. SUMF ¶ 16. OIG's denial stated that the Association had added new requests and new descriptions of records sought in its appeal, and explained that the Association could submit a new request for these records directly to OIG. SUMF ¶ 17. The Association filed the complaint in this case on May 11, 2021. SUMF ¶ 18.

On August 23, 2021, the Association submitted a new FOIA request to OIG, which contained descriptions of the records sought not found in its original FOIA request. SUMF ¶ 19. OIG conducted a search, identified responsive records, and released some of them in whole and some of them in part, withholding some of them in full. SUMF ¶ 20.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016) (Berman Jackson, J.), *aff'd*, No. 16-5175 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quotation marks omitted). An agency is entitled to summary judgment in a FOIA case if it shows that no material facts are disputed, it has conducted an adequate search for responsive records, and each responsive record found either has been produced or is exempt from disclosure. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). An agency may rely on reasonably detailed, non-conclusory declarations to meet this burden. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

## ARGUMENT

The only VA component whose response to the Association's FOIA request is properly at issue is OIG, the only component whose response the complaint discusses. Compl. ¶¶ 7-20, ECF No. 1; *Rodriguez v. FBI*, Civ. A. No. 16-02465 (APM), 2018 WL 6591659, at *1 (D.D.C. Dec. 14, 2018) ("Plaintiff's Complaint does not, however, take issue with OIP's response to his FOIA request. OIP's response, therefore, is not at issue in this case." (citation omitted)); *People for the Ethical Treatment of Animals, Inc. v. Dep't of Agric.*, 7 F. Supp. 3d 1, 15 (D.D.C. 2013) (Boasberg, J.) ("Unfortunately for PETA, however, it did not raise this claim in its Complaint, and a plaintiff is not permitted to advance a claim in its Motion and Opposition that was not alleged in its Complaint." (cleaned up)); *see also Hall v. Ford*, 856 F.2d 255, 267 (D.C. Cir. 1988) (refusing to consider legal theory other than "the theory presented in the complaint"); *Richardson v. Capital One, N.A.*, 839 F. Supp. 2d 197, 202 (D.D.C. 2012) (Boasberg, J.) ("Plaintiff is not permitted to advance a claim in his Motion and Opposition that was not alleged in his Complaint").

Likewise, the only FOIA request properly at issue here is the Association's first request, dated November 11, 2020, as the complaint does not even mention, let alone raise claims as to, the second request, which postdates the complaint. SUMF ¶¶ 1, 19-20; *see also Lopez-Pena v. Dep't of Just.*, Civ. A. No. 19-2884 (RDM), 2021 WL 3077559, at *4 (D.D.C. Jul. 20, 2021) ("[T]his lawsuit pertains only to the 2019 request, and Plaintiff cannot use this case as a vehicle to litigate over a request that was submitted *after* Plaintiff filed the complaint in this case" (alterations omitted)); *Borda v. Dep't of Just.*, 245 F. Supp. 3d 52, 57 (D.D.C. 2017) (Moss, J.) ("Because Borda's operative complaint does not challenge the Department's response to these FOIA requests,

he cannot, for the first time, attack the sufficiency of the Department's response by way of his opposition brief.").[1]

After reviewing the Association's FOIA request, OIG determined that certain parts of it failed to reasonably describe the records it sought, and thus, did not trigger an obligation to conduct any search for responsive records at all. Other parts of the request, OIG determined, sought records that OIG did not possess, meaning that any search would have been futile—and thus, OIG did not need to conduct one. Only one part of the request reasonably described records that OIG might possess, and OIG conducted an adequate search for those records, discovering that they had been destroyed pursuant to its record retention policies. In its administrative appeal of OIG's response to its request, the Association sought additional records that its original request did not reasonably describe, but OIG had no duty to search for records identified for the first time in an administrative appeal. For these reasons, this Court should grant VA summary judgment in its entirety.[2]

---

[1]     In a phone call with OIG, the Association previously asserted that its second FOIA request is not separate from its first request, but rather, that "there is only one FOIA." Decl. of Ruthlee Gowins-Bellamy ¶ 35. That is both factually and legally incorrect. The two FOIA requests are separate, submitted on different dates, and seeking different sets of records. Gowins-Bellamy Decl. ¶¶ 6 (Nov. 11, 2020 FOIA request), 30 (Aug. 23, 2021 FOIA request). Nor is there any rule that a subsequent request for records related in some way to records sought in a previous request is an extension of the original request. To the contrary, Courts in this District have consistently treated subsequent requests as separate requests. *See, e.g.*, *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 86 (D.D.C. 2009) (Friedman, J.) ("On May 12, 2004, plaintiff submitted a separate FOIA request to CBP for the same categories of information as in the original request."); *Boggs v. United States*, 987 F. Supp. 11, 21 (D.D.C. 1997) (Lamberth, J.) ("Plaintiff then submitted a second FOIA request, seeking some documents not provided in the original request, some documents created after the first request, and some documents withheld under [an] exemption of FOIA."); *Wilson v. Dep't of Transp.*, 730 F. Supp. 2d 140, 150 (D.D.C. 2010) ("[T]hese two FOIA Requests sought different information. . . . Nothing in the record indicates that DOT treated FOIA Request No. 2009-0157 as the reinstated FOIA Request No. 2009-0081.").

[2]     The Association's FOIA request has several parts, which contain multiple sub-parts. OIG seeks summary judgment as to the various portions of the request on different, often overlapping grounds. To assist the Court in keeping track of which of VA's arguments apply to which portions of the FOIA request, VA has provided a summary chart at the end of this memorandum.

**I.      Parts II and III.A-G of the Request Fail to Reasonably Describe the Records Sought**

FOIA requires an agency to conduct an adequate search for responsive records and release any non-exempt, reasonably segregable portions thereof only if a request "reasonably describes such records." 5 U.S.C. § 552(a)(3)(A). "A request reasonably describes records if the agency is able to determine precisely what records are being requested," *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (quotation marks omitted), such that "a professional employee of the agency who was familiar with the subject area of the request [could] locate the record[s] with a reasonable amount of effort," *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990). "Broad, sweeping requests lacking specificity are not sufficient," however. *Pinson v. Dep't of Just.*, 245 F. Supp. 3d 225, 244 (D.D.C. 2017) (Contreras, J.) (quotation marks omitted). Rather, "FOIA envisions that applicants will reasonably describe the records they seek, and agencies are entitled to demand it." *Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, Civ. A. No. 21-01364 (TNM), 2021 WL 5231939, at *8 (D.D.C. Nov. 10, 2021). "[A] request which fails to reasonably describe the documents sought does not trigger a search of agency records." *Truitt*, 897 F.2d at 544 (quotation marks omitted). An agency thus "need not honor a request that requires an unreasonably burdensome search." *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) (quotation marks omitted). "The upshot is that, when the request as drafted would require an agency to undertake an unreasonably burdensome search, the agency can decline to process the request." *Id.*

Whether a request reasonably describes records is a context-specific inquiry, but the D.C. Circuit and Courts in this District have offered some guideposts. As explained below, a request is less likely to reasonably describe records if it (1) does not enable an agency to readily identify the precise records sought, (2) does not enable an agency to readily ascertain where responsive records would be found, (3) is not limited to particular types of records, and/or (4) is temporally broad. All

these guideposts point the same way here, showing that Parts II and III.A-G of the request fail to reasonably describe the records sought. Summary judgment thus is warranted as to these parts.

### A.      Whether a Request Enables an Agency to Readily Identify the Records Sought

First, a request is less likely to reasonably describe the records sought if it describes them in broad, indeterminate terms that do not enable an agency to readily identify the particular records at issue, such as by seeking records "concerning," "pertaining to," or "relating to" a given topic. When a request seeks records that expressly "mention" or "reference" a given topic, any responsive records "could probably be found with a simple keyword search across agency databases." *Am. Ctr. for L. & Just.*, 2021 WL 5231939, at *6. In contrast, records can "pertain to," "relate to," or "concern" a topic that they do "not even discuss." *Id.* As such, "such expansive phrasing would sweep in any communication even remotely related to the" topic at hand, "leav[ing] the unfortunate FOIA processor assigned to such a case in a hopeless muddle without clear guidance about what documents are being sought." *Id.*; *see also Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) (Cooper, J.) ("[T]here is a difference in kind between requests for documents that 'mention' or 'reference' a specified person or topic and those seeking records 'pertaining to,' 'relating to,' or 'concerning' the same."). An agency confronting such a request will struggle even to identify the universe of potentially responsive records, let alone determine whether the nexus between the topic at hand and any given record is sufficiently close to say that the record "concerns," "pertains to," or "related to" the topic. *See Sack v. CIA*, 53 F. Supp. 3d 154, 164-65 (D.D.C. 2014) (Sullivan, J.) ("Th[e] phrase ['pertain'] is difficult to define because a record may pertain to something without specifically mentioning it. . . . Indeed, any document related to a closed investigation may arguably pertain, at least in part, to a subsequently generated list of investigations. Given this breadth, the

CIA could not assume that responsive documents would be located only in those very few places which would maintain records discussing lists of OIG investigations." (cleaned up)).

For that reason, the phrases "concerning," "pertaining to," "relating to," and similarly indeterminate terms "typif[y] the lack of specificity that Congress sought to preclude in the requirement . . . that records sought be reasonably described." *Mason v. Callaway*, 554 F.2d 129, 131 (4th Cir. 1977) (agency did not need to conduct search responsive to request seeking records "pertaining to" a given topic). A request framed in such expansive language is "inevitably subject to criticism as overbroad since life, like law, is a seamless web, and all documents relate to all others in some remote fashion." *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (quotation marks omitted); *see also CNN, Inc. v. FBI*, 271 F. Supp. 3d 108, 112 (D.D.C. 2017) (Boasberg, J.) ("[T]he language 'relate in any way to' certain [records] was too vague."); *Latham v. Dep't of Just.*, 658 F. Supp. 2d 155, 161 (D.D.C. 2009) (request for records "that pertain in any form or sort to" a given topic "is overly broad, and to require the [agency] to process it would be overly burdensome"); *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (Bates, J.) (request for records "that refer or relate in any way to" topic did "not describe the records sought with reasonably sufficient detail" (quotation marks omitted)); *James Madison Project v. CIA*, Civ. A. No. 08-1323, 2009 WL 2777961, at *4 (E.D. Va. Aug. 31, 2009) (terms pertaining to" and "relating to" "generally indicat[e] an overbroad request"); *Fonda v. CIA*, 434 F. Supp. 498, 501 (D.D.C. 1977) ("Plaintiff offers no criterion by which defendants can determine which documents 'concern her.'").

Parts II and III.A-G of the request are phrased in precisely this way. Part II.A sought "[a]ny and all Records *concerning* the behavioral record flag policies and procedures utilized by the VAPD and VHA staff including, but not limited to . . . Policies and procedures *related to*

10

'disruptive behavior flags.'" SUMF ¶ 3 (emphasis added). Part II.B sought "[a]ny and all Records *concerning* Disruptive Behavior Committees/Boards (DBC/Bs) policies and procedures including, but not limited to records *related to*" (1) "issuance of Orders of Behavioral Restriction or placement of Category I or Category II record flags" and (2) "reevaluation of previously issued Red Flags by the DBC/B." *Id.* (emphasis added). Part II.C sought "[a]ny and all records *concerning* the placement, use, and outcomes of Panic Alarms activation by VA staff and VA police, including, but not limited to . . . VA Police policies and procedures *relating to* the activation of Panic Alarms." *Id.* (emphasis added). Part II.D sought "[a]ny and all Records *concerning* notice, discussion of, and compliance with [OIG] guidelines and recommendations issued between 2014 and 2020." *Id.* (emphasis added). And Part III.A sought "any and all Records containing data or statistics prepared, compiled, or maintained by the VA or any agency or subdivision thereof, *pertaining to* the VA Police, beginning in year 2010 to the present." *Id.* (emphasis added).

OIG "could not conduct a search for any and all records 'concerning,' 'pertaining to,' or 'relating to' a topic because a record might concern, pertain to, or relate to a topic without mentioning it by name." Decl. of Ruthlee Gowins-Bellamy ¶ 14. Because "responsive documents may exist that concern or pertain to those policies but do not mention them by name," they "would be impossible to search for within the various OIG record systems." *Id.*; *see also* Gowins-Bellamy Decl. ¶ 12 (attesting as to Part II.D that "Plaintiff is requesting any records (including emails) that concern OIG recommendations over a period of six years. There is no way for my office to conduct a search based on that request. Many records may concern OIG recommendations and not mention recommendations, this could include all OIG records."); *compare Pinson*, 245 F. Supp. 3d at 244 ("FOIA does not allow requesters to turn agencies into full-time investigators on behalf of

requesters." (quotation marks omitted)); *Am. Ctr. for L. & Just.*, 2021 WL 5231939, at *6 ("such expansive phrasing would sweep in any communication even remotely related to" topic at hand).

Parts III.A-G, meanwhile, sought records "containing" certain kinds of data and statistical information. SUMF ¶ 3. Just as OIG could not readily search for records that concern, pertain to, or relate to certain topics, it could not readily search for records that contain certain kinds of data or statistics. Unlike a request for records "containing" a particular term, which "could probably be found with a simple keyword search across agency databases," *Am. Ctr. for L. & Just.*, 2021 WL 5231939, at *6, a request for records containing certain kinds of data or statistics does not lend itself to a straightforward search because OIG "does not have the ability to search for all records that contain data," Gowins-Bellamy Decl. ¶ 16, and so could not "locate [them] with a reasonable amount of effort," *Truitt*, 897 F.2d at 545 n.36; *see also Sack*, 53 F. Supp. 3d at 165 ("This problem is especially acute because the CIA's record-keeping systems do not permit it to identify records that do not necessarily reference a document, but which may bear some relation to it." (cleaned up)); *Assassination Archives v. CIA*, 720 F. Supp. 217, 220 (D.D.C. 1989) ("The breadth of plaintiff's requests is not compatible with the CIA's document retrieval system").

Finally, Part III.F.5 sought "[p]reviously compiled data, records, or other information relied upon by" four offices: OIG, the Government Accountability Office, the Office of Security and Law Enforcement, and the Office of Operations, Security, and Preparedness. *Id.* This language seems to seek virtually every record these components possess. Gowins-Bellamy Decl. ¶ 18 ("I interpreted Section III.F.5 as encompassing almost all documents maintained by OIG."). Even if one interprets it to seek only "Behavioral Record Flag Data," the header for Part III.F, it does not specify whether it seeks all records that mention such data, which may be a relatively manageable task, or all records concerning such data, a much broader and less determinate request.

In sum, Parts II, III.A-G are phrased too broadly for VA to "locate the [sought] record[s] with a reasonable amount of effort." *Truitt*, 897 F.2d at 545 n.36. Their "broad descriptions" of the records sought did "not allow [OIG] to determine precisely what records are being requested." *Tax Analysts*, 117 F.3d at 610. Indeed, "[b]ased on how the request was written," OIG "struggled to discern which records the Association was seeking, as the request's phrasing made it "difficult to determine what specific records [it] was requesting." Gowins-Bellamy Decl. ¶¶ 9, 19.

### B.     Whether a Request Enables an Agency to Readily Ascertain Where Responsive Records Would Be Found

Second, a request is less likely to reasonably describe the records sought if it does not enable an agency to ascertain where responsive records will likely be found, necessitating a search across many components, offices, file systems, and/or custodians. *See Nat'l Sec. Counselors*, 969 F.3d at 410 ("[I]t is difficult to determine where responsive information would likely be located within the Agency because the request is so general . . . . the CIA would be required to search every office for any documents containing [a term,] which would amount to a massive undertaking." (quotation marks omitted)); *Am. Ctr. for L. & Just.*, 2021 WL 5231939, at *6 ("Every employee at these three sprawling agencies would therefore be implicated by [the FOIA] request, including those that have nothing to do with the [topic at hand]."); *Latham*, 658 F. Supp. 2d at 161 ("[P]laintiff's failure to identify which record system to search or which office might maintain responsive records would require the agency to conduct searches agency-wide"); *James Madison Project*, 2009 WL 2777961, at *5 ("[E]very component of the CIA would be busy devising a search strategy to respond to . . . the request. The FOIA was not intended to saddle agencies with this type of burden."); *Dale*, 238 F. Supp. 2d at 104 ("Dale's broad request . . . does not specify what records he seeks, for what years, and located at which office of the IRS."); *Marks*

*v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978) ("The requirement of reasonable description relates not only to subject matter, but . . . also relates to place of search.").

The Association's FOIA request is not limited to specific VA components, offices, file systems, or custodians. Rather, it is directed "to all appropriate offices and departments within the agency." SUMF ¶ 1. Part I.B defines the term "VA" to mean "the U.S. Department of Veterans Affairs and any subcomponents of that department." SUMF ¶ 2. Nor does the request "specify certain custodians" to search, such that it "on its face is asking for all emails concerning [the topics at hand] from all OIG employees," Gowins-Bellamy Decl. ¶ 19—all roughly 427,196 of them. *See Federal Workforce Data*, Off. of Personnel Mgmt., https://www.fedscope.opm.gov/;[3] *see also Am. Ctr. for L. & Just.*, 2021 WL 5231939, at \*6 (request "encompass[ing] each of the Department's 240,000 employees" was unduly burdensome (citing agency's motion to dismiss, which in turn cited agency website for personnel figure)). "Potentially responsive records could number in the thousands of documents, with each page needing individual review to tell whether it is responsive." Gowins-Bellamy Decl. ¶ 19; *see also Am. Fed. Gov't Emps., Loc. 2782 v. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990) ("The unreasonableness of the attendant burden is only more obvious when one realizes that it is largely unnecessary to the appellants' purpose"); *Freedom Watch*, 925 F. Supp. 2d at 61 (request unreasonable where it was not limited to employees who "might have had something to do" with the topics at hand).

### C.   Whether the Request is Limited to Particular Kinds of "Records"

Third, a request is less likely to reasonably describe the records sought if it "is not at all limited to certain [kinds of] records." *Am. Ctr. for L. & Just.*, 2021 WL 5231939, at \*7. *American*

---

[3]      Click "Employment," find "September" column," then click "2021," then click "Cabinet Level Agencies" in blue box, then click "VA—Department of Veterans Affairs," then scroll all the way to far right for total number of employees.

*Center for Law & Justice* is instructive—the request there "define[d] 'record' as 'any information that qualifies under FOIA and includes, but is not limited to, the original or any full, complete, and unedited copy of 19 types of written communication.'" *Id.* (cleaned up). Such a broad definition of the term "records," the Court explained, "only further broadened [the plaintiff's] request." *Id.* Part I.A of the Association's FOIA request defines "records" even more capaciously, to "includ[e]" (but not as limited to) 29 distinct categories of materials—"all documentation or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, transcripts, video and audio recordings, emails, faxes, files, guidance, guidelines, directives, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, studies, and other similar information." SUMF ¶ 2.

### D.    Whether a Request is Temporally Broad

Fourth and finally, a request is less likely to reasonably describe the records sought if it is temporally broad. In *American Center for Law and Justice*, the Court emphasized the "important" "temporal limitation" that a request "sought records only from November 4, 2020 to May 18, 2021," 2021 WL 5231939, at *7, about six and a half months. The Association, in contrast, seeks records going back at least a full decade, and in some cases even longer. Part I.A. specifies that the request generally seeks records going back to 2012, and Part III.A seeks certain recording from "2010 to the present." SUMF ¶¶ 2-3. While "[a] shorter timeframe does not necessarily cure an overly broad description of the records," *Am. Ctr. for L. & Just.*, 2021 WL 5231939, at *7, a long timeframe only exacerbates the problem.

*              *              *

The Association's request does not enable OIG to ascertain either the particular records sought or where such records are likely to be found. It is not limited to particular kinds of records, either. And it seeks records going back a full 10 to 12 years. "That type of search would be unduly burdensome" and "a massive undertaking," and VA "need not respond to such a request." *Am. Ctr. for L. & Just.*, 2021 WL 5231939, at *7 (quotation marks omitted). As such, this Court should grant OIG summary judgment as to Parts II and III.A-G of the Association's FOIA request.

## II.    <u>OIG Properly Declined to Conduct a Futile Search for Records It Knew It Lacked</u>

"An agency need not perform a search when the agency has sufficiently established that it would be fruitless." *Pinson v. Dep't of Just.*, Civ. A. No. 12-1872 (RC), 2017 WL 6887041, at *11 (D.D.C. Aug. 31, 2017); *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("There is no requirement that an agency search every record system" and agency need not conduct a search if no "record system [is] likely to produce responsive documents"); *Reyes v. EPA*, 991 F. Supp. 2d 20, 27 (D.D.C. 2014) (Sullivan, J.) ("An agency is not required to expend its limited resources on searches for which it is clear at the outset that no search will produce the records sought."). An agency can meet its burden to show a search would be futile through a declaration by a knowledgeable official attesting that the request seeks records beyond the agency's role. *See Jenkins v. Dep't of Just.*, 263 F. Supp. 3d 231, 234-35 (D.D.C. 2017) (Kollar-Kotelly, J.) (agency did not need to conduct search for records regarding Michigan state court criminal case where its "declarant explain[ed] that [the agency] does not prosecute state cases in Michigan, and it was not involved in the criminal cases identified by plaintiff in his FOIA requests" (cleaned up)); *All Party Parliamentary Grp. on Extraordinary Rendition v. Dep't of Def.*, 134 F. Supp. 3d 201, 206 (D.D.C. 2015) (Friedman, J.) ("The NSA thus argues that, because its function is limited solely to signals intelligence, it is unlikely to possess any documents responsive to the Group 1 Requests and is not

required to search its records. The Court agrees and concludes that a search for the documents requested would be futile; the NSA has satisfied its burden to conduct an adequate search.").[4]

OIG has met its burden to show that a search for records responsive to certain parts of the Association's FOIA request would have been futile. OIG's Supervisory Government Information Specialist Ruthlee Gowins-Bellamy attested through the attached declaration that she is familiar with the Association's FOIA request, OIG's responses to it, and the background of this litigation through the exercise of her official duties, and that she reviewed the entire request to determine which parts of it related to OIG records. Gowins-Bellamy Decl. ¶¶ 1, 4, 7. She further attested that OIG is an independent component of VA that lacks "access to records held by" or "programmatic control over" other VA components, or "authority to require or dictate" how other VA components implement OIG recommendations. Gowins-Bellamy Decl. ¶¶ 13, 15. Based on her own personal knowledge, a review of OIG's file concerning the request, her communications with relevant FOIA personnel, and other information given to her in the course of her official duties, Gowins-Bellamy Decl. ¶ 3, she attested that OIG did not possess records responsive to Parts II.A (except Part II.A.3), II.B-C, II.D.1, III.B-E, III.F.1-4, III.F.5.b-d, and III.G-H of the request.

Specifically, Part II.A sought "any and all records . . . utilized by VAPD and VHA staff." SUMF ¶ 3. OIG construed this part to seek records possessed by those components, rather than by OIG (except Part II.A.3, which OIG read to seek records related to a 2013 OIG report, as described later in this memorandum). Gowins-Bellamy Decl. ¶¶ 10-11. Part II.B sought "any and all records

---

[4]     One perhaps could say that an agency's determination that any search would be futile itself constitutes an adequate search. *See Reyes*, 991 F. Supp. 2d at 27 ("Where the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all." (cleaned up)). But for the sake of clarity and organizational structure, VA distinguishes here between those parts of the request for which (1) a search for responsive records would have been futile and (2) OIG did in fact conduct an adequate search for responsive records.

concerning disruptive behavior committee/boards (DBC/Bs) policies and procedures." SUMF ¶ 3. Gowins-Bellamy determined, based on her experience and personal knowledge, that VHA would possess those records, as VHA rather than OIG operates and manages such committees/boards (in conjunction with individual healthcare facilities). Gowins-Bellamy Decl. ¶ 10. Part II.C sought "any and all records concerning the placement, use and outcomes of Panic Alarms activation." SUMF ¶ 3. Gowins-Bellamy determined, based on her experience and personal knowledge, that OIG would lack such records because it does not have panic alarms. Gowins-Bellamy Decl. ¶ 10. Part II.D.1 sought records concerning "[i]mplementation of recommended designated manager of the records management systems for the VAPF." SUMF ¶ 3. Gowins-Bellamy "determined that OIG would not have responsive records because [it does] not play a role in how or whether the VA Police implement the recommendations from our reports." Gowins-Bellamy Decl. ¶ 11.

Part III likewise sought various categories of records that Gowins-Bellamy determined OIG did not have. Part III.B sought certain records on District Court Violation Notices issued by or involving VA Police; Part III.C sought certain records on vehicle removals from VA property or involving VA Police; Part III.D sought certain records on traffic enforcement on VA property or involving VA police; Part III.E sought certain records on the use of, testing of, and VA Police involvement with Panic Alarms; Parts III.F.1-4 sought various categories of patient health records concerning Behavioral Red Flags; Part III.F.5.b-d sought certain records relied on by three non-OIG VA offices; Part III.G sought records regarding attendance or issuance of orders of behavioral restriction by disruptive behavior committees; and Part III.H sought records related to crime reports at certain VA facilities. SUMF ¶ 3. Gowins-Bellamy determined, based on her experience and personal knowledge of the agency, that OIG does not maintain these categories of records, and that such records would be found at other VA facilities instead. Gowins-Bellamy Decl. ¶¶ 17-18.

Such attestations by a responsible agency official, based on own her personal knowledge, experience, and review of the matter at hand, suffices to establish that any search for records responsive to these parts of the FOIA request would have been futile, excusing OIG from the need to conduct such a search. *See Stein v. CIA*, 454 F. Supp. 3d 1, 24 (D.D.C. 2020) (Chutkan, J.) (an official's "stated familiarity with [relevant] databases and with the [relevant] official's conclusion provides enough indicia of reliability to provide a sufficient explanation for not searching" a particular database); *Earle v. Dep't of Just.*, 217 F. Supp. 3d 117, 124 (D.D.C. 2016) (Berman Jackson, J.) (declarant's "conclusion is based on his personal knowledge, as well as information provided by other knowledgeable officials. His own knowledge and experience, coupled with what he learned from each of his inquiries, demonstrates a familiarity with whether the information sought could be retrieved through a search of agency records."); *L. Offs. of Snider & Assocs., LLC. v. Gates*, 45 F. Supp. 3d 100, 104 (D.D.C. 2014) (Cooper, J.) ("Presley's declarations that only [a certain system] is likely to contain responsive records and that it requires social security numbers—coupled with his position within [the agency] and his explanation that [that system] is the only record system likely to contain Department of the Navy civilian employee records—are sufficient to establish that [the agency] conducted an adequate search."); *Cunningham v. Dep't of Just.*, 40 F. Supp. 3d 71, 85 (D.D.C. 2014) (Collyer, J.), *aff'd*, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014) ("The declaration DOJ submitted on behalf of OJP is from the FOIA Officer in charge of processing FOIA requests to OJP. She is familiar with the records that OJP maintains, and Mr. Cunningham has provided no reason to doubt her averments. A search would have been futile as OJP does not maintain any records concerning" the topic of the request); *Sack v. Dep't of Def.*, 6 F. Supp. 3d 78, 87 (D.D.C. 2013) (Wilkins, J.), *aff'd in irrelevant part, rev'd in irrelevant part*, 823 F.3d 687 (D.C. Cir. 2016) ("The Court finds that this explanation—derived

from [the agency's] consultation with senior officials familiar with the [relevant office's] records—demonstrates that [the agency] appropriately approached Sack's request and that a more detailed search on the [office's] part would have been futile and unnecessary"' (cleaned up)); *Am.-Arab v. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 88 (D.D.C. 2007) (declaration on matters with which declarant was "personally familiar" and had "conversations" with other responsible agency officials, and on which he was "presumed able to familiarize himself with" based on "his role," was "sufficient . . . to explain why a search would be futile and unnecessary").

For these reasons, this Court this should grant VA summary judgment as to Parts II.A (except Part II.A.3), II.B-C, II.D.1, III.B-E, III.F.1-4, III.F.5.b-d, and III.G-H of the request.

## III.   OIG Conducted an Adequate Search for Records Responsive to Part II.A.3

An agency must conduct an adequate search in response to a proper FOIA request. *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009). This requires it to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. An adequate search is one that covers those locations where responsive records are likely to be located. *Id.* A search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Id.* "A search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *DiBacco v. U.S. Army*, 795 F.3d 178, 194-95 (D.C. Cir. 2015) (cleaned up). In other words, "the adequacy of a search is determined not by the fruits of the search, but by the appropriateness of its methods." *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (cleaned up). A search is not inadequate merely because it fails to "uncove[r] every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

The agency bears the burden to demonstrate the adequacy of its search by providing a declaration setting forth the type of search performed and averring that all files likely to contain responsive materials were searched. *See Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003). Such declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (quotation marks omitted). Once an agency meets its burden to demonstrate the adequacy of its search, its position can be rebutted "only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). Speculative or hypothetical assertions are insufficient to raise a material question of fact as to the search's adequacy. *Oglesby*, 920 F.2d at 67 n.13.

Part II.A.3 of the request sought "definitions recommended by" a certain OIG report, "Management of Disruptive Patient Behavior at VA Medical Facilities (2013)." SUMF ¶ 3. Although Part II.A.3 "did not clearly or specifically request underlying records from that report," OIG construed it to request "documents related to the 2013 OIG report," Gowins-Bellamy Decl. ¶ 11, thus satisfying its "duty to construe [the] request liberally," *Inst. for Just. v. IRS*, 941 F.3d 567, 572 (D.C. Cir. 2019). She also determined that OIG would not have any other records responsive to Part II.A.3. Gowins-Bellamy Decl. ¶ 11. Gowins-Bellamy determined that OIG's Office of Healthcare Inspections would be the component most familiar with the 2013 report and responsible for maintaining any underlying records, as it had authored the report. Gowins-Bellamy Decl. ¶ 21. She reached out to Kathy Gudgell, a Director in that Office, for "assistance identifying and retrieving any responsive records" as to Part II.A.3. *Id.* Gudgell noted Part II.A.3's breadth and sought clarification, and Gowins-Bellamy "advised her to focus on documents related to and relied upon by OIG in performing and writing the 2013 [] report." Gowins-Bellamy Decl. ¶ 22.

21

Based on her experience and personal knowledge, Gowins-Bellamy was aware that the records underlying OIG reports are all kept electronically on separate Share Point sites specific to the report at issue, and that paper versions of these records are not kept. Gowins-Bellamy Decl. ¶ 23. The next day, Gudgell informed Gowins-Bellamy that "the supporting documents and working papers for the 2013 [] report . . . had been destroyed in accordance with record management policies (OIG GM Directive 352) and therefore [the Office] did not have any related records." *Id.*

Altogether, Gowins-Bellamy's efforts to identify records responsive to Part II.A.3 of the request amounted to "a good faith, reasonable search of those systems of records likely to possess [such] records," thus satisfying OIG's obligation to conduct an adequate search. *Louise Trauma Ctr., LLC v. Dep't of Just.*, Civ. A. No. 20-3517 (RC), 2022 WL 278771, at *10 (D.D.C. Jan. 30, 2022) (citing *Pinson*, 177 F. Supp. 3d at 80); *see also Wren v. Dep't of Just.*, 282 F. Supp. 3d 216, 224 (D.D.C. 2017) (Berman Jackson, J.) ("[T]he agency's search—asking a person with personal knowledge and experience with the agency's recordkeeping where records might be found—and concluding that there is no applicable database, satisfies the agency's obligations under FOIA to conduct an adequate search."); *Leopold v. CIA*, 177 F. Supp. 3d 479, 495 (D.D.C. 2016) (Boasberg, J.) (agency "did precisely what a responsible agency should do when faced with this type of FOIA request, which is to first consult with Agency officials knowledgeable about the subject matter to ascertain the universe of responsive records and to identify the specific offices and individuals who would possess those documents." (cleaned up)). The fact that the search did not ultimately turn up any records is immaterial. *See Iturralde*, 315 F.3d at 315 ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."). As such, this Court should grant VA summary judgment as to Part II.A.3 of the request.

IV.   **OIG Had No Duty to Search for Records First Identified in the Administrative Appeal**

In its administrative appeal of OIG's response to its request, the Association identified new records that its original request had not mentioned. Gowins-Bellamy Decl. ¶¶ 25-26. Because the original request itself did not reasonably describe those records, OIG had no duty to search for them. *See Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388-89 (D.C. Cir. 1996) ("A reasonable effort to satisfy that request does not entail an obligation to search anew based upon a subsequent clarification. . . . Requiring an additional search each time the agency receives a letter that clarifies a prior request could extend indefinitely the delay in processing new requests. . . . [agencies are] not obliged to look beyond the four corners of the request for leads to the location of responsive documents"); *Williams v. Ashcroft*, 30 F. App'x 5, 6 (D.C. Cir. 2002) ("BOP was not required to search for or provide tape recordings of appellant's actual telephone conversations because he did not include these materials in his initial FOIA request."); *Ecological Rts. Found. v. EPA*, Civ. A. No. 19-980 (BAH), 2021 WL 535725, at *11 (D.D.C. Feb. 13, 2021), *vacated in irrelevant part on reconsideration*, 541 F. Supp. 3d 34 (D.D.C. 2021) (agency "had no obligation to search for, or to explain its withholding of," records beyond request's scope); *Coss v. Dep't of Just.*, 98 F. Supp. 3d 28, 34 (D.D.C. 2015) (Boasberg, J.) ("a FOIA plaintiff may not expand the scope of his request once his original request is made"). This Court thus should grant VA summary judgment as to any records identified in the administrative appeal.

V.   **The Fact That Responsive Records May Exist Does Not Mean That OIG's Search Was Inadequate**

In its administrative appeal, the Association said that "[w]e believe records should exist concerning notice, discussion of, and compliance with OIG guidelines and recommendations between 2014 and 2020." SUMF ¶ 15. But the question is not whether these records should exist, or even whether they do exist. Rather, the question is whether OIG was obliged to conduct an

23

adequate search for those records, and if so, whether OIG did so. *See In re Clinton*, 970 F.3d 357, 367 (D.C. Cir. 2020) ("[T]he reasonableness of a FOIA search does not turn on whether it actually uncovered every document extant, and that the failure of an agency to turn up a specific document does not alone render a search inadequate" (cleaned up)); *DiBacco*, 795 F.3d at 190 ("[The search] did not produce certain materials she believes exist and had hoped to find. But FOIA is not a wishing well; it only requires a reasonable search for records an agency actually has."). Because Parts II and III.A-G of the request failed to reasonably describe the records sought, OIG was not obliged to conduct a search for responsive records, even if they do exist. Because OIG determined that it did not possess records responsive to certain parts of the request, it had no duty to conduct a futile search for them, even if other VA offices components have them. Because OIG conducted an adequate search for records responsive to the only part of the request reasonably describing records OIG might have, the fact that responsive records had been destroyed is immaterial. And because the Association identified certain records for the first time in its administrative appeal, OIG had no duty to search for them.

## CONCLUSION

This Court should grant VA summary judgment.

Dated: April 11, 2022                                  Respectfully submitted,

MATTHEW M. GRAVES,
United States Attorney
D.C. Bar No. 481052

BRIAN P. HUDAK
Acting Chief, Civil Division

/s/ Bradley G. Silverman
BRADLEY G. SILVERMAN
Assistant United States Attorney
DC Bar #1531664
555 4th St. NW

Washington, DC 20530
(202) 252-2675
bradley.silverman@usdoj.gov

*Attorneys for the United States*

KATE DOYLE FEINGOLD
Attorney Advisor
Department of Veterans Affairs
Office of Inspector General
(202) 739-1565
Kate.Feingold@VA.gov

*Of Counsel*

25

**APPENDIX**

**Parts of FOIA Request and Corresponding Summary Judgment Arguments**

| Part | Failure to reasonably describe records sought | Search would be futile | Search was adequate |
|------|------|------|------|
| I | N/A | N/A | N/A |
| II.A | X | X | |
| II.A.1 | X | X | |
| II.A.2 | X | X | |
| II.A.3 | X | | X |
| II.B | X | X | |
| II.B.1 | X | X | |
| II.B.2 | X | X | |
| II.C | X | X | |
| II.C.1 | X | X | |
| II.C.2 | X | X | |
| II.C.3 | X | X | |
| II.D | X | | |
| II.D.1 | X | X | |
| II.D.2 | X | | |
| II.D.3 | X | | |
| III.A | X | | |
| III.B.1 | X | X | |
| III.B.2 | X | X | |
| III.C.1 | X | X | |
| III.C.2 | X | X | |
| III.D.1 | X | X | |
| III.D.2 | X | X | |
| III.E.1 | X | X | |
| III.E.2 | X | X | |
| III.E.3 | X | X | |
| III.F.1 | X | X | |
| III.F.2 | X | X | |
| III.F.3 | X | X | |
| III.F.4 | X | X | |
| III.F.5.a | X | | |
| III.F.5.b | X | X | |
| III.F.5.c | X | X | |
| III.F.5.d | X | X | |
| III.G.1 | X | X | |
| III.G.2 | X | X | |
| III.H | | X | |