**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 21-1298 (RC) |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | ) ) ) | |
| Defendant, | ) ) ) | |

**DECLARATION OF RUTHLEE GOWINS-BELLAMY**

Under penalty of perjury, I, Ruthlee Gowins-Bellamy, do hereby declare the following:

1.      I am the Supervisory Government Information Specialist for the Department of Veterans Affairs ("VA"), Office of Inspector General ("OIG"), Office of Information Release.

2.      One of my duties as Supervisory Government Information Specialist is to respond to requests for records made pursuant to the Freedom information Act ("FOIA"), 5 U.S.C. § 552, to the OIG Office of Information Release.

3.      I have been employed by the OIG Office of Information Release in this capacity since September 4, 2017. I make the following statements based upon my personal knowledge, which in turn is based on a personal review of the appropriate records in the case file, discussions with relevant FOIA personnel designated for processing the subject request, and information furnished to me in the course of my official duties.

4.      Through the exercise of my official duties, I have become familiar with the background of Plaintiff's FOIA requests and OIG's responses to them. I have also become familiar with the background of this litigation, and have read a copy of the Plaintiff's Complaint.

5.       On November 20, 2020, my office received a FOIA request from Plaintiff dated

November 11, 2020 via email from the FOIA office of VA's Veterans Health Administration

("VHA"). When the Office of Information Release receives a FOIA request, it enters the request

into FOIAXpress, a FOIA request tracking and management program. Each new request receives

an individual tracking number. To preserve OIG independence under the Inspector General Act

of 1978, OIG does not share a tracking system with other VA components. The Office of

Information Release assigned Plaintiff's request a tracking number of 21-00112-FOIA.

6.       Part I of the request provided various definitions, and did not itself request any

records. Parts II and III of the request sought the following documents:

## II.       REQUEST FOR INFORMATION AND RECORDS

A. Any and all Records concerning the behavioral record flag policies and procedures
   utilized by the VAPD and VHA staff including, but not limited to:
   1. Policies and procedures related to "disruptive behavior flags;"
   2. Each Veterans Integrated Service Networks' (VISNs) guidelines and procedures
      outlining the process for authorizing placement of record flags, notifying veterans
      of the flags, and the process for appealing and removing them;
   3. VA and VHA definitions and applications of "disruptive behavior" as applied in
      each VISN and any uniform definitions across the VA, including but not limited to
      definitions recommended by the Office of the Inspector General (OIG)
      Management of Disruptive Patient Behavior at VA Medical Facilities (2013).6

B. Any and all Records concerning Disruptive Behavior Committees/Boards (DBC/Bs)
   policies and procedures including, but not limited to records related to:
   1. issuance of Orders of Behavioral Restriction or placement of Category I or
      Category II record flags; and
   2. reevaluation of previously issued Red Flags by the DBC/B.

C. Any and all records concerning the placement, use, and outcomes of Panic Alarms
   activation by VA staff and VA police, including, but not limited to:
   1. VA Police policies and procedures relating to the activation of Panic Alarms,
      including but not limited to stationary, electronic personal, and computer-based
      Panic Alarms; and
   2. VA guidelines and procedures for Panic alarm testing.
   3. arrests made following the use of a panic alarm or security alarm triggered by a
      staff member.

D. Any and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020 including, but not limited to:

   1. Implementation of recommended designated manager of the records management systems for the VAPF;7 and

   2. Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement;8 and

   3. Development and implementation of a plan for resolving issues with the police records management system.9

## III.   RECORDS RELATED TO DATA AND STATISTICS

A. **National and Regional Data and Statistics:** Requester seeks any and all Records containing data or statistics prepared, compiled, or maintained by the VA or any agency or subdivision thereof, pertaining to the VA Police, beginning in year 2010 to the present. Requesters seek such national, State, or VISN Records. Requesters seek such Records encompassing information on and off VA property. Such Records should include information related to numbers of police officers, citations, arrests (on and off VA property; subject to a judicial warrant and warrantless), searches of persons and property, use of force, weapons use, numbers of complaints against VAPF officers.

B. **District Court Violation Notices:**
   1. Records that contain data or statistical information on the total amount of District Court Violation Notices VA Police issued in each state, VISN, or facility.
   2. Records that contain data or numerical information for District Court Violation Notices involving VA Police officers in connection with local, state, other federal, OIG, or university police.

C. **Vehicle Removal:**
   1. Records that contain data or statistical information on the total vehicles removed from VA Property.
   2. Records that contain data or numerical information for vehicle removal involving VA Police officers in connection with local, state, other federal, OIG, private security, or university police.

D. **Traffic Enforcement:**
   1. Records that contain data or statistical information on citations for traffic or parking violations on or around VA medical facility property in each state, whether issued by VA Police, other authorized law enforcement or private security.
   2. Records that contain data or numerical information for traffic enforcement involving VA Police officers in connection with local, state, other federal, OIG, or university police.

E. **Panic Button Data:**

3

1. Records that contain data or statistical information on the usage of Panic Alarms by VA staff or VA police in VA facilities in each state.
2. Records that contain data or statistical information on the testing of Panic Alarms in each state, VISN, and/or Facility.
3. Records that contain data or numerical information for panic buttons involving VA Police officers in connection with local, state, other federal, OIG, or university police.

F. **Behavioral Record Flag Data**
1. Records that contain data or statistical information on the issuance of Behavioral Red Flags and/or Patient Record Flags to veterans who are members of Vulnerable Population in VA Facilities in each state, VISN, and/or Facility.
2. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that currently have Behavioral Red Flags and/or Patient Record Flags
3. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that have had their Behavioral Red Flags and/or Patient Record Flags removed.
4. Records that contain data or numerical information for Behavioral Record Flags involving VA Police officers in connection with local, state, other federal, OIG, or university police.
5. Previously compiled data, records, or other information relied upon by the
   a. Office of the Inspector General
   b. Government Accountability Office
   c. Office of Security and Law Enforcement
   d. Office of Operations, Security, and Preparedness.

G. **Disruptive Behavior Committee/Board Data**
1. Records that contain data or statistical information on the attendance of DBC/Bs in VA Facilities in each state, VISN, and/or Facility.
2. Records that contain data or statistical information on the issuance of Orders of Behavioral Restriction (OBR).

H. **Uniform Monthly Crime Reports** for VA Facilities in Ohio, New York, Florida, and California from 2010 to present.

7. VHA's FOIA office had labeled parts of the request, designating which offices should respond to each part, but I reviewed the entire request to determine which parts related to OIG records. VHA had not designated any parts of the request for OIG response.

8. The standard process within the Office of Information Release is to receive and review FOIA requests, determine which program office within OIG might have responsive

records, and then reach out to points of contact within those offices to request responsive

records. The various offices we reach out to pertain to healthcare inspections, investigations,

audits, contracts, and special investigations. Each office has a separate record keeping system.

9. Plaintiff's FOIA request sought "any and all records concerning" "behavior

record flag," "disruptive behavior committees," and "placement, use, and outcomes of panic

alarms," "policies and procedures" used by VA facilities, components, or officials, such as

"VHA," "VA staff," and "VA police." In addition, it sought "previously compiled data, records,

or other information relied upon by the Office of the Inspector General." Part I of the request

defined the term "records" as "all documentation or communications preserved in electronic or

written form, including but not limited to correspondence, documents, data, transcripts, video

and audio recordings, emails, faxes, files, guidance, guidelines, directives, evaluations,

instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols,

reports, rules, technical manuals, technical specifications, training manuals, studies, and other

similar information, dating back to the year 2012." Based on how the request was written, it was

difficult to determine what specific records Plaintiff was requesting.

10. Part II.A of the request sought "any and all records . . . utilized by the VAPD and

VHA staff." I interpreted this to be a request for records in the possession of the VA Police

Department ("VAPD") and VHA, not OIG. Part II.B sought "any and all records concerning

disruptive behavior committee/boards (DBC/Bs) policies and procedures." Based on my

experience and personal knowledge, I determined that VHA and individual healthcare facilities

would possess those records, because they, not OIG, operate and manage those committees. Part

II.C sought "any and all records concerning the placement, use and outcomes of Panic Alarms

activation." I determined that VHA and individual healthcare facilities would possess those

records, because OIG does not have panic alarms. Each of these parts of the request used the

phrase "any and all records . . . concerning," which made a search for responsive records

impossible because records may exist that concern these topics without mentioning them.

11.     Part II.A.3 of the request mentions a 2013 OIG report ("Management of

Disruptive Patient Behavior at VA Medical Facilities"). I interpreted Part II.A.3 to request,

among other things, documents related to the 2013 OIG report, even though Plaintiff did not

clearly or specifically request underlying records from that report. Part II.A.3 also sought "VA

and VHA definitions and applications," but I concluded that OIG would not have such records

and that VHA or individual facilities would maintain them and that the only records responsive

to Part II.A.3 that OIG might have would be records concerning the 2013 report. I went to the

OIG publications website (Publications (va.gov)) and read the report.

12.     Part II.D of the request sought "any and all records concerning notice, discussion

of, and compliance with [OIG] guidelines and recommendations issued between 2014 and 2020."

I interpreted Part II.D to possibly pertain to OIG records because it mentions OIG guidelines and

recommendations. However, Plaintiff did not specifically identify any OIG records in Part II.D.

There is no way for my office to conduct a search for records responsive to that request, as many

records may concern OIG recommendations without expressly using that term. Part II.D.1

contained a footnote mentioning a 2020 OIG report on the VA Police management system, and

sought records related to implementation of a "recommended designated manager of the records

management systems" for VA Police. I determined that OIG would not have such records

because we do not play a role in how or whether VA Police implement OIG recommendations.

13.     OIG is an independent component of VA, and does not have access to records

held by other VA components.

14.     OIG could not conduct a search for any and all records "concerning," "pertaining to," or "relating to" a topic because a record might concern, pertain to, or relate to a topic without mentioning it specifically.

15.     OIG does not have programmatic control over VA or other VA components. OIG makes recommendations via publicly available reports, but has no authority to require or dictate how VA implements a recommendation.

16.     Part III.A of the request sought "any and all records containing data or statistics prepared, compiled, or maintained by the VA or any agency or subdivision thereof, pertaining to the VA Police." My office does not have the ability to search for all records that contain data, nor the ability to search for all records that may pertain to VA Police. This part of the request did not identify any particular OIG records, and operation and management of the VA Police falls under the auspices of the Office of Security and Law Enforcement ("OSLE"), not OIG.

17.     Parts III.B-E of the request sought records related to management of VA Police, and do not identify any particular OIG records. Based on my experience and personal knowledge, I determined that OIG does not maintain records on District Court Violation Notices issued by VA Police (Part III.B), on vehicle removals and traffic violations (Parts III.C-D), from VA facilities regarding the use of, testing of, or VA Police involvement with panic alarms (Part III.E), or related to crime reports at VA facilities and the attendance or issuance of orders from disruptive behavior committees (Parts III.G-H), and that any such records would instead be located at individual VA facilities.

18.     Part III.F.5 of the request sought "previously compiled data, records, or other information relied upon by the Office of the Inspector General." I interpreted Part III.F.5 to encompass virtually all documents maintained by OIG due to the phrase "other information

relied upon by the Office of the Inspector General." Parts III.F.5.b-d sought data "or other

information relied upon" by the Government Accountability Office, OSLE and the Office of

Operations, Security and Preparedness ("OSP"). OIG does not maintain or have knowledge of

records relied upon by other federal agencies or other components of VA, so I concluded that

OIG would not have any records responsive to these parts. Parts III.F.1-4 sought veteran patient

health records that I knew based on my experience and personal knowledge OIG does not

possess or maintain, as Behavioral Red Flags are placed in veteran patient healthcare records.

Part III.F.1 of the request sought "records that contain data or statistical information on the

issuance of Behavioral Red Flags and/or Patient Record Flags . . . in VA Facilities in each state,

VISN, and/or Facility." Based on my experience and personal knowledge, I knew that records on

the issuance of red flags to patients would be maintained by local VA health facilities where

those are issued, not by OIG. Part III.F.2 of the request sought "records that contain data or

statistical information on the number of veterans . . . that currently have Behavioral Red Flags."

Based on my experience and personal knowledge, I knew that these records would be maintained

by VA health facilities. Part III.F.3 of the request sought "records that contain data or statistical

information on the number of veterans . . . that have had their Behavioral Red Flags . . .

removed." Based on my experience and personal knowledge, I knew that those records would be

maintained by local VA health facilities. Part III.F.4 of the request sought "records that contain

data . . . for Behavioral Red Flags involving VA Police officers." Based on my experience and

personal knowledge, I knew that these records would be maintained by local VA health facilities

or local VA Police offices, not by OIG.

19.     In reviewing this request, I struggled to discern which records Plaintiff was

seeking since the request did not specifically identify any OIG records beyond two publicly

available reports. Additionally, the request sought "any and all records concerning" or "pertaining to" multiple policies and topics, which means responsive documents may exist that concern or pertain to those policies but do not mention them by name. These would be impossible to search for within the various OIG records systems. Potentially responsive records could number in the thousands of documents, with each page needing individual review to tell whether it is responsive. Furthermore, Plaintiff's definition of the term "records" includes emails but does not specify certain custodians, so the request on its face sought all emails concerning these topics from all OIG employees.

20.     On December 21, 2020, via email, the OIG Office of Information Release sent Plaintiff an acknowledgement letter, notifying Plaintiff of the need to extend the time limit to respond to the request by an additional 10 days.

21.     Because OIG's Office of Healthcare Inspections ("OHI") had authored the 2013 report that Part II.A.3 of the request mentioned, I determined that OHI would be most familiar with the report and responsible for maintaining any underlying records. On December 21, 2020, I emailed Kathy Gudgell, an OIG Director in OHI, asking for her assistance identifying and retrieving any responsive records.

22.     On December 22, 2020, Gudgell emailed noting the request's breadth, and asking to have a conversation to clarify its scope. On December 23, 2020, I spoke with Gudgell to attempt to clarify the request, and advised her to focus on documents related to and relied upon by OIG in writing the 2013 report.

23.     Based on my experience and personal knowledge, I am aware that the records underlying OIG reports are all kept electronically on separate Share Point sites specific to the report at issue, and that paper versions of these records are not kept. On December 23, 2020,

Gudgell informed me that the underlying documents for the 2013 OHI report had been destroyed

on January 18, 2019, in accordance with records management policies (OIG GM Directive 352,

"Records Management"), and thus, OHI did not have any related records.

24.     On December 23, 2020, via email, the Office of Information Release sent Plaintiff

a response letter, notifying Plaintiff that responsive records had been destroyed and providing a

"no records found" response.

25.     On January 25, 2021, the OIG Office of Information Release received an appeal

letter from Plaintiff. In the letter, Plaintiff requested additional records that the original FOIA

request did not describe. The letter stated the following:

1.     "we request a list of the thirty facilities examined in the 2013 report,"

2.     "we would like to see any data that examines behavioral record flag policies from
relevant OIG reports including [a report published January 2018], [report
published December 2018] and [a report published June 2020],

3.     "this includes but is not limited to, any data collected or used for Issue 2: Patient
Record Flag Placement, Follow-up, and Notification in the January 30, 2018 OIG
report"

4.     "we are interested in any related data collected or complied for the January 30,
2018, December 13, 2018, and June 17, 2020 OIG reports including the aggregate
data by facility compiled for Table 1…and Table 2,"

5.     "We believe records should exist concerning notice, discussion of, and
compliance with OIG guidelines and recommendations between 2014 and 2020," 
and

6.     "lastly, we request any data collected from the above cited reports concerning
vulnerable populations."

26.     On January 28, 2021, the Office of Information Release denied the appeal,

concluding that the search had been adequate; noted that Plaintiff had added new descriptions of

records sought in its appeal; and explained how to submit a new FOIA request directly to OIG

for those newly described records.

27.     Plaintiff did not file a new FOIA request. Instead, Plaintiff filed the underlying complaint in this case on May 11, 2021.

28.     On August 10, 2021, an attorney from my office spoke with Plaintiff's attorney and explained that OIG is independent and does not have access to records of other VA components. The attorney explained that the OIG reports mentioned in the footnotes of Plaintiff's original request are publicly available, and that Plaintiff might be able to create a reasonably specific list of OIG records after reading those reports. The OIG attorney explained that OIG's public reports contain detailed footnotes describing the records that OIG relied upon in writing the report, and that information pertaining to whether given recommendations are opened or closed is publicly available on OIG's website.

29.     On August 23, 2021, Plaintiff submitted a new FOIA request to my office. The Office of Information Release entered this request into its records system, assigned it a tracking number of 21-00363-FOIA, and sent Plaintiff an acknowledgement of the request's receipt.

30.     The new request contained the following descriptions of records sought:

**January 30, 2018** - Management of Disruptive Patients Behavior in VA Medical Facilities:

- List of facilities included in OIG review

- Documents related to noncompliance with VHA policy to inform patients about patient record flags and their right to request amendment or appeal of the designation (page ii of executive summary; and Issue 2 on pp. 12-13) This portion of the report discusses a draft policy that OIG approved and we would like a copy of the draft or final policy. It also discusses an exchange between OIG and VHA to change the notification policy from all patients with record flags to only patients with orders of behavioral restriction.

- Documents related to Issue 4, management of non-patient assaults (p. 15)

- The underlying records for Table 2 (p. 20). I think this would involve records for 1,025 patients involved in disruptive behavior incidents from July 1, 2015 to June 30, 2016. Any summary analysis, spreadsheets, data records compiled that include the justifications or narrative reasoning for flags or orders of behavioral restriction.

- Specific Documents:
  - Acting Deputy Under Secretary for Health for Operations and Management. "Meeting New Mandatory Safety Training Requirements using Veterans Health Administration's Prevention and Management of Disruptive Behavior (PMDB) Curriculum." Memorandum. November 7, 2013.
  - VHA Center for Engineering and Occupational Safety and Health, Employee Threat Assessment Team: A Guidebook for Managing Risks Posed by the Disruptive and Threatening Employee, April 2016. • Records related to Employee Threat Assessment Teams

**December 13, 2018** - Inadequate Governance of the VA Police Program at Medical Facilities:

- The OS&LE reports used by OIG that assess the effectiveness of the inspection program for every VA medical facility w/police unit (referenced on page 27)

- The documentation from the interviews with OSP and VHA employees about roles and responsibilities

- Underlying data from Table 1: Overview of Police Program Requirements Inspected by OS&LE

- The underlying data from discussion and cited examples regarding the 119 police chief and 88 medical facility director survey responses

**June 17, 2020** - VA Police Management System Needs Improvement:

- List of five facilities included in OIG review

- Documentation from the referenced testimonial and documentary information from the 90 VHA, OSP, OIT, and Office of Acquisition and Logistics, and Construction employees (discussed in Appendix B)

- Data from the responses of the online survey given to 139 VA facility police chiefs on March 5, 2019 and any data from the clarification follow ups (discussed in Appendix B)

- Documentation related to the referenced responses from DUSHOM

31.    The description of records that this new FOIA request provided was not present in the original FOIA request. Neither of the 2018 reports described or specific descriptions of records provided in the new FOIA request were mentioned in the original FOIA request. For example, the original FOIA request sought "any and all records concerning the behavioral record flag policies." Many of the records described in the new FOIA request concern behavioral record

flag policies, without using the phrase "behavioral record flag policies." It would have been impossible to locate these records based on the descriptions in the original FOIA request.

32.     On August 23, 2021, my office sent a list of records that the new FOIA request sought to OHI and the OIG's Office of Audit and Evaluations ("OAE"), requesting their assistance in locating responsive records. We sent the request to OHI and OAE because they had written the three reports mentioned in the new FOIA request, and so would be most familiar with those reports and maintain any underlying records. OHI and OAE identified various records as potentially responsive, and my office reviewed them to determine whether they were responsive.

33.     On October 6, 2021, my office sent Plaintiff a final response to the new FOIA request. Altogether, my office identified 1,869 pages of responsive records and two responsive Excel spreadsheets. My office withheld the spreadsheets in full, released 95 pages of records with redactions, referred 129 pages to VHA, and referred 1,645 pages to OSP, as those records originated with those offices. My office also responded to three questions posed in the new FOIA request, explaining where in publicly available reports Plaintiff could find certain information, and that OIG had not approved a certain VHA draft policy.

34.     OSP and VHA informed my office that they have responded to the referrals and released responsive records to Plaintiff. OSP withheld all records in full. VHA released 108 pages in full, released 4 pages with redactions, and withheld 17 pages in full.

35.     On December 10, 2021, an attorney from my office spoke with Plaintiff's attorney and explained that OIG had processed and released all records responsive to Plaintiff's new FOIA request. During that call, Plaintiff's attorney asserted that the new FOIA request is not actually a separate request from the original request, but rather, that "there is only one FOIA."

36.     OIG has not received an appeal of its response to the new FOIA request.

I declare under penalty of perjury that the foregoing is true and correct.


Executed this 11th day of April, 2022.


_____
Ruthlee Gowins-Bellamy

Supervisory Government Information Specialist
Department of Veterans Affairs
Office of Inspector General
Office of Information Release