UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>Defendant. | Civ. No. 21-1298 |

**PLAINTIFF NATIONAL ASSOCIATION OF MINORITY VETERANS' MEMORANDUM IN OPPOSITION TO DEFENDANT UNITED STATE DEPARTMENT OF VETERANS AFFAIRS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

**Introduction** .................................................................................................................................. 1

**Facts and Procedural History** ..................................................................................................... 2

    I.    The National Association of Minority Veterans ................................................................. 2

    II.   NAMVETS Requests Records for the Department of Veterans Affairs ........................... 2

    III.  The VA Refers a Portion of NAMVETS' Request to the OIG and OIG Claims it Has No Responsive Records ............................................................................................... 3

    IV.  After the OIG Claims it Has No Responsive Records, NAMVETS Administratively Appeals ...................................................................................................... 4

    V.   OIG Ignores the Substance of NAMVET's Administrative Appeal and Denies the Appeal ............................................................................................................................ 4

    VI.  After NAMVETS Files Suit, Counsel Negotiate Over the Request and Production .......... 5

    VII. The Parties Apprise the Court of the Progress of the Negotiations .................................... 6

    VIII. OIG Produces a Nearly Entirely Redacted Document After Negotiations and Withholds the Remaining Responsive Records ................................................................ 7

    IX.  OIG Seeks Summary Judgment Claiming the Negotiations Involved a "Second" FOIA Request ...................................................................................................................... 7

**Legal Standards** ........................................................................................................................... 7

**Argument** ...................................................................................................................................... 9

    I.    There Was No "Second FOIA Request" .............................................................................. 9

    II.   Without the "Second FOIA" Defense, the Agency's Other Defenses Fall Apart ............ 13

    III.  The Agency Located and Identified Responsive Records ............................................... 14

    IV.  The Agency Fails to Carry Its Burden on the Redacted and Withheld Records ............. 14

**Conclusion** .................................................................................................................................. 15

## Table of Authorities

**Cases**

*Am. Ctr. for Law & Justice v. DOJ*,
  325 F. Supp. 3d 162 (D.D.C. 2018) ...................................................................................... 10

*Birch v. USPS*,
  803 F.2d 1206 (D.C. Cir. 1986) ................................................................................. 8, 13, 15

*DeFraia v. CIA*,
  311 F. Supp. 3d 42 (D.D.C. 2018) ........................................................................................ 11

*Dep't of Air Force v. Rose*,
  425 U.S. 352 (1976) ................................................................................................................ 7

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) ...................................................................................................... 7, 8, 14

*Dep't of Justice v. Tax Analysts*,
  492 U.S. 136 (1989) ................................................................................................................ 8

*Goldberg v. Dep't of State*,
  818 F.2d 71 (D.C. Cir. 1987) .................................................................................................. 9

*Gov't Accountability Project v. Dep't of Health & Hum. Servs.*,
  691 F. Supp. 2d 170 (D.D.C. 2010) ........................................................................................ 9

*Leopold v. United States Immigr. & Customs Enf't*, Civil Action No. 18-2415 (RDM),
  2021 U.S. Dist. LEXIS 176978 (D.D.C. Sep. 17, 2021) ................................................ 11, 13

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ................................................................................................ 8

*NLRB v. Robbins Tire*,
  437 U.S. 214 (1978) ................................................................................................................ 8

*People for Am. Way Found. v. United States DOJ*,
  451 F. Supp. 2d 6 (D.D.C. 2006) .................................................................................... 10, 12

**Statutes**

5 U.S.C. § 552 ............................................................................................................... 11, 17

**Introduction**

This dispute boils down to whether parties negotiating about the scope of a Freedom of Information Act (FOIA) request after a plaintiff files suit counts as subsequent FOIA request or a limit on (or clarification about) the scope of the original FOIA request. Because this Court's unanimous precedent holds that such negotiations do not qualify as a subsequent FOIA request, the agency's legal position should be rejected.

Plaintiff National Association of Minority Veterans (NAMVETS) submitted a FOIA request to the Department of Veterans Affairs back in November 2020. Because the request sought certain information related to the Department's Office of Inspector General (OIG), the agency referred part of the request to the OIG. After the OIG issued a "no records found" response, NAMVETS filed an administrative appeal. And after the OIG denied the administrative appeal, NAMVETS sued.

Counsel for the parties then met and conferred about the request. The agency asked for clarification as to what records NAMVETS sought. NAMVETS provided that clarification. The parties reported on the scope of the negotiations in joint status reports. All of which is typical of FOIA litigation.

Now with new counsel representing the agency, the agency moves for summary judgment claiming that those negotiations between counsel in the lawsuit were no such thing. Instead, the agency now claims those negotiations created a new FOIA request, transporting NAMVETS back to the starting line where it must begin the process of administratively appealing and filing suit all over again. Because that is not how FOIA litigation works, this Court should deny the agency's motion for summary judgment. And because the agency has identified records responsive to NAMVETS request that it is withholding, and because the agency fails its

burden of proving that the records are properly withheld, this Court should grant summary judgment for NAMVETS and order the agency to produce unredacted versions of the 95 pages of responsive records previously produced in redacted format and the two responsive Excel spreadsheet that the agency withheld in full.

## Facts and Procedural History

### I.     The National Association of Minority Veterans

NAMVETS is an advocacy organization for minority veterans. It works to ensure that all veterans of color have the information, resources, and support to improve the quality of their lives and the condition of their communities. NAMVETS had a longstanding concern for potential mistreatment of their members by VA Police.

### II.    NAMVETS Requests Records for the Department of Veterans Affairs

NAMVETS requested public records under the Freedom of Information Act related to its concerns about the VA Police. Plaintiff's Counter-Statement of Undisputed Material Facts (CSUMF) at ¶ 21. NAMVETS sent the request to the U.S. Department of Veterans Affairs and directed it to all appropriate VA offices, including OIG. *Id*.

The request sought records to increase public awareness around the operations of the Veterans Affairs Police Department (VAPD), a uniformed independent law enforcement agency operating within over 1,200 veterans' healthcare facilities around the country, serving millions of veterans. CSUMF at ¶ 22. Because of the statuses of former service members who use VA healthcare, VAPD presence may impose unique burdens on patients and create a barrier in accessing care.

Concern over use of force, racial profiling, behavioral record flags, and inadequate oversight of the VA police force prompted Congressional inquiries. In response, OIG, among others, investigated and reported on policies related to "disruptive" behavior by patients on

multiple occasions. These reports and Congressional hearings focused on staffing, lack of oversight, and a lack of centralized management within the VAPD across the country. NAMVETS sought records related those OIG reports.

Subsection II.A.3 of NAMVETS' request sought records reflecting definitions of "disruptive behavior" "including . . . definitions recommended by the OIG" in a 2013 report the agency published. CSUMF at ¶ 24.  And subsections II.D.1-3 sought records:

> concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020 including, but not limited to:
> 1. Implementation of recommended designated manager of the records management systems for the VAPF;[7] and
> 2. Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement;[8] and
> 3. Development and implementation of a plan for resolving issues with the police records management system.[9]
>
> [7] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *VA Police Management System Needs Improvement* (2020).
> [8] *Id.*
> [9] *Id.*

CSUMF at ¶ 25.

### III. The VA Refers a Portion of NAMVETS' Request to the OIG and OIG Claims it Has No Responsive Records

The agency referred components of NAMVETS requests that were related to the OIG to the OIG. CSUMF at ¶ 26. OIG responded to the referred components by informing NAMVETS the 2013 OIG report cited in II.A.3 and all information gathered were legally destroyed on 1/18/2019. CSUMF at ¶ 27. And seemingly based on that alone, OIG provided a "no records" response to the entirety of NAMVETS' request. *Id.*

### IV. After the OIG Claims it Has No Responsive Records, NAMVETS Administratively Appeals

NAMVETS filed an administrative appeal of the OIG response. CSUMF at ¶ 28. It explained that "[NAMVETS] made two requests related to OIG in [its] November 11 request" and that "our request in Part II D was not limited to the 2013 report mentioned in Part II, A.3." CSUMF at ¶ 29. NAMVETS noted that it did not contest that records related to the 2013 report were likely properly destroyed, but records should still exist from the OIG reports issued in 2018 and 2020 were responsive to NAMVETS' FOIA request as records "pertaining to OIG guidelines and recommendations between 2014 and 2020." CSUMF at ¶ 30, 32. NAMVETS identified three specific reports of interest that OIG should still have records of:

- Office of the Inspector General, Dep't of Veterans Aff., *Healthcare Inspection: Management of Disruptive Patient Behavior In VA Medical Facilities* (Jan. 30, 2018);

- Office of the Inspector General, Dep't of Veterans Aff., *Inadequate Governance of The VA Police Program At Medical Facilities* (Dec. 13, 2018), and;

- Office of the Inspector General, Dep't of Veterans Aff., *VA Police Management System Needs Improvement* (Jun. 17, 2020).

CSUMF at ¶ 31.

### V. OIG Ignores the Substance of NAMVET's Administrative Appeal and Denies the Appeal

The OIG denied NAMVETS' administrative appeal in just three days. CSUMF at ¶ 23. It simply reiterated that the 2013 records were destroyed and that NAMVETS arguing that "only part of [its] request can be denied under this explanation" was a challenge of the adequacy and reasonableness of the search. CSUMF at ¶¶ 34–35. It made no mention of and failed to explain the December 2018 or June 2020 reports. CSUMF at ¶ 34.

**VI.     After NAMVETS Files Suit, Counsel Negotiate Over the Request and Production**

Because the OIG failed to respond to NAMVETS request related to the OIG reports from 2018 to 2020, NAMVETS filed this suit on May 11, 2021. CSUMF at ¶ 37.

The agency's original litigation counsel, Stephen DeGenaro, appeared for the agency in June. CSUMF at ¶ 38. After requesting a 44-day extension to file a response pleading, Mr. DeGenaro wrote NAMVETS' counsel and stated:

> Thanks for checking in. The agency will file an answer. Additionally, I would like to know if you have some time next week to discuss the FOIA request at issue. OIG had some concerns about the scope of the FOIA request, and wanted to ask some questions and provide you and your client with some information about what records it does and does not have to hopefully focus an agreed-upon search. Do you have any particular dates that work for you?

CSUMF at ¶ 39.

The parties agreed to and did discuss the request and the litigation on August 10, 2021. CSUMF at ¶ 40. Mr. DeGenaro requested that NAMVETS (1) specify which three reports it is inquiring about, (2) confirm whether it wanted the underlying records OIG used to prepare said reports, and (3) identify types of documents and specific facilities or subagencies named in the reports that NAMVETS is interested in. *Id*.

NAMVETS' counsel provided agency counsel this information by an email on August 23, 2021. CSUMF at ¶ 41. The subject line of the email was "NAMVETS v. VA," referencing this litigation. *Id.* The email (1) identified the three OIG reports from 2018 and 2020, previously identified in the January 25 administrative appeal, (2) confirmed that NAMVETS requested the underlying data used to compile the reports, and (3) provided additional narrowing parameters based on the text of the OIG reports, as requested by counsel. CSUMF at ¶ 42.

The email served as way to continue to narrow the original language in the November 2020 FOIA request and January 25 Administrative appeal, as illustrated in Table 1.

| November 2020 FOIA Request | January 25 Administrative Appeal | August 23 Clarifying Email |
|---|---|---|
| "II. Request for Information and Records D. Records concerning notice, discussion of, and compliance with Department of Veterans Affairs OIG guidelines and recommendations issued *between 2014 and 2020*" (emphasis added)<br><br>"6 *See e.g* Department of Veterans Affairs, Office of the Inspector General, *VA Police Management System Needs Improvement* (2020)" | "Our request in Part II D was not limited to the 2013 report. We believe records should exist concerning ... OIG guidelines and recommendations *between 2014 and 2020*... Particularly, we are interested in any related data collected or compiled for the *Janaury 20, 2018, December 13, 2018, and June 17, 2020 OIG reports*" (emphasis added)<br><br>"Consistent with our November 11 FOIA request, we would like to see any data that examines behavioral red flag policies from relevant OIG reports including: [the three reports cited]" | "the reports themselves are *three reports indentified in the our administrative appeal*:<br>• January 30, 2018 - Management of Disruptive Patients Behavior in VA Medical Facilities;<br>• December 13, 2018 - Inadequate Governance of the VA Police Program at Medical Facilities; and<br>• June 17, 2020, VA Police Management System Needs Improvement" (emphasis added)<br><br>"as far as data relied on in each report, I think it can be broken down like this:<br>[SEE LIST IN ABOVE SECTION OF SPECIFIC ITEMS FROM EACH REPORT]" |

**VII.    The Parties Apprise the Court of the Progress of the Negotiations**

In a Joint Status Report of October 5, 2021, the parties detailed these negotiations. CSUMF at ¶ 43; ECF No. 12.  In a section with the heading "STATUS OF PLAINTIFF'S FOIA REQUEST[1]," the parties informed this Court that they "have continued the process of negotiating over the scope of Plaintiff's FOIA Request." *Id.* It detailed the "lengthy meet and confer to discuss the breadth of Plaintiff's FOIA request[2]" that counsel sought "to identify which OIG reports and underlying data Plaintiff was interested in as a way of reaching an

---

[1] Singular.
[2] Singular.

agreement regarding the scope of Plaintiff's FOIA request.[3]" *Id.* And it noted that "Plaintiff provided Defendant, through counsel, with guidance regarding three specific reports and the data from those three reports on August 23, 2021." *Id.*

### VIII. OIG Produces a Nearly Entirely Redacted Document After Negotiations and Withholds the Remaining Responsive Records

The OIG then produced some documents and withheld others in response to the parties' ongoing negotiation over the scope of the request. CSUMF at ¶¶ 44–45. It released 95 pages of almost entirely redacted records and withheld two spreadsheets in full. CSUMF at ¶ 45.

### IX. OIG Seeks Summary Judgment Claiming the Negotiations Involved a "Second" FOIA Request

Now represented by new litigation counsel, *see* ECF No. 14; CSUMF at ¶ 46, the OIG moves for summary judgment claiming that the parties' negotiations over the scope of NAMVETS' original FOIA request was no such thing, but that the negotiations resulted in a "second FOIA request" that is not as issue in this lawsuit. Agency's Br., ECF No. 18-1, at 7 n. 1; *see also id.* at 6. According to the agency, NAMVETS is precluded from challenging anything related to the parties' negotiated search because that would require another administrative appeal and another lawsuit. CSUMF at ¶ 47.

NAMVETS now cross-moves for summary judgment.

### Legal Standards

FOIA safeguards the American public's right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). "[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

---

[3] Singular.

FOIA requires disclosure of agency records when requested unless the records fall within one of the Act's nine narrow exemptions. *See* 5 U.S.C. § 552(b)(1)–(9). If requested information does not fit squarely into one of these enumerated categories, the law requires federal agencies to release the information. *See NLRB v. Robbins Tire*, 437 U.S. 214, 221 (1978). The exemptions "have been consistently given a narrow compass," and information that "do[es] not fall within one of the exemptions [is] improperly withheld[.]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

Courts review an agency's decision to withhold information de novo, and the government bears the burden of proving that a particular exemption applies. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755.

To satisfy its burden to withhold information, the agency "must provide a relatively detailed justification [for its withholding decisions], specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) (internal citations omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action.'" *Reporters Comm.*, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). Thus, when claiming one of FOIA's exemptions, the agency bears the burden of proving to a reviewing court that withheld information is "*clearly* exempt." *Birch v. USPS*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (emphasis added).

"Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency seeking summary judgment proves that it

has fully discharged its FOIA obligations is summary judgment appropriate." *Gov't Accountability Project v. Dep't of Health & Hum. Servs.*, 691 F. Supp. 2d 170, 173 (D.D.C. 2010). If the agency cannot "carry its burden of convincing the court that one of the statutory exemptions appl[ies]," the law requires the requested records be released. *Goldberg v. Dep't of State*, 818 F.2d 71, 76 (D.C. Cir. 1987).

## Argument

The parties' litigation negotiation did not create a new FOIA request or set NAMVETS back at the starting line to begin administrative appeals and litigation anew. If it did, FOIA plaintiffs would have no incentive to negotiate over the scope of FOIA requests once they initiated litigation, causing enormous burdens on agencies and the courts.

Once the parties' negotiations are viewed as such, and not as a "second" FOIA request, the agency's bases for seeking summary judgment fall apart. NAMVETS identified the records it sought in the negotiation process. And the agency was not just *able* to locate responsive records, it in fact did.

And because it fails to even attempt to meet its burden of showing the redactions to the documents to did produce, and the withholding of the records it withheld, are proper, the agency fails its burden. Summary judgment should be denied to the agency and granted to NAMVETS.

### I.     There Was No "Second FOIA Request"

The agency's primary defense is that the clarifying and narrowing email sent between counsel during this litigation was a "second FOIA" request not at issue here. Agency's Br. at 7 n. 1; *see also id.* at 6. The facts and the agency's own filings show that is wrong. And a judicial finding that negotiations about the scope of a FOIA request during litigation constitutes a new request would be disastrous policy.

Negotiating, clarifying, and narrowing requests is standard in FOIA litigation. FOIA litigation typically proceeds more or less like this: a plaintiff files suit after an agency fails to meet its statutory deadline, litigation counsel is assigned to the agency, and counsel for the parties discuss ways to get the plaintiff what it is looking for with the most minimal burden on the agency possible. Sometimes the agency files an answer, sometimes it doesn't, but the parties typically submit joint status reports to the Court to inform it of where the negotiations stand. Usually the parties are able to resolve FOIA cases without cross-motions for summary judgment. For times when cross-motions are necessary, the parties' negotiations have usually narrowed the issues considerably from the issues presented in the plaintiff's complaint. This is the de facto civil procedure of FOIA—familiar to litigants, agencies, and the courts. *See, e.g.*, *People for Am. Way Found. v. United States DOJ*, 451 F. Supp. 2d 6, 12 (D.D.C. 2006) ("In this Court's experience, FOIA requests are frequently clarified or modified even after a lawsuit is filed. To deny that possibility might be to deny any prospect of compromise or settlement in FOIA cases.").

The courts of this circuit recognize this procedure and hold parties to it. When agencies (as they often do) try to litigate a requester's original request instead of the request as narrowed through negotiation during litigation, the courts of this circuit find the request *as negotiated* controls. "It would be senseless and inefficient for [courts] to ignore the advances made during [lengthy and] tedious negotiations between the parties, only to have [a] plaintiff file another FOIA request for the narrowed number of files and return to precisely the same position in which the parties now stand." *Id.* at 11–12 ; *Am. Ctr. for Law & Justice v. DOJ*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) ("when a plaintiff narrows his FOIA request in a joint status report, it supersedes any broader request set forth in the plaintiff's complaint"); *DeFraia v. CIA*, 311 F.

Supp. 3d 42, 47 (D.D.C. 2018) ("[I]t is the Joint Status Report, not Mr. DeFraia's original request, that controls."); *Gilman v. DHS*, 32 F. Supp. 3d 1, 22 (D.D.C. 2014) ("The plain meaning of the joint status report makes clear that plaintiff narrowed her FOIA request."); *Leopold v. United States Immigr. & Customs Enf't*, Civil Action No. 18-2415 (RDM), 2021 U.S. Dist. LEXIS 176978, at *16 (D.D.C. Sep. 17, 2021) ("It is this more limited search, and not the scope of Plaintiffs' original request, that controls for purposes of summary judgment.").

The parties here negotiated in just this way. In the earliest discussions, the agency's then-litigation counsel wrote to plaintiff's counsel, "I would like to know if you have some time next week to discuss the FOIA request at issue. OIG had some concerns about the scope of the FOIA request, and wanted to ask some questions and provide you and your client with some information about what records it does and does not have to hopefully focus an agreed-upon search." Counsel for both sides had that discussion. Then-litigation counsel for the agency asked for certain clarifications and narrowing from Plaintiff's counsel. Plaintiff's counsel provided it on in an email titled "NAMVETS v. VA," an unambiguous reference to this litigation. The email was not from the NAMVETS itself and it was not sent to the agency's FOIA officer or even to the agency itself.[4] Everything about the email suggests that everyone involved understood it to be negotiations in the litigation and not a "second" FOIA request.

---

[4] The agency's declarant claims, "On August 23, 2021, Plaintiff submitted a new FOIA request to my office." Declaration of Ruthlee Gowins-Bellamy, ECF No. 18-3, ¶ 29. But she has no personal knowledge of that. Plaintiffs' Evidentiary Objections No. 3. And she's wrong. Counsel for Plaintiff sent an email to litigation counsel for the agency, at litigation counsel's request, clarifying and narrowing what Plaintiff was looking for from the VA OIG in its original FOIA request. CSUMF ¶¶ 40–43. Plaintiff didn't submit it; counsel did. CSUMF ¶ 41. And it wasn't sent to Ms. Gowins-Bellamy's office; it was sent to the agency's then-litigation counsel, Mr. DeGenaro. *Id*.

11

The parties' filings reflect this understanding. In their first joint status report, the parties represented that "Since the filing of the lawsuit, the parties have begun the process of negotiating over the scope of Plaintiff's FOIA Request." Joint Status Report, ECF No. 8, at 2.  In the second: "the parties have continued the process of negotiating over the scope of Plaintiff's FOIA Request. On August 10, 2021, counsel for the parties had a lengthy meet and confer to discuss the breadth of Plaintiff's FOIA request and to ask Plaintiff to identify which OIG reports and underlying data Plaintiff was interested in as a *way of reaching an agreement regarding the scope of Plaintiff's FOIA request*. Plaintiff provided Defendant, through counsel, with guidance regarding three specific reports and the data from those three reports on August 23, 2021." Joint Status Report, ECF No. 12, at 1–2 (emphasis added). Again in the third: "As previously reported in the previous Joint Status Report, in light of the parties' continued efforts to *negotiate over the scope* of Plaintiff's FOIA request and *based on guidance provided by Plaintiff's counsel on August 23, 2021*, OIG has identified responsive records within OIG." Joint Status Report, ECF No. 13, at 1 (emphasis added).

Never in any of these status reports did the agency assert that the August 23, 2021 email was anything but negotiations between the parties on the scope of the request at issue in the litigation. And the agency never claimed it was a "second FOIA request" that reset the process anew. The agency's own treatment of the August 23, 2021 email in the joint status reports is dispositive. *People for Am. Way Found.*, 451 F. Supp. 2d at 12 ("[T]he government was a signatory to several Joint Status Reports during the course of this litigation, in which the parties represented—unequivocally—that the FOIA request had been narrowed.").

Treating negotiations between parties in FOIA litigation as new FOIA requests would be bad policy and create bad incentives, too. FOIA plaintiffs would have little interest in negotiating

or narrowing FOIA requests if it would set them back to the starting line, requiring a new denial, a new administrative appeal, and a new lawsuit—all adding to the already glacial timeline for requesters to receive public records. Agencies would then be stuck with the work of processing broader and more burdensome requests because plaintiffs would have no incentive to narrow or clarify. And courts would be burdened with more summary judgment motions, which would explode if parties were discouraged from resolving disputes between themselves. Everyone would lose.

## II.   Without the "Second FOIA" Defense, the Agency's Other Defenses Fall Apart

Because it is the "more limited search, and not the scope of Plaintiffs' original request, that controls for purposes of summary judgment," the agency's other defenses related to the original request crumble. *Leopold*, 2021 U.S. Dist. LEXIS 176978, at *16. The agency's claim that NAMVETS' request fails to describe the records it sought, that the request did not readily identify the records sought, and that the request did not allow the agency to readily ascertain where responsive records would be found, that the request was not limited to particular types of records, and that the request was temporally too broad, *all* relate to the original request and not the narrowed and clarified request. *See* Agency's Br. at 8–16. By focusing on the wrong thing, the agency fails its burden of showing that withheld information is "clearly exempt." *Birch*, 803 F.2d at 1209.

The records described in the clarified and narrowed August 23, 2021 email properly described the records NAMVETS sought, as shown not least of all from the fact that the agency identified responsive records. CSUMF ¶¶ 41–12. It identified the OIG reports NAMVETS sought information about by title and date. CSUMF ¶¶ 41–42. And it provided detailed

description of the date related to each report that NAMVETS sought. The August 23, 2021 email clarified any arguably unclear description and narrowed any arguably broad language.[5]

### III. The Agency Located and Identified Responsive Records

The agency's claim that it did not search for records it knew it lacked, Agency's Br. at 16–20, is another outgrowth of its mistaken view that there were never any negotiations or clarifications among the parties. The agency could and did both search for and locate responsive records, as identified in its October 6, 2021 letter and production.

The agency produced 95 pages of almost entirely redacted responsive records. CSUMF ¶ 45. And it withheld two Excel spreadsheets. *Id*. That the agency both located and produced responsive records shows it could search for responsive record and in fact did search for and locate responsive records.

### IV. The Agency Fails to Carry Its Burden on the Redacted and Withheld Records

Because the agency makes no attempt to justify the near-complete redactions of the 95 pages of records it produced, or its withholding of the two Excel spreadsheets, it fails its burden of showing these withholdings are justified. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755.

"[W]hen an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Morley v. CIA*, 508 F.3d 1108, 1122 (2007) (cleaned up). That justification typically takes the

---

[5] NAMVETS' initial request even identified the 2020 VA Police management System Needs Improvement report as one of the reports it was interested in and for which data should not have yet been destroyed. Ex. A to Bachman Decl. at p. 3 n. 7. The agency ignored NAMVETS' identification of that report both in processing the original request and in denying NAMVETS' administrative appeal.

form of a *Vaughn* Index. *See id*. The agency bears the burden of proving that withheld information is "clearly exempt." *Birch*, 803 F.2d at 1209.

The agency fails to meet this burden of showing the withheld information is exempt because it does not even *attempt* to meet it. The agency says nothing about any of its withholdings.

By failing to even attempt to justify its withholdings, the agency failed its burden of showing its withholdings are justified. Because it has the burden and fails to meet that burden, summary judgment should be entered for NAMVETS and the Court should order the agency to produce unredacted versions of the 95 pages of responsive records previously produced in redacted format and the two responsive Excel spreadsheet that the agency withheld in full.[6]

## Conclusion

For these reason, NAMVETS' summary judgment motion should be granted and the OIG's summary judgment motion denied.

Date: May 31, 2022

Respectfully submitted,

/s/ Matthew Strugar
Matthew Strugar (D.C. Bar No. 1010198)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
323-696-2299

---

[6] That the agency fails its burden should be the end of the story. In FOIA litigation, courts sometimes provide agencies additional opportunities to justify withholdings or otherwise meet their burden after failing to initially. That's not how ultimate burdens normally work. If a plaintiff fails to prove an element of a claim at trial, they lose. They are not provided a chance to try again with instructions on how they failed the first time. Federal agencies shouldn't be given any different treatment as litigants. Providing agencies repeat opportunities to justify withholdings creates bad incentives, too, with agencies having little to lose by failing to fully justify withholdings in the first round of summary judgment briefing. Giving the agency a second bite at the apple will also prejudice NAMVETS by adding even more delay to NAMVETS receiving records it should have been provided a year and a half ago.

matthew@matthewstrugar.com

Sunita Patel (D.C. Bar No. 1026102)
Courtney Bachman (pro hac vice)
UCLA Veterans Legal Clinic
907 Westwood Blvd., Unit 444
Los Angeles, CA 90024
(310) 792-1498
patel@law.ucla.edu
bachman@law.ucla.edu

**Certification of Service**

On May 31, 2022, I filed the forgoing document through this Court's CM/ECF system, which sent notice to all of the counsel of record in this action.

Dated: May 31, 2022          /s/    Matthew Strugar
                                    Matthew Strugar