UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS,<br><br>    Plaintiff,<br><br>    v.<br><br>THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>    Defendant. | Civ. No. 21-1298 |

**PLAINTIFF NATIONAL ASSOCIATION OF MINORITY VETERANS' COUNTER-STATEMENT OF MATERIAL FACTS**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Local Civil Rule 7(h), Plaintiff National Minority Association of Minority Veterans (NAMVETS) submits the following counter-statement of material facts in support of its cross motion for summary judgment and opposition to Defendant's Motion for Summary Judgment in support thereof.

| | |
|---|---|
| 1."On November 11, 2020, Plaintiff National Association of Minority Veterans submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, "to all appropriate offices and departments within" VA, seeking various categories of records, including, as relevant here, certain records concerning VA's notice of, discussions of, compliance with, and implementation of certain guidelines and recommendations issued by VA's Office of Inspector General ("OIG"). Compl. ¶ 7 & Ex. A, FOIA Request at 1 (Nov. 11, 2020), ECF No. 1." | 1. Undisputed. |

| | |
|---|---|
| 2. "Part I of the request included the following definitions:<br><br>**I. Defined Terms**<br><br>A. 'Records" includes all documentation or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, transcripts, video and audio recordings, emails, faxes, files, guidance, guidelines, directives, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, studies, and other similar information, dating back to the year 2012.<br><br>B. "VA" refers to the U.S. Department of Veterans Affairs and any subcomponents of that department, including the Department of Veterans Affairs Office of Operations, Security, and Preparedness ("OSP") and the Office of Security and Law Enforcement (OS&LE).<br><br>FOIA Request ¶¶ I.A-B. | 2. Undisputed. |
| 3. "The request sought the following records:<br><br>**II. REQUEST FOR INFORMATION AND RECORDS**<br><br>A. Any and all Records concerning the behavioral record flag policies and procedures utilized by the VAPD and VHA staff including, but not limited to:<br><br>1. Policies and procedures related to "disruptive behavior flags;"<br><br>2. Each Veterans Integrated Service Networks' (VISNs) guidelines and procedures outlining the process for authorizing placement of record flags, notifying veterans of the flags, and the process for appealing and removing them;<br><br>3. VA and VHA definitions and applications of "disruptive behavior" as applied in each | 3. Undisputed insofar as NAMVETS made this request to the Department of Veterans Affairs as a whole. Disputed to the extent that the Office of Inspector General contends this whole request was directed to its office. |

| | |
|---|---|
| VISN and any uniform definitions across the VA, including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).6 | |
| B. Any and all Records concerning Disruptive Behavior Committees/Boards (DBC/Bs) policies and procedures including, but not limited to records related to: | |
| 1. issuance of Orders of Behavioral Restriction or placement of Category I or Category II record flags; and | |
| 2. reevaluation of previously issued Red Flags by the DBC/B. | |
| C. Any and all records concerning the placement, use, and outcomes of Panic Alarms activation by VA staff and VA police, including, but not limited to: | |
| 1. VA Police policies and procedures relating to the activation of Panic Alarms, including but not limited to stationary, electronic personal, and computer-based Panic Alarms; and | |
| 2. VA guidelines and procedures for Panic alarm testing. | |
| 3. arrests made following the use of a panic alarm or security alarm triggered by a staff member. | |
| D. Any and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020 including, but not limited to: | |

1. Implementation of recommended designated manager of the records management systems for the VAPF;7 and

2. Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement;8 and

3. Development and implementation of a plan for resolving issues with the police records management system.9

**III. RECORDS RELATED TO DATA AND STATISTICS**

A. **National and Regional Data and Statistics:** Requester seeks any and all Records containing data or statistics prepared, compiled, or maintained by the VA or any agency or subdivision thereof, pertaining to the VA Police, beginning in year 2010 to the present. Requesters seek such national, State, or VISN Records. Requesters seek such Records encompassing information on and off VA property. Such Records should include information related to numbers of police officers, citations, arrests (on and off VA property; subject to a judicial warrant and warrantless), searches of persons and property, use of force, weapons use, numbers of complaints against VAPF officers.

B. **District Court Violation Notices:**

1. Records that contain data or statistical information on the total amount of District Court Violation Notices VA Police issued in each state, VISN, or facility.

2. Records that contain data or numerical information for District Court Violation Notices involving VA Police officers in connection with local, state, other federal, OIG, or university police.

| | |
|---|---|
| C. **Vehicle Removal:**<br><br>1. Records that contain data or statistical information on the total vehicles removed from VA Property.<br><br>2. Records that contain data or numerical information for vehicle removal involving VA Police officers in connection with local, state, other federal, OIG, private security, or university police.<br><br>D. **Traffic Enforcement:**<br><br>1. Records that contain data or statistical information on citations for traffic or parking violations on or around VA medical facility property in each state, whether issued by VA Police, other authorized law enforcement or private security.<br><br>2. Records that contain data or numerical information for traffic enforcement involving VA Police officers in connection with local, state, other federal, OIG, or university police.<br><br>E. **Panic Button Data:**<br><br>1. Records that contain data or statistical information on the usage of Panic Alarms by VA staff or VA police in VA facilities in each state.<br><br>2. Records that contain data or statistical information on the testing of Panic Alarms in each state, VISN, and/or Facility.<br><br>3. Records that contain data or numerical information for panic buttons involving VA Police officers in connection with local, state, other federal, OIG, or university police.<br><br>F. **Behavioral Record Flag Data**<br><br>1. Records that contain data or statistical information on the issuance of Behavioral Red Flags and/or Patient Record Flags to veterans who are members of Vulnerable Population in VA Facilities in each state, VISN, and/or Facility. | |

| | |
|---|---|
| 2. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that currently have Behavioral Red Flags and/or Patient Record Flags<br><br>3. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that have had their Behavioral Red Flags and/or Patient Record Flags removed.<br><br>4. Records that contain data or numerical information for Behavioral Record Flags involving VA Police officers in connection with local, state, other federal, OIG, or university police.<br><br>5. Previously compiled data, records, or other information relied upon by the<br><br>a. Office of the Inspector General<br><br>b. Government Accountability Office<br><br>c. Office of Security and Law Enforcement<br><br>d. Office of Operations, Security, and Preparedness.<br><br>G. **Disruptive Behavior Committee/Board Data**<br><br>1. Records that contain data or statistical information on the attendance of DBC/Bs in VA Facilities in each state, VISN, and/or Facility.<br><br>2. Records that contain data or statistical information on the issuance of Orders of Behavioral Restriction (OBR).<br><br>H. **Uniform Monthly Crime Reports** for VA Facilities in Ohio, New York, Florida, and California from 2010 to present."<br><br>"6 *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *Management of Disruptive Patient Behavior at VA Medical Facilities* | |

| | |
|---|---|
| 7 *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *VA Police Management System Needs Improvement* (2020)<br><br>8 Id.<br><br>9 Id.<br><br>FOIA Request ¶¶ II-III." | |
| 4. "OIG received the Association's FOIA request on November 20, 2020. Decl. of Ruthlee Gowins-Bellamy ¶ 5." | 4. Undisputed. |
| 5. "Ruthlee Gowins-Bellamy, OIG's Supervisory Government Information Specialist, determined that OIG's Office of Healthcare Inspections ("OHI") would have any records underlying the 2013 report that Part II.A.3 of the request had mentioned, as that office had authored the report. Gowins-Bellamy Decl. ¶ 21." | 5. Undisputed. |
| 6. "On December 21, 2020, Gowins-Bellamy emailed Kathy Gudgell, an OIG Director in OHI, asking for her assistance identifying and retrieving such records. Gowins-Bellamy Decl. ¶ 21." | 6. Undisputed. |
| 7. "On December 22, 2021, Gudgell emailed Gowins-Bellamy noting the request's breadth, and asking to have a conversation to clarify its scope. Gowins-Bellamy Decl. ¶ 22." | 7. Undisputed. |
| 8. "On December 23, 2020, Gowins-Bellamy spoke with Gudgell to attempt to clarify the request, and advised her to focus on documents related to and relied upon by OIG in writing the 2013 report. Gowins-Bellamy Decl. ¶ 22." | 8. Undisputed as to what Gowins-Bellamy and Gudgell discussed. Disputed to the extent the agency contends that it was NAMVETS' intention to have the OIG focus only on documents relied on in the 2013 report. |
| 9. "Gowins Bellamy knew, based on her experience and personal knowledge, that the records underlying OIG reports are all kept electronically on separate Share Point sites specific to the report at issue, and that paper versions of these records are not kept. Gowins-Bellamy Decl. ¶ 23." | 9. Undisputed. |

| | |
|---|---|
| 10. "On December 23, 2020, Gudgell informed Gowins-Bellamy that the supporting documents for the 2013 OHI report had been destroyed on January 18, 2019, in accordance with records management policies (OIG GM Directive 352, "Records Management"), and thus, OHI did not have any related records. Gowins-Bellamy Decl. ¶ 23." | 10. Undisputed. |
| 11. "On December 23, 2020, OIG acknowledged receipt of the FOIA request, and assigned it a tracking number of 21-00112-FOIA. Compl. ¶ 10." | 11. Undisputed. |
| 12. "OIG further informed the Association that "this project and all information gathered were legally destroyed on 1/18/2019, since they have reached the end of their record retention period established by the National Archives and Records Administration (NARA)." Compl. ¶ 11." | 12. Undisputed. |
| 13. "OIG issued a "no records found" response to the Association's FOIA request. Compl. ¶ 12." | 13. Undisputed. |
| 14. "The Association filed an administrative appeal on January 25, 2021. Compl. ¶ 15." | 14. Undisputed. |
| 15. "In its appeal letter, the Association stated, "We believe records should exist concerning notice, discussion of, and compliance with OIG guidelines and recommendations between 2014 and 2020." Compl., Ex. C, Administrative Appeal Ltr. (Jan. 25, 2021), ECF No. 1." | 15. Undisputed that NAMVETS took this position. Bisputed that the position was this broad. The Association provided specific, narrowing examples of sought records between 2014 and 2020. Declaration of Courtney Bachman (hereinafter Bachman Decl.) ¶ 13-14. |
| 16. "OIG denied the Association's appeal three days later. Compl. ¶ 17." | 16. Undisputed. |
| 17. OIG's denial stated that the Association had added new requests for records and new descriptions of the records sought in its appeal, and explained that the Association could submit a new FOIA request directly to OIG for these records. Gowins-Bellamy Decl. ¶ 26. | 17. Undisputed that the agency has taken these legal positions but disputed that they are correct. |

| | |
|---|---|
| 18. "The Association filed the complaint in this case on May 11, 2021. Gowins-Bellamy Decl. ¶ 27." | 18. Undisputed. |
| 19. "On August 23, 2021, the Association submitted a new FOIA request to OIG, which contained certain descriptions of the records sought that were not found in the Association's original FOIA request. Gowins-Bellamy Decl. ¶ 29." | 19. Disputed that NAMVETS submitted a new FOIA request. The email submitted on August 23, 2021, was clarifying points during negotiations related to the original FOIA request and administrative appeal and not intended to be a new request. Declaration of Matthew Strugar (hereinafter Strugar Decl.) at ¶ 10; Bachman Decl. ¶ 21. |
| 20. OIG conducted a search for records responsive to that new FOIA request, found responsive records, and released some of them in whole and some of them in part, withholding some of them in full. Gowins-Bellamy ¶¶ 32-34. | 20. Undisputed that OIG conducted a search but disputed that it was in response to a new FOIA request. *Id*. Additionally, the records produced were redacted completely. Strugar Decl. at ¶ 11. |
| | 21. NAMVETS submitted a FOIA request on November 11, 2020, to the Department of Veterans Affairs (VA) including the subagencies: Veterans Health Administration (VHA), Office of Operations, Security and Preparedness (OSP), and Office of Inspector General (OIG). Declaration of Courtney Bachman (hereinafter "Bachman Decl.") at ¶ 4. |
| | 22. The request sought records to increase public awareness around the operations of the Veterans Affairs Police Department (VAPD), a uniformed independent law enforcement agency operating within over 1,200 veterans' healthcare facilities around the country, serving millions of veterans. Bachman Decl. at ¶ 5. |
| | 23. The request specifically requested information from OIG in two sections: paragraph(s) II.A.3 and II.D.1-3. Bachman Decl. at ¶ 6. |
| | 24. Paragraph II.A.3 requested definitions of "disruptive behavior" "including. . . definitions recommended by the OIG" in a |

|   |   |
|---|---|
|   | 2013 report the agency published. Bachman Decl. at ¶ 7. |
|   | 25. Lines II.D.1-3 requested records concerning OIG guidelines and recommendations issued between 2014 and 2020 related to VAPF records management systems. The request cited a 2020 report the agency published in footnote seven to provide an example of the kind of guidelines and recommendations we were looking for. Bachman Decl. at ¶ 8. |
|   | 26. The agency referred parts of the request to OIG, and OIG assigned this request the tracking number "FOIA Tracking Number 21-00112-FOIA." Bachman Decl. at ¶ 9. |
|   | 27. In the initial response, on December 23, 2020, OIG provided a "no records" response to our FOIA request because all relevant records from the 2013 OIG report had been destroyed on January 18, 2019, pursuant to the record retention policy. Bachman Decl. at ¶ 10. |
|   | 28. NAMVETS filed an administrative appeal on January 25, 2021 because the decision did not address paragraphs II.D.1-3. Bachman Decl. at ¶ 12. |
|   | 29. The appeal contended that the request to OIG had two parts, OIG only responded to Line II.A.3, and Line II.D.1-3 was not limited to the 2013 report. Bachman Decl. at ¶ 12-13. |
|   | 30. NAMVETS contended that there should be records for OIG reports between 2014 and 2020 as requested in II.D.1-3 and provided three specific OIG reports between 2018 and 2020 for reference. Bachman Decl. at ¶ 13. |
|   | 31. The three reports named in the appeal are: (1) Office of the Inspector General, Dep't Of Veterans Aff., *Healthcare Inspection: Management Of Disruptive Patient Behavior In VA Medical Facilities* (Jan. 30, 2018), (2) Office of the Inspector General, Dep't Of Veterans Aff., *Inadequate Governance Of The* |

Case 1:21-cv-01298-RC   Document 21-2   Filed 05/31/22   Page 11 of 14

|  |  |
|---|---|
|  | *VA Police Program At Medical Facilities* (Dec. 13, 2018), and (3) Office of the Inspector General, Dep't of Veterans Aff., *Va Police Management System Needs Improvement* (Jun. 17, 2020). Bachman Decl. at ¶ 14. |
|  | 32. In the appeal, NAMVETS conceded that the 2013 records were destroyed in 2019 and no longer sought records relating to that 2013 report. Bachman Decl. at ¶ 15. |
|  | 33. OIG denied NAMVETS' administrative appeal on January 28, 2021, three days after the appeal was filed. Bachman Decl. at ¶ 16. |
|  | 34. The appeal denial, again, only addressed the 2013 report and did not accurately address lines II.D.1-3 of the request or the specifically listed reports in the appeal. Bachman Decl. at ¶ 18. |
|  | 35. OIG rejected NAMVETS' argument that the request had two parts and only one part was addressed in the final decision letter, stating that NAMVETS was challenging the "adequacy and reasonableness of the search." Bachman Decl. at ¶ 17. |
|  | 36. OIG suggested that NAMVETS submit another FOIA request for the additional documents since they considered the 2018-2020 reports as "new descriptors." Bachman Decl. at ¶ 18. |
|  | 37. NAMVETS filed this suit on May 11, 2021, due to OIG's failure to respond to our FOIA request as related to the 2018 and 2020 reports and did not file a new FOIA request. Declaration of Matthew Strugar (hereinafter "Strugar Decl.") at ¶ 3; Bachman Decl. at ¶ 19. |
|  | 38. Stephen DeGenaro, OIG's original litigation counsel, appeared for the agency on June 14, 2021, and immediately requested a 44-day extension to file a response. Strugar Decl. at ¶¶ 4–5. |

11
NATIONAL ASSOCIATION OF MINORITY VETERANS COUNTER- STATEMENT OF MATERIAL FACTS

|  | |
|---|---|
|  | 39. After the 44-day period, Mr. DeGenaro emailed and requested a phone call to discuss the FOIA request issues including scope of the original request. Strugar Decl. at ¶ 6. |
|  | 40. On August 10, 2021, during the requested call, Mr. DeGenaro asked NAMVETS to: (1) specify which three OIG reports it was inquiring about, (2) confirm whether it wanted the underlying records OIG used to prepare said reports, and (3) identify types of documents and specific facilities or subagencies named in the reports that NAMVETS is interested in; in order to assist with narrowing the request. Strugar Decl. at ¶ 7. |
|  | 41. NAMVETS responded to Mr. DeGenaro's request for additional information on August 23 via email. Strugar Decl. at ¶ 8. |
|  | 42. NAMVETS response (1) identified three OIG reports from 2018, 2018, and 2020, previously identified in the January 25 administrative appeal, (2) confirmed that NAMVETS requested the underlying data used to compile the reports, and (3) provided additional narrowing parameters based on the text of the OIG reports. *Id*. |
|  | 43. In a Joint Status Report on October 5, 2021, the parties detailed "the continued process of negotiating over the scope of Plaintiff's request," and that counsel [for the defendant] engaged in said negotiations "to identify which OIG reports and underlying data Plaintiff was interested in as a way of reaching an agreement regarding the scope of Plaintiff's FOIA request." The JSR noted that "Plaintiff provided Defendant, through counsel, with guidance regarding three specific reports and the data from those three reports on August 23, 2021." Strugar Decl. at ¶ 9. |
|  | 44. NAMVETS received a response email to the August 23 clarification on October 6, |

|  | 2021, erroneously titled "Agency Final Response." Strugar Decl. at ¶ 10. |
|---|---|
|  | 45. The response referred several of the requested items in the August 23 email to either VHA or OSP, as the proper custodian, and completely withheld the majority of items OIG was deemed responsive for, including two spreadsheets in full and a 95-page document that was nearly completely redacted pursuant to FOIA Exemption (b)(5), (b)(6), and (b)(7)(E). Strugar Decl. at ¶¶ 11–12. |
|  | 46. NAMVETS received communication from Bradley Silverman on February 1, 2022, stating that the case has been reassigned to him. Strugar Decl. at ¶ 13. |
|  | 47. Mr. Silverman filed a Motion for Summary Judgment on April 11, 2022, claiming that the parties' negotiations over the scope of NAMVETS' original FOIA request resulted in a "second FOIA request" that is not an issue in this lawsuit and would require an additional appeal. Strugar Decl. at ¶ 14. |

Date:   May 31, 2022

Respectfully submitted,

/s/ Matthew Strugar
Matthew Strugar (D.C. Bar No. 1010198)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
323-696-2299
matthew@matthewstrugar.com

Sunita Patel (D.C. Bar No. 1026102)
Courtney Bachman (pro hac vice)
UCLA Veterans Legal Clinic
907 Westwood Blvd., Unit 444
Los Angeles, CA 90024
(310) 792-1498
patel@law.ucla.edu
bachman@law.ucla.edu

**Certification of Service**

On May 31, 2022, I filed the forgoing document through this Court's CM/ECF system, which sent notice to all of the counsel of record in this action.

Dated: May 31, 2022                     /s/     Matthew Strugar
                                                Matthew Strugar