UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS,<br><br>    Plaintiff,<br><br>    v.<br><br>THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>    Defendant. | Civ. No. 21-1298 |

**DECLARATION OF COURTNEY BACHMAN IN SUPPORT OF PLAINTIFF NATIONAL ASSOCIATION OF MINORITY VETERANS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Courtney Bachman, do hereby declare the following:

1. The facts contained in this declaration are personally known to me and, if called as a witness, I could and would testify competently thereto under oath.

2. I am the Staff Attorney for the University of California School of Law Veterans Legal Clinic (UCLA VLC).

3. One of my duties as Staff Attorney is to assist with National Association of Minority Veteran America's (NAMVETS) request for records made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 to the Department of Veterans Affairs (VA) including the Office of Inspector General ("OIG").

4. NAMVETS and UCLA VLC submitted a FOIA request on November 11, 2020, to the VA including the subagencies: Veterans Health Administration (VHA), Office of Operations, Security and Preparedness (OSP), and OIG.

5. The request sought records to increase public awareness around the operations of the Veterans Affairs Police Department, a uniformed independent law enforcement agency

operating within over 1,200 veterans' healthcare facilities around the country, serving millions of veterans.

6. The request specifically requested information from OIG in two sections of the request: line items II.A.3 and II.D.1-3. Attached as Exhibit A is the November 2020 FOIA request including lines II.A.3 and II.D.1-3.

7. Line II.A.3 requested definitions of "disruptive behavior" "including. . . definitions recommended by the OIG" in a 2013 report the agency published. See Exhibit A.

8. Lines II.D.1-3 requested records concerning OIG guidelines and recommendations issued between 2014 and 2020 related to VAPD records management systems. We cited a 2020 report the agency published in footnote seven to provide an example of the kind of guidelines and recommendations we were looking for. See Exhibit A where footnote seven cites the 2020 report using "e.g.."

9. The agency referred parts of the request to OIG and OIG assigned it the tracking number "FOIA Tracking Number 21-00112-FOIA."

10. In the initial response, on December 23, 2020, OIG provided a "no records" response to our FOIA request because all relevant records from the 2013 OIG report had been destroyed on January 18, 2019, pursuant to the record retention policy.

11. The response only addressed an OIG report from 2013 and did not acknowledge any records related to reports from 2014 to 2020.

12. I, on behalf of NAMVETS, submitted an administrative appeal on January 25, 2021, arguing that the "no records" response was erroneous. I explained that the request to OIG had two parts and that it appeared that OIG only responded to Line II.A.3.

13. I further argued that the request in Lines II.D.1-3 was not limited to the 2013 report because there should be records for OIG reports between 2014 and 2020 as requested in II.D.1-3. I specifically asked for records from 3 OIG reports between 2018 and 2020 to help narrow the request.

14. The three specific reports named are: Office of the Inspector General, Dep't of Veterans Aff., Healthcare Inspection: Management Of Disruptive Patient Behavior In VA

Medical Facilities (Jan. 30, 2018); Office of the Inspector General, Dep't Of Veterans Aff., Inadequate Governance Of The VA Police Program At Medical Facilities (Dec. 13, 2018), and; Office of the Inspector General, Dep't of Veterans Aff., Va Police Management System Needs Improvement (Jun. 17, 2020). Attached as Exhibit B is the January 25 administrative appeal which lists these three reports as an attempt to narrow the original request.

15. NAMVETS conceded that the 2013 records were destroyed, and they no longer were requesting records relating to said report.

16. On January 28, 2021, just three days later, UCLA received OIG's denial of the administrative appeal. OIG upheld the denial because the 2013 records were destroyed.

17. NAMVETS rejected our argument that our request had two parts, stating that we were challenging the "adequacy and reasonableness of the search."

18. The denial appeared to only address the 2013 report again and did not accurately address lines II.D.1-3 of our request to OIG, as requested in the FOIA request and appeal. Instead, OIG suggested that we submit another FOIA request for the additional documents since they considered the 2018-2020 reports as "new descriptors."

19. We did not submit another request, as incorrectly suggested in the appeal denial, and filed a complaint for this suit on May 11, 2021.

20. Matthew Strugar, lead counsel for NAMVETS, communicated with opposing counsel on August 10, 2021. Matt informed my supervisor and I that, following their call, opposing counsel requested that we (1) specify which three reports it was inquiring about, (2) confirm whether it wanted the underlying records OIG used to prepare said reports, and (3) identify types of documents and specific facilities or subagencies named in the reports that NAMVETS is interested in.

21. My supervisor and I began identifying the answers to each question and drafting a response. We understood the questions as clarifying points in our negotiation with OIG over the appeal and complaint. At no point did we believe we were submitting a new FOIA request when we drafted the clarifying email.

In accordance with 28 U.S.C. § 1746 and under penalty of perjury, I swear that the foregoing is true and correct.

Executed on May 31, 2022 in Los Angeles, CA

/s/ Courtney Bachman
Courtney Bachman

**Certification of Service**

On May 31, 2022, I filed the forgoing document through this Court's CM/ECF system, which sent notice to all of the counsel of record in this action.

Dated: May 31, 2022         /s/      Matthew Strugar
Matthew Strugar

# Exhibit A



VETERANS LEGAL CLINIC

907 WESTWOOD BLVD. #444
LOS ANGELES, CA 90024

November 11, 2020

FOIA Office for the Department of Veterans Affairs
Office of Operations, Security, and Preparedness (OSP)
VA Central Office
810 Vermont Avenue, NW
(007) VACO
Washington, DC 20420
vacoospfoia@va.gov

**Re: Request Under Freedom of Information Act**

To Whom It May Concern:

  This letter constitutes a request ("Request"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for Records in the possession of the U.S. Department of Veterans Affairs ("VA"). The Request is submitted on behalf of the National Association of Minority Veterans (NAMVETS) and UCLA Veterans Legal Clinic ("Requesters"). Pursuant to the FOIA, please direct this Request to all appropriate offices and departments within the agency, including but not limited to the Office for the Veterans Health Administration, Department of Veterans Affairs Office of Operations, Security, and Preparedness (OSP), the Office of Security and Law Enforcement (OS&LE), Office of Research Management, Office of the Inspector General, and relevant Regional Veterans Integrated Service Network (VISN) personnel.

**Purpose of Request:**

  Access to healthcare is vital now that the COVID-19 pandemic has taken the lives of more than 230,000 Americans.[1] For the veteran population alone, there have been at least 70,708 cases and 4,223 deaths linked to COVID-19.[2] The underlying comorbidity rates and unique experiences of veterans – including toxic exposure, chronic stress, PTSD, co-occurring disorders, and chronic pain – further puts veterans at risk of contracting the deadly virus.[3] As a result, the VA has taken important steps to reducing potential COVID-19 exposure and minimizing barriers to accessing first-class healthcare for veterans through measures such as telehealth appointments.

  Not only does the COVID-19 pandemic pose a threat to medically vulnerable veterans, these veterans are also disproportionately likely to experience police violence.[4] The protests following the George Floyd killing have pushed police violence against Black Americans into the forefront of the

---

[1] *Covid in the U.S.: Latest Map and Case Count*, N.Y. TIMES (updated Nov. 9, 2020) https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

[2] Department of Veterans Affairs, *Department of Veterans Affairs COVID-19 National Summary*, U.S. DEPARTMENT OF VETERANS AFFAIRS (Nov. 11, 2020), https://www.accesstocare.va.gov/Healthcare/COVID19NationalSummary .

[3] *See, e.g.*, Abbie Bennett, *Veterans exposed to burn pits could be at higher risk for COVID-19*, CONNECTING VETS (March 27, 2020), https://connectingvets.radio.com/articles/veterans-exposed-to-burn-pits-could-be-at-risk-for-covid19.

[4] *See, e.g.*, Jasper Craven, *Abusing Those Who Served*, THE INTERCEPT ((July 8, 2019), https://theintercept.com/2019/07/08/veterans-affairs-police-va/; *Police Shootings Database 2015-2020*, WASH. POST (Oct. 15, 2020), https://www.washingtonpost.com/graphics/investigations/police-shootings-database/.

FOIA Office for the Department of Veterans Affairs
November 11, 2020

American consciousness. For some veterans, the VA Police Force has been another potential barrier to accessing the excellent care the VA provides.

In particular, the practices surrounding the Category I Record Flag System and Disruptive Behavioral Managment system the VA uses a system of flags and electronic reporting. These interventions involve the VA Police Force, VA Office of Inspector General officers, and sometimes municipal police departments. Although the stated laudable goals of the behavioral flag directive are to reduce veteran suicide and ensure employee safety, the threshold of behavior that leads to receiving a flag is very low; patients are often not informed of their right to contest the designation; and the flags are not reviewed on a regular basis as required by federal regulation.[5] Veterans report experiencing the systems as surveillance and profiling. Requstors are concerned that unhoused, Black, transgender, and disabled veterans are disproportionately flagged. Without more information, Requestors are limited in their ability to research and understand the reasons for potential disparities in record flags. Requestors are limited in their ability to inform the public or respond to members and clients.

A proposed bill, H.R. 7784, the VA Police Improvement and Accountability Act, by Representative Kathleen Hill (D-NY-14) marks an attempt to highlight police conduct at VA facilities. In order to be involved, veterans and their advocates require access to the information and documents regarding VA police practices, policies, and procedures. More information regarding VA policing is necessary to meaningfully engage in the democratic process of proposed VA police reform measures. The lack of current information limits the ability for any VA police reform to be effective.

### I.    Defined Terms

A. "Records" includes all documentation or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, transcripts, video and audio recordings, emails, faxes, files, guidance, guidelines, directives, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, studies, and other similar information, dating back to the year 2012.

B. "VA" refers to the U.S. Department of Veterans Affairs and any subcomponents of that department, including the Department of Veterans Affairs Office of Operations, Security, and Preparedness ("OSP") and the Office of Security and Law Enforcement (OS&LE).

C. "VA Police" "VA Police Force" or "VAPF" refers to the law enforcement agency of the VA, including all police officers, executive officers, detectives, and other staff members, employed for the purposes of law enforcement by the VA nationwide. Where applicable, OIG Officers, university police, or private security utilized in VAPF operations are within the scope of this Request.

D. "VA Facilities" refers to all property within the jurisdiction of the Department of Veterans Affairs, nationwide, unless narrowed by the terms of this Request.

E. "Vulnerable Populations" includes, but is not limited to, undocumented veterans, women veterans, LGBTQIA+ veterans, transgender veterans, disabled veterans, veterans with mental health diagnosis or complex trauma, unhoused veterans, and non-white veterans. "Non-White" veterans includes biracial and White Hispanic veterans.

---

[5] E.g., Department of Veterans Affairs, Office of the Inspector General, *Management of Disruptive Patient Behavior at VA Medical Facilities* (2013).

2

FOIA Office for the Department of Veterans Affairs
November 11, 2020

## II. REQUEST FOR INFORMATION AND RECORDS

A. Any and all Records concerning the behavioral record flag policies and procedures utilized by the VAPD and VHA staff including, but not limited to:
   1. Policies and procedures related to "disruptive behavior flags;"
   2. Each Veterans Integrated Service Networks' (VISNs) guidelines and procedures outlining the process for authorizing placement of record flags, notifying veterans of the flags, and the process for appealing and removing them;
   3. VA and VHA definitions and applications of "disruptive behavior" as applied in each VISN and any uniform definitions across the VA, including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).[6]

B. Any and all Records concerning Disruptive Behavior Committees/Boards (DBC/Bs) policies and procedures including, but not limited to records related to:
   1. issuance of Orders of Behavioral Restriction or placement of Category I or Category II record flags; and
   2. reevaluation of previously issued Red Flags by the DBC/B.

C. Any and all records concerning the placement, use, and outcomes of Panic Alarms activation by VA staff and VA police, including, but not limited to:
   1. VA Police policies and procedures relating to the activation of Panic Alarms, including but not limited to stationary, electronic personal, and computer-based Panic Alarms; and
   2. VA guidelines and procedures for Panic alarm testing.
   3. arrests made following the use of a panic alarm or security alarm triggered by a staff member.

D. Any and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020 including, but not limited to:
   1. Implementation of recommended designated manager of the records management systems for the VAPF;[7] and
   2. Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement;[8] and
   3. Development and implementation of a plan for resolving issues with the police records management system.[9]

## III. RECORDS RELATED TO DATA AND STATISTICS

A. **National and Regional Data and Statistics:** Requester seeks any and all Records containing data or statistics prepared, compiled, or maintained by the VA or any agency

---

[6] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *Management of Disruptive Patient Behavior at VA Medical Facilities* (2013).
[7] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *VA Police Management System Needs Improvement* (2020)
[8] Id.
[9] Id.

3

or subdivision thereof, pertaining to the VA Police, beginning in year 2010 to the present. Requesters seek such national, State, or VISN Records. Requesters seek such Records encompassing information on and off VA property. Such Records should include information related to numbers of police officers, citations, arrests (on and off VA property; subject to a judicial warrant and warrantless), searches of persons and property, use of force, weapons use, numbers of complaints against VAPF officers.

B. **District Court Violation Notices:**
   1. Records that contain data or statistical information on the total amount of District Court Violation Notices VA Police issued in each state, VISN, or facility.
   2. Records that contain data or numerical information for District Court Violation Notices involving VA Police officers in connection with local, state, other federal, OIG, or university police.

C. **Vehicle Removal:**
   1. Records that contain data or statistical information on the total vehicles removed from VA Property.
   2. Records that contain data or numerical information for vehicle removal involving VA Police officers in connection with local, state, other federal, OIG, private security, or university police.

D. **Traffic Enforcement:**
   1. Records that contain data or statistical information on citations for traffic or parking violations on or around VA medical facility property in each state, whether issued by VA Police, other authorized law enforcement or private security.
   2. Records that contain data or numerical information for traffic enforcement involving VA Police officers in connection with local, state, other federal, OIG, or universitypolice.

E. **Panic Button Data:**
   1. Records that contain data or statistical information on the usage of Panic Alarms by VA staff or VA police in VA facilities in each state.
   2. Records that contain data or statistical information on the testing of Panic Alarms in each state, VISN, and/or Facility.
   3. Records that contain data or numerical information for panic buttons involving VA Police officers in connection with local, state, other federal, OIG, or university police.

F. **Behavioral Record Flag Data**
   1. Records that contain data or statistical information on the issuance of Behavioral Red Flags and/or Patient Record Flags to veterans who are members of Vulnerable Population in VA Facilities in each state, VISN, and/or Facility.
   2. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that currently have Behavioral Red Flags and/or Patient Record Flags
   3. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that have had their Behavioral Red Flags and/or Patient Record Flags removed.
   4. Records that contain data or numerical information for Behavioral Record Flags involving VA Police officers in connection with local, state, other federal, OIG, or university police.

FOIA Office for the Department of Veterans Affairs
November 11, 2020

     5. Previously compiled data, records, or other information relied upon by the
        a. Office of the Inspector General
        b. Government Accountability Office
        c. Office of Security and Law Enforcement
        d. Office of Operations, Security, and Preparedness.

  G. **Disruptive Behavior Committee/Board Data**
     1. Records that contain data or statistical information on the attendance of DBC/Bs in VA Facilities in each state, VISN, and/or Facility.
     2. Records that contain data or statistical information on the issuance of Orders of Behavioral Restriction (OBR).

  H. **Uniform Monthly Crime Reports** for VA Facilities in Ohio, New York, Florida, and California from 2010 to present.

**<u>Fee Waiver</u>**

As a qualifying "educational institution," requester UCLA School of Law Veterans Legal Clinic is entitled to a waiver of search fees. *See* 38 C.F.R. §1.561(e)(1). FOIA regulation requires such fee waiver for an "institution of professional education.. . . which operates a program or programs of scholarly research." *Id.* 38 C.F.R. §1.561(e)(1). To qualify for this waiver, the FOIA Officer must also decide the records are sought to "further scholarly research goal of the instituion" and not in the commergial interest of the instiution or the. Individual goal of the requestor. UCLA School of Law offers J.D. and LLM programs to students who seek professional licensing as lawyers and advocates. As part of an R1 instiution, faculty and students publish rigorous scholarly research in many fields. In addition, the records obtained here will be used in scholarly pursuits of the clinic faculty who publish reports and scholarly research. The Veterans Legal Clinic also uses its research in news reports and media interviews. UCLA School of Law has no commercial interest and requesters have no individual goals in making the request.

In addition, a fee waiver is appropriate when "(1) the disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and (2) is not primarily in the commercial interests of the requester." 5 U.S.C. § 552(a)(4)(A)(iii) (numbers added). "[F]ee-waiver applications are to be 'liberally construed' in favor of finding that requesters meet FOIA's two-prong test." *Nat'l Sec. Counselors v. United States Dep't of Justice,* 848 F.3d 467, 473 (D.C. Cir. 2017). The Department of Veterans Affairs ("VA") has identified six factors for when the conditions for a fee waiver are met. *See* 38 C.F.R. § 1.561(n). As explained below, all six of these factors support a fee waiver here.

To begin, this request is in the "public interest." As a request related to potential abuse of authority by VA police, the Request satisfies the first part of the test because "the subject of the requested records concerns the operations or activities of the government." 38 C.F.R. § 1.561(n)(3)(i) (internal quotation marks omitted).

Second, the "informative value of the information to be disclosed" serves the "public interest." 38 C.F.R. § 1.561(n)(3)(ii). That is so because the records sought would illuminate the events and policies surrounding the VAPF in a historic moment when scrutiny and concern regarding racialized policing is at the forefront of public attention. In addition, the documents aid the democratic process. They will be used by NAMVETS, veterans' organizations and advocates to influence pending legislation and Congressional hearings related to VA policing. And because much of the requested information is not now "in the public domain," something "new would be added to the public's understanding" by the release records. *Id.*

Third, "disclosure of the requested information will contribute to [the] public understanding," and, thus, the "public interest." 38 C.F.R. § 1.561(n)(3)(iii). To facilitate that understanding, UCLA

5

FOIA Office for the Department of Veterans Affairs
November 11, 2020

School of Law Criminal Justice Program and Veterans Legal Clinic have both agreed to digitally host the records sought under I.D(c)-(i) of this Request. The Criminal Justice Program, in particular, "produces timely, impactful and collaborative research in diverse areas of criminal justice."[10] Thus, with their assistance, "a reasonably broad audience of persons interested in" VA police policies will gain access to the records requested here. 38 C.F.R. § 1.561(n)(3)(iii).

Fourth, the "contribution to [the] public understanding" offered by this Request is "significant." 38 C.F.R. § 1.561(n)(3)(iv). As mentioned above, much of the information requested here is not in the public domain. Thus, upon its disclosure, the public stands to gain important new insights into VA Police policies beyond "the level of [] understanding existing prior to the disclosure." *Id.* Accordingly, this request is in the "public interest" and, therefore, satisfies the first prong of 5 U.S.C. § 552(a)(4)(A)(iii).

Fifth and sixth, Requester has not filed this request for any "commercial interest," 38 C.F.R. § 1.561 (n)(4)(i)-(ii), because they do not seek to use any of the requested information to "further[] his . . . commercial, trade, or profit interests," 38 C.F.R. § 1.561(b)(2).

Thus, this Request satisfies both prongs of 5 U.S.C. § 552(a)(4)(A)(iii). Requesters are therefore, entitled to a fee waiver.

**Requesters**

National Association of Minority Veterans (NAMVETS) works to ensure that all veterans of color have the information, resources and support to improve the quality of their lives and the condition of their communities. A key goal is ensuring that vulnerable veterans have a voice and say in legislation impacting them and their communities. NAMVETS has had a longstanding concern for potential mistreatment of their members by VA Police.  NAMVETS will be better able to ensure all veterans of color have the access to information they need to make meaningful contributions to Congressional legislation, and help maintain the long history of quality care and support from VA facilities.

UCLA Veterans Legal Clinic provides educational opportunities to UCLA law students and holistic legal services and advocates on behalf of vulnerable veterans in Los Angeles, California. A goal of the Veterans Legal Clinic is ensuring that all veterans have access to the quality healthcare provided by VA facilities. To this end, the Veterans Legal Clinic provides educational information to veterans on legislative measures and processes. Further, it provides strategic research to clients and faculty pursue publication of veterans related scholarship and public education reports.

**Expedited Processing**

Expedited processing of this request is required because there is a "compelling need" for the information. 5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need" is established when there exists an "urgency to inform the public concerning actual or alleged Federal Government activity," when the requester is a "person primarily engaged in disseminating information," 28 C.F.R. § 16.5(e)(1)(ii), and also when there exists "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv).

The first reason the requested records present a "compelling need" is to engage with the urgent police reform movement to curtail police violence and excessive surveillance, primarily against Black people. Currently pending legislation in the U.S. Congress presents a timely opportunity for VA police reform. In  July of 2020 Representative Katherine Rice (D-NY-4) introduced the VA Police Improvement and Accountability Act,[11] which will aims to "improve the staffing, transparency, and accountability of

---

[10] UCLA SCHOOL OF LAW CRIMINAL JUSTICE PROGRAM WEBPAGE, available at https://law.ucla.edu/centers/criminal-justice/criminal-justice-program/about.
[11] H.R. 7784

6

FOIA Office for the Department of Veterans Affairs
November 11, 2020

the law enforcement operations of the Department of Veterans Affairs, and for other purposes."[12] The proposed bill requires the VA to designate an employee at VA facilities to oversee the police force at those facilities, document their actions and procedures, and create transparency. Releasing data and other information maintained by the VA and other government offices promotes the bill's intent of creating more transparency surrounding VA police procedures and practices.

In additional to the federal legislation, many municipalities engage in police operations and information sharing with VA police through agreements and informal relationships. Very little information on the efficacy or potential harms is available to historically marginalized veterans. Without further information regarding the VA police practices, veterans and their advocates are limited when engaging in the public debate or engage their elected representatives, VA medical directors, and local police leadership. In addition, during this time of unprecedented need for access to the high-quality healthcare the VA provides veterans, any potential barrier to that access is of exceptional public interest.[13] Thus, Requestors show "urgency to inform the public concerning actual or alleged Federal Government activity."

Requestors likewise satisfy the requirement of "primarily engaged in dissemination information." By its nature, a university such as UCLA is engaged in the collection, analysis, and dissemination of information to the public, and the UCLA School of Law includes several institutes and programs that serve the role of disseminating high-quality research reports relevant to veterans, Black people, and justice-involved individuals. NAMVETS disseminates and shares information with its members, primarily minority veterans, across the country. The Requestor need not be a member of the media or have the sole occupation of dissemination of information to satisfy this requirement.

The Request also satisfies the "compelling need" standard through the alternative test as "a matter of widespread and exceptional medial interest" affecting "public confidence." In the current moment, police reform and violence against historically marginalized groups has taken center stage. The Request allows the Requestors to spotlight police conduct towards vulnerable veterans. NAMVETS is particularly well positioned to inform veterans about the practices of the VA Police Force and work with VA officials to implement meaningful reform, not only measures of transparency and oversight. Several media accounts of harm and misconduct by VA police are suggestive of the widespread interest specifically in the VA Police.[14]

Finally, in addition to the media interest surrounding police reform, whether VA policing interferes with veterans' access to health care during the COVID-19 pandemic presents another matter of "exeptional interest." For the veteran population alone, there have been at least 70,708 cases and 4,223 deaths linked to COVID-19.[15] The combination of the two concerns presents "possible questions about the government's integrity which affect public confidence."

For these reasons, this Request satisfies the requirements of expedited processing.

**Form of Production**

Requesters ask that any Records that exist in electronic form be provided in electronic format via electronic mail or on a compact disc. If Records cannot be provided in electronic form or in hard copy, Requesters seek the opportunity to view the Records in the VA's offices. Given the COVID-19 pandemic, Requesters seek the opportunity to either review Records in VA offices at a later date, when businesses are open, or alternative means of review to be established.

---

[12] *Id*.
[13] 28 C.F.R. § 16.5(d)(1)(iv).
[14] *See* 28 C.F.R. § 16.5(e)(3) Jasper Craven, *Abusing Those Who Served*, Intercept (Jul. 8, 2019, 7:00 AM), https://theintercept.com/2019/07/08/veterans-affairs-police-va/.
[15] Department of Veterans Affairs, *Department of Veterans Affairs COVID-19 National Summary*, U.S. DEPARTMENT OF VETERANS AFFAIRS (Nov. 11, 2020),
https://www.accesstocare.va.gov/Healthcare/COVID19NationalSummary .

FOIA Office for the Department of Veterans Affairs
November 11, 2020

      Finally, pursuant to the applicable regulations and statute, Requesters expect the determination of this Request for documents within twenty business days. See 5 U.S.C. § 552(a)(6)(A)(i). If this Request is denied in whole or in part, Requesters ask that VA justify all deletions by reference to specific exemptions to FOIA. Requesters expect the release of all segregable portions of otherwise exempt material. Requesters reserve the right to appeal a decision to respond without any information.

      Should you have any questions in processing this Request, or should you require clarification on the scope of the request, contact Professor Sunita Patel via email at patel@law.ucla.edu, by mail at the address below or by telephone at (310)-206-3151.

Please furnish all applicable Records to:
      907 Westwood Blvd., #444
      Los Angeles, CA 90024

Thank you for your assistance and prompt attention to this matter.

Sincerely,

*Sunita Patel*

Sunita Patel
Jaz Buckley
Emily Olivencia-Audet
UCLA Veterans Legal Clinic


Damon Dorsey
Horace Walker
National Association of Minority Veterans (NAMVETS)

cc:

FOIA Office for the Veterans Health Administration
VA Central Office
810 Vermont Avenue, NW
(10P2Cl) VACO
Washington, DC 20420
vhafoia2@va.gov

FOIA Office for the Department of Veterans Affairs
Office of Security and Law Enforcement (OS&LE)
VA Central Office
810 Vermont Avenue, NW
Washington, DC 204020

8

# Exhibit B

January 25, 2021

Department of Veterans Affairs,
Office of Inspector General, Office of Counselor (50C),
810 Vermont Avenue NW,
Washington, DC 20420

Re:     Freedom of Information Act Appeal-- FOIA Request 21-00112-FOIA

Dear Ms. Bellamy:

We write in response to your December 23, 2020 letter responding to our original FOIA request dated November 11, 2020 (FOIA Tracking Number 21-00112-FOIA). We appreciate your timely response. We believe your "no records" found response was in error.

As a preliminary matter, we made two requests related to OIG in our November 11 letter. In Part II A.3, we asked for a copy of all records concerning behavioral record flag policies and procedures utilized by VAPD and VHA staff including definitions of "disruptive behavior" recommended by OIG in 2013 and, in Part II D, we requested records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations between 2014 and 2020.

In Part II A.3, we requested any information concerning behavioral record flag policies related to definitions recommended by the Office of Inspector General (OIG) in the 2013 report, *Management of Disruptive Patient Behavior at VA Medical Facilities*. Based on your December 23 response, we recognize that the information gathered for the 2013 report was legally destroyed on January 18, 2019. We no longer seek that data, however, for the benefit of our academic analysis at UCLA School of Law, we request a list of the thirty facilities examined in the 2013 report.

Instead, and consistent with our November 11 FOIA request, we would like to see any data that examines behavioral record flag policies from relevant OIG reports including OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., HEALTHCARE INSPECTION: MANAGEMENT OF DISRUPTIVE PATIENT BEHAVIOR IN VA MEDICAL FACILITIES (Jan. 30, 2018), OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., INADEQUATE GOVERNANCE OF THE VA POLICE PROGRAM AT MEDICAL FACILITIES (Dec. 13, 2018), and OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., VA POLICE MANAGEMENT SYSTEM NEEDS IMPROVEMENT (Jun. 17, 2020). Specifically, this includes but is not limited to, any data collected or used for "Issue 2: Patient Record Flag Placement, Follow-up, and Notification" in the January 30, 2018 OIG report.

Our request in Part II D was not limited to the 2013 report mentioned in Part II, A.3. We believe records should exist concerning notice, discussion of, and compliance with OIG guidelines and recommendations between 2014 and 2020 including:

> 1. Implementation of recommended designated manager of the records management systems for the VAPF; and
>
> 2. Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement; and
>
> 3. Development and implementation of a plan for resolving issues with the police records management system.

Particularly, we are interested in any related data collected or compiled for the January 30, 2018, December 13, 2018, and June 17, 2020 OIG reports including the aggregate data by facility compiled for Table 1: Facilities' Policies, Assessments, and Committees and Table 2: Electronic Health Record Review Results in the 2018 report: *Healthcare Inspection: Management of Disruptive Patient Behavior in VA Medical Facilities*. This data will greatly benefit our academic analysis.

Lastly, we request any data collected from the above cited reports concerning vulnerable populations. "Vulnerable Populations" include, but is not limited to, undocumented veterans, women veterans, LGBTQIA+ veterans, transgender veterans, disabled veterans, veterans with mental health diagnosis or complex trauma, unhoused veterans, and non-white veterans. "Non-White" veterans include biracial and White Hispanic veterans.

Thank you for your assistance and prompt attention to this matter.

Sincerely,

*Courtney M. Bachman*

Courtney Bachman
Sunita Patel
UCLA Veterans Legal Clinic

Matthew Strugar
Law Offices of Matthew Strugar


(on behalf of )
Damon Dorsey
Horace Walker
National Association of Minority Veterans (NAMVETS)