# Exhibit A

**From:** DeGenaro, Stephen (USADC)
**To:** Feingold, Kate (OIG)
**Subject:** [EXTERNAL] FW: NAMVETS v. VA
**Date:** Monday, August 23, 2021 6:23:53 PM

Kate,

See below from Plaintiff's counsel.  What are your thoughts about the burden of what they are seeking here?

Thanks,
Stephen

Stephen M. DeGenaro
Assistant United States Attorney
United States Attorney's Office
District of Columbia
555 Fourth Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-7229
Email: Stephen.DeGenaro@usdoj.gov

**From:** Matthew Strugar <matthew@matthewstrugar.com>
**Sent:** Monday, August 23, 2021 6:21 PM
**To:** DeGenaro, Stephen (USADC) <SDeGenaro@usa.doj.gov>
**Cc:** Patel, Sunita <patel@law.ucla.edu>; Courtney Bachman <bachman@law.ucla.edu>
**Subject:** NAMVETS v. VA

Stephen,

Thank you again for talking to me about this case. I am copying Sunita Patel and Courtney Bachman with the Veterans Legal Clinic at UCLA Law School. They've both recently entered appearances in this case.

You asked, with regard to the OIG's production, if my client could specify which OIG reports it was interested in and which of the underlying data referenced in this reports my client is interested in.

As I suspected during our call, the reports themselves are the three reports identified in our administrative appeal:

- January 30, 2018 - Management of Disruptive Patients Behavior in VA Medical Facilities;
- December 13, 2018 - Inadequate Governance of the VA Police Program at Medical Facilities; and
- June 17, 2020, VA Police Management System Needs Improvement

As far as data relied on in each report, I think it it can be broken down like this:

January 30, 2018 - Management of Disruptive Patients Behavior in VA Medical Facilities:
- List of facilities included in OIG review
- Documents related to noncompliance with VHA policy to inform patients about patient record flags and their right to request amendment or appeal of the designation (page ii of executive summary; and Issue 2 on pp. 12-13) This portion of the report discusses a draft policy that OIG approved and we would like a copy of the draft or final policy. It also discusses an exchange between OIG and VHA to change the notification policy from all patients with record flags to only patients with orders of behavioral restriction.
- Documents related to Issue 4, management of non-patient assaults (p. 15)
- The underlying records for Table 2 (p. 20). I think this would involve records for 1,025 patients involved in disruptive behavior incidents from July 1, 2015 to June 30, 2016. Any summary analysis, spreadsheets, data records compiled that include the justifications or narrative reasoning for flags or orders of behavioral restriction.
- Specific Documents:
    - Acting Deputy Under Secretary for Health for Operations and Management. "Meeting New Mandatory Safety Training Requirements using Veterans Health Administration's Prevention and Management of Disruptive Behavior (PMDB) Curriculum." Memorandum. November 7, 2013.
    - VHA Center for Engineering and Occupational Safety and Health, *Employee Threat Assessment Team: a Guidebook for Managing Risks Posed by the Disruptive and Threatening Employee*, April 2016.
- Records related to Employee Threat Assessment Teams

December 13, 2018 - Inadequate Governance of the VA Police Program at Medical Facilities
- The OS&LE reports used by OIG that assess the effectiveness of the inspection program for every VA medical facility w/police unit (referenced on page27)
- The documentation from the interviews with OSP and VHA employees about roles and responsibilities
- Underlying data from Table 1: Overview of Police Program Requirements Inspected by OS&LE
- The underlying data from discussion and cited examples regarding the 119 police chief and 88 medical facility director survey responses

June 17, 2020 - VA Police Management System Needs Improvement
- List of five facilities included in OIG review
- Documentation from the referenced testimonial and documentary information from the 90 VHA, OSP, OIT, and Office of Acquisition and Logistics, and Construction employees (discussed in Appendix B)
- Data from the responses of the online survey given to 139 VA facility police chiefs on March 5, 2019 and any data from the clarification follow ups (discussed in Appendix B)
- Documentation related to the referenced responses from DUSHOM

Let us know if you need to discuss this portion of the request further.

Thank you,
Matthew Strugar
--
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
323-696-2299

matthewstrugar.com

# Exhibit B

**UCLA** School of Law

VETERANS LEGAL CLINIC

COURTNEY BACHMAN
907 WESTWOOD BLVD.. #444
LOS ANGELES, CA 90024
C: (424) 235-5047
F: (424) 228-8295

October 11, 2021

Office of Counselor (024),
Department of Veterans Affairs,
810 Vermont Avenue NW,
Washington, DC 20420
ogcfoiaappeals@va.gov

**Re:     Freedom of Information Act Appeal—VHA 21-01105-F**

Dear FOIA Officer:

This is an appeal pursuant to 5 U.S.C. §552(a)(6)(A)(III)(aa), concerning the Veterans Health Administration (VHA) and VA Office of Security and Preparedness (OSP)'s (collectively the "Agencies") refusal to disclose certain documents within their control. The requested documents are records related to referenced Office of Inspector General (OIG) reports and two incident reports from West LA VAPD. The Agencies' refusal to disclose the requested items violates the federal Freedom of Information Act (FOIA or Act), 5 U.S.C. § 552 et seq., as amended.[1] This letter serves as a timely appeal pursuant to 5 U.S.C. § 552(a)(6), 36 C.F.R. § 200.11, and 7 C.F.R. § 1.8(a).

On November 11, 2020, NAMVETS ("requestors" or "we") requested documents under FOIA. On July 13, 2021, we received a fourth response to my request in a letter signed by Deana Marakowski. A copy of NAMVET's original FOIA request and the agency determination which is the subject of this appeal is attached for your convenience. (*See* Attachment A, November 11 FOIA request; Attachment B, July 13 Fourth Agency decision).

In the subsequent sections, NAMVETS appeals: the (i) inadequate search performed by OSP for data concerning the identified OIG reports, (ii) failure to provide segregable portions of the record for incident report 691201005_1, and (iii) improper withholding of incident report 691 IR20190527-000488. Requestors additionally call attention to improper categorizing of the fourth decision letter as "final."

Response to Line-Item D, b and c- information related to referenced OIG reports

Requestors challenge the adequacy of search for Line-Item D, b and c: information related to referenced OIG reports by OSP. In our November 11, 2020, FOIA request, we requested any records concerning notice, discussion of, and compliance with Department of Veterans Affairs OIG guidelines

---

[1] This appeal is only for these specific items and does not apply to any other line items related to our November 11, 2020, request, or our ongoing negotiations with VHA and OSP.

and recommendations issued between 2014 and 2020 in Part II, D 1-3 (now a-c). In our final search clarification letter on February 5, 2021, in an attempt to narrow and reach an agreement for production, parties provided the government a specific list of three OIG reports. (*See* Attachment C, February 5 NAMVETS Clarification letter, pg. 1-2).

In the third initial agency decision letter on April 22, 2021, VHA provided a final response but indicated that a response was still required from OSP for the above referenced OIG reports. In the fourth agency decision on July 13, 2021, OSP indicated that the review and response process was "*ongoing*," and "completion was expected *within 180 days* [of July 13, 2021,] therefore OSP rendered a *no records response*."  [emphasis added]. OSP then suggested submitting a new FOIA request for the requested information. Requestors assert that the search performed by OSP was inadequate because, while a response has been issued, the search has not been completed.

OSP's search for records related to the OIG reports is an inadequate search under FOIA. Under FOIA, an agency has an obligation to conduct an adequate search for responsive records. *Edelman v. SEC*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016); *Hamdan v. DOJ*, 797 F.3d 759, 770 (9th Cir. 2015). Meaning a search that is "reasonably calculated to uncover all relevant documents." *Hamdan*, 797 F.3d at 770 (quotation marks omitted); see *Edelman*, 172 F. Supp. 3d at 144. FOIA also states that agencies must "make reasonable efforts to search. . ." unless doing so "would significantly interfere with the operation of the agency's automated information system." 5 U.S.C. § 552(a)(3)(C); cf. id. § 552(a)(3)(B).

Here, OSP issued a no records response without completing the search. OSP has not yet conducted a search, required under FOIA, to reasonably uncover responsive records because OSP indicated that the search was ongoing and not yet complete. Likewise, the search would not be a significant interference with the agency because OSP indicated it would be complete in up to 180 days and that it is already ongoing. Additionally, if the search for responsive records to the listed OIG reports is completed and responsive records are found, OSP will be improperly withholding those records under 5 U.S.C. § 552(a)(4)(B) by issuing an incorrect no records response now. OSP issued an improper no records response as their search is still ongoing. Without completing their search for responsive records related to the OIG reports, the search is inadequate.

Response to Line Item 4- Incident Reports
*Incident Report 691201005_1*
In response to line item 4, VHA determined that report number 691201005_1 (Bates # 000766-00767) is protected in its entirety under FOIA exemptions 5, 6, and 7. VHA withheld this incident report in its entirety. Requestors appeal this determination for improper exemptions and failure to provide segregable portions of the record.

VHA withheld incident report 691201005_1 because it claims it is protected in its entirety under exemptions 5, 6, and 7. To imply that FOIA exemptions 5, 6, and 7 allows the withholding of the entire incident report merely because a portion may be exempt from disclosure, overlooks entirely the "segregable portions" clause of the Act. "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt. . . ." 5 U.S.C. § 552(b). When examining exemptions, those portions of a document which are not exempt must

be disclosed unless they are "inextricably intertwined" with the exempt portions. *Ryan v. Dept. of Justice*, 617 F. 2d 781, 790-91 (D.C. Cir. 1980)(applying this reasoning to exemption 5). The applicable section of the Code of Federal Regulations also includes the directive that:

> "In the event the records requested contain some portions which are exempt from mandatory disclosure and others which are not, the official responding to the request *shall insure that all nonexempt portions are disclosed*, and that all exempt portions are identified according to the specific exemption or exemptions which are applicable."

7 C.F.R. § 1.8(b) [emphasis added].[2]

Additionally, when exemptions are related to law enforcement proceedings, government must show how records "would interfere with a pending enforcement proceeding including whether release of information could cause some articulable harm. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978).

Here, NAMVETS anticipated the Agency's posture regarding some or all of the requested incident reports. In multiple phone calls with Deana Marakowski and Greg Holland, NAMVETS reiterated that they did not expect personally identifiable information to be included in incident reports or other provided materials. Requestors also explained that they did not require information that would be harmful to any party involved with the document, including the law enforcement officers and implicated veterans. In anticipation of exemptions, NAMVETS requested whatever information was available on the documents, that was not harmful or prohibited by law. Requestors believe that incident report 691201005_1 contains information available that is nor harmful or prohibited by law.

Additionally, VHA claims that the document cannot be provided because "the incident report remains an open law enforcement investigation." (Attachment B, pg. 29). VHA is required to provide further detail as to how releasing the incident report would interfere with a pending proceeding and articulate how releasing the information would cause harm. *NLRB v. Robbins Tire & Rubber Co.* VHA has yet to provide such explanation. Moreover, VHA should indicate whether the information that affects the open law enforcement investigation is segregable from the rest of the information on the incident report.

NAMVETS received twenty-three (23) incident reports with redactions of any exempt information and believes this incident report should be treated the same way. While exemptions 5, 6, and 7 may apply to some parts of the incident report, NAMVETS expects to be provided any segregable portions as described above, unless "inextricably intertwined."

---

[2] NAMVETS does not believe that all exempt portions were identified in enough detail by the specific exemption. A plaintiff in a FOIA case is entitled to an index of the documents and/or portions of documents that have been withheld by the defendant agency. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). While we are not in the litigation context yet, the Agency may consider providing such an index if it were to decide to continue withholding of any portions of the requested documents.

*Incident Report 691 IR20190527-000488*

Incident report 691 IR20190527-000488 was not produced because VHA reports that it no longer exists and has been deleted by the facility. Requestors believes failure to provide a deleted document constitutes an improper withholding of a document.

Under 5 U.S.C. § 552(a)(4)(B), federal district courts have "jurisdiction to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." In *DOJ v. Tax Analysts*, the Court held agency records are "improperly" withheld when an agency refuses to disclose requested records that are not protected by an applicable exemption. 492 U.S. at 151. Records are not considered "withheld" under § 552(a)(4)(B) if, before a request was filed, the records were "removed from the possession of the agency." *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. at 150. However, "an agency's FOIA obligations might extend to documents that are not in the agency's immediate custody or control . . . when there is evidence to suggest that the requested records are outside of the agency's control precisely because the agency has attempted to shield its records from search or disclosure under the FOIA." *Gawker Media, LLC v. U.S. Dep't of State*, 266 F. Supp. 3d 152, 159 (D.D.C. 2017); *cf. Judicial Watch v. U.S. Dep't of State*, No. 13-1363, 2016 U.S. Dist. LEXIS 62283, at *10-12 (D.D.C. May 4, 2016).

Requestor believes that the incident report should be disclosed because there is no indication that that it is protected by an agency exemption beyond personally identifiable information that can be redacted. Further, the incident report should not have been deleted, as it pertains to an interaction with law enforcement. If deleted, requestors believe there should still be metadata that can be searched for by the Agencies. FOIA requires a reasonable search by an agency for digital data and this search is reasonable as OSP has indicated that the records are already on a digital database. However, if the incident report was deleted completely and thus, is no longer in the possession of the agency, Requestor requests more information as to why the incident report was deleted and is no longer accessible. NAMVETS requires this information to assess whether the VAPD has attempted to shield its records from disclosure, as allowed in the *Gawker* case. NAMVETS requests a complete search for and production of incident report 691 IR20190527-000488 because it is being improperly withheld.

<u>Erroneous "Final" decision label</u>

Additionally, while the fourth initial agency decision is categorized as final, NAMVETS is still in negotiation with VHA and OSP. The fourth decision is erroneously listed as final. Almost a year after the original request, we await items from our original request, including line items III.A.4-searches of persons and property data, III.A.6-use of weapons data, III.F.1-5 Behavioral Record Flag Data, and III.G.1-2- Disruptive Behavior Committee Data.

Likewise, in the fourth decision letter, the line item entitled "Response to line item 1,2,3" which answers Part III, A lines 2 and 3 in the original FOIA request, is not a final answer and should not be considered closed. We are still discussing sampling and receiving spreadsheets with corrected fields with VHA and OSP as recently as last month.

<u>Conclusion</u>

NAMVETS appeals the inadequate search of responsive records related to the OIG reports, failure to provide segregable portions of incident report 691201005_1, and improper withholding of

incident report 691 IR20190527-000488. Additionally, the fourth decision is erroneously listed as final. We are still in negotiation for several items of our original request with the Agencies.

In the event this appeal is denied, the Agencies are required to provide a written response describing the reasons for the denial, names and titles of each person responsible for the denial, and the procedures required to invoke judicial assistance in this matter. 5 U.S.C. § 552(a)(6)(A)(ii), 7 C.F.R. § 1.8(d). As noted above, time is of the essence in this matter, if this appeal is denied or the Agency's response is not forthcoming within 20 working days, NAMVETS reserve their rights under FOIA to seek judicial review, including the award of attorney's fees.

Thank you for your assistance and prompt attention to this matter. If you would like to discuss further, you can reach me at (424) 235- 5047 and my email is bachman@law.ucla.edu. I await your prompt reply.

Respectfully,

Courtney Bachman
Sunita Patel
UCLA Veterans Legal Clinic

(on behalf of )
Damon Dorsey
Horace Walker
National Association of Minority Veterans (NAMVETS)

# Attachment A



VETERANS LEGAL CLINIC

907 WESTWOOD BLVD. #444
LOS ANGELES, CA 90024

November 11, 2020

FOIA Office for the Department of Veterans Affairs
Office of Operations, Security, and Preparedness (OSP)
VA Central Office
810 Vermont Avenue, NW
(007) VACO
Washington, DC 20420
vacoospfoia@va.gov

**Re: Request Under Freedom of Information Act**

To Whom It May Concern:

This letter constitutes a request ("Request"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for Records in the possession of the U.S. Department of Veterans Affairs ("VA"). The Request is submitted on behalf of the National Association of Minority Veterans (NAMVETS) and UCLA Veterans Legal Clinic ("Requesters"). Pursuant to the FOIA, please direct this Request to all appropriate offices and departments within the agency, including but not limited to the Office for the Veterans Health Administration, Department of Veterans Affairs Office of Operations, Security, and Preparedness (OSP), the Office of Security and Law Enforcement (OS&LE), Office of Research Management, Office of the Inspector General, and relevant Regional Veterans Integrated Service Network (VISN) personnel.

**Purpose of Request:**

Access to healthcare is vital now that the COVID-19 pandemic has taken the lives of more than 230,000 Americans.[1] For the veteran population alone, there have been at least 70,708 cases and 4,223 deaths linked to COVID-19.[2] The underlying comorbidity rates and unique experiences of veterans – including toxic exposure, chronic stress, PTSD, co-occurring disorders, and chronic pain – further puts veterans at risk of contracting the deadly virus.[3] As a result, the VA has taken important steps to reducing potential COVID-19 exposure and minimizing barriers to accessing first-class healthcare for veterans through measures such as telehealth appointments.

Not only does the COVID-19 pandemic pose a threat to medically vulnerable veterans, these veterans are also disproportionately likely to experience police violence.[4] The protests following the George Floyd killing have pushed police violence against Black Americans into the forefront of the

---

[1] *Covid in the U.S.: Latest Map and Case Count*, N.Y. TIMES (updated Nov. 9, 2020) https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

[2] Department of Veterans Affairs, *Department of Veterans Affairs COVID-19 National Summary*, U.S. DEPARTMENT OF VETERANS AFFAIRS (Nov. 11, 2020), https://www.accesstocare.va.gov/Healthcare/COVID19NationalSummary .

[3] *See, e.g.*, Abbie Bennett, *Veterans exposed to burn pits could be at higher risk for COVID-19*, CONNECTING VETS (March 27, 2020), https://connectingvets.radio.com/articles/veterans-exposed-to-burn-pits-could-be-at-risk-for-covid19.

[4] *See, e.g.*, Jasper Craven, *Abusing Those Who Served*, THE INTERCEPT ((July 8, 2019), https://theintercept.com/2019/07/08/veterans-affairs-police-va/; *Police Shootings Database 2015-2020*, WASH. POST (Oct. 15, 2020), https://www.washingtonpost.com/graphics/investigations/police-shootings-database/.

FOIA Office for the Department of Veterans Affairs
November 11, 2020

American consciousness. For some veterans, the VA Police Force has been another potential barrier to accessing the excellent care the VA provides.

In particular, the practices surrounding the Category I Record Flag System and Disruptive Behavioral Managment system the VA uses a system of flags and electronic reporting. These interventions involve the VA Police Force, VA Office of Inspector General officers, and sometimes municipal police departments. Although the stated laudable goals of the behavioral flag directive are to reduce veteran suicide and ensure employee safety, the threshold of behavior that leads to receiving a flag is very low; patients are often not informed of their right to contest the designation; and the flags are not reviewed on a regular basis as required by federal regulation.[5] Veterans report experiencing the systems as surveillance and profiling. Requestors are concerned that unhoused, Black, transgender, and disabled veterans are disproportionately flagged. Without more information, Requestors are limited in their ability to research and understand the reasons for potential disparities in record flags. Requestors are limited in their ability to inform the public or respond to members and clients.

A proposed bill, H.R. 7784, the VA Police Improvement and Accountability Act, by Representative Kathleen Hill (D-NY-14) marks an attempt to highlight police conduct at VA facilities. In order to be involved, veterans and their advocates require access to the information and documents regarding VA police practices, policies, and procedures. More information regarding VA policing is necessary to meaningfully engage in the democratic process of proposed VA police reform measures. The lack of current information limits the ability for any VA police reform to be effective.

### I.    Defined Terms

A.   "Records" includes all documentation or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, transcripts, video and audio recordings, emails, faxes, files, guidance, guidelines, directives, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, studies, and other similar information, dating back to the year 2012.

B.   "VA" refers to the U.S. Department of Veterans Affairs and any subcomponents of that department, including the Department of Veterans Affairs Office of Operations, Security, and Preparedness ("OSP") and the Office of Security and Law Enforcement (OS&LE).

C.   "VA Police" "VA Police Force" or "VAPF" refers to the law enforcement agency of the VA, including all police officers, executive officers, detectives, and other staff members, employed for the purposes of law enforcement by the VA nationwide. Where applicable, OIG Officers, university police, or private security utilized in VAPF operations are within the scope of this Request.

D.   "VA Facilities" refers to all property within the jurisdiction of the Department of Veterans Affairs, nationwide, unless narrowed by the terms of this Request.

E.   "Vulnerable Populations" includes, but is not limited to, undocumented veterans, women veterans, LGBTQIA+ veterans, transgender veterans, disabled veterans, veterans with mental health diagnosis or complex trauma, unhoused veterans, and non-white veterans. "Non-White" veterans includes biracial and White Hispanic veterans.

---

[5] E.g., Department of Veterans Affairs, Office of the Inspector General, *Management of Disruptive Patient Behavior at VA Medical Facilities* (2013).

FOIA Office for the Department of Veterans Affairs
November 11, 2020

## II.   REQUEST FOR INFORMATION AND RECORDS

A. Any and all Records concerning the behavioral record flag policies and procedures utilized by the VAPD and VHA staff including, but not limited to:
   1. Policies and procedures related to "disruptive behavior flags;"
   2. Each Veterans Integrated Service Networks' (VISNs) guidelines and procedures outlining the process for authorizing placement of record flags, notifying veterans of the flags, and the process for appealing and removing them;
   3. VA and VHA definitions and applications of "disruptive behavior" as applied in each VISN and any uniform definitions across the VA, including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).[6]

B. Any and all Records concerning Disruptive Behavior Committees/Boards (DBC/Bs) policies and procedures including, but not limited to records related to:
   1. issuance of Orders of Behavioral Restriction or placement of Category I or Category II record flags; and
   2. reevaluation of previously issued Red Flags by the DBC/B.

C. Any and all records concerning the placement, use, and outcomes of Panic Alarms activation by VA staff and VA police, including, but not limited to:
   1. VA Police policies and procedures relating to the activation of Panic Alarms, including but not limited to stationary, electronic personal, and computer-based Panic Alarms; and
   2. VA guidelines and procedures for Panic alarm testing.
   3. arrests made following the use of a panic alarm or security alarm triggered by a staff member.

D. Any and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020 including, but not limited to:
   1. Implementation of recommended designated manager of the records management systems for the VAPF;[7] and
   2. Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement;[8] and
   3. Development and implementation of a plan for resolving issues with the police records management system.[9]

## III.   RECORDS RELATED TO DATA AND STATISTICS

A. **National and Regional Data and Statistics:** Requester seeks any and all Records containing data or statistics prepared, compiled, or maintained by the VA or any agency

---

[6] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *Management of Disruptive Patient Behavior at VA Medical Facilities* (2013).
[7] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *VA Police Management System Needs Improvement* (2020)
[8] Id.
[9] Id.

FOIA Office for the Department of Veterans Affairs
November 11, 2020

or subdivision thereof, pertaining to the VA Police, beginning in year 2010 to the present. Requesters seek such national, State, or VISN Records. Requesters seek such Records encompassing information on and off VA property. Such Records should include information related to numbers of police officers, citations, arrests (on and off VA property; subject to a judicial warrant and warrantless), searches of persons and property, use of force, weapons use, numbers of complaints against VAPF officers.

B. **District Court Violation Notices:**
   1. Records that contain data or statistical information on the total amount of District Court Violation Notices VA Police issued in each state, VISN, or facility.
   2. Records that contain data or numerical information for District Court Violation Notices involving VA Police officers in connection with local, state, other federal, OIG, or university police.

C. **Vehicle Removal:**
   1. Records that contain data or statistical information on the total vehicles removed from VA Property.
   2. Records that contain data or numerical information for vehicle removal involving VA Police officers in connection with local, state, other federal, OIG, private security, or university police.

D. **Traffic Enforcement:**
   1. Records that contain data or statistical information on citations for traffic or parking violations on or around VA medical facility property in each state, whether issued by VA Police,other authorized law enforcement or private security.
   2. Records that contain data or numerical information for traffic enforcement involving VA Police officers in connection with local, state, other federal, OIG, or universitypolice.

E. **Panic Button Data:**
   1. Records that contain data or statistical information on the usage of Panic Alarms by VA staff or VA police in VA facilities in each state.
   2. Records that contain data or statistical information on the testing of Panic Alarms in each state, VISN, and/or Facility.
   3. Records that contain data or numerical information for panic buttons involving VA Police officers in connection with local, state, other federal, OIG, or university police.

F. **Behavioral Record Flag Data**
   1. Records that contain data or statistical information on the issuance of Behavioral Red Flags and/or Patient Record Flags to veterans who are members of Vulnerable Population in VA Facilities in each state, VISN, and/or Facility.
   2. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that currently have Behavioral Red Flags and/or Patient Record Flags
   3. Records that contain data or statistical information on the number of veterans who are members of Vulnerable Populations that have had their Behavioral Red Flags and/or Patient Record Flags removed.
   4. Records that contain data or numerical information for Behavioral Record Flags involving VA Police officers in connection with local, state, other federal, OIG, or university police.

4

FOIA Office for the Department of Veterans Affairs
November 11, 2020

    5. Previously compiled data, records, or other information relied upon by the
      a. Office of the Inspector General
      b. Government Accountability Office
      c. Office of Security and Law Enforcement
      d. Office of Operations, Security, and Preparedness.

G. **Disruptive Behavior Committee/Board Data**
    1. Records that contain data or statistical information on the attendance of DBC/Bs in VA Facilities in each state, VISN, and/or Facility.
    2. Records that contain data or statistical information on the issuance of Orders of Behavioral Restriction (OBR).

H. **Uniform Monthly Crime Reports** for VA Facilities in Ohio, New York, Florida, and California from 2010 to present.

**Fee Waiver**

    As a qualifying "educational institution," requester UCLA School of Law Veterans Legal Clinic is entitled to a waiver of search fees. *See* 38 C.F.R. §1.561(e)(1). FOIA regulation requires such fee waiver for an "institution of professional education.. . . which operates a program or programs of scholarly research." *Id.* 38 C.F.R. §1.561(e)(1). To qualify for this waiver, the FOIA Officer must also decide the records are sought to "further scholarly research goal of the instituion" and not in the commergial interest of the instiution or the. Individual goal of the requestor. UCLA School of Law offers J.D. and LLM programs to students who seek professional licensing as lawyers and advocates. As part of an R1 instiution, faculty and students publish rigorous scholarly research in many fields. In addition, the records obtained here will be used in scholarly pursuits of the clinic faculty who publish reports and scholarly research. The Veterans Legal Clinic also uses its research in news reports and media interviews. UCLA School of Law has no commercial interest and requesters have no individual goals in making the request.

    In addition, a fee waiver is appropriate when "(1) the disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and (2) is not primarily in the commercial interests of the requester." 5 U.S.C. § 552(a)(4)(A)(iii) (numbers added). "[F]ee-waiver applications are to be 'liberally construed' in favor of finding that requesters meet FOIA's two-prong test." *Nat'l Sec. Counselors v. United States Dep't of Justice,* 848 F.3d 467, 473 (D.C. Cir. 2017). The Department of Veterans Affairs ("VA") has identified six factors for when the conditions for a fee waiver are met. *See* 38 C.F.R. § 1.561(n). As explained below, all six of these factors support a fee waiver here.

    To begin, this request is in the "public interest." As a request related to potential abuse of authority by VA police, the Request satisfies the first part of the test because "the subject of the requested records concerns the operations or activities of the government." 38 C.F.R. § 1.561(n)(3)(i) (internal quotation marks omitted).

    Second, the "informative value of the information to be disclosed" serves the "public interest." 38 C.F.R. § 1.561(n)(3)(ii). That is so because the records sought would illuminate the events and policies surrounding the VAPF in a historic moment when scrutiny and concern regarding racialized policing is at the forefront of public attention. In addition, the documents aid the democratic process. They will be used by NAMVETS, veterans' organizations and advocates to influence pending legislation and Congressional hearings related to VA policing. And because much of the requested information is not now "in the public domain," something "new would be added to the public's understanding" by the release records. *Id.*

    Third, "disclosure of the requested information will contribute to [the] public understanding," and, thus, the "public interest." 38 C.F.R. § 1.561(n)(3)(iii). To facilitate that understanding, UCLA

FOIA Office for the Department of Veterans Affairs
November 11, 2020

School of Law Criminal Justice Program and Veterans Legal Clinic have both agreed to digitally host the records sought under I.D(c)-(i) of this Request. The Criminal Justice Program, in particular, "produces timely, impactful and collaborative research in diverse areas of criminal justice."[10] Thus, with their assistance, "a reasonably broad audience of persons interested in" VA police policies will gain access to the records requested here. 38 C.F.R. § 1.561(n)(3)(iii).

Fourth, the "contribution to [the] public understanding" offered by this Request is "significant." 38 C.F.R. § 1.561(n)(3)(iv). As mentioned above, much of the information requested here is not in the public domain. Thus, upon its disclosure, the public stands to gain important new insights into VA Police policies beyond "the level of [] understanding existing prior to the disclosure." *Id.* Accordingly, this request is in the "public interest" and, therefore, satisfies the first prong of 5 U.S.C. § 552(a)(4)(A)(iii).

Fifth and sixth, Requester has not filed this request for any "commercial interest," 38 C.F.R. § 1.561 (n)(4)(i)-(ii), because they do not seek to use any of the requested information to "further[] his . . . commercial, trade, or profit interests," 38 C.F.R. § 1.561(b)(2).

Thus, this Request satisfies both prongs of 5 U.S.C. § 552(a)(4)(A)(iii). Requesters are therefore, entitled to a fee waiver.

**Requesters**

National Association of Minority Veterans (NAMVETS) works to ensure that all veterans of color have the information, resources and support to improve the quality of their lives and the condition of their communities. A key goal is ensuring that vulnerable veterans have a voice and say in legislation impacting them and their communities. NAMVETS has had a longstanding concern for potential mistreatment of their members by VA Police. NAMVETS will be better able to ensure all veterans of color have the access to information they need to make meaningful contributions to Congressional legislation, and help maintain the long history of quality care and support from VA facilities.

UCLA Veterans Legal Clinic provides educational opportunities to UCLA law students and holistic legal services and advocates on behalf of vulnerable veterans in Los Angeles, California. A goal of the Veterans Legal Clinic is ensuring that all veterans have access to the quality healthcare provided by VA facilities. To this end, the Veterans Legal Clinic provides educational information to veterans on legislative measures and processes. Further, it provides strategic research to clients and faculty pursue publication of veterans related scholarship and public education reports.

**Expedited Processing**

Expedited processing of this request is required because there is a "compelling need" for the information. 5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need" is established when there exists an "urgency to inform the public concerning actual or alleged Federal Government activity," when the requester is a "person primarily engaged in disseminating information," 28 C.F.R. § 16.5(e)(1)(ii), and also when there exists "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv).

The first reason the requested records present a "compelling need" is to engage with the urgent police reform movement to curtail police violence and excessive surveillance, primarily against Black people. Currently pending legislation in the U.S. Congress presents a timely opportunity for VA police reform. In July of 2020 Representative Katherine Rice (D-NY-4) introduced the VA Police Improvement and Accountability Act,[11] which will aims to "improve the staffing, transparency, and accountability of

---

[10] UCLA SCHOOL OF LAW CRIMINAL JUSTICE PROGRAM WEBPAGE, available at
https://law.ucla.edu/centers/criminal-justice/criminal-justice-program/about.
[11] H.R. 7784

FOIA Office for the Department of Veterans Affairs
November 11, 2020

the law enforcement operations of the Department of Veterans Affairs, and for other purposes."[12] The proposed bill requires the VA to designate an employee at VA facilities to oversee the police force at those facilities, document their actions and procedures, and create transparency. Releasing data and other information maintained by the VA and other government offices promotes the bill's intent of creating more transparency surrounding VA police procedures and practices.

In additional to the federal legislation, many municipalities engage in police operations and information sharing with VA police through agreements and informal relationships. Very little information on the efficacy or potential harms is available to historically marginalized veterans. Without further information regarding the VA police practices, veterans and their advocates are limited when engaging in the public debate or engage their elected representatives, VA medical directors, and local police leadership. In addition, during this time of unprecedented need for access to the high-quality healthcare the VA provides veterans, any potential barrier to that access is of exceptional public interest.[13] Thus, Requestors show "urgency to inform the public concerning actual or alleged Federal Government activity."

Requestors likewise satisfy the requirement of "primarily engaged in dissemination information." By its nature, a university such as UCLA is engaged in the collection, analysis, and dissemination of information to the public, and the UCLA School of Law includes several institutes and programs that serve the role of disseminating high-quality research reports relevant to veterans, Black people, and justice-involved individuals. NAMVETS disseminates and shares information with its members, primarily minority veterans, across the country. The Requestor need not be a member of the media or have the sole occupation of dissemination of information to satisfy this requirement.

The Request also satisfies the "compelling need" standard through the alternative test as "a matter of widespread and exceptional medial interest" affecting "public confidence." In the current moment, police reform and violence against historically marginalized groups has taken center stage. The Request allows the Requestors to spotlight police conduct towards vulnerable veterans. NAMVETS is particularly well positioned to inform veterans about the practices of the VA Police Force and work with VA officials to implement meaningful reform, not only measures of transparency and oversight. Several media accounts of harm and misconduct by VA police are suggestive of the widespread interest specifically in the VA Police.[14]

Finally, in addition to the media interest surrounding police reform, whether VA policing interferes with veterans' access to health care during the COVID-19 pandemic presents another matter of "exeptional interest." For the veteran population alone, there have been at least 70,708 cases and 4,223 deaths linked to COVID-19.[15]  The combination of the two concerns presents "possible questions about the government's integrity which affect public confidence."

For these reasons, this Request satisfies the requirements of expedited processing.

**Form of Production**

Requesters ask that any Records that exist in electronic form be provided in electronic format via electronic mail or on a compact disc. If Records cannot be provided in electronic form or in hard copy, Requesters seek the opportunity to view the Records in the VA's offices. Given the COVID-19 pandemic, Requesters seek the opportunity to either review Records in VA offices at a later date, when businesses are open, or alternative means of review to be established.

---

[12] *Id*.
[13] 28 C.F.R. § 16.5(d)(1)(iv).
[14] *See* 28 C.F.R. § 16.5(e)(3) Jasper Craven, *Abusing Those Who Served*, Intercept (Jul. 8, 2019, 7:00 AM), https://theintercept.com/2019/07/08/veterans-affairs-police-va/.
[15] Department of Veterans Affairs, *Department of Veterans Affairs COVID-19 National Summary*, U.S. DEPARTMENT OF VETERANS AFFAIRS (Nov. 11, 2020), https://www.accesstocare.va.gov/Healthcare/COVID19NationalSummary .

FOIA Office for the Department of Veterans Affairs
November 11, 2020

      Finally, pursuant to the applicable regulations and statute, Requesters expect the determination of this Request for documents within twenty business days. See 5 U.S.C. § 552(a)(6)(A)(i). If this Request is denied in whole or in part, Requesters ask that VA justify all deletions by reference to specific exemptions to FOIA. Requesters expect the release of all segregable portions of otherwise exempt material. Requesters reserve the right to appeal a decision to respond without any information.

      Should you have any questions in processing this Request, or should you require clarification on the scope of the request, contact Professor Sunita Patel via email at patel@law.ucla.edu, by mail at the address below or by telephone at (310)-206-3151.

Please furnish all applicable Records to:
      907 Westwood Blvd., #444
      Los Angeles, CA 90024

Thank you for your assistance and prompt attention to this matter.

Sincerely,

Sunita Patel
Jaz Buckley
Emily Olivencia-Audet
UCLA Veterans Legal Clinic

Damon Dorsey
Horace Walker
National Association of Minority Veterans (NAMVETS)

cc:

FOIA Office for the Veterans Health Administration
VA Central Office
810 Vermont Avenue, NW
(10P2Cl) VACO
Washington, DC 20420
vhafoia2@va.gov

FOIA Office for the Department of Veterans Affairs
Office of Security and Law Enforcement (OS&LE)
VA Central Office
810 Vermont Avenue, NW
Washington, DC 204020

# Attachment B



**Veterans Health Administration**
Information Access and Privacy (105HIG)
810 Vermont Avenue NW
Washington, DC 20420

**Re:  FOIA Request:  VHA 21-01105-F**

July 13, 2021

Jeanne Nishimoto
nishimoto@law.ucla.edu

Sunita Patel
UCLA School of Law Veterans Legal Clinic
907 Westwood Blvd.
Los Angeles, CA, 90024
patel@law.ulca.edu

Dear Ms. Nishimoto:

The Veterans Health Administration is issuing a fourth and final initial agency decision on behalf of the Department of Veterans Affairs in response to UCLA School of Law's letter on behalf of your client National Association of Minority Veterans (NAMVETS) dated November 11, 2020 submitted under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  It is noted that the November 11, 2020 letter was sent to the Department of Veterans Affairs, Office of Security and Preparedness (OSP) and the Veterans Health Administration (VHA).  Within your initial request you sought:

A.  Any and all records concerning the behavioral record flag policies and procedures utilized by the VAPD and VHA staff including but not limited to:
1. Policies and procedures related to "disruptive behavior flags";
2. Each Veterans Integrated Service Networks' (VISN) guidelines and procedures outlining the process for authorizing placement of records flags, notifying Veterans of the flags, and the process for appealing and removing them;
3. VA and VHA definitions and applications of "disruptive behavior" as applied in each VISN and any uniform definitions across the VA, including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).

B.  Any and all records concerning Disruptive Behavior Committee/Boards (DBC/Bs) policies and procedures including, but not limited to records related to:
1. Issuance of Orders of Behavioral Restrictions or placement of Category 1 or Category II record flags; and
2. Reevaluation of previously issued Red Flags by the DBC/B.

C. Any and all records concerning the placement, use, and outcomes of Panic Alarms activation by VA staff and VA police, including, but not limited to:
1. VA Police policies and procedures relating to the activation of Panic Alarms, including by not limited to stationary, electronic personal, and computer-based Panic Alarms; and
2. VA guidelines and procedures for Panic alarm testing;
3. Arrest made following the use of a panic alarm or security alarm triggered by a staff member.

D. Any and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs OIG guidelines and recommendations issued between 2014 and 2020 including, but not limited to:
1. Implementation of recommended designated manager of the records management systems for the VAPF;
2. Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement;
3. Development and implementation of a plan for resolving issues with the police records management system.

**RECORDS RELATED TO DATA AND STATISTICS**

A. **National and Regional Data and Statistics:  Any and all records** containing data or statistics prepared, compiled, or maintained by the VA or any agency or subdivision thereof, pertaining to the VA Police, beginning in the year **2010 to the present**.  Requesters seek such national, State, or VISN Records.  Requester seeks such Records encompassing information on and off VA property.  Such Records should include information related to numbers of police officers, citations, arrests (on and off VA property; subject to a judicial warrant and warrantless), searches of persons and property, use of force, weapons, use, numbers of complaints against VAPF officers.

B. **District Court Violation Notices**:
1. Records that contain data or statistical information on the total amount of District Court Violation Notices VA Police issued in each state, VISN, or facility.
2. Records that contain data or numerical information for District Court Violation Notices involving VA Police officers in connection with local, state, and other federal, OIG or university police.

C. **Vehicle Removal**:
1. Records that contain data or statistical information on the total vehicles removed from VA property.

2. Records that contain data or numerical information for vehicle removal involving VA Police officers in connection with local, state, other Federal, OIG, private security, or university police.

D. **Traffic Enforcement**:
1. Records that contain data or statistical information on citations for traffic or parking violations on or around VA medical facility property in each state, whether issued by VA Police, other authorized law enforcement or private security.
2. Records that contain data or numerical information for traffic enforcement involving VA Police officers in connection with local, state, other federal, OIG, or university police.

E. **Panic Button Data**:
1. Records that contain data or statistical information on the usage of Panic Alarms by VA staff or VA police in VA facilities in each state.
2. Records that contain data or statistical information on the testing of Panic Alarms in each state, VISN, and/or Facility.
3. Records that contain data or numerical information for panic buttons involving VA Police officers in connection with local, state, or other federal, OIG, or university police.

F. **Behavioral Record Flag Data**:
1. Records that contain data or statistical information on the issuance of Behavioral Red Flags and/or Patient Record Flags to Veterans who are members of Vulnerable Population in VA Facilities in each state, VISN, and/or Facility.
2. Records that contain data or statistical information on the number of Veterans who are members of Vulnerable Populations that currently have Behavioral Red Flags and/or Patient Record Flags.
3. Records that contain data or statistical information on the number of Veterans who are members of Vulnerable Populations that currently have Behavioral Red Flags and/or Patient Record Flags removed.
4. Records that contain data or numerical information for Behavioral Red Flags involving VA Police officers in connection with local, state, other federal, OIG or university police.
5. Previously compiled data, records, or other information relied upon by the:
   a. Office of the Inspector General
   b. Government Accountability Office
   c. Office of Security and Law Enforcement
   d. Office of Operations, Security and Preparedness.

G. **Disruptive Behavior Committee/Board Data**
1. Records that contain data or statistical information on the attendance of DBC/Bs in VA Facilities in each state, VISN, and/or Facility.
2. Records that contain data or statistical information on the issuance of

Orders of Behavior Restrictions (OBR)

H. **Uniform Monthly Crime Reports** for VA Facilities on Ohio, New York, Florida, and California for 2010 to present.

On November 25, 2020 a conference call was held with Michael Sarich, Director, VHA FOIA Office and Deana Marakowski, VHA FOIA Officer along with Sunita Patel and Courtney Bachman of UCLA School of Law and Matthew Strugar of NAMVETS. This call was held at the request of UCLA School of Law in an effort to better understand the clarification VA was seeking.  During this call it was decided that VHA would consult with OSP to determine where responsive records may be retained. UCLA School of Law also asked VA to provide the names of reports that are available in response to their request.  On December 11, 2020 VHA received an email from UCLA School of Law further explaining their request as a result of the November 25, 2020 conference call.  In consultation with OSP, VHA was advised that there are not specific reports; however, there are databases in which information can be retrieved.  Some of these databases are at the facility level while others are retained within VA Central Office VHA relayed this information to UCLA School of Law within an updated VHA clarification letter dated December 17, 2020.  This letter further advised that your client, NAMVETS needed to provide the data fields they require, and VA would then respond based on the data it retains.

On December 22, 2020 VHA received a letter from UCLA School of Law rescoping and modifying their original FOIA request on behalf of their client NAMVETS. It is noted that within this letter VHA was advised that a search for responsive records within VHA is only required within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  In additional a search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.

On January 7, 2021, VHA sent UCLA School of Law an updated clarification letter and captured the modified data NAMVETS seeks along with advising of additional clarification required. It is noted that although UCLA School of Law requested sample data, VA is not providing preliminary information as we remain in the clarification process of this request.

On February 5, 2021 UCLA School of Law submitted its final response to VA's request for clarification.  VHA documented and accepted these changed under the title "Search Criteria Modification Final".

A. Any and all Records concerning the behavioral record flag policies and procedures utilized by the VAPD and VHA staff including but not limited to:

1. Policies and procedures related to "disruptive behavior flags";
   Update - VHA Directive 2010-053, "Patient Record Flags" (expired but not rescinded)

2. Each Veterans Integrated Service Networks' (VISN) guidelines and procedures outlining the process for authorizing placement of records flags, notifying Veterans of the flags, and the process for appealing and removing them.
   Update - VISNs comply with national guidance, and national requirements are identified in VHA Directive 2010-053.
   **Search Criteria Modification** – Request a search within OSP for any additional response records for this line item.

3. VA and VHA definitions and applications of "disruptive behavior" as applied in each VISN and any uniform definitions across the VA, including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).
   Update – VHA standard use definitions of "disruptive behavior" are found in VHA Directive 2012-026.
   **Search Criteria Modification:**  Request a search for responsive records for the definition of "disruptive behavior" within the  VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.
   **Search Criteria Modification Final:**  UCLA School of Law additionally request records concerning the definition of "disruptive behavior" related to the memorandum: Acting Deputy Under Secretary for Health for Operations and Management. "Meeting New Mandatory Safety Training Requirements using Veterans Health Administration's Prevention and Management of Disruptive Behavior (PMDB) Curriculum." Memorandum. November 7, 2013.

B. Any and all records concerning Disruptive Behavior Committee/Boards (DBC/Bs) policies and procedures including, but not limited to records related to:

1. Issuance of Orders of Behavioral Restrictions or placement of Category 1 or Category II record flags;
   **Search Criteria Modification:**  Request a search for responsive records within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.  It is noted that the search criteria to be applied will be for "Disruptive Behavior Committee/Boards (DBC/Bs) policies and procedures pertaining to Issuance of Orders of Behavior Restrictions or placement of Category 1 or Category II record flags". The search time period will be for the most recent policies and procedures.  If you do not concur, please advise.
   **Search Criteria Modification Final:**  Search time period is Calendar Year January 1, 2014 to December 31, 2020
2. Reevaluation of previously issued Red Flags by the DBC/B.

**Search Criteria Modification:**  Request a search for responsive records within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System. It is noted that the search criteria to be applied will be for "Disruptive Behavior Committee/Boards (DBC/Bs) policies and procedures pertaining to Reevaluation of previously issued Red Flags by the DBC/B".
**Search Criteria Modification Final**:  Search time period is Calendar Year January 1, 2014 to December 31, 2020

Please be advised in regard to line item B UCLA School of Laws original FOIA request dated November 11, 2020 contains only 2-line items as identified in this letter.  It is noted that in your February 5, 2021 final clarification letter there is reference to B. 1-3. VA interpretation is that reference to B. 3. is typographical error and was intended to reflect B. 1-2.

C.  Any and all records concerning the placement, use, and outcomes of Panic Alarms activation by VA staff and VA police, including, but not limited to:

1.  VA Police policies and procedures relating to the activation of Panic Alarms, including by not limited to stationary, electronic personal, and computer-based Panic Alarms;
    Update - OSP/OSLE has the national SOP for monthly panic alarm testing. National SOP 10 that covers Police RCS#5252.35.c.10
2.  VA guidelines and procedures for Panic alarm testing;
    **Search Criteria Modification:**  Request a search for responsive records within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.

3.  Arrest made following the use of a panic alarm or security alarm triggered by a staff member.
    **Search Criteria Modification:**  Request a search for responsive records within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.

D. Any and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs OIG guidelines and recommendations issued between 2014 and 2020 including, but not limited to:
**Search Criteria Modification Final:**  The relevant OIG guidelines between 2014 and 2020 are: OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., HEALTHCARE INSPECTION: MANAGEMENT OF DISRUPTIVE PATIENT BEHAVIOR IN VA MEDICAL FACILITIES (Jan. 30, 2018), OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., INADEQUATE GOVERNANCE OF THE VA POLICE PROGRAM AT MEDICAL

FACILITIES (Dec. 13, 2018), and OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., VA POLICE MANAGEMENT SYSTEM NEEDS IMPROVEMENT (Jun. 17, 2020).

Specifically, this includes but is not limited to, any data collected or used for "Issue 2: Patient Record Flag Placement, Follow-up, and Notification," and the aggregate data by facility compiled for Table 1: Facilities' Policies, Assessments, and Committees and Table 2: Electronic Health Record Review Results in the January 30, 2018 report.

UCLA School of Law request any data collected from the above cited reports concerning any aspect of vulnerable populations. "Vulnerable Populations" include, but is not limited to, undocumented veterans, women veterans, LGBTQIA+ veterans, transgender veterans, disabled veterans, veterans with mental health diagnosis or complex trauma, unhoused veterans, and non-white veterans. "Non-White" veterans include biracial and White Hispanic veterans.

1. Implementation of recommended designated manager of the records management systems for the VAPF;
   Update - OIG report Issued this year.

2. Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement;
   Update – this line item will be addressed by OSLE within Central Office.

3. Development and implementation of a plan for resolving issues with the police records management system.
   Update – This line item will be addressed by OSLE within Central Office. Can you please identify the OIG guidelines your client has requested information on for 2014 and 2020?  VA OSP cannot design a thorough search without this additional information.  For example, can your client provide relevant search terms to be applied.  Can your client identify the specific reports and the agency component(s) identified in the reports required to take-action as a result of recommendations rendered by the OIG?
   **Search Criteria Modification** – It is noted that this line item requires clarification as stated in VHA's December 22, 2020 letter.  No further action will be taken on this line item until clarification is received.
   **Search Criteria Modification Final**:  See above noted under D.
   Update – this line item will be addressed by OSLE within Central Office

## RECORDS RELATED TO DATA AND STATISTICS

A. **National and Regional Data and Statistics:**  Any and all records containing data or statistics prepared, compiled, or maintained by the VA or any agency or subdivision thereof, pertaining to the VA Police, beginning in the year 2010 to the present.  Requesters seek such national, State, or VISN Records. Requester seeks such Records encompassing information on and off VA

property.  *Such Records should include information related to numbers of police officers, citations, arrests (on and off VA property; subject to a judicial warrant and warrantless), searches of persons and property, use of force, weapons, use, numbers of complaints against VAPF officers.*

**Search Criteria Modification Final**: Seeking data and statistics that have been prepared, compiled, or maintained by the VA from 2010 to the present. Search is to include data and information inclusive of records containing aggregated data and statistics is to include responsive records in the custody of the VHA Central Office (or OSP Central Office, when applicable West LA Veterans Affairs campus and the Chalmers P. Wylie Ambulatory Care Center (Columbus, Ohio) and as identified below.

1. The number of police officers
   **Search Criteria Modification**:  It is noted that your client seeks data and statistics maintained for police officers hired or employed, aggregated by VISN and facility and that your client seeks information beyond the total number of police officers employed.  Please be advised that this line item requires additional clarification.  Please provide the search term required for statistical information.  For example, are you seeking information to include the race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information?  It is noted that upon receipt of additional clarification a search will be required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.  No further action will be taken on this line item until search term for the data and statistics you seek are defined.  It is noted that the search time period requested for this required information is 2010 to the present.
   **Search Criteria Modification Final:**
   Based on UCLA School of Law clarification in the preceding paragraph, you seek data and statistics maintained at the Central Office level (including OSP/OSLE).  You require any records reflecting the total number of police officers by VISN and facility. This request includes data and statistics maintained for police officers hired or employed, aggregated by VISN and facility.  Statistical information includes race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information. If the VHA or OSP/OSLE Central Office do not maintain such information, we request this information for the West LA and Chalmers VA facilities.

2. The number of citations –
   **Search Criteria Modification**:  Request the OSP data available to include the search terms "Number Issued", "Year Issued", "Station", and "VISN". You have now requested a means of identification for the station.  Please be advised VHA Central Office can provide the Station, Station Number and applicable VISN.  In addition, you seek this information for the VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and

VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.  It is noted that the search time period requested for this required information is 2010 to the present.

**Search Criteria Modification Final:** You have accepted the search criteria modification provided by VHA. To the extent that you later determine OSP/OSLE or the VHA Central office maintains data inclusive of other items noted in the Part I.E of the November 11 request, such as race, age, gender, gender identity, LGBTQ identification, disability, etc. You reserve the right to re-open this item for further search and production.

3. **The number of arrests (on and Off VA property subject to judicial warrant and warrantless)**.
    Update - OSP is working to address what data is available within OSP Central Office.
    **Search Criteria Modification**:  Your client seeks information within all VA police operations, including those in collaboration with OIG or local police or within outpatient clinics and Vet Centers.  This information is required for VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System. It is noted that the search time period requested for this required information is 2010 to the present.

4. **The number of searches of persons and property?**
    Update – OSP has advised that there is data available at the facility level. The system does not populate specifics of an incident.  It is noted that individual records would need to be opened for data retrieval.
    **Search Criteria Modification:**  A search is required within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System. Further to the extent these facilities or VISN offices do not maintain electronic or digitized information, your client seeks summaries of information stored in spreadsheets, databases, individual files, or other methods of maintaining the requested information.  It is noted that the search time period requested for this required information is 2010 to the present.

5. **Number of encounters requiring use of force.**
    Update – OSP can retrieve Central Office level data for last 4 years – Data would include "number issued", "year issued", "station" and "VISN".   If NAMVETS requires any additional data fields (more specific data), the

request would need to be addressed at the facility level.  It is also noted that more detailed information requires the opening of each admin report.
**Search Criteria Modification:**  Request the OSP and VHA Central Office data available to include the search terms "Number Issued", "Year Issued", "Station", and "VISN".  You seek this information for the VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System. It is noted that the search time period requested for this required information is 2010 to the present.
**Search Criteria Modification Final:** You have accepted the search criteria modification provided by VHA. To the extent that you later determine OSP/OSLE or the VHA Central office maintains data inclusive of other items noted in the Part I.E of the November 11 request, such as race, age, gender, gender identity, LGBTQ identification, disability, etc. you reserve the right to re-open this item for further search and production.

6. **Number of encounters requiring use of weapons.**
   Update - VA is required to file a Police Incident Report when weapons are drawn.  Retrieval of data would require opening and searching for the data within each report at the facility level.
   **Search Criteria Modification:**  To the extent available provide the data and statistics (e.g. raw numbers) for Police Incident Reports when weapons are drawn that are maintained at the central office level (including OSP/OSLE or VHA Support Service Center).  A search is required within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.  To the extent response requires opening the individual reports at the facilities, your client requires summaries of the information stored in spreadsheets, databases, individual files, or other methods of maintaining the requested information.  It is noted that the search time period requested for this required information is 2010 to the present.

7. **Use – Please clarify the meaning or use of the word Use?**
   **Search Criteria Modification:**  UCLA School of Law advises that this is an erroneous line item and does not require a response.

8. **The number of complaints against VAPF Officers?**
   Update – Records would be at the facility level and would be retained by the Office of Human Resources.

**Search Criteria Modification:**  NAMVETS requires any total numbers or summary statistics or information available within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.  Please advise if the summary statistics is data related to the race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information?  It is noted that the search time period requested for this required information is 2010 to the present.

**Search Criteria Modification Final:**
you request any total numbers or summary statistics or information available concerning the number of complaints against VAPF Officers generally. To the extent this information is available, you request summary statistics related to race, ethnicity, gender, age, disability status, and/or LGTBQIA+ status

B. **District Court Violation Notices**:

1. Records that contain data or statistical information on the total amount of District Court Violation Notices VA Police issued in each state, VISN, or facility.
**Search Criteria Modification:**  Search will be conducted within OSP Central Office.  The time period requested is 2010 to present.  Request the following data fields "UNDCVN", "number", "VISN, "Facility, "Year", and "month", and race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.
**Search Criteria Modification Final:**  UCLA School of Law accepts the search criteria modification provided by VHA. You request the data fields "UNDCVN","number","VISN, "facility", "year", and "month", and to the extent this information is available, race, ethnicity, gender, age, disability status, and/or LGTBQIA+ status.

2.  Records that contain data or numerical information for District Court Violation Notices involving VA Police officers in connection with local, state, and other federal, OIG or university police.
Update:  OSP Central Office can provide the citation in the last 4 years to include "USDCVN" (citation) number, "VISN", "Facility"
**Search Criteria Modification:**  Search will be conducted within OSP Central Office.   The time period requested is 2010 to present.  Request the following data fields "UNDCVN", "number", "VISN", and "Facility, "Year", "month", and race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.
**Search Criteria Modification Final:**  UCLA School of Law accepts the search criteria modification provided by VHA. You request the data fields "UNDCVN","number","VISN, "facility", "year", and "month", and *to the extent*

*this information is available*, race, ethnicity, gender, age, disability status, and/or LGTBQ + status.

C. **Vehicle Removal**:

1.  Records that contain data or statistical information on the total vehicles removed from VA property.

2.  Records that contain data or numerical information for vehicle removal involving VA Police officers in connection with local, state, other Federal, OIG, private security, or university police.
Update – This data may be retained at the facility level and is not available within OSP VHA Central Office.

**Search Criteria Modification**:  A search is required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System for both C.1. and C. 2. .  It is noted that the search time period requested for this required information is 2010 to the present.

D. **Traffic Enforcement**:

1. Records that contain data or statistical information on citations for traffic or parking violations on or around VA medical facility property in each state, whether issued by VA Police, other authorized law enforcement or private security.

2.  Records that contain data or numerical information for traffic enforcement involving VA Police officers in connection with local, state, other federal, OIG, or university police.
Update - OSP is searching to determine what data is available within Central Office. It is noted that there is data available at the facility level.
**Search Criteria Modification**:  A search is required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System for both C.1. and C. 2.  The search time frame as advised in UCLA School of Law clarification letter dated January 7, 2021 is 2014 to present.

E. **Panic Button Data**:

1.   Records that contain data or statistical information on the usage of Panic Alarms by VA staff or VA police in VA facilities in each state.
2.   Records that contain data or statistical information on the testing of Panic Alarms in each state, VISN, and/or Facility.
3.   Records that contain data or numerical information for panic buttons involving VA Police officers in connection with local, state, or other federal, OIG, or university police.

Update – OSP has advised that this information is available at the facility level only.

**Search Criteria Modification**:  No additional clarification has been provided. The agency will not proceed any further with this line item unless clarification is received.

**Search Criteria Modification Final:** (panic button data) UCLA School of Law is rescoping the request to information for the West LA and Chalmers facilities. The search time frame is from 2014 to present.  You have advised that merging line items 1 and 2 is acceptable as long as both *usage* and *testing* data is searched for Panic Alarms. You have further noted that this line item is a lower priority for your client.

F. **Behavioral Record Flag Data**:

1.  Records that contain data or statistical information on the issuance of Behavioral Red Flags and/or Patient Record Flags (PRF) to Veterans who are members of Vulnerable Population in VA Facilities in each state, VISN, and/or Facility.

Update – VHA Central Office has advised that data systems do not contain information regarding the status of membership in a "vulnerable population" and placement of PRFs.

**Search Criteria Modification**:  Requester seeks data at the VHA Central Office (and/or OSLE/OSP Central Office) on behavioral record flag and orders of restrictions to include such records containing race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information. If this information is not available NAMVETS seeks a records search within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.  It is noted that the search time period requested for this required information is 2010 to the present.

2. Records that contain data or statistical information on the number of Veterans who are members of Vulnerable Populations that currently have Behavioral Red Flags and/or Patient Record Flags.

Update – VHA Central Office has advised that data systems do not contain information regarding the status of membership in a "vulnerable population" and placement of PRFs.

**Search Criteria Modification**:  Requester seeks data at the VHA Central Office (and/or OSLE/OSP Central Office) on behavioral record flag and orders of restrictions to include such records containing race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information. If this information is not available NAMVETS seeks a records search within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required

within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System. It is noted that the search time period requested for this required information is 2010 to the present.

3. Records that contain data or statistical information on the number of Veterans who are members of Vulnerable Populations that currently have Behavioral Red Flags and/or Patient Record Flags removed.

<u>Update</u> – VHA Central Office has advised that data systems do not contain information regarding the status of membership in a "vulnerable population" and placement of PRFs.

**<u>Search Criteria Modification</u>**:  Requester seeks data at the VHA Central Office (and/or OSLE/OSP Central Office) on behavioral record flag and orders of restrictions to include such records containing race, ethnicity, religion, gender, LGBTQ status, age, or other demographic information. If this information is not available NAMVETS seeks a records search within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System. The search time period for this required information is 2010 to the present.

4. Records that contain data or numerical information for Behavioral Red Flags involving VA Police officers in connection with local, state, other federal, OIG or university police.

<u>Update</u> - VHA has advised that there is no data to address this request.

**<u>Search Criteria Modification</u>**:  Requester seeks data at the VHA Central Office (and/or OSLE/OSP Central Office) on behavioral record flag and orders of restrictions to include such records containing race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information. If this information is not available NAMVETS seeks a records search within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.  It is noted that the search time period requested for this required information is 2010 to the present.

5.  Previously compiled data, records, or other information relied upon by the:
    a. Office of the Inspector General
    b. Government Accountability Office
    c. Office of Security and Law Enforcement
    d. Office of Operations, Security and Preparedness.

<u>Update</u> - This line item requires additional clarification.  As written, this line item is too broad and does not provide reasonable search terms.

**<u>Search Criteria Modification</u>**:  Requester seeks data at the VHA Central Office (and/or OSLE/OSP Central Office) on behavioral record flag and orders of restrictions to include such records containing race, ethnicity, religion,

gender, LGBTQ status, disability, age, or other demographic information. If this information is not available NAMVETS seeks a records search within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System. The search time period requested for this required information is 2010 to the present.

G. **Disruptive Behavior Committee/Board Data**

1. Records that contain data or statistical information on the attendance of DBC/Bs in VA Facilities in each state, VISN, and/or Facility.
   <u>Update</u> – Information is available within VHA Central Office.
   **<u>Search Criteria Modification</u>**:  Requester seeks data at the VHA Central Office (and/or OSLE/OSP Central Office) on behavioral record flag and orders of restrictions to include such records containing race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information. If this information is not available NAMVETS seeks a records search within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.  It is noted that the search time period requested for this required information is 2010 to the present.

2. Records that contain data or statistical information on the issuance of Orders of Behavior Restrictions (OBR)
   <u>Update</u> – Information may be available within VHA Central Office.
   **<u>Search Criteria Modification</u>**:  Requester seeks data at the VHA Central Office (and/or OSLE/OSP Central Office) on behavioral record flag and orders of restrictions to include such records containing race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information. If this information is not available NAMVETS seeks a records search within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.  It is noted that the search time period requested for this required information is 2010 to the present.

H. **Uniform Monthly Crime Reports** for VA Facilities on Ohio, New York, Florida, and California for 2010 to present. No clarification is required for this line item.  It is noted that the Uniform Monthly Crime Report is an FBI database and is now owned by VA.  Therefore, VA cannot retrieve data.
   <u>Update</u> - VA only began entering data into the Uniform MCR beginning FY21.  It is noted that this an FBI database and records retained within this database

would need to be requested from the Department of Justice (DOJ).
https://www.fbi.gov/services/information-management/foipa/requesting-fbi-records  It is noted that there are summary reports at the facility level that provide numbers only.

**Search Criteria Modification**:  Requester seeks summary reports at the facility level that provide numbers only.  A search is required within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans and VISN 22 Desert Pacific Healthcare Network.  A search is also required within the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.  It is noted that the search time period requested for this required information is 2010 to the present.

On February 1, 2021 VHA on behalf of VA issued its first partial initial agency decision on behalf of VA.  This release contains a total of eight document totaling six-hundred and thirty-one (631) pages that were Bates numbered 000001-000631.  This release pertained to the following:

**Line Item A. 1.**  Policies and procedures related to "disruptive behavior flags"
**Response:**  Provided are the following responsive records.  It is noted that line item A. 1.  is now complete.
   a. VHA Directive 2010-053, "Patient Record Flags" (expired but not rescinded).  Bates numbered pages – 000001-000020
   b. VHA Directive 2012-026, Sexual Assaults, and other Defined Public Safety Incidents in Veterans Health Administration (VHA) Facilities.  Bates numbered pages – 000021-000029
   c. Journal of the American Medical Association (JAMA) - Hospital Violence Reduction Amongst High-Risk Patients.  Bates numbered pages – 000030-000033
   d. Patient Record Flag (PRF) User Guide.  Bates pages - 000034-000115

**Line Item A. 2.:**  Each Veterans Integrated Service Networks' (VISN) guidelines and procedures outlining the process for authorizing placement of records flags, notifying Veterans of the flags, and the process for appealing and removing them.  It is noted that line item A. 2. is now complete for VHA only.  *A search is required within OSP for any additional response records for this line item at the request of UCLA School of Law.*
**Response**: Workplace Violence Prevention Program, National Program Office has advised that VISNs do not maintain their own "guidance and procedures outlining process for authorizing the placement of record flags," as these are developed and promulgated by the Workplace Violence Prevention, National Program Office and carried out by personnel at the facility.  The role of the VISN is limited to addressing Veterans' requests for review of Orders of Behavioral Restrictions (OBR) and determining if the OBR should be continued, altered, or removed (per the requirements of 38 CFR § 17.107.  This regulation is publicly available at https://www.law.cornell.edu/cfr/text/38/17.107.

**Line Item A. 3:**  VA and VHA definitions and applications of "disruptive behavior" as

applied in each VISN and any uniform definitions across the VA, including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).

**Response**:  Provided are the following responsive records located within the Central Ohio Health Care System and the VHA Workplace Violence Prevention Program, National Program Office.  It is noted that the agency is continuing its search for responsive records.  Line item A.3 remains an open line item. *A search is required within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans, Desert Pacific Healthcare Network VISN 22 and the VA Greater Los Angeles Healthcare System.*

 a. Central Ohio Health Care System Policy Memorandum 07-17 dated November 1, 2019 – Disruptive Behavior Response to Include Workplace Violence, Sexual Assaults and Other Defined Public Safety Incidents. Bates pages – 00116-00137

 b. VHA Workplace Violence Prevention Program, National Program Office provides the following response regarding the "2013 OIG report Management of Disruptive Patient Behavior at VA Medical Facilities.

  • Yes, VHA accepted the OIG recommendations.  Provided is VAOIG-11-02585-129.pdf.  It is noted that specifically it is Recommendation #1 found on page 21.  Please be advised this documented cannot be Bates numbered due to an initial formatting issue.  This document contains thirty (30) pages and will be accounted for as 000138-00168

  • Yes, uniform definitions were established as documented in "Memo Guidance Regarding Management of Disruptive Patient Behavior dated August 28, 2013, Bates pages 000169-000171.  It is noted that the Deputy Under Secretary of Health for Operations and Management "Memo Guidance Regarding Management of Disruptive Patient Behavior dated August 28, 2013 are consistent with those published in VHA Directive 2012-026 (Bates pages 000021-000029) and promulgated as consistently as possible across all guidance coming from the Workplace Violence Prevention Program henceforth.

On December 8, 2020 it was requested if available that VHA provide the most recent copy of VA's Functional Organization Manual.  A search for responsive records was conducted within VA's Office of Enterprise Integration and the following public access link was provided https://www.va.gov/landing_organizations.htm.  I have also attached a hardcopy for your ease of reference.  Bates pages 000172-000631 This satisfies your request for this information and this item is now closed.

On March 11, 2021 VHA on behalf of VA issued its second partial initial agency decision on behalf of VA.  This release contains of sixty-six (66) pages the pages were Bates numbered 000632-000698.

**Line Item A. 2.:**  Each Veterans Integrated Service Networks' (VISN) guidelines and procedures outlining the process for authorizing placement of records flags, notifying Veterans of the flags, and the process for appealing and removing them.  It is noted that

line item A. 2. was completed for VHA in the February 1, 2021 first partial initial agency decision letter. An additional response was by required UCLA School of Law within OSP for any additional response records.

**Response**:  OSP has advised that they do not place record flags on Veterans Health record nor do they have access to Veterans electronic health records.  Therefore, VA is rendering a no records response on behalf of OSP for this line item.  This concludes VHA response to this line item.

**Line Item A. 3.:**  VA and VHA definitions and applications of "disruptive behavior" as applied in each VISN and any uniform definitions across the VA, including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).

**Response**:  VISN 10 VA Healthcare System Serving Indiana has advised that there are no VISN 10 level policies of standard operating procedures regarding Disruptive Behavior. Therefore, VISN 10 is rendering a no records response.  It is noted that the agency is continuing its search for responsive records within Ohio & Michigan Veterans, Desert Pacific Healthcare Network VISN 22 and the VA Greater Los Angeles Healthcare System.

VHA Central Office, Workplace Violence and Prevention Office has completed its search for VHA's  definition of "disruptive behavior" related to the memorandum: Acting Deputy Under Secretary for Health for Operations and Management. "Meeting New Mandatory Safety Training Requirements using Veterans Health Administration's Prevention and Management of Disruptive Behavior (PMDB) Curriculum." Memorandum. November 7, 2013.

**Response**:  VHA Directive 2012-026, Bates pages 000021-000029, rendered in VHA's February 1, 2021 first partial response letter and publicly available, contains the definition of "disruptive behavior" promulgated by the VHA Workplace Violence Prevention Program.  It is provided here for convenience:

Disruptive Behavior:  Disruptive behavior is behavior by any individual that is intimidating, threatening, dangerous, or that has, or could, jeopardize the health or safety of patients, Department of Veterans Affairs (VA) employees, or individuals at the facility. Disruptive behavior is behavior that interferes with the delivery of safe medical care to patients at the facility, or behavior that impedes the operations of the facility. Disruptive behavior does not depend upon the disruptive individual's stated intentionality or justification for the individual's behavior, the presence of psychological or physical impairment, whether the individual has decision-making capacity, or whether the individual later expresses remorse or an apology. NOTE: For more information see title 38 Code of Federal Regulations (CFR) §§1.218(a)(5), 17.33, 17.107 (2011).  It is noted that WVPP national program office is unable to comment upon definitions used at local facilities.

**Line Item B. 1.:**  Issuance of Orders of Behavioral Restrictions or placement of Category 1 or Category II record flags;  It is noted that the search criteria to be applied will be for "Disruptive Behavior Committee/Boards (DBC/Bs) policies and procedures pertaining to Issuance of Orders of Behavior Restrictions or placement of Category 1 or

Category II record flags".  The search time period required is Calendar Year January 1, 2014 to December 31, 2020

**Response:** A search was required within VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.
VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) has conducted a search and has advised that the facility does not have any specific policy or procedures concerning Disruptive Behavior Committee/Boards.  This is due to the fact that GLA follows national policy.  As a result, GLA is rendering a no records response.
Central Ohio Health Care System has conducted a search and has advised Policy Memorandum 07-17 dated November 1, 2019 – Disruptive Behavior Response to Include Workplace Violence, Sexual Assaults and Other Defined Public Safety Incidents. Bates pages – 00116-00137 is responsive to this line item.  It is noted that this document was previously rendered in VHA's February 1, 2021 initial agency decision letter. This concludes VHA response to this line item.

**Line Item B.2.**:  Reevaluation of previously issued Red Flags by the DBC/B.  It is noted that the search criteria to be applied will be for "Disruptive Behavior Committee/Boards (DBC/Bs) policies and procedures pertaining to Reevaluation of previously issued Red Flags by the DBC/B.  A search was required within VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.
**Response**:  VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) has conducted a search and has advised that the facility does not have any specific policy or procedures concerning Disruptive Behavior Committee/Boards.  This is due to the fact that GLA follows national policy.  As a result, GLA is rendering a no records response.
Central Ohio Health Care System has conducted a search and has advised Policy Memorandum 07-17 dated November 1, 2019 – Disruptive Behavior Response to Include Workplace Violence, Sexual Assaults and Other Defined Public Safety Incidents. Bates pages – 00116-00137 is responsive to this line item.  It is noted that this document was previously rendered in VHA's February 1, 2021 initial agency decision letter. This concludes VHA response to this line item.

**Line Item C.1**.:  VA Police policies and procedures relating to activation of Panic Alarms, including but not limited to stationary, electronic personal, and computer-based Panic Alarms.
**Response**:  Provided is a copy of the national Standard Operating Procedure (SOP that covers Police – RCS#5252.35.c.10, Bates pages 000666-000698.  This document is provided in its entirety.  This concludes VHA response to this line item.

**Line Item C.2.**:  Records concerning the placement, use, and outcomes of Panic Alarms activation by VA staff and VA police, including, but not limited to
VA guidelines and procedures for Panic alarm testing.
**Response**:
VISN 10 has confirmed with their VISN Police lead that the VISN does not retain records  related to the use and outcomes of Panic Alarms activation by VA staff and VA

police, including, but not limited to VA policies and procedures relating to VA guidelines and procedures for panic alarm testing and Arrest made following the use of a panic alarm or security alarm triggered by staff members.  Therefore, VISN 10 is rendering a no records response.

VISN 22 has confirmed that with their VISN Police lead that records pertaining to placement, use, and outcomes of Panic Alarms activation by VA staff and VA police, including, but not limited to VA guidelines and procedures for Panic alarm testing would be retained at the facility level.  Therefore, VISN 22 is rendering a no records response.

Central Ohio Health Care System a search has been conducted and the following records have been found responsive – Policy Memorandum 07-16, January 18, 2017 Duress (Panic) Alarms, Bates numbered pages 000632-000633.  It is noted the facility complies with national guidance VA Directive 0730 Transmittal Sheet, December 12, 2012 Security and Law Enforcement.  This document is provided to you Bates pages 000634-000647.  It has been confirmed that records can be retrieved at the facility level however the data cannot be validated and is therefore not reliable.  It is noted that VA OSP has advised that Central Office is retrieving this requested information for the both Central Ohio Health Care System.

VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) a search has been conducted and the following records have been found responsive – GLA Policy, 00-10-07B-35, September 2016 (Rescinded), Duress Alarm Policy, Bates numbered pages 000648-000656.  Duress Alarm Policy, MCP 01-10A-7B-35, effective November 2020, Bates pages 000657-000662 and Chapter V, Section C – Response to Intrusion and Duress Alarm Systems, Standard Operating Procedure, Bates pages 000663-000665.  It has been confirmed that records can be retrieved at the facility level however the data cannot be validated and is therefore not reliable.  It is noted that VA OSP has advised that Central Office is retrieving this requested information for the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA).

This concludes VA's response to this line item.

**Line item C.3.:** Arrest made following the use of a panic alarm or security alarm triggered by a staff member.

A search for responsive records is required within VISN 10 VA Healthcare System Serving Indiana, Ohio & Michigan Veterans, VISN 22 Desert Pacific Healthcare Network, the VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) and the VA Central Ohio Healthcare System.

**Response**:

VISN 10 has confirmed with their VISN Police lead that there are no records responsive to this request within the VISN related to the arrest made following the use of panic alarms or security alarms triggered by a staff member.  Therefore, VISN 10 is rendering a no records response.

VISN 22 has confirmed with their VISN Police lead that there are no records responsive to this request within the VISN related to the arrest made following the use of panic alarms or security alarms triggered by a staff member.  Therefore, VISN 22 is rendering a no records response.

Central Ohio Health Care System has confirmed with their VA Police Chief that there are no records responsive to this request with VISN related to the arrest made following

the use of panic alarms or security alarms triggered by a staff member.  Therefore, Central Ohio Health Care System is rendering a no records response. It is noted that VA OSP has advised that Central Office may have data responsive to this line item for Central Ohio Health Care System.

VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA) has confirmed with their VA Police Chief records can be retrieved at the facility level however the data cannot be validated and is therefore not reliable.  It is noted that VA OSP has advised that Central Office may have data responsive to this line item for VA Greater Los Angeles Healthcare System (GLA) (Los Angeles, CA).

On April 22, 2021 VHA issued its third partial initial agency decision on behalf of VA.  This letter will again address responsive records under their respective line item and pages will be Bates numbered for ease of reference.  This release contains a total two (2) PDF documents totaling eight (8) pages, the pages have been Bates numbered 000698-000706. In addition, five (5) Excel spreadsheets are provided.

**Line item A.3.**: VA and VHA definitions and applications of "disruptive behavior" as applied in each VISN and any uniform definitions across the VA, including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).
**Response**:  A search for responsive records has concluded within VHA Greater Los Angeles Healthcare System, I have been advised that this facility uses VHA National Workplace Violence and Prevention Program Office's definition and applications of "disruptive behavior".  As a result, a no records response is rendered for the VHA Greater Los Angeles Healthcare System.  This concludes VHA response to this line item.

**Line item C:**  Any and all records concerning the placement, use, and outcomes of Panic Alarms activation by VA staff and VA police including:
C3.  Arrest made following the use of panic alarm or security alarm triggered by a staff member.
**Response**: VA's Office of Security Preparedness is rending the following responsive records.  Specifically provided is:  PDF-Response to Assault and Disturbance Situations, Bates pages 000699-000703 and PDF-Response to Intrusion and Duress Alarm Systems, Bates pages 000704-000706.  These documents are provided in their entirety; therefore, no redactions have been made.  In addition, OSP has provided two (2) Excel spreadsheets containing alarm activation data for Chalmers P. Wylie Ambulatory Care Center and West LA Veterans Affairs campus.  Please be advised, OSP is only able to retrieve partial data from 2017 to 2020.  OSP is rending a no records response for 2010 to 2016. It is noted that VA OSP implemented a new database in 2019. The previous platform was replaced as data could not be verified thus rending the content invalid. Upon my review of the Excel spreadsheets, I have determined that there is information protected under FOIA exemption 6, 5 U.S.C. § 552 (b)(6).  An explanation for the use of exemption 6 is provide below.  This concludes VA response to this line item.

**Line item D:**  Relevant OIG guidelines between 2014 and 2020 contained within the following Office of the Inspector General (OIG) reports:
   a. OIG Department of Veterans Affairs, Healthcare Inspection:  Management of Disruptive Patient Behavior in VA Medical Facilities (Jan 30, 2018),
   b. OIG, Department of Veterans Affairs, Inadequate Governance of the VA Police Program at Medical Facilities (Dec. 13, 2018
   c. OIG, Department of Veterans Affairs, VA Police Management System Needs Improvement (Jun. 17, 2020).

In addition for this line item, UCLA School of Law has asked VA to include but not limit this response to any data collected or used for "Issue 2: Patient Record Flag Placement, Follow-up, and Notification," and the aggregate data by facility compiled for Table 1: Facilities' Policies, Assessments, and Committees and Table 2: Electronic Health Record Review Results in the January 30, 2018 report.  Further UCLA School of Law request any data collected from the above cited reports concerning any aspect of vulnerable populations. "Vulnerable Populations" include, but is not limited to, undocumented veterans, women veterans, LGBTQIA+ veterans, transgender veterans, disabled veterans, veterans with mental health diagnosis or complex trauma, unhoused veterans, and non-white veterans. "Non-White" veterans include biracial and White Hispanic veterans.

**Response:**  The following information is provided from VHA Office of Workplace Violence and Prevention Program with respect to VA OIG Report No. 17-04460-84, "Combined Assessment Program Summary Report: Management of Disruptive and Violent Behavior in Veterans Health Administration Facilities" (January 30, 2018).

Please be advised the OIG made 4 recommendations in this report and VHA concurred all of them:

*Recommendation 1*. Executive in Charge, Office of the Under Secretary for Health, in conjunction with Veterans Integrated Service Network senior managers, ensure: Facility Directors establish Employee Threat Assessment Teams.
Each VISN (Veterans Integrated Service Network) attested quarterly to compliance with requirements for establishing ETAT until two consecutive quarters with 90 percent compliance were achieved. VISNs were required to be able to provide, upon request, documentation of ETAT operations.  Facilities not meeting the required two consecutive quarters of 90 percent ETAT implementations were required to submit a corrective action plan through their respective VISN.

The VHA Workplace Violence Prevention Program (WVPP) national program office (NPO) tracked quarterly attestations from the VISNs.  ETAT has no role in Behavioral Patient Record Flag (BPRF) placement.

*Recommendation 2*. Facility senior managers require attendance by VA Police Officers, Patient Safety and/or Risk Management Officials, and Patient Advocates at Disruptive

Behavior Committee/Board meetings and monitor compliance.
Attendance compliance monitoring was achieved by two consecutive quarterly attestations by the VISN to the WVPP NPO that 90 percent of DBC/DBB meetings are attended by each position. VISNs were required to be able to provide, upon request, documentation of DBC meeting annual attendance rates for these positions at each facility. Facilities not meeting the required two consecutive quarters of a 90 percent or better attendance rate requirement for these positions were required to submit a corrective action plan through their respective VISN.

The VHA Workplace Violence Prevention Program (WVPP) national program office (NPO) tracked quarterly attestations from the VISNs.  DBC/DBB attendance attestation data contain no information on BPRF placement.

*Recommendation 3.* That when Chiefs of Staff (or designees) issue Orders for Behavioral Restriction, they document that they informed patients that the Orders were issued and of the right to appeal the decisions and that facility senior managers monitor compliance.  Each VISN was required to monitor and attest compliance. Additionally, facilities were required to be able to provide documentation, upon request, of OBR documentation in DBRS and patient notifications. Facilities were considered successful once two consecutive quarters of 90 percent compliance reports are documented. Facilities not meeting the required two consecutive quarters of 90 percent or better OBR DBRS documentation and notification rate were required to submit a corrective action plan through their respective VISN.

The VHA Workplace Violence Prevention Program (WVPP) national program office (NPO) tracked quarterly attestations from the VISNs.  Data addressing whether an OBR notification was sent to the patient contain no information regarding BPRF placement.

*Recommendation 4.*  Require that within 90 days of hire, all employees complete Level I Prevention and Management of Disruptive Behavior training and additional training levels based on the type and severity of risk for exposure to disruptive and unsafe behaviors and monitor compliance.  Training compliance monitoring was achieved by two consecutive quarterly attestations by the VISN that 90 percent of new employees completed all required levels of training within 90 days of hire. VISNs were required to be able to provide, upon request, documentation of PMDB training rates for new employees at each facility. Facilities not meeting the required two consecutive quarters of a 90 percent or better quarterly PMDB training completion rate for new employees within 90 days of hire were required to submit a corrective action plan through their respective VISN.

The VHA Workplace Violence Prevention Program (WVPP) national program office (NPO) tracked quarterly attestations from the VISNs.  PMDB training completion data contain no information on BPRF placement.

The VA OIG did not assess every VHA facility during this CAPS review, rather a subgroup of their own selection.  The WVPP NPO does not have data collected by the

VA OIG during their site visits that are summarized in "Table 1. Facilities' Policies, Assessment and Committees" or "Table 2. Electronic Health Record Review Results." The only data to which the WVPP NPO has access are those published by the VA OIG in the January 30, 2018, report itself.

It is noted that the VISN attestation data regarding the above four recommendations that were collected by the WVPP NPO do not contain information regarding any aspect of vulnerable populations.

This line item is now completed for VHA. A response remains required for OSP as follows:

> b. OIG, Department of Veterans Affairs, Inadequate Governance of the VA Police Program at Medical Facilities (Dec. 13, 2018)
> c. OIG, Department of Veterans Affairs, VA Police Management System Needs Improvement (Jun. 17, 2020).

**RECORDS RELATED TO DATA AND STATISTICS**

**Line item 1:** Seeking data and statistics pertaining to the number of police officers data and statistics maintained at the Central Office level (including OSP/OSLE). You require any records reflecting the total number of police officers by VISN and facility. This request includes data and statistics maintained for police officers hired or employed, aggregated by VISN and facility. Statistical information includes race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.
**Response**: A search for response records has been conducted within VHA Central Office, Office of Workforce Management and Consulting. Provided is an Excel spread sheet containing the information you seek. All information is provided in its entirety therefore no information has been redacted or otherwise withheld. It is noted that gender and race demographics are provided. No additional demographics are retained, as a result VHA is rendering a no records response for ethnicity, religion, LGBTQ status, disability, or any other demographic information as request. This concludes VHA's response to this line item.

**Line item 2**: Seeking data and statistics regarding the number of citations issued by the West LA Veterans Affairs campus and the Chalmers P. Wylie Ambulatory Care Center (Columbus, Ohio) to include statistical data of race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information. The time period requested is calendar year 2010 to November 11, 2020.
**Response**: VA Office of Operations, Security, and Preparedness (OSP) has conducted a search and has produced two Excel spreadsheets. One spreadsheet for the West LA Veterans Affairs campus and other for the Chalmers P. Wylie Ambulatory Care Center (Columbus, Ohio). Please be advised, OSP is only able to retrieve partial data from 2017 to 2020. OSP is rending a no records response for 2010 to 2016. It is noted that VA OSP implemented a new database in 2019. The previous platform was replaced as

data could not be verified thus rending the content invalid.  It is noted that the data provide does not contain statistical data of race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.  VA does not capture the demographic information you seek as a data field within its national database.  It is noted that VHA records kept at the facility level may contain demographic information. However, a search at the facility requires staff manually searching through each and every case and retrieve applicable data if available.  A document would then need to be created.  Courts have explained that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters, or to allow requesters to conduct "fishing expeditions" through agency files. See Assassination Archives & Research Ctr. v. CIA, 720 F. Supp. 217, 219 (D.D.C. 1989), aff'd in pertinent part, No. 89-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990) (per curiam); accord Nurse v. Sec'y of the Air Force, 231 F. Supp. 2d 323, 329 (D.D.C. 2002) (quoting Assassination Archives & Research Ctr., 720 F. Supp. at 219); see, e.g., Bloeser v. DOJ, 811 F. Supp. 2d 316, 321 (D.D.C. 2011) reasoning that 'FOIA' was not intended to reduce government agencies to full-time investigators on behalf of requesters.  Nor must agencies spend "countless numbers of personnel hours seeking needles in bureaucratic haystacks.  Therefore, VA is rendering no records response for statistical data of race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.  This concludes VA's response to this line item.

**Line item 3**:  Seeking data and statistics regarding the number of arrests (on and off of VA property subject to judicial warrant and warrantless) conducted at the West LA Veterans Affairs campus and the Chalmers P. Wylie Ambulatory Care Center (Columbus, Ohio) to include statistical data of race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.  The time period requested is calendar year 2010 to November 11, 2021.
**Response:**  VA Office of Operations, Security, and Preparedness (OSP) has conducted a search and has produced two Excel spreadsheets.  One for the West LA Veterans Affairs campus and other for the Chalmers P. Wylie Ambulatory Care Center (Columbus, Ohio).  Please be advised, OSP is only able to retrieve partial data from 2017 to 2020.  OSP is rending a no records response for 2010 to 2016. It is noted that VA OSP implemented a new database in 2019. The previous platform was replaced as data could not be verified thus rending the content invalid. Upon review of the data, I have determined that portions of the information are protected under FOIA exemption 6, 5 U.S.C. 552(b)(6).  Justification for applying Exemption 6 to portions of this document are discussed below.  It is noted that the data provide does not contain statistical data of race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.  VA does not capture the demographic information you seek as a data field within its national database.  It is noted that VHA records kept at the facility level may contain demographic information. However, a search at the facility requires staff manually searching through each and every case and retrieve applicable data if available.  A document would then need to be created.  Courts have explained that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters, or to allow requesters to conduct "fishing expeditions" through agency files. See Assassination Archives & Research Ctr. v. CIA, 720 F. Supp. 217,

219 (D.D.C. 1989), aff'd in pertinent part, No. 89-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990) (per curiam); accord Nurse v. Sec'y of the Air Force, 231 F. Supp. 2d 323, 329 (D.D.C. 2002) (quoting Assassination Archives & Research Ctr., 720 F. Supp. at 219); see, e.g., Bloeser v. DOJ, 811 F. Supp. 2d 316, 321 (D.D.C. 2011) reasoning that 'FOIA' was not intended to reduce government agencies to full-time investigators on behalf of requesters.  Nor must agencies spend "countless numbers of personnel hours seeking needles in bureaucratic haystacks.  Therefore, VA is rendering no records response for statistical data of race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.  This concludes VA's response to this line item.

VHA is now issuing its fourth and final initial agency decision on behalf of VA. This letter will again address responsive records under their respective line item. Provided are twenty-four (24) PDF documents Bates numbered 000707-000765.  In additional this release contains twelve (12) Excel spreadsheets.  The documents are responsive to the following line items:

**Line item D:**  Relevant OIG guidelines between 2014 and 2020 contained within the following Office of the Inspector General (OIG) reports:
   a. OIG Department of Veterans Affairs, Healthcare Inspection:  Management of Disruptive Patient Behavior in VA Medical Facilities (Jan 30, 2018), (This line item was responded to by VHA within VHA's April 22, 2021 initial agency decision letter.)
   b. OIG, Department of Veterans Affairs, Inadequate Governance of the VA Police Program at Medical Facilities (Dec. 13, 2018)
   c. OIG, Department of Veterans Affairs, VA Police Management System Needs Improvement (Jun. 17, 2020).

**Response to b. and c.**:  OSP has advised that the review and response process to the OIG reports referenced in line items b. and c. are ongoing and completion is expected to include all recommendations within the next 180 days, therefore OSP is rendering a no records response however if you remain interested in this information you can submit a new FOIA request directly to vacoospfoia@va.gov.

## RECORDS RELATED TO DATA AND STATISTICS

**Line Item C**: Vehicle Removals - seek records that contain data or statistical information on the total vehicles removed from VA property.  In addition, a search was required for records that contain data or numerical information for vehicle removal involving VA Police officers in connection with local, state, other Federal, OIG, private security, or university police.
**Response**:  A search was conducted within the Greater Los Angles Healthcare System provided are two responsive records: 21-01105-F Towed Vehicles FCN List (PDF), and 21-0115-F Towed Vehicles Report Exec, it is noted that these reports are rendered in their entirety, therefore no redactions have been made.  It is also noted that you required this information for the time period of 2010 to present however data is only available from 2017 to present, therefore I am rending a no records response for 2010

to 2016.  A search was also conducted within the Chalmers P. Wylie Ambulatory Care Center and the facility has reported that no records were located, therefore VHA is rendering a no records response for the Chalmers P. Wylie Ambulatory Care Center. This concludes VHA response to this line item.

<u>Line Item A</u>: **The number of complaints against VAPF Officers?**
**Response**:  A search was conducted within both the Greater Los Angles Healthcare System and the Chalmers P. Wylie Ambulatory Care Center, provided are two Excel spreadsheets, 21-0115-F GLA Line Item 8 Redacted and 21-0115-F Chalmers Line Item 8 Redacted.  Upon review of the data, I have determined that portions of the information are protected under FOIA exemption 6, 5 U.S.C. 552(b)(6).  Justification for applying Exemption 6 to portions of this document are discussed below.  It is noted that the data provide does not contain statistical data of race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.  VA does not capture the demographic information.

**RECORDS RELATED TO DATA AND STATISTICS**

<u>Line item 1</u>:  Seeking data and statistics pertaining to the number of police officers data and statistics maintained at the Central Office level (including OSP/OSLE).  You require any records reflecting the total number of police officers by VISN and facility. This request includes data and statistics maintained for police officers hired or employed, aggregated by VISN and facility.  Statistical information includes race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.
**Response**:  On April 22, 2021 VHA provided an Excel spreadsheet as a result of a search within VHA's Office of Workforce Management and Consulting.  UCLA School of Law during the June 2, 2021 conference call questioned the data as the numbers were larger than expected.  VHA is now rendering a revised Excel spreadsheet titled, 21-01105-F Police Data Revised 6.28.21 containing the information you seek.  All information is provided in its entirety therefore no information has been redacted or otherwise withheld.  It is noted that gender and race demographics are provided.  This concludes VHA's response to this line item.

On June 22, 2021 VHA received UCLA School of Law letter documenting the June 2, 2021 phone conference.  It is noted that the following action item will be address in the Department's July release:

1. OPS will re-run reports to ensure that all citations, that have been finalized due to the change in management system are included in the facility spreadsheets or alternatively that a separate search is run for Citations in addition to arrests for the time period of May 2019 to present.
2. OPS has considered and will provide data and if available statistics to include general incidents as a search keyword along with citations, and arrests for the time period of May 2019 to present.

3. Two additional facilities will be agreed to by the Agency with respect to reports capturing general incidents, citations, and arrests for the time period of May 2019 to present.

4. OSP will provide the sample of citations and incident reports listing "N/A" or "Federal" as a description, as discussed with Greg Holland on the June 2, 2021 call. UCLA School of Law requested the citations and incidents from the date of the new system (in 2019) to the date the search was run in 2021.  A total of 27 incident reports were requested by UCLA School of Law.  These reports were listed within a table contained within the June 22, 2021 letter.

It is noted that June 22, 2021 I sent an email to Ms. Courtney Bachman advising that the Agency can certainly include general incidents in addition to arrests and citations.  I asked that she confirm the revised date range as the date of the start of the new system, May 2019 to present.  In addition, I asked her to identify the two additional facilities that UCLA School of Law would like the incident, arrests and citations reports to be run for?  On June 25, 2021 Ms. Courtney Bachman responded via email and advised that "Yes, our revised requested date range is the start of the new system, May 2019 to present. We request data for citations, arrests, and general incidents during said data range for the James A. Haley Veterans Hospital in Tampa, FL and the St. Albans Medical Center in Queens, New York."

**Response to line items 1, 2 and 3**:  OSP has concluded its search within the Police Report Management System (PMRS) for general incidents in addition to arrests and citations for the time period of May 2019 to present.  Provided are eight (8) Excel spread sheets two (2) for each facility to include the Chalmers P. Wylie Ambulatory Care Center, VA Greater Los Angeles Healthcare System, James A. Haley Veterans Medical Center and the St. Albans Medical Center in Queens, New York.  It is noted that general incidents are one spread sheet and arrests and citations are on the other. No redactions have been made therefore all information is provided it its entirety.  It is noted that the data provided does not contain statistical data of race, ethnicity, religion, gender, LGBTQ status, disability, age, or other demographic information.  VA does not capture the demographic information you seek.

**Response to line item 4**:  UCLA School of Law requested 27 incident reports within its June 22, 2021 letter.  Please be advised VHA is rendering twenty-three (23) of the twenty-seven (27) requested incident reports/PDF files totaling fifty-four (54) pages. Pages have been Bates numbered 000711-000765.  Regarding report number 691 IR20190527-000488 OSP conducted a search within the VA Police Reporting Management System, this search resulted in a no records response because 691 IR20190527-000488 has been deleted by the facility.  In addition, it was determined that two of the requested reports were duplicate numbers specifically 6911R20200119-000053_1 and 691200689.  Upon my review of the remaining 24 incident reports I have determined that report number 691201005_1 Bates pages 000766-000767 is protected in its entirety under FOIA exemption 6, 5 U.S.C. § 552 (b)(6) and FOIA exemption 7, 5 U.S.C. § 552 (7)(A) and (7)(C) and FOIA exemption 5, 5 U.S.C. § 552 (b)(5).

FOIA Exemption 5 permits VA to withhold a document or information contained within a document as "pre-decisional" if two requirements are met. First, there must be an identifiable deliberative process. That it, the document must be a direct part of the deliberative process. Second, the agency generated the information or document as part of the agency decision process. Stated another way, VA may withhold information under Exemption 5 where the document or its content makes recommendations or expresses opinions about legal or policy matters during a decision-making process and the document is not the decision document or incorporated into the decision document. Additionally, in accordance with the FOIA Improvement Act of 2016, an agency shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Stated another way, if the disclosure is not prohibited by law, the agency must state an articulable, foreseeable harm to the agency or its activities that could occur as a result of release of the document or information.

Upon my review of Bates pages 000766-000767, PDF document 691201005_1 I have determined that the document contains information that falls within the protection of Exemption 5. Specifically, this incident report remains an open law enforcement investigation with Federal Bureau of Investigation involvement. The information being withheld is part of an active investigation and as such is protected in its entirety from the public under FOIA exemption 5.

FOIA exemption 6, 5 U.S.C. § 552 (b)(6) permits VA to withhold a document or information within a document if disclosure of the information would constitute a clearly unwarranted invasion of a living individual's personal privacy. Stated another way, VA may withhold information under FOIA exemption 6 where disclosure of the information, either by itself or in conjunction with other information available to either the public or the FOIA requester, would result in an unwarranted invasion of an individual's personal privacy without contributing significantly to the public's understanding of the activities of the federal government.

Upon completion of the analysis in balancing personal privacy interests against public interest, it has been determined that the personal privacy interest of the individuals outweighs the public interest. Specifically, I have redacted the names of lower level employees and patients along with phone numbers contained within the Chalmers P. Wylie Ambulatory Care Center and VA Greater Los Angeles Healthcare System Excel spreadsheets concerning complaints against police officers. In addition, I have redacted the names of individuals contained within the 23 incident reports, Bates pages 000711-000765 along with phone numbers and addresses and information containing personal privacy interests of the individual(s). Courts have found that an invasion of privacy need not occur immediately upon disclosure in order to be considered "clearly unwarranted.

The coverage of FOIA exemption 6 is absolute unless the FOIA requester can demonstrate a countervailing public interest in the requested information by demonstrating that the individual is in a position to provide the requested information to members of the general public and that the information requested contributes

significantly to the public's understanding of the activities of the Federal government. Additionally, the requester must demonstrate how the public's need to understand the information significantly outweighs the privacy interest of the person to whom the information pertains.  Upon consideration of the materials you provided, we have not been able to identify a countervailing public interest of sufficient magnitude to outweigh the privacy interest in this case.  Those that received care have a personal privacy interest in the information that outweighs any public interest served by disclosure of the information under FOIA.  Consequently, redactions were made to protect information withheld under FOIA exemption 6, 5 U.S.C. § 552 (b)(6).

Further I have withheld 691201005_1 under FOIA exemption 7, 5 U.S.C. § 552 (7)(A), (7)(B) and (7)(C).   FOIA exemption 7a applies because given the content of the document release to the public is reasonably expected that public opinion would interfere with law enforcement proceedings.  Further FOIA exemption 7b applies as public knowledge of the content would deprive a person of a right to a fair trial or an impartial adjudication and FOIA exemption 7c applies as it is reasonably be expected to constitute an unwarranted invasion of personal privacy.  It is noted that exemption 7c also applies to Bates numbered pages 000711-000765.

This concludes VHA response to your FOIA request.  Should you request any additional information from the VHA you may submit a FOIA request directly to VHAFOIA2@va.gov.  If you should require any additional information from OSP please submit your FOIA request directly to VACOOSPFOIA@va.gov.

Please be advised, you may appeal the determination made in this response to the VA, Office of General Counsel.  Appeals may be submitted electronically to their electronic appeal mailbox, ogcfoiaappeals@va.gov or mailed to the following address:

Office of General Counsel (024)
Department of Veterans Affairs
810 Vermont Avenue NW
Washington, DC 20420

If you should choose to file an appeal, your appeal must be postmarked or electronically submitted no later than ninety (90) calendar days from the date of this letter.  Please include a copy of this letter with your written appeal, identify the determination(s) you are appealing and clearly state why you disagree with the determination(s).

In addition to filing an appeal with the Office of General Counsel, you may also seek assistance and/or dispute resolution services regarding your FOIA request from VHA's FOIA Public Liaison and or Office of Government Information Services (OGIS) as provided below:

VHA FOIA Public Liaison:
Email Address:  vhafoia2@va.gov
Phone Number:  (877) 461-5038

Office of Government Information Services (OGIS)
Email Address:  ogis@nara.gov
Fax:  (202) 741-5769
Mailing address:
Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road
College Park, MD  20740-6001

If you should have any further questions, please feel free to contact me at (717) 675-8363.

Sincerely,



Deana Marakowski
VHA FOIA Officer

Enclosures

# Attachment C



VETERANS LEGAL CLINIC

907 WESTWOOD BLVD. #444
LOS ANGELES, CA 90024

February 5, 2021

Deana Marakowski
U.S. Department of Veterans Affairs
Information Access and Privacy
810 Vermont Ave. NW
Washington D.C. 20420

**Re:    FOIA Request VHA 21-01105-F**

Dear Ms. Marakowski,

We write in response to your January 7, 2021 letter in response to our December 22, 2020 follow-up letter providing clarification to your December 17, 2020 letter requesting clarification to our original November 11, 2020 FOIA request for records related to the VA Police. We appreciate your diligence in obtaining information and your partial initial agency decision on February 2, 2021. We look forward to document production that will provide important information for the public, our research, and our client.

We provide here specific clarification and responses to each question. If you require further information or an item remains unclear, please feel free to schedule a time to discuss or send an email for clarification.

*Part II.* As we noted in our conversation, the link you pointed us to contains broken links for "find out more about VHA's workplace violence prevention in healthcare facilities." We are glad to review the information on the public website once the link is corrected.

- *Part II.A.1*: This item is deemed complete by VHA on February 2, 2021.
- *Part II.A.2*: This item is deemed complete for VHA only on February 2, 2021. We understand there will be a search within OSP for any additional responsive records.
- *Part II.A.3*: We understand that VHA will continue to search for responsive records for definitions of "disruptive behavior" including within VISN 10, VISN 22, and VA Greater Los Angeles Healthcare System. We additionally request records concerning the definition of "disruptive behavior" related to the memorandum: Acting Deputy Under Secretary for Health for Operations and Management. "Meeting New Mandatory Safety Training Requirements using Veterans Health Administration's Prevention and Management of Disruptive Behavior (PMDB) Curriculum." Memorandum. November 7, 2013.
- *Part II.B.1-3*: We accept the search criteria modification provided by VHA. We request a search time period from 2014-2020.
- *Part II.C.1-3*: For item II.C.1, we understand the OSP records that VHA deems responsive. For items C.2 and C.3, we accept the search crietria modification provided by VHA.
- *Part II.D*:. The relevant OIG guidelines between 2014 and 2020 are: OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., HEALTHCARE INSPECTION: MANAGEMENT OF DISRUPTIVE PATIENT BEHAVIOR IN VA MEDICAL FACILITIES (Jan. 30, 2018), OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., INADEQUATE GOVERNANCE OF THE VA POLICE PROGRAM AT MEDICAL FACILITIES (Dec. 13, 2018),  and OFFICE OF THE INSPECTOR GENERAL, DEP'T OF VETERANS AFF., VA POLICE MANAGEMENT SYSTEM NEEDS IMPROVEMENT (Jun. 17, 2020). Specifically, this includes but is not limited to, any data collected or used for "Issue 2: Patient

Record Flag Placement, Follow-up, and Notification," and the aggregate data by facility compiled for Table 1: Facilities' Policies, Assessments, and Committees and Table 2: Electronic Health Record Review Results in the January 30, 2018 report. This data will greatly benefit our academic analysis.

We request any data collected from the above cited reports concerning any aspect of vulnerable populations. "Vulnerable Populations" include, but is not limited to, undocumented veterans, women veterans, LGBTQIA+ veterans, transgender veterans, disabled veterans, veterans with mental health diagnosis or complex trauma, unhoused veterans, and non-white veterans. "Non-White" veterans include biracial and White Hispanic veterans.

## Part III. Records Related to Data and Statistics

*Part III.A.* For this item, we are seeking data and statistics that have been prepared, compiled, or maintained by the VA from 2010 to the present. As we discussed during our November 25 phone call, our request is written to include data and information at the national or VISN offices, inclusive of records containing aggregated data and statistics by state, VISN, or facility. Based on your December 17 letter, we request searches of responsive records in the custody of the VHA Central Office (or OSP Central Office, when applicable We further explain below that for items requiring facility-level data base responses, we request information relevant to the West LA Veterans Affairs campus and the Chalmers P. Wylie Ambulatory Care Center (Columbus, Ohio).

*Further clarification is provided below*:

- III.A.1. Based on our clarification in the preceding paragraph, we request data and statistics maintained at the Central Office level (including OSP/OSLE). For clarification, we do not request the total number of police officers employed by the VA but any records reflecting the total number of police officers by VISN and facility. This data may exist on rosters at facility level, if so, we request a redacted roster so we can total numbers of officers without identifying information.This request includes data and statistics maintained for police officers hired or employed, aggregated by VISN and facility. This request does not require additional search terms, as requested in VHA's January 7 letter. If the VHA or OSP/OSLE Central Office do not maintain such information, we request this information for the West LA and Chalmers VA facilities.
- III.A.2. We accept the search criteria modification provided by VHA. To the extent we later determine OSP/OSLE or the VHA Central office maintains data inclusive of other items noted in the Part I.E of the November 11 request, such as race, age, gender, gender identity, LGBTQ identification, disability, etc. we reserve the right to re-open this item for further search and production.
- III.A.3. We accept the search criteria modification provided by VHA.
- III.A.4. We are not sure the  search criteria modification provided by VHA represents what NAMVETS is requesting. On December 17, you indicated that individual records would need to be opened for data retrieval. In our December 22 response, in order to avoid a burdersome search, we requested information on how records are maintained at the VISN and facility level so we can then develop a reasonable sampling with search terms. In your January 7 letter, you indicated you woud search the VISN 10 and 22 and VA Greater Los Angeles Healthcare System and VA Central Ohio Healthcare System. However, we believe we are still in the clarification process to develop a reasonable search. We request information on how records are maintained at the VISN and Healthcare System level, so we can provide search terms and a sampling size to avoid a burdersome search.

- III.A.5. We accept the search criteria modification provided by VHA. To the extent we later determine OSP/OSLE or the Central office maintains data inclusive of other items noted in the Part I.E of the request, such as race, age, gender, gender identity, LGBTQ identification, disability, etc. we reserve the right to re-open this item for further search and production.
- III.A.6. We are not sure the search criteria modification provided by VHA represents what NAMVETS is requesting. On December 17, you indicated that individual records would need to be opened for data retrieval. In our December 22 response, in order to avoid a burdersome search, we requested information on how records are maintained at the VISN and facility level so we can then develop a reasonable sampling with search terms. In your January 7 letter, you indicated you woud search the VISN 10 and 22 and VA Greater Los Angeles Healthcare System and VA Central Ohio Healthcare System. However, we believe we are still in the clarification process to develop a reasonable search. We request information on how records are maintained at the VISN and Healthcare System level, so we can provide search terms and a sampling size to avoid a burdersome search.
- III.A.7. We accept the search criteria modification provided by VHA.
- III.A.8. We request any total numbers or summary statistics or information available concerning the number of complaints against VAPF Officers generally. To the extent this information is available, we request summary statistics related to race, ethnicity, gender, age, disability status, and/or LGTBQIA+ status.

***Part III.B.1. and B.2.*** We accept the search criteria modification provided by VHA. We request the data fields "UNDCVN","number","VISN", "facility","year", and "month", and *to the extent this information is available*, race, ethnicity, gender, age, disability status, and/or LGTBQIA+ status.

***Part III.C.*** (vehicle removal) We accept the search criteria modification provided by VHA.

***Part III.D.*** (traffic enforcement) We accept the search criteria modification provided by VHA. We look forward to clarification from OSP Central Office.

***Part III.E.*** (panic button data) We are willing to rescope the request to information for the West LA and Chalmers facilities. Our requested search time frame is from 2014 to present. Merging line items 1 and 2 is acceptable as long as both *usage* and *testing* data is searched for Panic Alarms.We note that this is lower priority for our client.

***Part III.F.1-5. and III.G.*** We accept the search criteria modification provided by the VHA.

***Part III.H.*** (Uniform Monthly Crime Reports) We accept the search criteria modification provided by VHA.

Thank you for your assistance and prompt attention to this matter.

Sincerely,

*Courtney Bachman*

Courtney Bachman
Sunita Patel
UCLA Veterans Legal
Clinic

3

Matt Strugar
Law Offices of Matt Strugar, LLC


(on behalf of )
Damon Dorsey
Horace Walker
National Association of Minority Veterans (NAMVETS)