UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, <br><br> Defendant. | Civ. No. 21-1298-RC |

**PLAINTIFF NATIONAL ASSOCIATION OF MINORITY VETERANS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**Introduction**

This Court should grant Plaintiff National Association of Minority Veterans' (NAMVETS) motion for summary judgment because the Defendant Department of Veterans Affairs has not tried to meet it burden of justifying its redactions to (and withholding of) records responsive to NAMVETS' Freedom of Information Act request.

NAMVETS is an advocacy organization for veterans of color. In November 2020, it made a FOIA request to the Department of Veterans Affairs for records related to the operations of the Veterans Affairs Police Department following complaints by its membership that the police hamper their access to necessary healthcare. The agency then referred out portions of NAMVETS' request to various components of the Department of Veterans Affairs. One of those components was the VA's Office of Inspector General (OIG).

The OIG told NAMVETS it had no responsive records. NAMVETS administratively appealed, and when OIG denied the administrative appeal, NAMVETS brought this suit.

1

Counsel for NAMVETS and the agency sought to resolve the issue. Counsel for the agency gave NAMVETS' counsel specific instructions as to what information the agency required for it to process the request. Counsel for NAMVETS provided that information. And the agency then searched for and located records. It produced one nearly fully redacted 95-page document and withheld two Excel spreadsheets in full.

The agency then moved for summary judgment. But it didn't produce a *Vaughn* index or seek to justify the withholdings in any way. Instead, it argued that NAMVETS' request was too broad to comprehend so the agency didn't need to process it.

NAMVETS cross-moved and asserted that the request as negotiated and narrowed by the parties controlled, not the original request. The agency could obviously comprehend the request as negotiated and narrowed because the agency searched for, located, and produced records in response to it. And by failing to justify its withholdings, the agency forfeited its ability to assert that they were proper.

The agency responds that it now doesn't consider the invited clarification to be any such thing. It argues that the negotiated clarification that it processed is somehow broader than the request it claims is too broad to process. It also argues the agency does not have to justify its withholdings on summary judgment and should be allowed to do so at some unidentified time down the road. In fact, the agency even filed a *Vaughn* index seeking to justify its withholdings, only to later assert that was a mistake because it ultimately decided not to justify the withholdings.

None of that is how FOIA litigation works. By inviting NAMVETS to clarify and narrow its request in litigation, the agency understood that's what NAMVETS was doing when NAMVETS provided the agency with that clarification and narrowing. The clarification and

narrowing was narrower than NAMVETS' original request as shown by comparing the text of each and by the agency's own actions in actually processing the narrowed request. And by ultimately deciding not to even attempt to justify its withholdings, the agency forfeited the right to do so at some unspecified time in the future.

      This Court should grant summary judgment for NAMVETS.

## Argument

**I.**    **At the Request of the Agency, NAMVETS Clarified and Limited Its Request**

      As NAMVETS explained in its combined summary judgment brief and opposition to the agency's motion for summary judgment, the organization engaged in active negotiations with the agency to streamline the processing of its request while imposing a lesser burden on the agency. NAMVET's Opening Br., ECF No. 20, at 5–7; 9–13. The agency's then-counsel prompted these negotiations. *Id.* at 5. He provided specific instructions on what information to provide to the agency to help the agency process the request. *Id.* NAMVETS' counsel did so. *Id.*

      At least while the agency's initial counsel represented the agency, the parties all understood this to be the case. Twice the parties submitted joint status reports about their negotiations describing them as negotiations over "the scope of Plaintiff's FOIA Request." Joint Status Report, ECF No. 8, at 2; Joint Status Report, ECF No. 12 at 1–2.

      A third joint status report was even more clear. It stated, under a heading "**STATUS OF PLAINTIFF'S FOIA REQUEST**" that, "in light of the parties' continued efforts to negotiate over the scope of Plaintiff's FOIA request and based on guidance provided by Plaintiff's counsel on August 23, 2021, VA OIG has identified responsive records within VA OIG." Joint Status Report, ECF No. 13, at 1. The parties also appraised the court that "VA OIG completed the review and produced 95 redacted pages of records, consisting of redacted surveys of VHA

Chiefs of Police and VHA Medical Directors." *Id.* The parties informed the court that the VA OIG referred other responsive records in its possession to other offices. *Id.* at 1–2. And it noted that "the parties continue the process of negotiating over the scope of Plaintiff's FOIA Request. The parties have scheduled a further meeting for December 10, 2021 to discuss the scope of Plaintiff's FOIA request and what potentially responsive records are in the possession of VA OIG." *Id.* at 2.[1]

The agency's new counsel now states that none of that is true. The Joint Status reports weren't about the "**STATUS OF PLAINTIFF'S FOIA REQUEST**" in any way, the agency now claims, and the records the agency produced were *not* in response to a NAMVETS' request, and the agency never even "negotiate[d] over the scope of Plaintiff's FOIA request," because those negotiations *actually* resulted in a supposedly "new" FOIA request. Agency's Opp./Reply Br., ECF No. 24, at 4–5. And the agency claims NAMVETS was "squarely on notice" that it was a "new" request because the agency assigned it a new number for its internal processing. *Id.* at 5.[2]

---

[1] This status report was even *drafted and filed* by the agency's then-counsel. *See* Notice of Electronic Filing, ECF No. 13 (Dec. 6, 2021).

[2] The agency's claim that NAMVETS' administrative appeal from another VA component's withholding of records responsive to NMAVETS' original request somehow shows that NAMVETS understood that OIG treated its clarification as a "new request" is confounding. *See* Agency's Opp./Reply Br., ECF No. 24, at 5. As the agency itself explained in its motion for summary judgment, NAMVETS made a request to the Department of Veterans Affairs generally, which then sent the request out for processing to various components within the VA. *See, e.g.*, Gowins-Bellamy Declaration, ECF No. 18-3, at ¶¶ 2–5; Defendants' Statement of Undisputed Material Fact, ECF No. 18-2, at ¶ 1; Brief in Support of Motion for Summary Judgment, ECF No. 18-1, at 1–4. Each component within the VA then assigned its own tracking number and processed the request separately and differently. *See, e.g.*, Brief in Support of Motion for Summary Judgment, ECF No. 18-1, at 4. The different components each have their own administrative appeal processes. This lawsuit involves only the VA OIG's handling of the portions of NAMVETS' request that was referred to the VA OIG. That NAMVETS *later* filed an administrative appeal related to the processing of its request by different components—the Veterans Health Administration and VA Office of Security and Preparedness—says nothing

That's nonsense. The agency's then-counsel invited negotiations over the scope of the request, engaged in those negotiations, produced responsive records in response to those negotiations, and represented to this Court that it did each of those things in response to the negotiations over the scope of the request. The Court should reject the agency's eleventh-hour about-face.

And because NAMVETS did not know (or particularly care) about the agency's internal processes for processing negotiations between counsel once FOIA requests are in litigation, it meant nothing to NAMVETS that the agency assigned itself a new number for the agency to handle the request.

Because the parties all understood the negotiations to apply to NAMVETS' FOIA request, the clarified and negotiated request controls. *People for Am. Way Found. v. United States DOJ*, 451 F. Supp. 2d 6, 12 (D.D.C. 2006) ("It would be senseless and inefficient for [courts] to ignore the advances made during [lengthy and] tedious negotiations between the parties, only to have [a] plaintiff file another FOIA request for the narrowed number of files and return to precisely the same position in which the parties now stand."); *Am. Ctr. for Law & Justice v. DOJ*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) ("when a plaintiff narrows his FOIA request in a joint status report, it supersedes any broader request set forth in the plaintiff's complaint"); *DeFraia v. CIA*, 311 F. Supp. 3d 42, 47 (D.D.C. 2018) ("[I]t is the Joint Status Report, not Mr. DeFraia's original request, that controls."); *Gilman v. DHS*, 32 F. Supp. 3d 1, 22 (D.D.C. 2014) ("The plain meaning of the joint status report makes clear that plaintiff narrowed

---

about NAMVETS' understanding of how the OIG was handling its own processing of the request. How could it? In fact, the OIG's declarant herself testified to the independence of the OIG from the rest of the agency in handling FOIA requests. Gowins-Bellamy Declaration, ECF No. 18-3, at ¶ 5 ("To preserve OIG independence under the Inspector General Act of 1978, OIG does not share a tracking system with other VA components."); *see also id*. at ¶¶ 7–8.

5

her FOIA request."); *Leopold v. United States Immigr. & Customs Enf't*, 560 F. Supp. 3d 189, 197 (D.D.C. 2021) ("It is this more limited search, and not the scope of Plaintiffs' original request, that controls for purposes of summary judgment.").

## II.  After Being Clarified and Narrowed, the Request is Narrower than NAMVETS' Initial Request

Because the agency understood the agency's invitation to negotiate over the scope of NAMVETS' request to be exactly that, it doesn't matter whether NAMVETS' clarification is more narrow or broad than the initial request. But the fact that the negotiations led to a narrower request provides a separate independent basis to find the negotiated request controls here. *Leopold*, 560 F. Supp. 3d at 196–97; *People for the Am. Way*, 451 F. Supp. 2d at 11–12.

NAMVETS' original request sought "[a]ny and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020 . . ." Plaintiff's Counter-Statement of Undisputed Material Facts (CSUMF), ECF 20-1, ¶ 25. The agency's then-counsel asked NAMVETS' counsel to identify the three reports in that period for which NAMVETS sought records, confirm whether NAMVETS wanted the underlying records OIG used to prepare those reports, and identify types of documents and specific facilities or subagencies named in the reports that NAMVETS was interested in. *Id.* at ¶ 40. *These were the clarifications and limitations that the agency's then-counsel sought*.

NAMVETS' counsel then responded with additional information. *Id.* at ¶ 41. He identified the three OIG reports from 2018 and 2020, confirmed that NAMVETS requested the underlying data used to compile the reports, and provided *additional narrowing parameters* based on the text of the OIG reports, as requested by the agency's counsel. *Id.* at ¶ 42.

So while NAMVETS' original request sought all OIG "guidelines and recommendations issued between 2014 and 2020," the parties' negotiations narrowed this to three specific OIG reports. And while NAMVETS' original request sought "[a]ny and all Records concerning notice, discussion of, and compliance with" those reports, the parties' negotiations narrowed this to data referenced on specific pages of each of the three OIG reports. *See* Declaration of Matthew Strugar, ECF No. 20-3, at Ex. C (clarifying email). Three specific reports within a range of dates is narrower than *all* reports within that that same date range. And underlying records OIG used to prepare those reports, identified by individual pages of each report, is narrower than "[a]ny and all Records concerning notice, discussion of, and compliance with" such reports.

The agency's contention that NAMVETS' clarified request is broader than its original request conflicts with the agency's own contention in its opening brief that the original request was too broad to even be processed. Agency's MSJ BR., ECF No. 18-1, at 8–16. In its opening brief, the agency sought summary judgment because NAMVETS' initial request was a "[b]road, sweeping" request with "such expansive phrasing [that it] would sweep in any communication even remotely related to the topic at hand, leaving the unfortunate FOIA processor assigned to such a case in a hopeless muddle without clear guidance about what documents are being sought." *Id.* at 8–9 (cleaned up). The original request was "framed in such expansive language" that "[t]here is no way for [the agency] to conduct a search based on that request." *Id.* at 10–11. In fact, the agency's declarant complained that the request "seems to seek virtually every record these components possess." *Id.* at 12.

After the parties engaged in negotiations and NAMVETS clarified and narrowed its request, the agency wasn't just *capable* of identifying responsive records, it in fact produced

7

some of them (and identified but withheld others). CSUMF, ECF 20-1, at ¶ 45. The agency's own actions show the negotiated request wasn't broader than the original request, which was, according the agency, too broad to even attempt to process. The agency's about-face is a cynical post-hoc attempt to avoid the transparency that FOIA demands.

**III.     The Agency Forfeited the Right to Justify the Redactions and Withholdings**

As explained in NAMVETS' opening brief, the agency understood the clarified request enough to process it, perform a search, and locate records. NAMVETS' Op. Br., ECF No. 20, at 14. It produced 95 pages of redacted responsive records and it withheld two Excel spreadsheets. The agency does not attempt to justify its redactions or withholding of the responsive spreadsheet. Because it has the burden of doing so, and waived the right to even try to meet that burden, summary judgment for NAMVETS is appropriate.

"The government bears the burden of proving the applicability of any statutory exemption it asserts in denying a FOIA request." *Maydak v. Dep't. of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000); 5 U.S.C. § 552 (a)(4)(B) ("the burden is on the agency to sustain its action"). That burden can be met by adequate agency affidavits or declarations and usually takes the form of a *Vaughn* index. *Morley v. CIA*, 508 F.3d 1108, 1122 (2007). Declarations that "provide no basis for a judicial assessment of the [agency's] assertions" do not satisfy the agency's burden, *Bevis v. Dep't of State*, 801 F.2d 1386, 1390 (D.C. Cir. 1986), because "[t]o accept an inadequately supported exemption claim 'would constitute an abandonment of the trial court's obligation under the FOIA to conduct a de novo review.'" *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (quoting *Allen v. CIA*, 636 F.2d 1287, 1293 (D.C. Cir. 1980)). *See also, e.g., Jud. Watch, Inc. v. Dep't of Homeland Security*, 841 F. Supp. 2d 142, 162 (D.D.C. 2012) (an agency's motion for summary judgment must be denied where "the Court cannot

meaningfully assess whether the information withheld" is properly exempt based on the agency's declaration).

The agency here does not even contend that it has met its burden. Instead, it argues that it does not even have to justify the exemptions "at this time" in "its initial summary judgment motion." Agency's Opp./Reply Br., ECF No. 24, at 6, 7. The agency seems to believe that it is entitled to another crack at summary judgment if it does not succeed this time around. To allow the agency to relitigate its withholdings is a waste of the Court's time and further delays the disclosure of important information the public may have the right to see.

As a general rule, an agency's failure to justify a withholding at summary judgment forfeits any argument that the withholding is justified. *Ryan v. DOJ*, 617 F.2d 781, 792 & n.38a (D.C. Cir. 1980) (refusing to allow agency to invoke exemption not previously "raised," proclaiming instead that "an agency must identify the specific statutory exemptions relied upon, and do so at least by the time of the district court proceedings"), *abrogated on other grounds by, Dep't of Interior v. Klamath Water Users Protective Ass'n,* 531 U.S. 1 (2001).

The D.C. Circuit has "[r]ecognized two exceptions [to this rule] for unusual situations, largely beyond the government's control": specifically, "extraordinary circumstances where, from pure human error, the government failed to invoke the correct exemption and will have to release information compromising national security or sensitive, personal, private information unless the court allows it to make an untimely exemption claim; and where a substantial change in the factual context of the case or an interim development in the applicable law forces the government to invoke an exemption after the original district court proceedings have concluded." *Maydak v. United States DOJ*, 218 F.3d 760, 767 (2000).

This rule applies to belated assertions of exemptions in the district court, too. *Shapiro v. United States DOJ, Civ.* Action No. 13-555 (RDM), 2016 U.S. Dist. LEXIS 68476, at *12 (D.D.C. May 25, 2016) ("Basic principles of fairness, efficiency, and finality, moreover—principles inherent in the rules of civil procedure that apply with extra force in the context of FOIA litigation—counsel in favor of requiring the government to make some threshold showing of good cause to avoid a finding of forfeiture.").

The agency makes no claim that either of the circumstances recognized in this Circuit apply here. It is the agency's burden to make such a showing, or at least even argue that either circumstance applied here. The agency fails to do even that.

It likely fails to make the argument because it is clear neither exception applies. This case involves records related to OIG recommendations related to the policing of VA hospitals when the agency invoked and applied the exemptions to the responsive records. So this isn't a case involving "extraordinary circumstances where, from pure human error, the government failed to invoke the correct exemption." *Maydak*, 218 F.3d at 767. Even if it were, the agency would still have forfeited the argument because release of records related to OIG recommendations about VA hospital policing do not threaten to "compromise[e] national security or sensitive, personal, private information." *Id.*

And there is nothing to suggest that this is a case "where a substantial change in the factual context of the case or an interim development in the applicable law forces the government to invoke an exemption." *Id.*

Instead, the agency just chose not to justify the withholding and created greater delay in disclosing important information relevant to the nation's military veterans and their access to healthcare. In fact, the agency even created and mistakenly filed a *Vaughn* index related to the

10

withholdings. *See Vaughn* Index, ECF No. 24-1. But made a strategic decision *not* to justify the withholdings, asserting in a later filed errata that it prepared the Vaughn index "to submit with these filings, but ultimately decided not to use" it. Notice of Errata, ECF No. 25. Apparently the agency did so because it believes it has another shot beyond an "initial" summary judgment motion. The failure to adopt the *Vaughn* index, allow the Plaintiffs to respond, and permit this Court to render a decision on the merits of withholding the records is inefficient and a waste of this Court's and the Plaintiff's time.

This Court should not reward such gamesmanship. The agency purposefully chose to not justify its withholding and forfeited any argument that they were properly asserted. No exception to the forfeiture rule applies. Because the agency bears the burden of showing the withholdings were proper, it fails that burden.

Permitting the agency to succeed in their argument risks thwarting the purpose of FOIA. NAMVETS filed the underlying request in November 2020 at a time when the nation's Black communities—including Black veterans—questioned the role of police within social institutions and the failure of the country to provide equal access to critical healthcare as the COVID19 pandemic continued. Nearly 20 months have passed, and the agency now argues it should be given an unlimited amount of time to justify its withholdings of responsive and negotiated records.

This Court should enter summary judgment for NAMVETS and order the agency to produce unredacted versions of the 95 pages of responsive records previously produce in redacted format and the two responsive Excel spreadsheets that the agency withheld in full.

## Conclusion

NAMVETS' summary judgment motion should be granted, and the agency's summary judgment motion denied.

Date: July 26, 2022            Respectfully submitted,

/s/ Matthew Strugar
Matthew Strugar (D.C. Bar No. 1010198)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
323-696-2299
matthew@matthewstrugar.com

Sunita Patel (D.C. Bar No. 1026102)
Courtney Bachman (pro hac vice)
UCLA Veterans Legal Clinic
907 Westwood Blvd., Unit 444
Los Angeles, CA 90024
(310) 792-1498
patel@law.ucla.edu
bachman@law.ucla.edu

## Certification of Service

On July 26, 2022, I filed the forgoing document through this Court's CM/ECF system, which sent notice to all of the counsel of record in this action.

Dated: July 26, 2022            /s/    Matthew Strugar
                                Matthew Strugar