## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 21-1298 (RC) |
| | : | |
| v. | : | Re Document Nos.: 18, 21 |
| | : | |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### Denying Defendant's Motion for Summary Judgment; Granting in Part and Denying in Part Plaintiff's Cross-Motion for Summary Judgment; Overruling Plaintiff's Evidentiary Objections as Moot

## I. INTRODUCTION

Plaintiff National Association of Minority Veterans (the "Association") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the United States Department of Veterans Affairs (the "VA"). The Association, which represents the interests of minority veterans, seeks to compel disclosure of records that it claims were unlawfully withheld pertaining to the policies and practices of the VA Police Force ("VPD") at Veterans Health Administration ("VHA") facilities. The VA's motion for summary judgment and the Association's cross-motion for summary judgment are ripe for review. For the reasons stated below, the Court denies the VA's motion and grants in part and denies in part the Association's cross-motion. The Association also submitted a set of evidentiary objections to the affidavit attached to the VA's motion, which the Court overrules as moot.

## II.  FACTUAL BACKGROUND

The heart of the parties' disagreement is over whether an email from the Association to the VA specifying the particular records sought as part of discussions between the parties after this suit was filed in fact constituted a second FOIA request, such that the VA's production in response to the email may not be challenged pursuant to the original FOIA request.

### A.  The Original Request

The Association filed the original FOIA request (the "Original Request") on November 11, 2020.  Compl. ¶ 7, ECF No. 1; Answer ¶ 7, ECF No. 7; Ex. A to Compl. ("Original Request").  The Original Request had several subsections, each containing numerous separate record requests.  Original Request at 3.  On December 23, 2020, the VA Office of Inspector General ("OIG") sent a letter to the Association stating that the VA received the Original Request and assigned portions of it to OIG, which assigned it a tracking number.  Ex. B to Compl. at 1.  The letter advised that "this project and all information gathered were legally destroyed on 1/18/2019, since they have reached the end of their records retention period," and therefore that OIG "must provide a 'no records' found response."  *Id.*

On January 25, 2021, the Association appealed OIG's response.  Ex. C to Compl.  The appeal letter stated that the Association believed that OIG's "'no records' found response was in error," and clarified the two parts of the Original Request to which it believed OIG would have responsive records: (1) Part II.A.3, which sought

> Any and all Records concerning the behavioral record flag policies and procedures utilized by the VAPD and VHA staff including, but not limited to
> . . .
> VA and VHA definitions and applications of "disruptive behavior" . . . including but not limited to definitions recommended by the Office of the Inspector General (OIG) Management of Disruptive Patient Behavior at VA Medical Facilities (2013).[6]

2

[6] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *Management of Disruptive Patient Behavior at VA Medical Facilities* (2013).;

and (2) Part II.D, which sought

Any and all Records concerning notice, discussion of, and compliance with Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020, including, but not limited to:
1.  Implementation of recommended designated manager of the records management systems for the VAPF;[7] and
2.  Findings of the working group established to evaluate whether the Report Exec system meets the needs of VAPF, including strategies to implement this system or its replacement;[8] and
3.  Development and implementation of a plan for resolving issues with the police records management system.[9]

[7] *See, e.g.*, Department of Veterans Affairs, Office of the Inspector General, *VA Police Management System Needs Improvement* (2020).
[8] *Id.*
[9] *Id.*

*Id.* at 1; Original Request at 3.

The appeal letter stated that, "[b]ased on [the VA's] December 23 response, we recognize that the information gathered for the 2013 report was legally destroyed" and therefore that the Association "no longer seek[s] that data."  Ex. C to Compl. at 1.  However, the appeal letter continued, "[i]nstead, and consistent with our November 11 FOIA request, we would like to see any data that examines behavioral record flag policies from relevant OIG reports including" three specific reports—a January 30, 2018 report, a December 13, 2018 report, and a June 17, 2020 report.[1]  *Id.*  The appeal letter explained that the Association's "request in Part II D was not limited to the 2013 report," and accordingly that it believed that responsive "records should exist."  *Id.* at 2.

---

[1] The June 17, 2020 report is the same as that listed in footnote 7 of the original request.

Three days later, on January 28, 2021, OIG sent the Association a response letter denying the appeal.  Ex. D. to Compl. at 2.  The response letter restated the Association's request for "Department of Veterans Affairs Office of Inspector General guidelines and recommendations issued between 2014 and 2020," and noted that the request specifically mentioned the 2013 and 2020 reports.  *Id.* at 1.  It repeated OIG's finding that records related to the 2013 report were legally destroyed, but made no mention of the other reports before concluding that "the search by the FOIA staff was adequate and reasonable."  *Id.* at 2.  The Association filed this action on May 11, 2021 asking the court to declare that the VA failed to comply with FOIA and order the VA to produce responsive records.  *See* Compl.

## B.  The Negotiated Request

It is the events that occurred after the Association initiated this suit that are centrally relevant here.  On August 8, 2021, the VA filed a status report with the Court stating that "[s]ince the filing of the lawsuit, the parties have begun the process of negotiating over the scope of Plaintiff's FOIA Request" and that "[o]ver the next few weeks, Plaintiff and Defendant plan to confer in good faith over the scope of Plaintiff's FOIA Request and update the Court."  Defendant's Status Report at 2, ECF No. 8.  On October 5, 2021, the parties filed a joint status report explaining that, since the previous status report was filed, "the parties have continued the process of negotiating over the scope of Plaintiff's FOIA Request."  October 5, 2021 Joint Status Report at 1, ECF No. 12.  Most importantly for present purposes, it stated that

> [o]n August 10, 2021, counsel for the parties had a lengthy meet and confer to discuss the breadth of Plaintiff's FOIA request and to ask Plaintiff to identify which OIG reports and underlying data Plaintiff was interested in as a way of reaching an agreement regarding the scope of Plaintiff's FOIA request.  Plaintiff provided Defendant, through counsel, with guidance regarding three specific reports and the data from those three reports on August 23, 2021.

*Id.* at 1–2.

It went on to explain that "[t]he responsive records identified within VA OIG have been identified and reviewed and will be provided to Plaintiff's counsel on October 6, 2021." *Id.* at 2. On December 6, 2021, the parties submitted another joint status report.  It reiterated that "VA OIG has identified responsive records within VA OIG" and updated the Court that "[o]n October 6, 2021, VA OIG completed the review and produced 95 redacted pages of records."  December 6, 2021 Joint Status Report at 1, ECF No. 13.  It also stated that "[t]here are no other anticipated productions of records from VA OIG," but added that "the parties continue the process of negotiating over the scope of Plaintiff's FOIA Request" and "have scheduled a further meeting for December 10, 2021 to discuss the scope of Plaintiff's FOIA request and what potentially responsive records are in the possession of VA OIG."  *Id.* at 2.

The parties' next joint status report, on February 3, 2022, marked a breakdown in cooperation between the parties and a shift in the VA's position.  The VA stated that "Defendant takes the position" that the Association's FOIA request does not reasonably describe the records sought and, nonetheless, that OIG "conducted an adequate search for responsive records, which is now complete and has turned up no responsive records."  February 3, 2022 Joint Status Report at 1, ECF No. 15.  Accordingly, it went on, "[t]he parties believe that dispositive motions briefing is necessary."  *Id.* at 2.

### III.  LEGAL STANDARDS

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).  Accordingly, FOIA "mandates release of properly requested federal agency records unless the materials fall squarely within one of nine statutory exemptions."  *Property of*

the People v. Office of Mgmt. and Budget, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (citing

Milner v. Dep't of Navy, 562 U.S. 562, 565 (2011); Students Against Genocide v. Dep't of State,

257 F.3d 828, 833 (D.C. Cir. 2001)).  "Because disclosure rather than secrecy is the dominant

objective of the Act, the statutory exemptions are narrowly construed."  Elec. Privacy Info. Ctr.

v. U.S. Drug Enf't Agency, 192 F. Supp. 3d 92, 101 (D.D.C. 2016) (cleaned up).

　　　　To prevail on a motion for summary judgment, a movant must show that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  "FOIA cases typically and appropriately are decided on motions for

summary judgment."  Def. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 97 (D.D.C.

2009).  "Unlike the review of other agency action that must be upheld if supported by

substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on

the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"

U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989) (citing 5

U.S.C. § 552(a)(4)(B).  To carry its burden, the agency must provide "a relatively detailed

justification, specifically identifying the reasons why a particular exemption is relevant and

correlating those claims with the particular part of the withheld document to which they apply."

Elec. Privacy Info. Ctr., 192 F. Supp. 3d at 103 (citing Mead Data Central v. U.S. Dep't of Air

Force, 566 F.2d 242, 251 (D.C. Cir. 1977)).  "This burden does not shift even when the requester

files a cross-motion for summary judgment because the Government ultimately has the onus of

proving that the documents are exempt from disclosure, while the burden upon the requester is

merely to establish the absence of material factual issues before a summary disposition of the

case could permissibly occur."  Ctr. for Investigative Reporting v. U.S. Customs and Border

Protection, 436 F. Supp. 3d 90, 99 (D.D.C. 2019) (citing Pub. Citizen Health Research Grp. v.

*FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (cleaned up)).  "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

## IV.  ANALYSIS

Recall that the parties' October 5, 2021 joint status report stated that, on August 10, 2021, the parties engaged in a "lengthy meet and confer to discuss the breadth of Plaintiff's FOIA request and to ask Plaintiff to identify which OIG reports and underlying data Plaintiff was interested in as a way of reaching an agreement regarding the scope of Plaintiff's FOIA request." October 5, 2021 Joint Status Report at 1.  Afterward, "Plaintiff provided Defendant, through counsel, with guidance regarding three specific reports and the data from those three reports on August 23, 2021."  *Id.* at 1–2.  The VA's motion now characterizes the Association's August 23 communication (the "August 23 Email") as a "new FOIA request," and accordingly addresses its arguments solely to the Original Request.  Def.'s Mot. for Summary Judgment ("Def.'s Mot.") at 5, ECF No. 18-1.  Specifically, the VA claims that it is entitled to summary judgment on the Original Request based on overlapping arguments that the Association failed to reasonably describe the records sought, that a search would be futile, and/or that the search conducted was adequate.  *See* App'x. to Def.'s Mot.

The Association's cross-motion argues that the August 23 Email was not a new FOIA request, but rather an attempt, invited by the VA and common in FOIA litigation, to narrow the scope of the Original Request.  Pl.'s Cross-Motion for Summary Judgment and Opposition to Def.'s Mot. ("Pl.'s Mot.") at 7, 9–10, ECF No. 21-1.  Accordingly, the Association argues that the VA's focus on the Original Request is misplaced, and that it is entitled to summary judgment

because the VA has not met its burden to justify the withholdings and redactions applied to the

VA's October 6, 2021 production in response to the August 23 Email.  *Id.* at 11, 15.

### A.  The August 23 Email Was Not a New FOIA Request

The record makes unmistakably clear that the August 23 Email was part of an ongoing

negotiation about the scope of Original Request, not a new request.  This is plain from a simple

rendition of the sequence of events:

> <u>May 11, 2021</u>: The Association filed the complaint.  *See* Compl.
>
> <u>August 4, 2021</u>: Counsel for the VA emailed counsel for the Association asking "if you have some time next week to discuss the FOIA request at issue."  Ex. B to Pl.'s Mot., ECF No. 21–4.  It continued, "VA OIG had some concerns about the scope of the FOIA request, and wanted to ask some questions and provide you and your client with some information about what records it does and does not have to hopefully focus on agreed-upon search."  *Id.*
>
> <u>August 10, 2021</u>: The parties engaged in a "lengthy meet and confer to discuss the breadth of Plaintiff's FOIA request and to ask Plaintiff to identify which OIG reports and underlying data Plaintiff was interested in as a way of reaching agreement on the scope of Plaintiff's FOIA request."  October 5, 2021 Joint Status Report at 1.
>
> <u>August 23, 2021</u>: In response to the VA's request during the August 10, 2021 meet and confer, counsel for the Association emailed counsel for the VA "guidance regarding three specific reports and the data from those three reports" that it sought.  *Id.* at 1–2; *see* Ex. C to Pl.'s Mot. ("August 23 Email"), ECF No. 21–4; Ex. A to Def.'s Reply in Support of Def.'s Mot. and Opp'n to Pl's Mot. ("Def.'s Reply and Opp'n"), ECF No. 23–2.
>
> <u>October 6, 2021</u>: OIG produced documents responsive to the Association's request as modified by the August 23 Email.  *See* October 5, 2021 Joint Status Report at 2 ("The responsive records identified within VA OIG have been identified and reviewed and will be provided to Plaintiff's counsel on October 6, 2021"); December 6, 2021 Joint Status Report at 1–2 ("As previously reported in the previous Joint Status Report, in light of the parties' continued efforts to negotiate over the scope of Plaintiff's FOIA request and based on guidance provided by Plaintiff's counsel on August 23, 2021, VA OIG has identified responsive records within VA OIG.  On October 6, 2021, VA OIG completed the review and produced 95 redacted records, consisting of redacted surveys of VHA Chiefs of Police and VHA Medical Directors.").

The VA's conclusory assertion that the August 23 Email represented a new FOIA request is

overwhelmingly contradicted by the evidence that both parties understood, and twice submitted

to the Court, that the August 23 Email was solicited by the VA as part of an ongoing negotiation to narrow the scope of the Original Request.

This is reinforced by the substance and form of the August 23 Email itself.  With respect to its substance, the August 23 Email from counsel for the Association to counsel for the VA contains repeated references to the August 10 call and to the Original Request.  It contains the subject line "NAMVETS v. VA;"[2] it begins by saying "[t]hank you again for talking to me about this case" and referring to colleagues who "recently entered appearances in this case;" it provides background that "[y]ou asked, with regard to the OIG's production, if my client could specify which OIG reports it was interested in and which of the underlying data referenced in this [*sic*] reports my client is interested in;" and it refers to "our call" before listing three reports and the information sought regarding each.  August 23 Email at 1.  Notably, these are the same three reports specified in the Association's administrative appeal from the VA's "no records" response to the Original Request, one of which was also explicitly included in the Original Request itself.  *See* Ex. C to Compl. at 1; Original Request at 3, Part II.D & n.7.

With respect to its form, the August 23 Email did not conform to the requirements for new requests under FOIA or the VA's implementing regulations.  Under FOIA, agencies must publish procedures for submitting new FOIA requests, 5 U.S.C. § 552(a)(1)(C), and must respond to requests "made in accordance with published rules," *id.* § 552(a)(3)(A).  The VA's regulations provide that "email FOIA requests must be sent to official VA FOIA mailboxes established for the purpose of receiving FOIA requests" and that "[a]n email FOIA request that is sent to an individual VA employee's mailbox, or to any other entity, will not be considered a perfected FOIA request."  38 C.F.R. § 1.554(b).  The regulations state that the agency must

---

[2] "NAMVETS" is the Association's chosen shorthand name.

respond to "a perfected request," *id.* § 1.557(b), and that "[t]he requester must meet all of the requirements of this section in order for the request to be perfected," *id.* § 1.554(f). The regulations also incorporate by reference an additional requirement, listed on the agency's FOIA website, that requesters must "[s]tate [their] willingness to pay applicable FOIA processing fees." *Id.* §§ 1.550(a), 1.552(a); *see https://www.va.gov/FOIA/Requests.asp.*

The August 23 Email did not conform to these requirements. It was directed only to the Assistant United States Attorney assigned to this case at the time, not an "official VA FOIA mailbox," and contained no reference to the Association's willingness to pay applicable fees. *See* August 23 Email. The August 23 Email also stands in marked contrast to the Original Request, which, among other formalities, was addressed to the FOIA Office for the Department of Veterans Affairs and contained the subject line, "Request Under Freedom of Information Act." Original Request at 1. Courts routinely credit agencies' defensive arguments that imperfect requests are unenforceable for failure to exhaust administrative remedies. *See, e.g.*, *Calhoun v. Dep't of Just.*, 693 F. Supp. 2d 89, 91 (D.D.C. 2010) ("Where a FOIA request is not made in accordance with the published regulations, the FOIA claim is subject to dismissal for failure to exhaust administrative remedies, as the failure to comply with an agency's FOIA regulations for filing a proper FOIA request is the equivalent of a failure to exhaust." (cleaned up)). It would equally disrespect administrative exhaustion's function as a "core component of orderly procedure and good administration" to effectuate an agency's self-serving waiver of its perfection requirements in order to label an email sent during ongoing negotiations as a new FOIA request, and then turn around and claim that the requester failed to exhaust administrative remedies by not appealing the agency's response to the new request before coming to court. *Eddington v. USPS*, 2020 WL 1079070 at *2 (D.D.C. March 6, 2020) (internal quotation marks

and citation omitted).  The Court will not sanction the VA's attempt to do as much here.  *See* Def.'s Reply and Opp'n at 5–6 n.2 (arguing that "the email did not modify the original FOIA request, but was a new request entirely," and therefore that granting the relief sought would "enabl[e] plaintiffs to circumvent FOIA's exhaustion of remedies requirement").

The only sliver of evidence to suggest that the August 23 Email represented a new FOIA request is the fact that the VA assigned it a separate tracking number.  *See* 2d Gowins-Bellamy Decl. ¶ 12, ECF No. 25–1.  However, a tracking number is properly understood merely as an internal mechanism to ensure orderly processing of the FOIA request.  *See* 5 U.S.C. § 552(a)(7)(A) (providing simply that an "individualized tracking number" be assigned to "each request that will take longer than ten days to process").  The VA claims that permitting a requester to enforce an "alter[ed] and broaden[ed]" request that was assigned a new tracking number "would create bad policy and incentives, enabling the plaintiffs to circumvent FOIA's exhaustion of remedies requirement."  Def.'s Reply and Opp'n at 5.  In fact, as suggested above, the inverse is true: to permit an agency to extinguish a requester's ability to enforce a negotiated request in court simply by assigning it a new tracking number would allow agencies to trap requesters in a Sisyphean loop of inexhaustible administrative appeals.  This would do nothing to serve administrative exhaustion's "primary purpose" to avoid the "premature interruption of the administrative process," nor ensure that the agency is not "hindered by the failure of the litigant to allow [it] to make a factual record, or to exercise its discretion or apply its expertise."  *McKart v. United States*, 395 U.S. 185, 193–94 (1969).  It also would be inconsistent with FOIA's "strong presumption in favor of disclosure," *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991), and with "the balance between statutory duties and judicial enforcement" Congress struck by providing for judicial review to enforce FOIA requests, *Citizens for Resp. and Ethics in Wash. v.*

*U.S. Dep't of Just.* (*"CREW"*), 846 F.3d 1235, 1245 (D.C. Cir. 2017); *see also Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) ("[C]ourts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing.").

Finally, it bears emphasis that the VA itself represented to the Court that the August 23 Email was a negotiated version of the Original Request both before *and after* the VA issued the new tracking number.  The parties' October 5, 2021 joint status report described the "lengthy meet and confer" on August 10, 2021 during which the VA "ask[ed] Plaintiff to identify which OIG reports and underlying data [it] was interested in" and after which "Plaintiff provided Defendant, through counsel, with guidance regarding three specific reports and the data from those three reports on August 23, 2021."  October 5, 2021 Joint Status Report at 1–2.  The next day, on October 6, 2021, OIG issued the new tracking number.  2d Gowins-Bellamy Decl. ¶ 12.  Two months later, on December 6, 2021, the parties again submitted to the Court that "in light of the parties' continued efforts to negotiate over the scope of Plaintiff's FOIA request and based on guidance provided by Plaintiff's counsel on August 23, 2021, VA OIG has identified responsive records within VA OIG." [3]  December 6, 2021 Joint Status Report at 1.

Accordingly, the Court disagrees with the VA's new position that the August 23 Email, which the VA itself invited, represents a new FOIA request that "is not properly before this

---

[3] It is perhaps no coincidence that the two declarations submitted by the VA from Ruthlee Gowins-Bellamy, a Supervisory Government Information Specialist at OIG, contradict each other.  *Compare* 1st Gowins-Bellamy Decl. ¶ 35, ECF No. 18–3 ("On December 10, 2021, an attorney from my office spoke with Plaintiff's attorney . . . .  Plaintiff's attorney asserted that the new FOIA request is not actually a separate request from the original request, but rather, 'there is only one FOIA.'") *with* 2d Ruthlee Gowins-Bellamy Decl. ¶ 16 ("Our office never received communication from any of Plaintiff's counsel indicating an objection to our handling and processing of [the August 23 Email] as a new and separate FOIA request . . . .").

Court," and agrees with its former position, shared at the time and still by the Association, that it represents a negotiated version of the Original Request. Def.'s Reply and Opp'n at 6. Because the VA's position is "blatantly contradicted by the record," this is not a "genuine" dispute for purposes of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. The Negotiated Request Controls

The Association argues that the request as modified by the August 23 Email (the "Negotiated Request"), not the Original Request, controls. *See* Pl.'s Mot. at 10–11. The VA counters that a FOIA plaintiff may only enforce a modified request when it is narrower than the original or when it is agreed to by the agency, and neither is the case here. Def.'s Reply and Opp'n at 3.

The Association cites several cases decided by courts in this district for the proposition that a FOIA request narrowed through negotiation controls for purposes of summary judgment. *See, e.g.*, *Leopold v. ICE*, 560 F. Supp. 3d 189 (D.D.C. 2021) ("Several decisions in this district have recognized that 'when a plaintiff narrows his FOIA request in a joint status report, it supersedes any broader request set forth in the plaintiff's complaint.'" (quoting *Am. Ctr. for Law & Justice v. DOJ*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) and citing *DeFraia v. CIA*, 311 F. Supp. 3d 42, 47 (D.D.C. 2018); *Gilman v. DHS*, 32 F. Supp. 3d 1, 22 (D.D.C. 2014); *People for the Am. Way Found. v. DOJ*, 451 F. Supp. 2d 6, 12 (D.D.C. 2006)). Indeed, the text of FOIA itself contemplates that requests will be modified. *See* 5 U.S.C. § 552(a)(6)(B)(ii) (requiring the agency to give certain requesters the opportunity "to limit the scope of the request" and referring to possible negative consequences if a requester refuses to "reasonably modify the request"); *DeFraia*, 311 F. Supp. 3d at 47 (citing 5 U.S.C. §§ 522(a)(4)(A)(viii)(II)(bb), (a)(6)(B)(ii) for the proposition that "it is the Joint Status Report, not [plaintiff's] original request that controls").

13

The VA argues that this caselaw does not apply because "the August 23, 2021 email was not narrower than the original FOIA request."  Def.'s Reply and Opp'n at 3.  The Court disagrees.  The relevant section of the Original Request sought "[a]ny and all Records concerning notice, discussion of, and compliance with the Department of Veterans Affairs Office of the Inspector General guidelines and recommendations issued between 2014 and 2020 including, but not limited to" three subcategories.  Original Request at 3, Part II.D.  As the VA emphasized in its motion, it also defined Records broadly to include

> all documentation or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, transcripts, video and audio recordings, emails, faxes, files, guidance, guidelines, directives, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, studies, and other similar information, dating back to the year 2012.

*Id.* at 2, Part I.A.  The Negotiated Request clearly narrowed the universe of requested material by confining it to subcategories of information related to three particular OIG reports.  *See* August 23 Email.  Moreover, the parties repeatedly expressed an understanding that the whole point of the negotiation leading to the August 23 Email was to narrow the scope of the Original Request.  *See, e.g.*, Ex. B to Strugar Decl., ECF No. 21–4 (showing the VA kicking off negotiations with an email to the Association saying, "I would like to know if you have some time next week to discuss the FOIA request at issue.  VA OIG had some concerns about the scope of the FOIA request, and wanted to ask some questions . . . to hopefully focus an agreed-upon search.").

The VA also contends that a modified request only controls where it was mutually agreed upon.  The obvious weakness in this argument is that the VA *did* agree to the Negotiated Request; indeed, it solicited it and produced documents responsive to it.  *See* Ex. D to Strugar Decl. ("Production Letter"), ECF No. 21–4.  More broadly, while the VA cites three cases in which the court held that a plaintiff could not escape an agreement with the agency to narrow its

request, Def.'s Reply and Opp'n at 4, it cites no cases for the proposition that an agency's assent

is required where a plaintiff seeks to enforce a voluntarily narrowed request, likely because the

authority cuts the other way. *See, e.g.*, *People for the Am. Way Found.*, 451 F. Supp. 2d at 12

("There is no authority . . . for the government's suggestion that its consent is required in order to

effectuate a requester's reduction of its own FOIA request.").

Because the Court finds that the Negotiated Request controls, it denies the VA's motion

for summary judgment based on alleged infirmities with the Original Request, and proceeds to

consider the Association's challenge to the propriety of the VA's redactions and withholdings

applied to its production in response to the Negotiated Request.

### C. The VA Has Not Met Its Burden to Justify Any Nondisclosures

On October 6, 2021, the VA notified the Association that it identified 1,869 pages of

records and two Excel spreadsheets responsive to the Negotiated Request. *See* Production

Letter. The VA referred certain records to other VA components, "withheld the spreadsheets in

full," and "released 95 pages of records with redactions" pursuant to FOIA Exemptions 3, 5, 6,

and 7(E).[4] 1st Gowins-Bellamy Decl. ¶ 33; Pl.'s Counter-Statement of Material Facts ¶ 45, ECF

No. 21–2; Production Letter at 1–2.

---

[4] FOIA Exemption 3 permits agencies to withhold information that is exempt from
disclosure by another statute. 5 U.S.C. § 552(b)(3). Here, the VA claimed Exemption 3 by
reference to 38 U.S.C. §§ 5701, 5705, and 7332, which exempt from disclosure patient medical
records and other VA medical records. Production Letter at 1. FOIA Exemption 5 exempts from
disclosure "inter-agency or intra-agency memorandums or letters that would not be available by
law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). FOIA Exemption 6
exempts from disclosure "files the disclosure of which would constitute a clearly unwarranted
invasion of personal privacy." *Id.* § 552(b)(6). Finally, FOIA Exemption 7(E) exempts from
disclosure law enforcement records that "would disclose techniques and procedures for law
enforcement investigations or prosecutions, or would disclose guidelines for law enforcement
investigations or prosecutions if such disclosure could reasonably be expected to risk
circumvention of the law." *Id.* § 552(b)(7)(E).

"The government bears the burden of justifying nondisclosure, either through declarations or an index of information withheld," commonly referred to as a *Vaughn* index. *Elec. Privacy Info. Ctr.*, 192 F. Supp. 3d at 101; *see Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973); 5 U.S.C. § 552(a)(4)(B).  The Court "may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations that describe 'the documents and justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Cause of Action v. FTC*, 961 F. Supp. 2d 142, 153 (D.D.C. 2013) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

In its futile but single-minded effort to convince the Court that the August 23 Email was a new FOIA request, the VA has declined to present any argument in the alternative as to why the redactions and withholdings applied to the October 6, 2021 production were proper.  Indeed, this decision appears to be the product of some deliberation: with its opposition, the VA initially did file a draft *Vaughn* index containing explanations for its redactions and withholdings—but then retracted it.  In its notice of errata, the VA explained that it "had intended to attach to these filings" the Second Declaration of Ruthlee Gowins-Bellamy, but "mistakenly mislabeled the *Vaughn* Index" and therefore "[i]nadvertently . . . instead attached a *Vaughn* Index that it had prepared to submit with these filings, but ultimately decided not to use."  Def.'s Notice of Errata at 1, ECF No. 25.  And while the declarations of Ms. Gowins-Bellamy mention that the agency redacted and withheld certain materials, they do not provide any justification for those actions,

let alone a justification supported with "reasonably specific detail."[5]  *Cause of Action*, 961 F.
Supp. 2d at 153.

The VA argues that it "is not required to raise the exemptions at this time," citing Fed. R.
Civ. P. 56(a) for the proposition that a "party may move for summary judgment on a 'defense' or
'part of a defense' without seeking summary judgment as to all defenses."  Def.'s Reply and
Opp'n at 6 (cleaned up).  Similarly, the VA cites *LaCedra v. Executive Office for U.S. Attorneys*,
317 F.3d 345 (D.C. Cir. 2003), for the proposition that "an agency's choice not to raise an
exemption in its initial summary judgment motion does not preclude it from raising that
exemption later if it believes in good faith that the plaintiff did not request the redacted or
withheld records in the FOIA request at issue."  Def.'s Reply and Opp'n at 7.  This misses the
point.  The Court need not evaluate the dubious claim[6] that agencies have no obligation to
defend exemptions in initial summary judgment motions because, here, the VA clearly did have
an obligation to do so in response to the Association's cross-motion challenging those
exemptions.[7]

---

[5] The exemptions claimed by the VA with respect to the October 6, 2021 production are
only known to the Court because the Association, not the VA, attached to its motion the
production letter that the VA sent the Association with the October 6, 2021 production.  *See*
Production Letter.  While that letter stated which exemptions the VA claimed, it did not attempt
to justify those exemptions or include any explanation as to why or to which specific redactions
they applied.  *Id.* at 2.

[6] It suffices to note that courts in this district have applied the D.C. Circuit's "general
rule" that claims to exemption may not be raised for the first time on appeal absent a showing of
good cause to claims to exemption raised belatedly during the pendency of proceedings in the
district court.  *See, e.g.*, *Shapiro v. U.S. Dep't of Just.*, 177 F. Supp. 3d 467, 469–73 (D.D.C.
2016).

[7] *LaCedra* is distinguishable along similar lines.  In *LaCedra,* the D.C. Circuit reversed
the district court's entry of summary judgment for the defendant agency but declined to adopt
petitioner's request that the agency be barred from raising new exemptions on remand.  *LaCedra*,
317 F.3d at 348.  The VA says that this supports its contention that it need not justify its
withholding and redactions.  Def.'s Reply and Opp'n at 7.  But the only motion before the
district court in *LaCedra* was the *agency's motion* for summary judgment, *see* Mem. Op.,

This misunderstanding is likely a product of the VA's failure to recognize the applicable standard of review.  The VA argues that the Association's cross-motion should be denied because it "does not identify any facts showing—or even attempt to construct an argument [*sic*]—the absence of a genuine issue of material fact as to whether VA properly invoked the exemptions."  Def.'s Reply and Opp'n at 7.  But under FOIA, the Court must determine *de novo* whether nondisclosure was justified, and the burden is "on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B).  The explanation offered by the agency "should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection."  *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996).  Importantly, as mentioned above, "[t]his burden does not shift even when the requester files a cross-motion for summary judgment because the Government ultimately has the onus of proving that the documents are exempt from disclosure, while the burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur."  *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 99 (citing *Pub. Citizen Health Research Group v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (cleaned up)).  The VA had the burden to justify its redactions and withholdings, and it failed to carry it.

### D.  Remedy

In passing FOIA, Congress struck a "carefully balanced scheme" evident in "[t]he creation of both agency obligations and a mechanism for judicial enforcement in the same legislation."  *CREW*, 846 F.3d at 1245 (citation omitted).  Specifically, as relevant here, the same paragraph in FOIA obligates the agency to justify nondisclosures and the court to review those

---

*LaCedra v. Exec. Off. for U.S. Att'ys*, No. 99-cv-0273 (D.D.C. Aug. 20, 2001), ECF No. 57, unlike here where the Association has submitted a cross-motion for summary judgment that explicitly challenges the agency's withholdings and redactions.

nondisclosures *de novo*.  5 U.S.C. § 552(a)(4)(B).  The Court's ability to perform its duty thus depends on the VA providing some basis for its review.  *See King v. Dep't of Just.*, 830 F.2d 210, 218–219 (D.C. Cir. 1987) (explaining that a *Vaughn* index is intended to "permit adequate adversary testing of the agency's claimed right to an exemption, and enable the District Court to make a rational decision whether the withheld material must be produced . . . as well as to produce a record that will render [its] decision capable of meaningful review on appeal" (cleaned up)); *Tokar v. U.S. Dep't of Just.*, 304 F. Supp. 3d 81, 89 (D.D.C. 2018) ("When an agency invokes an exemption, it must submit affidavits that provide the kind of detailed, scrupulous description of the withheld documents that enables a District Court judge to perform a de novo review." (cleaned up)).  For this reason, "where an agency fails to meet its burden, FOIA provides courts 'a host of procedures' to determine whether records should be turned over, including discovery, further agency affidavits, and *in camera* review of the records in question." *DBW Partners v. USPS*, 2019 WL 5549623 at *10 (D.D.C. Oct. 28, 2019) (citing *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980), *abrogated on other grounds by Founding Church of Scientology of Wash., D.C., Inc. v. Smith*, 721 F.2d 828, 830–31 (D.C. Cir. 1983)).

Out of respect for FOIA's "carefully balanced scheme," and mindful of the important third-party privacy interests protected by FOIA exemptions, *see supra* note 4,  the Court will deny the Association's request to order the redacted and withheld records produced and instead will afford the VA another opportunity to justify its nondisclosures.  This is consistent with the approach taken by other courts in this district.  *See, e.g.*, *Shapiro v. United States Dep't of Justice* (*"Shapiro II"*), 177 F. Supp. 3d 467, 469–73 (D.D.C. 2016) (exercising discretion to "permit the FBI to assert untimely exemptions" as to certain records that "would cause harm cognizable under a FOIA exemption or exclusion"); *Cole v. Olthoff*, 2021 WL 2555505 at *3 (D.D.C. June

22, 2021) (declining to deem forfeited "late assertion of FOIA exemptions during the pendency of district court proceedings" (citation omitted)).  However, lest this decision be interpreted as anything approaching approval of the VA's disingenuous strategy to single-mindedly focus on the Original Request and refuse to engage substantively with the Association's cross-motion, the Court hastens to add that, while it will scrupulously adhere to its duty to accord agency affidavits or declarations submitted to support claims to exemption "a presumption of good faith," *Safecard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), it will evaluate any evidence to overcome that presumption in light of the full record.

Along similar lines, and mindful of the D.C. Circuit's preference against "serial summary judgment motions after the government's first loss," *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 587 (D.C. Cir. 2020), the Court emphasizes the VA's obligation to submit comprehensive explanations that satisfy its burden to "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).  In addition, even where exemptions apply, the VA must "take reasonable steps necessary to segregate and release nonexempt information," 5 U.S.C. § 552(a)(8)(A)(ii)(II), as the Court is required to "make specific findings of segregability regarding the documents to be withheld," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (citations omitted).

## V.  CONCLUSION

For the foregoing reasons, the VA's motion for summary judgment is **DENIED** and the Association's cross-motion for summary judgment is **GRANTED** in part and **DENIED** in part.

The Association's evidentiary objections are **OVERRULED** as moot.  It is hereby **ORDERED** that the VA shall file a *Vaughn* index or other adequate submission to justify the redactions and withholdings applied to the October 6, 2021 production.  It is **FURTHER ORDERED** that the parties shall submit a proposed schedule for further proceedings within two weeks of the issuance of this Opinion.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 18, 2022                                    RUDOLPH CONTRERAS
                                                            United States District Judge