UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF VETERANS AFFAIRS, <br><br> Defendant. | Civil Action No. 21-1298 (RC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 2

    I.    Procedural History ..................................................................................... 2

    II.    Categories of Documents .......................................................................... 4

LEGAL STANDARD ............................................................................................... 6

ARGUMENT ........................................................................................................... 8

    I.    Defendant Performed an Adequate Search. ............................................... 8

    II.    Defendant Properly Withheld Material Under FOIA Exemption 5 ..................... 11

        A.    Office of Inspector General's Confidential Survey and Follow-Up Communications .................................................................. 12

        B.    Office of Inspector General's Two Large Spreadsheets Containing Information from a Broader Review of Police Records and Patient Health Records .................................................................. 13

        C.    Veterans Health Administration's Pre-Decisional Draft Policies ............. 15

    III.    Defendant Properly Withheld Material Under FOIA Exemption 3 ..................... 16

        A.    38 U.S.C. § 5701 .................................................................... 17

        B.    38 U.S.C. § 7332 .................................................................... 18

    IV.    Defendant Properly Withheld Material Under FOIA Exemption 6 ..................... 19

    V.    Defendant Properly Withheld Material Under FOIA Exemption 7(E) ................. 22

    VI.    Defendant Produced All Reasonably Segregable, Non-Exempt Material ............ 23

CONCLUSION ........................................................................................................ 24

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Am. Fed'n of Gov't Emps. v. Broad. Bd. of Governors,*
   711 F. Supp. 2d 139 (D.D.C. 2010) ............................................... 21

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ...................................................................... 7

*Associated Press v. Dep't of Def.,*
   549 F.3d 62 (2d Cir. 2008) ............................................................ 21

*Baker & Hostetler LLP v. Dep't of Com.,*
   473 F.3d 312 (D.C. Cir. 2006) ..................................................... 11

*Bartholdi Cable Co. v. FCC,*
   114 F.3d 274 (D.C. Cir. 1997) ..................................................... 20

*Beck v. Dep't of Just.,*
   997 F.2d 1489 (D.C. Cir. 1993) ............................................... 20, 22

*Billington v. Dep't of Just.,*
   245 F. Supp. 2d 79 (D.D.C. 2003) .............................................. 19

*Blackwell v. FBI,*
   646 F.3d 37 (D.C. Cir. 2011) ....................................................... 22

*Brown v. Dep't of State,*
   317 F. Supp. 3d 370 (D.D.C. 2018) ............................................ 11

*Carter v. Dep't of Com.,*
   830 F.2d 388 (D.C. Cir. 1987) ..................................................... 21

*CREW v. Dep't of Lab.,*
   478 F. Supp. 2d 77 (D.D.C. 2007) ............................................... 7

*Defs. of Wildlife v. U.S. Border Patrol,*
   623 F. Supp. 2d 83 (D.D.C. 2009) ............................................... 6

*Dep't of Just. v. Tax Analysts,*
   492 U.S. 136 (1989) ...................................................................... 6

*Dep't of State v. Ray,*

502 U.S. 164 (1991) ................................................................................................... 6

*Dillon v. Dep't of Just.*,
444 F. Supp. 3d 67 (D.D.C. 2020) ............................................................................... 8

*Hayden v. Nat'l Sec. Agency*,
608 F.2d 1381 (D.C. Cir. 1979) ................................................................................... 7

*Jennings v. Dep't of Just.*,
230 F. App'x 1 (D.C. Cir. 2007) .................................................................................. 8

*Johnson v. Exec. Off. for U.S. Attorneys*,
310 F.3d 771 (D.C. Cir. 2002) ................................................................................... 23

*Jud. Watch, Inc. v. FBI*,
2001 WL 35612541 (D.D.C. Apr. 20, 2001) .............................................................. 22

*Klamath Water*,
532 U.S. at 8–9 ......................................................................................................... 11

*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009) ............................................................................... 7, 17

*Lea v. Exec. Off. for U.S. Attorneys*,
85 F. Supp. 3d 85 (D.D.C.2015) ............................................................................... 10

*Loving v. Dep't of Def.*,
550 F.3d 32 (D.C. Cir. 2008) ............................................................................... 6, 11

*Mead Data Cent., Inc. v. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ......................................................................... 23-24, 24

*Milton v. Dep't of Just.*,
783 F. Supp. 2d 55 (D.D.C. 2011) .............................................................................. 19

*Multi Ag Media LLC v. Dep't of Agric.*,
515 F.3d 1224 (D.C. Cir. 2008) ........................................................................... 19, 20

*Nat'l Sec. Archive v. CIA*,
752 F.3d 460 (D.C. Cir. 2014) ................................................................................... 12

*Oglesby v. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ...................................................................................... 8

*Petroleum Info. Corp. v. Dep't of Interior*,

976 F.2d 1429 (D.C. Cir. 1992) ............................................................................... 11

*Pinson v. Dep't of Just.*
   Civ. A. No. 12-1872, 2016 WL 29245 (D.D.C. Jan. 4, 2016) ................................. 7

*Prison Legal News v. Samuels,*
   787 F.3d 1142 (D.C. Cir. 2015) ................................................................... 19, 20

*Prop. of the People,*
   330 F. Supp. 3d ............................................................................................. 11-12

*SafeCard Servs., Inc. v. SEC,*
   926 F.2d 1197 (D.C. Cir. 1991) .......................................................... 8, 9, 10, 12

*Salas v. Off. of Inspector Gen.,*
   577 F. Supp. 2d 105 (D.D.C. 2008) ..................................................................... 21

*Scott v. Harris,*
   550 U.S. 372 (2007) ............................................................................................. 7

*Smith v. Bureau of Alcohol, Tobacco & Firearms,*
   977 F. Supp. 496 (D.D.C. 1997) ........................................................................ 22

*Sussman v. U.S. Marshals Serv.,*
   494 F.3d 1106 (D.C. Cir. 2007) ......................................................................... 23

*Valencia–Lucena v. U.S. Coast Guard,*
   180 F.3d 321 (D.C. Cir. 1999) ............................................................................. 8

*Weisberg v. Dep't of Just.,*
   627 F.2d 365 (D.C. Cir. 1980) ............................................................................. 7

**Statutes**

5 U.S.C. § 552 ................................................................................................... *passim*
38 U.S.C. § 312 ....................................................................................................... 15
38 U.S.C. § 5701 .............................................................................................. 17, 18
38 U.S.C. § 7332 ......................................................................................... 17, 18, 19

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................... 7

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. It stems from a FOIA request that Plaintiff National Association of Minority Veterans submitted to Defendant U.S. Department of Veterans Affairs ("Defendant," the "VA," or the "Agency") on November 11, 2020. The scope of this litigation covers only the VA's Office of Inspector General, as Plaintiff continues to pursue administrative remedies as to other VA components with respect to the FOIA request.

The parties previously cross moved for summary judgment. On November 18, 2022, the Court denied Defendant's motion for summary judgment and granted in part and denied in part Plaintiff's motion for summary judgment. *See* Mem. Op. (ECF No. 30). In that decision, the Court found that an August 23, 2021 post-litigation email from the Plaintiff to the VA's Office of Inspector General specifying particular records sought was in fact a modified FOIA request. As Defendant's summary judgment briefing had been premised on the original FOIA request submitted to the VA, as it concerned the Office of Inspector General, the Court's opinion did not consider the adequacy of the search for records sought in the modified FOIA request nor the application of the exemptions to the records, beyond the fact that the VA was required to justify its withholdings.

As set forth in the accompanying *Vaughn* Indices and declarations from Agency officials, the VA's Office of the Inspector General has conducted a reasonable search of agency records in response to the modified FOIA request, and all reasonably segregable, non-exempt responsive records have been disclosed. The VA has not improperly withheld in full or in part any responsive records from Plaintiff. Thus, there is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law.

For the reasons explained below, this Court should grant summary judgment for the VA.

## BACKGROUND

### I.      Procedural History

On November 11, 2020, Plaintiff submitted a FOIA request to the VA. 3rd Gowins-Bellamy Decl. ¶ 5, Ex. A (Original FOIA Request). The request sought dozens of categories of records relating to law enforcement and security at the VA. *Id.*

Upon receiving the request, the VA directed it to numerous components within the Agency, including the Veterans Health Administration; the Office of Operations, Security, and Preparedness (of which the Office of Security and Law Enforcement was a subunit); and the Office of the Inspector General. *See* 3rd Gowins-Bellamy Decl. ¶ 11–12; Marakowski Decl. ¶ 9. As the portion of the FOIA request that concerned records from Office of the Inspector General was fairly limited, the administrative level processing of Office of Inspector General records completed by January 28, 2021, with the Office of the Inspector General denying Plaintiff's administrative appeal. *See* 3rd Gowins-Bellamy Decl. ¶¶ 5–8, Exs. A–D.

On May 11, 2021, as Plaintiff continued to pursue records from the other Agency components in response to the FOIA request, Plaintiff filed suit against the VA based solely on the Office of the Inspector General's response to the FOIA request. 3rd Gowins-Bellamy Decl. ¶¶ 10–11; Compl., ECF No. 1. The parties discussed possible ways to resolve the litigation, and ultimately Plaintiff sought new records from the VA's Office of the Inspector General. 3rd Gowins-Bellamy Decl. ¶¶ 13–15. While the Office of the Inspector General viewed this as a new FOIA request, the Court decided in its November 18, 2022 decision that the August 23, 2021 email from Plaintiff's counsel to Defendant constituted a modification to Plaintiff's original FOIA request (hereafter, "Modified FOIA Request"). *See* Mem. Op.

Plaintiff's Modified FOIA Request sought records in connection with three publicly available Office of Inspector General reports on law enforcement and security at the VA:

(1) January 30, 2018 Management of Disruptive Patients Behavior in VA Medical Facilities; (2) December 13, 2018 Inadequate Governance of the VA Police Program at Medical Facilities; and (3) June 17, 2020, VA Police Management System Needs Improvement. 3rd Gowins-Bellamy Decl. ¶¶ 14–15, Ex. E (Modified FOIA Request). Plaintiff requested various types of materials concerning or underlying each report. *See id.*

The Office of Inspector General's FOIA Office conducted a search for the records by contacting the two offices within the Office of Inspector General that wrote the three reports, as they maintained the underlying records. 3rd Gowins-Bellamy Decl. ¶¶ 17–19. Most of the documents, however, either originated with or belonged to Office of Operations, Security, and Preparedness or the Veterans Health Administration—not the Office of the Inspector General. 3rd Gowins-Bellamy Decl. ¶ 22. As of this filing, Plaintiff has ongoing administrative proceedings with Veterans Health Administration and the Office of Operations, Security, and Preparedness in regard to the FOIA request, with the processing and release of additional records likely forthcoming. 3rd Gowins-Bellamy Decl. ¶ 11; Marakowski Decl. ¶ 9.

On October 6, 2021, the Office of the Inspector General responded to Plaintiff and released 95 pages of records with redactions and withheld ten pages of records and the Excel spreadsheets in full. 3rd Gowins-Bellamy Decl. ¶ 25, Ex. F (OIG Response to Modified FOIA Request). The Office of the Inspector General also informed Plaintiff that it was referring additional responsive records to other VA components for processing and direct release, as those records either originated from or belonged to those other VA components. *Id.* Specifically, the Office of the Inspector General informed Plaintiff that it was referring 128 pages of documents to the Veterans Health Administration and 1,645 pages of documents to the Office of Operations, Security, and Preparedness. On October 8, 2021, the Office of Law Enforcement and Security (a subunit within

the Office of Operations, Security, and Preparedness) responded to Plaintiff regarding the referral documents. Smalls Decl. ¶ 9, Ex. L (OSP Referral Response). On December 22, 2021, the Veterans Health Administration responded to Plaintiff as to the referral documents. Marakowski Decl. ¶ 9, Ex. L (VHA Referral Response). These responses and productions of the Office of the Inspector General, Office of Law Enforcement and Security, and the Veterans Health Administration are described further in the next section.

A few months later, the parties cross moved for summary judgment. On November 18, 2022, the Court issued its summary judgment ruling, which was limited to determining that the August 23, 2021 email was a modified FOIA request. Mem. Op.  It did not decide any issues present in this motion for summary judgment.

Thereafter, the Office of the Inspector General made supplemental productions to Plaintiff on January 11, 2023, January 30, 2023, and March 10, 2023.[1] 3rd Gowins-Bellamy Decl. ¶¶ 31–33, Exs. G–I (OIG Supplemental Releases).

Moreover, on March 21, 2023, the Office of Operations, Security, and Preparedness made a supplemental production. Smalls Decl. ¶ 10. It released 19 pages of documents in full or in part. *Id.*

## II.   **Categories of Documents**

The VA's Office of Inspector General processed 105 pages of documents and four excel spreadsheets responsive to the Modified FOIA Request. 3rd Gowins-Bellamy Decl. ¶ 25. These Office of Inspector General documents consisted of four basic categories:

---

[1]      Plaintiff's claim on January 17, 2023, that the Office of the Inspector General had expressed an "unwillingness to move from its positions" and that the "agency has been unwilling to reassess its withholdings in this action," *see* ECF No. 34 at 1–2, is clearly inaccurate. As the Office of the Inspector General had been conducting further review, it had already made one supplemental production to Plaintiff by January 17, 2023.

a)  Confidential Office of Inspector General survey questions and responses and related follow up communications, undertaken in the preparation of published Office of Inspector General reports (OIG Bates 001-105), withheld in part under Exemptions 5, 6, and 7(E);

b)  Large excel spreadsheet containing information selected from broader review of VA police records for discussion and review in preparing Office of Inspector General report on VA law enforcement and security (Large spreadsheet #1), withheld in full under Exemptions 5, 6, and 7(E);

c)  Large excel spreadsheet containing relevant information selected from broader review of patient health records for discussion and review in preparing an Office of Inspector General report on VA law enforcement and security (Large spreadsheet #2), withheld in full under Exemptions 3, 5, and 6; and

d)  Two excel spreadsheets with summary roll-up information from Large Spreadsheets #1 and #2 (OIG Bates 106–107, 108–109), which were released in full.

*See* OIG Vaughn Index.

The VA's Office of Inspector General referred four documents (129 pages) to the Veterans Health Administration for processing and direct response to Plaintiff, as those referral documents either originated with or belonged to the Veterans Health Administration. 3rd Gowins-Bellamy Decl. ¶¶ 24–25. These Veterans Health Administration documents were:

a)  Pre-decisional draft of unnumbered Veterans Health Administration Directive on Workplace Violence Prevention Program, the final version of which was later published, effectively withheld in full under Exemption 5;

b)  November 7, 2013 Memorandum, withheld in part under Exemption 6;

c)  Report of Contact, withheld in part under Exemptions 5 and 6; and

d)  the April 2016 Employee Threat Assessment Team ("ETAT") Guidebook, released almost in full except for redactions of names listing individuals who provided advice and counsel on the guidebook under Exemption 6.

*See* VHA Vaughn Index.

The VA's Office of Inspector General referred 1,645 pages of documents to the Office of Operations, Security, and Preparedness for processing and direct response to Plaintiff, as the referral documents either originated with or belonged to the Office of Operations, Security, and

Preparedness. 3rd Gowins-Bellamy Decl. ¶¶ 24–25. These Office of Operations, Security, and Preparedness documents can be organized into three basic categories:

a) Facility Inspection Reports, withheld in full under Exemption 7(E);

b) Office of Security and Law Enforcement Inspection Checklist, which was withheld in full under both Exemption 5 and 7(E); and

c) 19 pages of other documents, including official memoranda and email correspondence, that were either released in full or released with redactions under Exemption 6.

*See* OSP Vaughn Index.

For further background, Defendant hereby incorporates the Statement of Material Facts Not in Genuine Dispute ("SOMF"), and the declarations and exhibits referenced therein, filed contemporaneously with this Memorandum.

## LEGAL STANDARD

The FOIA is meant "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Accordingly, the FOIA statute "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)). "The agency bears the burden of establishing that a claimed exemption applies[,]" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014), and exemptions are "given a narrow compass[,]" *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

To prevail on a motion for summary judgment in a FOIA case, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). A court "may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). An agency's justification for withholding records "is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007)); *Pinson v. Dep't of Just.*, Civ. A. No. 12-1872, 2016 WL 29245, at *10 (D.D.C. Jan. 4, 2016). Review is *de novo*, 5 U.S.C. § 552(a)(4)(B), but a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review[,]" *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## ARGUMENT

### I.   <u>Defendant Performed an Adequate Search.</u>

"[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Jennings v. Dep't of Just.*, 230 F. App'x 1, 1 (D.C. Cir. 2007) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (cleaned up). The agency must show that it "conduct[ed] a good faith, reasonable search of those systems of records likely to possess the requested records." *Pinson*, 177 F. Supp. 3d at 80 (quoting *Marino*, 993 F. Supp. 2d at 9 (internal citation omitted)). To make this showing, an agency must submit a "reasonably detailed" affidavit setting forth the search terms and the type of search performed. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The burden then "shifts to the FOIA requester to produce countervailing evidence suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Dillon v. Dep't of Just.*, 444 F. Supp. 3d 67, 89 (D.D.C. 2020) (internal quotations omitted). "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

Here, the VA's Office of Inspector General has submitted a declaration that shows that its search was reasonably calculated to uncover all relevant documents. *See* 3rd Gowins-Bellamy Decl. ¶¶ 17–21. In the Modified FOIA Request, Plaintiff sought documents underlying three Office of Inspector General reports. *See id.* ¶ 15. The Office of Inspector General contacted the two offices within the Office of Inspector General that wrote the three reports and would have the documents; the Office of Inspector General's Director of Healthcare Inspections wrote the January 2018 Office

- 8 -

of Inspector General report, and the Office of Inspector General's Office of Audit and Evaluations

wrote the December 2018 and June 2020 Office of Inspector General reports. *See id.* ¶¶ 17–18.

The VA's Office of Inspector General provided each office with the portions of the Modified FOIA

Request relating to the OIG report(s) it was responsible for. *Id.*

In turn, employees from the offices searched for the requested records in their project files

and provided the responsive records. *See id.* ¶¶ 17–20. The Office of Audit and Evaluations uses

Teammate to store report records in individual project folders for each report. *Id.* ¶ 19. OIG

employees in this office opened the report project folders, reviewed the items requested in the

FOIA request, and identified which records in each project folder were responsive. *Id.* The

employees who searched for the records are most familiar with the report and the project folders

in Teammate and are best able to identify the responsive records. *Id.*

Moreover, the Office of Healthcare Inspections uses Sharepoint to store report records in

individual project sites for each report. *Id.* The Director of the Office of Healthcare Inspections

opened the Sharepoint site for this particular report and identified the responsive records for the

items requested. *Id.* The requested items were specifically identified from the public report.

Because the Office of Healthcare Inspections Director was on the team that conducted this

inspection and wrote this report, he was familiar with the report and the project site in Sharepoint

and best able to identify the responsive records. *Id.*

The OIG employees from the Office of Audit and Evaluations and from the Office of

Healthcare Inspections maintain all records related to projects and reports written by those offices.

*Id.* ¶ 21. They store the records in siloed systems like Teammate and Sharepoint, with each report

having its own site within those systems. *Id.* Therefore, these are the only locations likely to have

responsive documents. *Id.*

The Office of Inspector General reviewed the documents provided by the Office of Audit and Evaluations and from the Office of Healthcare Inspections. *Id.* ¶ 20. It determined that all documents provided were responsive—consisting of 1,879 pages of documents, plus four excel spreadsheets. *Id.* ¶ 20.

The VA's Office of Inspector General properly referred certain documents to other appropriate components for processing and direct release, where the documents originated with or belonged to another VA component. *See Lea v. Exec. Off. for U.S. Attorneys*, 85 F. Supp. 3d 85, 88 (D.D.C.2015) ("[A]gencies are 'obligated to account for the responsive materials located in their records, even if the decision to release or withhold information is left to the component where those records originated.'" (quoting *Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 67 F. Supp. 3d 290, 296 n. 2 (D.D.C. 2014)).

The Office of Inspector General determined that 1,774 pages of responsive documents either originated with or belonged to the Veterans Health Administration or the Office of Security and Preparedness (the Agency component under which the Office of Security and Law Enforcement falls). The Department of Justice FOIA Guide states that when "an agency locates records responsive to a FOIA request, it should determine whether another agency or agency component has a 'substantial interest' in any of the records . . . as a matter of sound administrative practice, it should ordinarily refer those records to their originating agency so that the originating agency can make a direct response to the requestor on those records." 3rd Gowins-Bellamy Decl. ¶ 23. Accordingly, the Office of Inspector General FOIA Office informed Plaintiff that these documents were being referred to those other Agency components for processing and direct response in its October 6, 2021 Agency response letter. Moreover, the Office of Inspector General referred those documents to the Veterans Health Administration or the Office of Security and

Preparedness later that day. On October 8, 2021, and the Office of Law Enforcement and Security (within the Office of Security and Preparedness) completed the referral processing and responded to Plaintiff. On December 22, 2021, the Veterans Health Administration completed the referral processing and responded to Plaintiff.

## II.    Defendant Properly Withheld Material Under FOIA Exemption 5

Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption thus "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant"—including, as relevant here, "the deliberative process privilege." *Brown v. Dep't of State*, 317 F. Supp. 3d 370, 376 (D.D.C. 2018) (quoting *Loving*, 550 F.3d at 37 (internal quotation mark and citation omitted)); *see also Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 321 (D.C. Cir. 2006).

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving*, 550 F.3d at 38 (quoting *Dep't of Lab. v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). It aims to "prevent injury to the quality of agency decisions," *Sears*, 421 U.S. at 133, and "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," *Klamath Water*, 532 U.S. at 8–9. The privilege thus balances the merits of transparency against the concern that agencies will be "forced to operate in a fishbowl." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

For the deliberative process privilege to apply, the record must "bear on the formulation or exercise of agency policy-oriented judgment." *Petroleum Info.*, 976 F.2d at 1435 (emphasis removed). To qualify, the record at issue must be both predecisional and deliberative. *See Prop. of*

*the People*, 330 F. Supp. 3d at 382. To be predecisional, a record must be antecedent to the adoption of an agency policy. *See Access Reports v. Dep't of Just.*, 926 F.2d 1192, 1194 (D.C. Cir. 1991). Although "the term 'deliberative' does not add a great deal of substance to the term 'pre-decisional,'" it essentially means "that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014). The agency bears the burden of showing that the privilege properly applies. *See Dillon I*, 2019 WL 249580, at *8 (citing *Prop. of the People*, 330 F. Supp. 3d at 380). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* (quoting *Wolf*, 473 F.3d at 374–75 (internal quotation marks and citation omitted)).

### A.    Office of Inspector General's Confidential Survey and Follow-Up Communications

The VA's Office of Inspector General withheld portions of confidential survey responses, and related follow-up email communications, under the deliberative process privilege. *See* 3rd Gowins-Bellamy Decl. ¶¶ 42–46; OIG Vaughn Index. These were intra-agency communications between Office of Inspector General staff and VA Chiefs of Police and Veterans Health Administration medical directors, respectively, which ultimately resulted in the publication of two of the Office of Inspector General reports on law enforcement and security at the VA. OIG Vaughn Index.  The final Office of Inspector General Reports are publicly available and have been provided to Plaintiffs, and all survey questions, statistical data and portions of survey responses not in narrative form that could identify survey takers or law enforcement techniques have already been provided. By contrast, the confidential survey responses, and related follow-up communications, are pre-decisional and reflect deliberations comprising part of a process by which Office of Inspector General findings and recommendations are formulated.

The VA's Office of Inspector General has determined that release of the confidential survey responses and related follow-up communications could reasonably be expected to cause harm. *See* 3rd Gowins-Bellamy Decl. ¶ 46. Release of the communications would confuse the public because they contain topics and concerns that were not published in the final report. *Id.* Moreover, they contain issues that may be addressed in ongoing investigations and future Office of Inspector General reports and therefore release would interfere with those investigations and audits. *Id.* Release of the confidential communications from Agency employees to Office of Inspector General staff would violate the assurances of confidentiality given by the Office of Inspector General. *Id.* Were they to be released, it is reasonably foreseeable that, in the future, Agency employees may not feel free to openly communicate with Office of Inspector General staff, but instead may limit and edit their communication because it might be released publicly. *Id.* As the Office of Inspector General relies on the candor of its employees to carry out its oversight mission, release would foreseeably harm the Office of Inspector General's ability to conduct effective oversight and would interfere with the requirements for unhindered and confidential communication envisioned by the Inspector General Act. *Id.*

    **B.**    **Office of Inspector General's Two Large Spreadsheets Containing Information from a Broader Review of Police Records and Patient Health Records**

The VA's Office of Inspector General also withheld two large excel spreadsheets under the deliberative process privilege. Large Spreadsheet #1 (72 rows, 29 columns) consists of information that lower-level Office of Inspector General staff collected from the review of VA Office of Security and Law Enforcement police records and deemed relevant for discussion and review by the Office of Inspector General team and higher-level staff, and the information therein was reviewed and discussed by higher-level staff as part of the process of conducting this report. The audit team reviewed thousands of pages of police records and each column and each entry in the

spreadsheet represents both a decision by the audit team to include or exclude factual information and a determination about whether factual information exists to move forward with a particular finding or recommendation for the Department.

The other excel sheet, Large Spreadsheet #2 (1230 rows, 44 columns), consists of information collected by lower-level Office of Inspector General staff from the review of patient health records that the staff deemed relevant for discussion and review by the Office of Inspector General team and higher-level staff.  Again, the information in the spreadsheet was then reviewed and discussed by higher-level staff as part of the process of conducting this inspection. The audit team reviewed thousands of pages of veteran patient health records and each column and each entry in the spreadsheet represents both a decision to include or exclude certain factual information and a determination about whether factual information exists to move forward with a particular finding or recommendation for the Department.

For both large excel spreadsheets, the culled information and internal notes, questions, and communications were created at an early stage in this particular Office of Inspector General audit and January 2018 Office of Inspector General report (#17-04460-84), which is publicly available. The information in the spreadsheet was culled from a much larger universe of facts and information and illustrates Office of Inspector General employees' exercise of judgment regarding what information was relevant to the pre-decisional findings and recommendations. These records shed light on the deliberative process because they reveal the specific topics that the auditors chose to focus on in developing their findings and they reveal what information auditors chose to communicate to supervisors and other co-workers. These internal spreadsheets consist of deliberations and communications comprising part of a process by which Office of Inspector General findings and recommendations are formulated for audits, inspections, and investigations.

Many of the comments in the excel spreadsheet contain information obtained by Office of Inspector General employees through follow-up questions to agency employees.

The VA's Office of Inspector General has determined that release of the two large excel spreadsheets could reasonably be expected to cause harm. The harm of releasing the records would be similar to that of the harm discussed above with respect to a potential release of the survey questions and responses and related follow up communications.  Release of the two large excel spreadsheets would foreseeably cause public confusion because they contain discussions and concerns that were not published in the final report, and release would hamper ongoing and future Office of Inspector General audits and investigations because the spreadsheets contain issues that may be addressed in ongoing or future Office of Inspector General reports. Moreover, release of these records, which contain assessments and comments from Office of Inspector General staff about the underlying records reviewed, would harm the necessary internal debate and candid consideration of issues. If Office of Inspector General employees expect that their comments, assessments, and deliberations will be publicly disseminated, they will temper their candor and that will harm the Office of Inspector General decision-making process. In the future, Office of Inspector General employees would not feel free to communicate openly with team members and supervisors, but rather may limit and edit their open communication because it might be released publicly. Considering that it is vital that employees be free to communicate while conducting necessary oversight work like audits, inspections, and investigations, this would be especially harmful to Office of Inspector General's ability to conduct oversight and publish work product as required under 38 U.S.C. § 312.

### C.    Veterans Health Administration's Pre-Decisional Draft Policies

The Veterans Health Administration withheld in full a pre-decisional draft of unnumbered Veterans Health Administration Directive Workplace Violence Prevention Program under the

- 15 -

deliberative process privilege. The Veterans Health Administration has previously provided Defendant with a copy of the final version, which is publicly available. The pre-decisional draft of the Directive is not the final decision of the Agency, and it contains deliberative conversations expressing opinions on policy and legal matters. The document contains discussion between VA employees regarding adoption or rejection of ideas, policies, language, and legal requirements. These types of deliberations are exactly what the deliberative process privilege was designed to protect from disclosure, to encourage the free flow of ideas in developing government policy.

The Veterans Health Administration has withheld in part a Report of Contact under the deliberative process privilege. The Report of Contact involves notes regarding a June 19, 2017 review discussion and follow up call between the Director of the Veterans Health Administration Workplace Violence Prevention Program and other VA employees. It documents discussions about limiting the escalation of disruptive behavior and the notification of patients and indicates that the communications directly concerned the development of specific policy in the draft Directive.

The Veterans Health Administration has determined that release of the pre-decisional draft of the Directive and the Report of Contact could reasonably be expected to cause harm. Release of these documents would have a chilling effect and would suppress open discussion about any future policies. This pre-decisional draft document would also confuse the public in light of the publicly available final Directive.

**III.    Defendant Properly Withheld Material Under FOIA Exemption 3**

Under Exemption 3, an agency can withhold from disclosure matters that are "specifically exempted from disclosure by statute," provided that the statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C.

§ 552(b)(3)(A). For this exemption, then, the agency must "show [1] that the statute claimed is one of exemption as contemplated by Exemption 3 and [2] that the withheld material falls within the statute." *Larson*, 565 F.3d at 865 (citing *Fitzgibbon v. CIA*, 911 F.2d 755, 761–62 (D.C. Cir. 1990)).

In addition to Exemption 5, the VA's Office of Inspector General relies on Exemption 3 to withhold certain information from patient medical records and related identifying information in Large Spreadsheet #2. This information was responsive to an item in Plaintiff's Modified FOIA Request, which requested "records for 1,025 patients involved in disruptive behavior incidents from July 1, 2015 to June 30, 2016." 3rd Gowins-Bellamy Decl. ¶¶ 14–15, Ex. E at 2. While the VA provided the summary roll-up of the Large Spreadsheet #2, the VA is prohibited from disclosing the underlying medical information under 38 U.S.C. § 5701 and 38 U.S.C. § 7332.

## A.    38 U.S.C. § 5701

Under 38 U.S.C. § 5701, the VA is prohibited from disclosing files, records, reports, and other papers and documents pertaining to any claim under any law administered by the Secretary of the Department of Veterans Affairs, as well as the names and addresses of present or former members of the Armed Forces and their dependents, except as expressly authorized by statute. Subsection 5701(a) states:

> All files, records, reports, and other papers and documents pertaining to any claim under any of the laws administered by the Secretary and the names and addresses of present or former members of the Armed Forces, and their dependents, in the possession of the Department shall be confidential and privileged, and no disclosure thereof shall be made except as provided in this section.

38 U.S.C. § 5701(a).

The VA Office of Inspector General invokes Exemption 3, in conjunction with 38 U.S.C. § 5701, to protect the confidential nature of benefit claims made by veterans and their dependents from Large Spreadsheet #1. More specifically, the excel spreadsheet contains patient social

security numbers that identify veteran patients. *See* OIG Vaughn Index. Moreover, the provision of medical care to veterans is based on claims submitted to VA. *Id.* The notes in this excel spreadsheet include references to veteran patient eligibility for other VA services like housing and employment services. *Id.*

Originally enacted in 1958, this statute specifically prohibits the VA from disclosing these records, and the language in the statute leaves no discretion on the issue. The FOIA is not listed in the statute as an appropriate basis for the release of these records. *Id.* § 5701(b) (listing the only purposes for which documents covered in this section may be disclosed).

### B.    38 U.S.C. § 7332

Under 38 U.S.C. § 7332, records related to certain types of health conditions may not be disclosed by the VA except as expressly authorized. Subsection 7332(a)(1) states:

> Records of the identity, diagnosis, prognosis, or treatment of any patient or subject which are maintained in connection with the performance of any program or activity (including education, training, treatment, rehabilitation, or research) relating to drug abuse, alcoholism or alcohol abuse, infection with the human immunodeficiency virus, or sickle cell anemia which is carried out by or for the Department under this title shall, except as provided in subsections (e) and (f), be confidential, and (section 5701 of this title to the contrary notwithstanding) such records may be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b).

38 U.S.C. § 7332(a)(1).

The VA Office of Inspector General invokes Exemption 3, in conjunction with 38 U.S.C. § 7332, to protect confidentiality of certain medical records and veteran patients in relation to Large Spreadsheet #1. *See* OIG Vaughn Index. This excel spreadsheet contains social security numbers for each veteran patient in it. *See* OIG Vaughn Index. Moreover, OIG employees wrote notes collected from the review of veteran patient health records to create this excel spreadsheet. *Id.* These notes describe health conditions including substance abuse, drug abuse, prescription medication abuse, opioid abuse. *Id.* This spreadsheet includes information concerning the identity,

diagnosis and treatment of veteran patients related to drug abuse. *Id.* As stated in the published OIG report, 29 VA medical facilities were inspected which included the review of 1025 electronic health records of patients involved in disruptive behavior incidents during a twelve-month period.

Enacted in 1976, this statute specifically prohibits the VA from disclosing these records, and the language in the statute leaves no discretion on the issue. The FOIA is not listed in the statute as an appropriate basis for the release of these records. *See id.* § 7332(b), (e)-(f), Furthermore, the statute provides for individual liability and fines for violations. *See id.* § 7332(g).

**IV.    Defendant Properly Withheld Material Under FOIA Exemption 6**

Under Exemption 6, an agency may withhold "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption has been interpreted broadly to protect "bits of personal information, such as names and addresses." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (brackets and internal quotation marks omitted). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. Dep't of Just.*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)). Private information must also implicate a "significant privacy interest" to trigger protection. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). This standard, however, "means less than it might seem," as a significant interest is "anything greater than a *de minimis* privacy interest." *Id.* at 1229–30. "[S]omething, even a modest privacy interest, outweighs nothing every time" under the balancing test. *Billington v. Dep't of Just.*, 245 F. Supp. 2d 79, 86 (D.D.C. 2003) (quoting *Horner*, 879 F.2d at 879).

When private information in a record implicates a significant privacy interest, the Court must determine if disclosing the information would constitute a clearly unwarranted invasion of personal privacy by balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Multi Ag Media*, 515 F.3d at 1228. "The scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Prison Legal News*, 787 F.3d at 1147 (D.C. Cir. 2015) (quoting *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996)). "The only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would . . . contribut[e] significantly to public understanding of the operations or activities of the government." *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 282 (D.C. Cir. 1997) (internal quotations and citations omitted). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Here, the VA Office of Inspector General invoked Exemption 6 to withhold information that would identify the individuals who participated in and provided responses to the confidential Office of Inspector General surveys and post-survey follow-up communications, including names, email addresses, phone numbers, and position titles. OIG Vaughn Index. They also relied on Exemption 6 to withhold personal privacy information from large spreadsheet #1, including the names and titles of Office of Inspector General employees, names of victims of crimes, and names of VA employees. Finally, the Office of Inspector General relied on Exemption 6 to withhold information from large spreadsheet #2, including patient social security numbers, Office of Inspector General employee names and titles, dates of death and other details about patients which could be used to identify them. OIG Vaughn Index.

In addition, the Veterans Health Administration invoked Exemption 6 to withhold the names of low-level VA employees, plus email addresses, phone numbers, and signatures, from the November 7, 2013 Memorandum on Meeting New Mandatory Safety Training Requirements. VHA Vaughn Index. The Veterans Health Administration also relied on Exemption 6 to withhold the names of low-level VA employees from the Report of Contact and the Employee Threat Assessment Team ("ETAT") Guidebook. VHA Vaughn Index.

The Office of Operations, Security, and Preparedness also invoked Exemption 6 to the names, emails, phone numbers and similar identifying information in documents like emails and memoranda involving law enforcement activities and personnel. OSP Vaughn Index; Smalls Decl. ¶ 16.

These persons maintain a strong privacy interest in this information, the release of which would constitute a clearly unwarranted invasion of personal privacy, thus harming their privacy rights.  The burden is on Plaintiff to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests.  *See, e.g.*, *Carter v. Dep't of Com.*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. Dep't of Def.*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant") (citing *Favish*, 541 U.S. at 172).

 Here there is no countervailing public interest that would be served by the disclosure of this personal information, when Plaintiff seeks records underlying three Office of Inspector General reports concerning the VA's law enforcement and security. *See Am. Fed'n of Gov't Emps. v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 156 (D.D.C. 2010) (upholding redaction of names and other information relating to another individual pursuant to Exemption 6).  Moreover,

release of this personally identifiable information would not shed light on how the VA does business in providing healthcare to Veterans, helping service members transition out of military service, providing burial services for Veterans and eligible family members, and improving the Nation's preparedness for response to war, terrorism, national emergencies, and natural disasters. 3rd Gowins-Bellamy Decl. ¶ 48. In sum, because there is no countervailing public interest that can overcome the privacy interest of these individuals, the VA properly redacted personally identifiable information for various categories of third parties, federal employees, and victims of crimes via Exemption 6. *See Beck v. Dep't of Just.*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (stating that when there is no public interest at all, the court "'need not linger over the balance; something . . . outweighs nothing every time'") (quoting *Horner*, 879 F.2d at 879).

## V.    Defendant Properly Withheld Material Under FOIA Exemption 7(E)

Exemption 7 includes six related exemptions within its umbrella. *See* 5 U.S.C. § 552(b)(7). Their common denominator is a threshold requirement that the "records or information" sought must be "compiled for law enforcement purposes." *Id.*

Exemption 7(E) allows redaction of information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). It affords "categorical protection," *Jud. Watch, Inc. v. FBI*, 2001 WL 35612541, at *8 (D.D.C. Apr. 20, 2001) (internal quotation marks omitted), to material that "would compromise law enforcement by revealing information about investigatory techniques that are not widely known to the general public," *Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997). The bar is "relatively low . . . for the agency to justify withholding" information under Exemption 7(E). *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

Here, the records for which the Office of Inspector General and Office of Operations, Security, and Preparedness have invoked Exemption 7(E) were compiled for a law enforcement purpose. The Office of Law Enforcement and Security is the law enforcement arm of the VA and the Office of Inspector General collect and prepared the record in its investigation and audit of law enforcement and security at the VA.

The Office of Inspector General withheld portions of survey responses from the VA Chiefs of Police and Veterans Health Administration medical directors, which were provided in reply to questions about law enforcement and security. The Office of Inspector General also withheld information from Office of Security and Law Enforcement police records that have been collected and compiled and Large Spreadsheet #1. The Office of Operations, Security, and Preparedness further withheld its facility inspection reports and facility inspection checklists.

As stated in the declaration and *Vaughn* indices, these documents would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions. *See* Smalls Decl. ¶¶ 17–19; 3rd Gowins-Bellamy Decl. ¶¶ 49, 55; OIG & OSP Vaughn Indices. Such disclosure could reasonably be expected to risk circumvention of the law.

## VI.   Defendant Produced All Reasonably Segregable, Non-Exempt Material

FOIA requires that any reasonably segregable portion of a record shall be released unless the non-exempt portions are inextricably intertwined with exempt portions. *See* 5 U.S.C. § 552(b); *see also Johnson v. Exec. Off. for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" for its non-segregability. *Mead Data Cent., Inc. v. Dep't of Air*

*Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed. *Id.*

As explained in the Declarations, the VA properly considered each record and released all reasonably segregable information. The Office of Inspector General thoroughly reviewed the large excel documents, and conducted a line-by-line review of the remaining documents. *See* 3rd Gowins-Bellamy Decl. ¶ 66. The Veterans Health Administration conducted a line-by-line review of its 129 pages of referral documents. Marakowski Decl. ¶ 19. Moreover, the Office of Operations, Security, and Preparedness determined that there was no further non-exempt material that could reasonably be segregated from exempt materials for release from the documents withheld in full, and it conducted a line-by-line review of the partially redacted documents. Smalls Decl. ¶¶ 14, 19, 20.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court grant judgment in its favor.

Dated: March 21, 2023
    Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/ *Christina O'Tousa*
    Christina O'Tousa
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2437
    christina.otousa@usdoj.gov

*Attorneys for the United States of America*