***Vaughn* Index:  Office of Inspector General, U.S. Department of Veterans Affairs**

*National Association of Minority Veterans v. U.S. Department of Veterans Affairs*, Civ. A. No. 21-1298 (RC) (D.D.C.)

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| 001-024 | Internal questions and responses from a confidential OIG survey given to VA chiefs of police during an audit conducted in 2018 which resulted in publication of OIG Report #17-01007-01. | Withheld in part<br><br>(b)(5) - DP<br>(b)(6)<br>(b)(7)(E) | Exemption (b)(5) used to protect deliberative process. The responsive records for this request are internal OIG records containing confidential responses to VA OIG surveys. The redacted material contained in these records is pre-decisional and none of the information reflects final agency decision. Portions of the redacted material are internal notes made by OIG staff to prepare to write the report. The questions were asked in order to prepare and write an OIG report which is publicly available. The narrative responses collected are internal communications between VA employees and OIG inspectors and they reflect deliberations comprising part of a process by which OIG findings and recommendations are formulated.<br><br>Exemption (b)(6) used to protect individual personal privacy, here consisting of email addresses and one position title that could identify individuals who participated in the survey, and at times the individual responsible for a particular response. The redacted material also consists of information that individuals have a privacy interest in including, email addresses and titles. The email addresses and titles would reveal the identity of personnel who participated in the confidential OIG survey, and at times the individual responsible for a particular response. The individuals here have a privacy interest in the information redacted. There is no public interest in the disclosure of this information; disclosure would not add to the public's understanding of how the government conducts its business or shed light on how VA accomplishes its mission. Accordingly, the privacy interest outweighs the public interest with respect to these individuals.<br><br>Harms identified from release of these specific records:<br>Release of these responses and communications could confuse the public because they contain topics and concerns that were not published in the final report which would harm OIG's credibility, they contain issues that may be addressed in ongoing future OIG reports and release would interfere with those investigations and audits, and they contain the confidential communications from agency employees to OIG staff and release would violate the assurances of confidentiality given to agency employees. Release of these communications would harm the trust VA OIG has established with agency employees and would hamper employees' cooperation and communication to with OIG, because if they were released now, in the future agency employees may not feel free to openly |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | communicate with OIG staff, instead they would have to limit and edit their communication because it might be released publicly. This is especially harmful to OIG work, because the OIG staff could lose the trust and cooperation of agency employees. It is essential that agency employees feel free to communicate openly with OIG employees. In addition to some closed-ended questions, the survey contains many open-ended questions seeking freeform and narrative responses, where agency employees can raise confidential complaints and communicate confidentially with OIG.  Moreover, some freeform and narrative responses contain information that can be used to identify the individuals who authored the response, and some other responses provide contextual information that may be used with other information to identify the individual who authored a response, given the fairly discrete number of police chiefs for VA facilities. Release of information under the forgoing circumstances harms OIG's ability to conduct effective oversight and interferes with the requirements for unhindered and confidential communication envisioned by the Inspector General Act. The survey responses were confidential, internal communications and part of the deliberative process of drafting the December 2018 OIG report (17-01007-01).<br><br>Exemption (b)(7)(E) used to protect records compiled for law enforcement purposes which would reveal techniques and procedures for law enforcement investigations and prosecutions or would disclose guidelines for law enforcement investigations or prosecutions. The questions and statistical information on responses are not redacted. Some of the free form responses are redacted under this exemption. The redacted information reveals information about law enforcement techniques and procedures as well as guidelines for handling criminal investigations of misconduct that occurs on VA property. For example, the free form responses contain specific information about investigative and law enforcement techniques. The redacted information contains specific details about criminal investigation processes and procedures, including thresholds, details of law enforcement standard operating procedures and guidelines for the process of investigating a variety of crimes that occur on VA health facility property. Responses to these survey questions contain details about how each facility conducts investigations. These specific techniques, procedures and guidelines vary depending on facility resources and they are not known to the public. If released the foreseeable harm is that individuals could circumvent those processes to avoid prosecution. Disclosure of these confidential survey responses could reasonably be expected to risk circumvention of the law. |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | |
| 025-033 | Internal questions and responses from a confidential OIG survey given to VHA medical directors during an audit conducted in 2018 which resulted in publication of OIG Report #17-01007-01. | Withheld in part<br><br>(b)(5) - DP<br><br>(b)(6)<br><br>(b)(7)(E) | Exemption (b)(5) used to protect deliberative process. The responsive records for this request are internal OIG records containing confidential responses to VA OIG surveys. The redacted material contained in these records is pre-decisional and none of the information reflects final agency decision. Portions of the redacted material are internal notes made by OIG staff to prepare to write the report. The questions formulated by OIG staff consist of the topics and issues they believed were important to explore – similar to questions asked during a formal interview. The questions were asked in order to prepare and write an OIG report which is publicly available. The narrative responses collected are internal communications between VA employees and OIG inspectors and they reflect deliberations comprising part of a process by which OIG findings and recommendations are formulated.<br><br>Exemption (b)(6) used to protect individual personal privacy, here consisting of position titles and email addresses. The redacted material consists of information that individuals have a privacy interest in including, position titles and email addresses. The email addresses would reveal the identity of who participated in the confidential OIG survey, and at times the individual responsible for a particular response. The individuals here have a privacy interest in the information redacted. There is no public interest in the disclosure of this information; disclosure would not add to the public's understanding of how the government conducts its business or shed light on how VA accomplishes its mission. Accordingly, the privacy interest outweighs the public interest with respect to these individuals.<br><br>Harms identified from release of these specific records:<br>Release of these responses and communications could confuse the public because they contain topics and concerns that were not published in the final report which would harm OIG's credibility, they contain issues that may be addressed in ongoing future OIG reports and release would interfere with those investigations and audits, and they contain the confidential communications from agency employees to OIG staff and release would violate the assurances of confidentiality given to agency employees. Release of these communications would harm the trust VA OIG has established with agency employees and would hamper employees' cooperation and communication to with OIG, because if they were released now, in the future agency employees may not feel free to openly communicate with OIG staff, instead they would have to limit and edit their communication because it might be released publicly. This is especially harmful to |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | OIG work, because OIG could lose the trust and cooperation of agency employees. It is essential that agency employees feel free to communicate openly with OIG employees. In addition to some closed-ended questions, the survey contains many open-ended questions seeking freeform and narrative responses, where agency employees can raise confidential complaints and communicate confidentially with OIG. Moreover, some freeform and narrative responses contain information that can be used to identify the individual who authored the response, and some other responses provide contextual information that may be combined with other information to identify the medical director who authored a response, given the fairly discrete number of medical directors for VA facilities. Release of information under the forgoing circumstances harms OIG's ability to conduct effective oversight and interferes with the requirements for unhindered and confidential communication envisioned by the IG Act. The survey responses were confidential, internal communications and part of the deliberative process of drafting the December 2018 OIG report (17-01007-01).<br><br>Exemption (b)(7)(E) used to protect records compiled for law enforcement purposes which would reveal techniques and procedures for law enforcement investigations and prosecutions or would disclose guidelines for law enforcement investigations or prosecutions. There are minimal redactions under (b)(7)(E) on three pages. The redacted information reveals information about law enforcement techniques and procedures as well as guidelines for handling criminal investigations of misconduct that occurs on VA property. There is specific information about databases used for law enforcement purposes and what information is collected. The redacted information contains specific details about criminal investigation processes and procedures, including thresholds, details of law enforcement standard operating procedures and guidelines for the process of investigating a variety of crimes that occur on VA health facility property. Responses to these survey questions contain details about how each facility conducts investigations. These specific techniques, procedures and guidelines vary depending on facility resources and they are not known to the public. If released the foreseeable harm is that individuals could circumvent those processes to avoid prosecution. Disclosure of these confidential survey responses could reasonably be expected to risk circumvention of the law. |
| 034-047 | Internal email communication between agency employees who completed the OIG survey of VA police chiefs and OIG | Withheld in part | Exemption (b)(5) used to protect deliberative process. The responsive records are internal email communications that consist of follow-up interview questions regarding specific employees' confidential survey responses. The questions were |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | employees. Emails were all sent in March and April 2019. | (b)(5) - DP<br><br>(b)(6) | communicated by OIG staff and consist of the topics and issues they believed were important to explore further with agency employees – similar to questions asked during a formal interview. The questions were asked to facilitate conducting an OIG audit. This audit resulted in an OIG report which is publicly available (OIG Report #19-05798-107). The responses collected are internal communications between VA employees and OIG staff and they reflect deliberations comprising part of a process by which OIG findings and recommendations are formulated. The redacted material contained in these records is pre-decisional and none of the information reflects final agency decision.<br><br>Exemption (b)(6) used to protect individual personal privacy, here consisting of names, titles, email addresses, and phone numbers. The redacted material also consists of information that individuals have a privacy interest in including, names, email addresses, phone numbers and titles. Release of this identifying information would be particularly harmful in this case because it would reveal individuals who participated in a confidential OIG survey and would reveal every individual who responded to these particular follow-up questions. The individuals here have a privacy interest in the information redacted. There is no public interest in the disclosure of this information; disclosure would not add to the public's understanding of how the government conducts its business or shed light on how VA accomplishes its mission. Accordingly, the privacy interest outweighs the public interest with respect to these individuals.<br><br>Harms identified from release of these specific records:<br><br>Release of these responses and communications could confuse the public because they contain topics and concerns that were not published in the final report which would harm OIG's credibility, they contain issues that may be addressed in future OIG reports and release would undermine those audits and investigations, and they contain the confidential communications from agency employees to OIG staff and release would violate assurances of confidentiality and could identify the participating employees. Release of these communications would harm the trust OIG has established with employees' and harm future cooperation because if they were released now, in the future agency employees may not feel free to openly communicate with OIG staff, instead they would have to limit and edit their communication because it might be released publicly. This is especially |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | harmful to OIG work, because the OIG staff could lose the trust and cooperation of agency employees. It is essential that agency employees feel free to communicate openly with OIG employees so that OIG can collect the information it needs from the agency to ensure that audits and investigations are factual, accurate and contain helpful and appropriate recommendations. The very small number of agency employees who responded to further questions via email could lead to the identification of individuals who provided information to OIG. Release of information under the forgoing circumstances harms OIG's ability to conduct effective oversight and interferes with the requirements for unhindered and confidential communication envisioned by the IG Act. |
| 048-095 | Internal questions and responses from a confidential OIG survey given to VA chiefs of police during an audit which resulted in publication of OIG Report #19-05798-107. | Withheld in part<br><br>(b)(5) - DP<br><br>(b)(6)<br><br>(b)(7)(E) | <u>Exemption (b)(5) used to protect deliberative process.</u> The responsive records are internal communications consisting of confidential responses to VA OIG surveys. The redacted material contained in these records is pre-decisional and none of the information reflects final agency decision. Portions of the redacted material are internal notes made by OIG staff to prepare to write the report. The questions formulated by OIG staff consist of the topics and issues they believed were important to explore – similar to questions asked during a formal interview. The questions were asked in order to prepare and write an OIG report which is publicly available. The narrative responses collected are internal communications between VA employees and OIG inspectors and they reflect deliberations comprising part of a process by which OIG findings and recommendations are formulated.<br><br><u>Exemption (b)(6) used to protect individual personal privacy, here consisting of titles and email addresses.</u> The redacted material also consists of information that individuals have a privacy interest in including email addresses and titles. Release of this identifying information would be particularly harmful in this case because it would reveal the individuals who participated in a confidential OIG survey and may at times reveal the person responsible for a particular response. The individuals here have a privacy interest in the information redacted. There is no public interest in the disclosure of this information; disclosure would not add to the public's understanding of how the government conducts its business or shed light on how VA accomplishes its mission. Accordingly, the privacy interest outweighs the public interest with respect to these individuals.<br><br>Harms identified from release of these specific records: |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | Release of these responses and communications could confuse the public because they contain topics and concerns that were not published in the final report which would harm OIG's credibility, they contain issues that may be addressed in future OIG reports and release would undermine those audits and inspections, and they contain the confidential communications from agency employees to OIG staff and release would violate assurances of confidentiality and identify participants. Release of these communications would harm the trust OIG has established with agency employees and would harm future cooperation, because in the future agency employees may not feel free to openly communicate with OIG staff, instead they would have to limit and edit their communication because it might be released publicly. This is especially harmful to OIG work, because the OIG staff could lose the trust and cooperation of agency employees. It is essential that agency employees feel free to communicate openly with OIG employees so that OIG can collect the information it needs from the agency to ensure that audits and investigations are factual, accurate and contain helpful and appropriate recommendations. In addition to some closed-ended questions, the survey contains open-ended questions seeking free-form and narrative responses, where agency employees can raise confidential complaints and communicate confidentially with OIG. Moreover, some freeform and narrative responses contain information that can be used to identify the police chief who authored the response, and some other responses provide contextual information that may be used with other information to identify the police chief who authored a response, given the fairly discrete number of police chiefs for VA facilities. Release of information under the forgoing circumstances harms OIG's ability to conduct effective oversight and interferes with the requirements for unhindered and confidential communication envisioned by the IG Act.<br><br>Exemption (b)(7)(E) used to protect records compiled for law enforcement purposes which would reveal techniques and procedures for law enforcement investigations and prosecutions or would disclose guidelines for law enforcement investigations or prosecutions. The information redacted under this exemption includes some of the free form responses from police chiefs; the numerical and percentage responses as well as the survey questions are all unredacted. The redacted information reveals specific and detailed information about law enforcement databases and how they are used to track crimes as well as details about how well they work. The free form responses contain specific information about weaknesses in various databases and how that impacts investigations. These specific law enforcement guidelines, weaknesses and databases vary by |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | facility and they are not known to the public. If this information is released, individuals would know about vulnerabilities and could use that information to circumvent the law.  If released the foreseeable harm is that individuals could circumvent those processes to avoid prosecution. Disclosure of these confidential survey responses could reasonably be expected to risk circumvention of the law. |
| 096-105 | Internal email communications between OIG and the Deputy Undersecretary for Health at the time and VA employees from that office. The emails were sent in December 2018, January 2019 and July 2019. | Withheld in part.<br><br>(b)(5) - DP<br>(b)(6)<br>(b)(7)(E) | Exemption (b)(5) used to protect deliberative process. The responsive records are internal communications containing confidential responses to VA OIG questions. These emailed questions can take the place of interviews or be used as follow-up to interviews. Portions of the redacted material are internal notes made by OIG staff to prepare to write the report. The redacted material contained in these records is pre-decisional and none of the information reflects final agency decision. The questions asked reflect internal OIG deliberations and determinations as to what is important information when developing the audit or investigation. The questions were asked to prepare and write an OIG report which is publicly available. These internal communications from VA employees reflect deliberations comprising part of a process by which governmental decisions and policies are formulated.<br><br>Exemption (b)(6) used to protect individual personal privacy, here consisting of names, titles, email addresses and phone numbers. The redacted material also consists of information that individuals have a privacy interest in including, names, email addresses, phone numbers and titles. The individuals here have a privacy interest in the information redacted. There is no public interest in the disclosure of this information; disclosure would not add to the public's understanding of how the government conducts its business or shed light on how VA accomplishes its mission. Accordingly, the privacy interest outweighs the public interest with respect to these individuals.<br><br>Harms identified from release of these specific records:<br><br>Release of these responses and communications could confuse the public because they contain topics and concerns that were not published in the final report which would harm OIG's credibility, they contain issues that may be addressed in future OIG reports and release would undermine those audits and investigations, and they contain the confidential communications from agency employees to OIG staff and release would violate assurances of confidentiality and identify participants. Release of these communications would harm the employees' ability to freely communicate with OIG, because if they were released now, in the |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | future agency employees may not feel free to openly communicate with OIG staff, instead they would have to limit and edit their communication because it might be released publicly. This is especially harmful to OIG work, because the OIG staff could lose the trust and cooperation of agency employees. It is essential that agency employees feel free to communicate openly with OIG employees so that OIG can collect the information it needs from the agency to ensure that audits and investigations are factual, accurate and contain helpful and appropriate recommendations.<br><br>Exemption (b)(7)(E) used to protect records compiled for law enforcement purposes which would reveal techniques and procedures for law enforcement investigations and prosecutions or would disclose guidelines for law enforcement investigations or prosecutions. Minimal redactions were made on three pages under this exemption. The redacted information contains details about how police databases are used to investigate, prosecute and track crimes and the procedures for the use of those databases. The redacted information contains details about physical security assessments and the law enforcement system used to conduct the assessments. The redacted information contains details about guidelines for collecting data on risks and facility safety vulnerabilities. The redacted information includes specific details on where data is stored in each facility. These specific law enforcement guidelines, possible physical vulnerabilities and databases vary by facility and they are not known to the public. If released the foreseeable harm is that individuals could circumvent those processes to avoid investigation and prosecution. |
| Large Spreadsheet #1<br><br>(not Bates stamped) | Large excel spreadsheet (72 rows, 29 columns) that consists of information lower-level OIG staff decided were relevant for discussion and review by the OIG team and higher-level staff, collected by lower-level staff from the review of VA OSLE police records and then reviewed and discussed by higher level staff as part of the process of conducting this report. | Withheld in full<br><br>(b)(5) - DP<br>(b)(6)<br>(b)(7)(E) | Exemption (b)(5) used to protect deliberative process.<br>In this responsive record, VA OIG reviewed police records and entered relevant information into an excel spreadsheet, along with deliberative notes, questions and comments between VA OIG staff. The information in this excel spreadsheet is what line-level OIG staff thought was relevant to the audit. The excel spreadsheets are pre-decisional and none of the information reflects final agency decision. The data and notes were collected to prepare and write the January 2018 OIG report (#17-04460-84). These internal spreadsheets reflect deliberations comprising part of a process by which OIG findings and recommendations are formulated. These records shed light on the deliberative process because they reveal the specific topics that the auditors chose to focus on in developing their findings and they reveal what information auditors chose to communicate to supervisors and other co-workers. Moreover, a column of comments in the excel spreadsheet also |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | include information about follow-up questions to agency staff and deliberations and assessments about those follow-up questions. The information in the spreadsheet was culled from a much larger universe of facts and illustrates OIG employee's exercise of judgment regarding what information is relevant to the pre-decisional findings and recommendations that were published in the final OIG report.<br><br>Harms identified from release of these specific records:<br><br>This excel spreadsheet comprises an early step in this particular OIG audit and report. The audit team reviewed thousands of pages of police records and each column and each entry in the spreadsheet is a decision to include or exclude factual information and is a determination about whether factual information exists to move forward with a particular finding or recommendation for the Department. Release of these notes and communications could confuse the public because they contain discussions and concerns that were not published in the final report – therefore release would harm OIG's credibility. Release of these records would hamper ongoing and future OIG audits and investigations because they contain issues that may be addressed in ongoing or future OIG reports. And release of these records, which contain the assessments and comments from OIG staff about the underlying records reviewed, would harm the necessary internal debate and candid consideration of issues. Candid discussion amongst OIG audit team members ensures that audits are conducted accurately and appropriately, which also ensures the final report is factually accurate with appropriate recommendations. Many of the comments in the excel spreadsheet contain information obtained by OIG employees through follow-up questions to agency employees. If OIG employees expect that their comments, assessments and deliberations will be publicly disseminated, they will temper their candor and that will harm the OIG decision-making process. Release would cause harm because in the future OIG employees would not feel free to communicate openly with team members and supervisors – instead they would have to limit and edit their open communication because it might be released publicly. This is especially harmful to OIG work, where it is vital that employees be free to communicate while conducting necessary oversight work like audits and investigations. Release of information under the foregoing circumstances not only harms the OIG audit and investigation decision-making process but the ability of OIG to conduct oversight and publish work product as required under 38 USC 312. |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | Exemption (b)(6) used to protect individual personal privacy, here consisting of names and titles of OIG employees, names of victims of crimes, and names of VA employees. The information contained in the excel spreadsheet includes information that individuals have a privacy interest in including identifying information of victims of crimes, including some minor victims and names and titles of VA and OIG employees.<br><br>Exemption (b)(7)(E) used to protect records compiled for law enforcement purposes which would reveal techniques and procedures for law enforcement investigations and prosecutions or would disclose guidelines for law enforcement investigations or prosecutions. The excel spreadsheet contains information about law enforcement techniques and procedures specific to the handling of disruptive behavior at VA facilities. The data contains information on law enforcement techniques and procedures to handle threatening behavior and thresholds for the involvement of law enforcement. The data collected and entered by OIG contains information about law enforcement techniques and procedures related to investigating assaults. The excel spreadsheet contains information about a law enforcement database used specifically for the tracking and investigation of threatening behavior. Disclosure of this information could allow individuals to avoid investigation and tracking of threatening behavior. The disclosure of this spreadsheet could reasonably be expected to risk circumvention of the law. |
| 108-109 | Excel spreadsheet containing a data roll-up from Large Spreadsheet #1, which contains the underlying information collected by OIG staff. | Released in full. | |
| Large Spreadsheet #2<br><br>(not Bates stamped) | Large excel spreadsheet (1230 rows, 44 columns) that consists of information lower-level OIG staff decided were relevant for collection, discussion and review by the OIG team and higher level staff, collected by lower level staff from the review of patient health records and then reviewed and discussed by higher level staff as part of the process of conducting this inspection. | Withheld in full<br><br>(b)(3) citing 38 U.S.C. § 5701<br><br>(b)(3) citing 38 U.S.C. § 7332<br><br>(b)(5) - DP<br><br>(b)(6) | This request was for patient health records. These records are protected under multiple statutes and VA OIG is not authorized to disclose via FOIA requests. The statutes include 38 U.S.C. § 5701 and 38 U.S.C. § 7332.<br><br>Exemption (b)(3), via 38 U.S.C. § 5701, used to protect the confidential nature of benefit claims made by veterans and their dependents. The veteran patient health records reviewed by OIG staff to create this spreadsheet are VA files and records that pertain to VA claims. The excel spreadsheet contains patient social security numbers that identify veteran patients. The provision of medical care to veterans is based on claims submitted to VA. The notes in this excel spreadsheet include references to veteran patient eligibility for other VA services like housing and employment services. |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | Exemption (b)(3), via 38 U.S.C. § 7332, used to protect the confidentiality of certain medical records and veteran patients. This excel spreadsheet contains identifying social security numbers for each veteran patient. OIG employees wrote notes collected from the review of veteran patient health records to create this excel spreadsheet. The spreadsheet includes many notes that describe health conditions including substance abuse, drug abuse, prescription medication abuse, opioid abuse. This spreadsheet includes information concerning the identity, diagnosis and treatment of veteran patients related to drug abuse. As stated in the published OIG report, 29 VA medical facilities were inspected which included the review of 1025 electronic health records of patients involved in disruptive behavior incidents during a twelve-month period.<br><br>Exemption (b)(5) used to protect deliberative process. In this responsive record, VA OIG employees reviewed patient health records data and entered what they interpreted to be relevant portions of it into this excel spreadsheet, along with deliberative notes, questions and communications between VA OIG staff. The excel spreadsheets are pre-decisional and none of the information reflects final agency decision. The data and notes were collected to prepare and write the January 2018 OIG report which is publicly available. These internal spreadsheets consist of deliberations and communications comprising part of a process by which OIG findings and recommendations are formulated for audits, inspections and investigations. These records shed light on the deliberative process because they reveal the specific topics that the auditors chose to focus on in developing their findings and they reveal what information auditors chose to communicate to supervisors and other co-workers. The information in the spreadsheet was culled from a much larger universe of facts and information and illustrates OIG employees' exercise of judgment regarding what information is relevant to the pre-decisional findings and recommendations.<br><br>Harms identified from release of these specific records:<br><br>Release of these records could confuse the public because they contain discussions and concerns that were not published in the final report – this would also harm OIG's credibility. Release of these records would hamper ongoing and future OIG audits and investigations because they contain issues that may be addressed in ongoing or future OIG reports. And release of these records, which contain the assessments and comments from OIG staff about the underlying |

| Bates Numbers | Record Description | FOIA Exemption | Withholding Description / Explanation |
|---|---|---|---|
| | | | records reviewed, would harm the necessary internal debate and candid consideration of issues. Candid discussion amongst OIG audit team members ensures that audits are conducted accurately and appropriately, which also ensures the final report is factually accurate with appropriate recommendations. This excel spreadsheet comprises an early step in this particular OIG audit and report. The audit team reviewed thousands of pages of veteran patient health records and each column and each entry in the spreadsheet is a decision to include or exclude certain factual information and is a determination about whether factual information exists to move forward with a particular finding or recommendation for the Department. Many of the comments in the excel spreadsheet contain information obtained by OIG employees through follow-up questions to agency employees. This extensive review of records is an early part of the deliberative process of this audit. If OIG employees expect that their comments, assessments and deliberations will be publicly disseminated, they will temper their candor and that will harm the OIG decision-making process. Release would cause harm because in the future OIG employees would not feel free to communicate openly with team members and supervisors – instead they would have to limit and edit their open communication because it might be released publicly. This is especially harmful to OIG work, where it is vital that employees be free to communicate while conducting necessary oversight work like audits, inspections and investigations. Release would also cause harm to the veteran patients because the information discussed by OIG staff is private health information. Release of information under the foregoing circumstances not only harms the OIG audit, inspection and investigation decision-making process but the ability of OIG to conduct oversight and publish work product as required under 38 USC 312.<br><br>Exemption (b)(6) used to protect personal privacy including patient social security numbers, OIG employee names and titles, dates of death and other details about patients which could be used to identify them. |
| 106-107 | Excel spreadsheet containing a data summary from Large Spreadsheet #2, which contains the underlying information collected by OIG staff. | Released in full. | |