UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF VETERANS AFFAIRS, <br><br> Defendant. | Civil Action No. 21-1298 (RC) |

**DECLARATION OF OCTAVIA SMALLS**

I, Octavia Smalls, do hereby declare under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an Administrative Officer for the Department of Veterans Affairs Office of Human Resources Administration/Office of Operations, Security, and Preparedness (VA HRA/OSP), Management, Planning, & Analysis (MPA). In this capacity, I am responsible for the handling of the Freedom of Information Act (FOIA) requests as the liaison for OSP. I am responsible for processing FOIA requests and referrals for HRA/OSP. I have served in this role since 2021. Prior to becoming the Administrative Officer for HRA/OSP MPA, I served as an Administrative Officer for VA Office of Procurement & Logistics.

2. I assign, oversee, and complete appropriate records searches for each FOIA request submitted. In consultation with the Department's senior leadership offices, I make determinations regarding what records are appropriate for release in accordance with the FOIA policies and procedures of the Department and pursuant to 5 U.S.C. § 552. In processing such requests, I consult with personnel in the Department's senior leadership offices and, when appropriate, with other components within the Department, as well as with other Executive Branch agencies and make determinations as to the applicability of exemptions permitted under the FOIA.

3. I make the statements herein based on personal knowledge, including experience with FOIA, with OSP, and in handling requests for senior leadership office records, as well as on information acquired by me while performing my official duties.

## I. OFFICE OF THE INSPECTOR GENERAL'S REFERRAL OF DOCUMENTS TO OFFICE OF SECURITY AND PREPAREDNESS FOIA OFFICE

4. The VA Office of Inspector General (OIG) received a FOIA request from Matthew Struger, dated August 23, 2021.

5. The OIG determined that 1645 pages of the requested documents pertaining to the December 13, 2018 OIG report titled Inadequate Governance of the VA Police Program at Medical Facilities originated with OSP.

6. On October 6, 2021, the OIG referred the documents to OSP for review, processing, and direct response to Plaintiff.

7. OSP assigned the referral FOIA Case No. 22-00002-R for processing. Because this matter was a direct referral from OIG, OSP considered only the 1645 pages that were directly referred and did not conduct further searches for responsive materials, as such is not required.

8. Upon review of the one thousand six hundred forty-five (1645) pages of referred responsive records, OSP determined that the referral was actually one thousand six hundred forty-six (1646) pages of responsive records.

9. On October 8, 2021, after consideration of the referred documents and application of appropriate redactions, the Office of Security and Law Enforcement (a subunit within OSP) issued the Initial Agency Determination to Plaintiff. *See* Exhibit L. After application of Exemptions 5, 6, and 7(E) to the documents, the Agency withheld the 1646 pages in their entirety.

10. After careful and extensive examination, OSP determined that additional non-exempt information is reasonably segregable and could be released. Specifically, on March 21, 2023, OSP released to Plaintiff Bates stamped pages 40, 137-140, 478, 795, 1041, 1073, 1074, 1088, 1089, 1100, 1101, 1259, 1341, 1578, 1593, and 1646. Some pages were released in full, and some were released in part.

## II. APPLICATION OF EXEMPTIONS

11. Attached to this declaration is the OSP Vaughn index documenting the FOIA exemptions applied.

### A. Exemption 5

12. Exemption 5 was applied to one document located within the 1646 referred pages, Bates stamped as 001599-001645. This document, referred to as Inspection Checklist OS&LE Police Service Inspection for FY 2017 & 2018, is a deliberative document and protected from disclosure. The document is an "inter-agency or intra-agency memorandums or information which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552 (b)(5). This Exemption protects from disclosure deliberative documents for which disclosure could result in premature

disclosure of policies prior to adoption, thwart open and honest discussion between superiors and subordinates, discourage frank discussion, and could result in confusion regarding the policies and procedures related to security and law enforcement at VA facilities. The deliberative process privilege is designed to protect the "decision making processes of government agencies." In concept, this privilege protects not merely documents, but also the integrity of the deliberative process itself where the exposure of that process would result in harm.

13. This document reflects the thinking of the Agency in proposing and revising its policies with regard to ensuring security at VA facilities. The revisions contained in the document reflect the opinions of the contributors prior to the adoption of the policy. No statements of agency legal positions are conveyed in the revisions and the revisions, as drafted, do not represent any binding agency interpretation or opinion. The revisions are advisable in nature and do not state or determine agency policies.

14. Release of the checklist for performing facility inspections would reveal the same information regarding security measures, access control, law enforcement procedures, investigations, access to VA facilities and systems would expose techniques, policies, security features employed at facilities, investigative techniques, and other information pertaining to security and law enforcement operations to the public. These checklists provide a template for the examination of facility safety procedures, law enforcement techniques and policies, access security, and related matters that ensure the overall security and safety of employees, patients, and the public. Disclosure of camera placement, security protocols, law enforcement protocols for response to emergency situations, and security for narcotics and medications are all included in the checklist. This information would reveal particulars about camera surveillance, access controls, investigations, law enforcement procedures, and would allow for circumvention of security and law enforcement procedures which would result in appreciable harm.

15. The deliberative nature of these documents, and possible harms associated with their release, were considered, and it was determined that application of Exemption 5 was appropriate.

### B. Exemption 6

16. OSP also applied Exemption 6 to withhold portions of the referred documents. Exemption 6 applies when the disclosure would be an unwarranted invasion of an individual's privacy and the public interest in disclosure would not outweigh such privacy considerations. Upon a line-by-line review of the referred documents, OSP determined that individual's names, addresses, phone numbers, and similar identifying and contact information should not be disclosed in this case. Further, as these records deal with law enforcement and security, and the names of law enforcement personnel not considered decision makers for the Agency, the protection of law enforcement names and identifying information outweighs the public interest in disclosure. Disclosure of these names would offer no greater insight into the operations of the government, OSP properly applied Exemption 6 to withhold those materials.

### C. Exemption 7(E)

17. Exemption 7 protects from disclosure records compiled for law enforcement purposes. Courts have recognized that the protection extends beyond active law enforcement investigations and includes non-investigatory materials like law enforcement manuals, investigatory techniques, and procedures. Because these records all involve facility inspections designed to ensure that law enforcement and safety measures employed at individual VA facilities comply with requirements and are sufficient to ensure safety of patients, employees, and the public, they were compiled for law enforcement purposes.

18. These facility inspections, if released, would provide a guide for circumvention of the policies and procedures employed by law enforcement to limit criminal activity and protect VA facilities. A nefarious actor could use these very investigative reports to circumvent the law. By knowing what security measures are in place, how law enforcement will respond to emergency situations such as terrorism or active shooters, and where and how security measures are implemented, an individual could seek to leverage such knowledge to circumvent the law.

19. After review of the materials and after consideration of possibly segregable material, it was determined that Exemption 7 (E) has applicability and that information contained in these focused reviews of law enforcement procedures and security measures contains no material that is segregable without disclosure of matters protected by Exemption 7. Thus, these documents were withheld in full under Exemption 7(E).

### III. SEGREGABILITY

20. I conducted a line-by-line segregability analysis of the responsive records. For example, after careful and extensive examination, OSP determined that non-exempt information from 19 pages could be reasonably segregated from exempt materials and released. Some documents were released in full and some are released in part. The documents with redactions have been redacted pursuant to Exemption 6. Upon a line-by-line review, OSP determined that individual's names, addresses, phone numbers, and similar identifying information should not be disclosed in this case, for the reasons described above.

\*   \*   \*

Executed this 21st day of March 2023.

_____
Octavia Smalls
Administrative Officer/MPA
VA HRA/OSP