UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS, | |
| Plaintiff, | Civ. No. 21-1298 |
| v. | |
| THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | |
| Defendant. | |

**PLAINTIFF NATIONAL ASSOCIATION OF MINORITY VETERANS' MEMORANDUM IN OPPOSITION TO DEFENDANT UNITED STATE DEPARTMENT OF VETERANS AFFAIRS' SECOND MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S SECOND CROSS-MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

Introduction...............................................................................................................1

Facts and Procedural History ................................................................................2

Legal Standards ......................................................................................................3

Argument .................................................................................................................4

I.      Because the Agency Forfeited Its Right to Justify Its Withholdings, It Loses ............5

II.     The Agency Fails its Burden on its Exemption 5 Withholdings ...................................8

        A.      The Agency Fails to Meet its Burden for Withholding the Survey and
                Follow-Up Communications Under Exemption 5 ...............................................9

                1.      The Survey and Follow-Up Communications Are Not Predecisional........9

                2.      The Survey and Follow-Up Communications Are Not Deliberative........11

                3.      The Agency Fails to Show Foreseeable Harm from Release of the
                        Survey and Follow-Up Communications.................................................13

        B.      The Agency Fails to Meet its Burden for Withholding the Two
                Spreadsheets Under Exemption 5........................................................................14

                1.      The Two Large Spreadsheets Are Not Predecisional or Deliberative ......14

                2.      The Agency Fails to Show Foreseeable Harm from Release of the
                        Two Spreadsheets ....................................................................................15

III.    The Agency Fails its Burden of Withholding OIG Records Under Exemption
        7E..............................................................................................................................16

        A.      The Agency Fails to Show the Contested Records Were Compiled for
                Law Enforcement Purposes .................................................................................16

        B.      Release of the Records Would Not Disclose Techniques, Procedures, or
                Guidelines Used for Law Enforcement Investigations or Prosecutions.........17

        C.      Disclosure of Any Techniques, Procedures, or Guidelines in the OIG
                Records Cannot Reasonably Be Expected to Risk Circumvention of the
                Law..........................................................................................................................18

Case No: 1:21-cv-01298-RC
MPA IN SUPPORT OF PLAINTIFF'S MSJ AND IN OPPOSITION TO DEFENDANT'S MSJ

**IV.**   **Should the Court Believe the Agency Has Not Failed its Burden to Withhold the Survey, the Follow-Up Communications, and the Two Spreadsheets, it Should Inspect These Records In Camera** .................................................................. **19**

    **A.**   **The Agency's Declaration Provides Insufficient Detail to Permit Meaningful Review of Exemption Claims** ........................................ **20**

        1.   The Agency's Declaration Provides Insufficient Detail to Permit Meaningful Review of Exemption Claims for the Survey Responses and Follow-Up Communications ................................................ 21

        2.   The Agency's Declaration Provides Insufficient Detail to Permit Meaningful Review of Exemption Claims for the Two Spreadsheets ...... 22

    **B.**   **The Number of Contested Documents Is Relatively Small** ............................ **23**

    **C.**   **Discrepancies Exist between the Agency's Affidavit and Information the Agency Publicly Disclosed** .................................................... **24**

    **D.**   **The Dispute Turns on the Content of Document** ............................... **24**

    **E.**   **In Camera Review Is Necessary to Determine the Segregability of Information in the Two Spreadsheets** ............................................... **25**

**Conclusion** ......................................................................................................... **26**

MPA IN SUPPORT OF PLAINTIFF'S MSJ AND IN OPPOSITION TO DEFENDANT'S MSJ

## Table Of Authorities

**Cases**

*Access Reports v. DOJ,*
  926 F.2d 1192 (D.C. Cir. 1991) ................................................................................. 11

*Allen v. CIA,*
  636 F.2d 1287 (D.C. Cir. 1980) ........................................................................... 20, 23

*Amer. Imm. Council v. CBP,*
  590 F.Supp.3d 306 (D.D.C. 2022) ................................................................. 13, 14, 23

*Ancient Coin Collectors Guild v. Dep't of State,*
  641 F.3d 504 (D.C. Cir. 2011) ................................................................................. 15

*Birch v. USPS,*
  803 F.2d 1206 (D.C. Cir. 1986) ................................................................................. 4

*Bloche v. DOD,*
  370 F.Supp.3d 40 (D.D.C. 2019) ........................................................................ 20, 21

*Carter v. U.S. Dep't of Commerce,*
  830 F.2d 388 (D.C. Cir. 1987) ............................................................................ 20, 23

*Citizens for Responsibility & Ethics in Washington v. DOJ,*
  746 F.3d 1082 (D.C. Cir. 2014) ............................................................................... 18

*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ................................................................................... 9

*Ctr. for Auto Safety v. EPA,*
  731 F.2d 16 (D.C. Cir. 1984) ................................................................................... 25

*Dep't of Air Force v. Rose,*
  425 U.S. 352 (1976) ................................................................................................ 3

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
  531 U.S. 1 (2001) ................................................................................................... 5

*Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
  489 U.S. 749 (1989) ............................................................................................. 3, 4

*Dep't of Justice v. Tax Analysts,*
  492 U.S. 136 (1989) ................................................................................................ 3

*Elec. Privacy Info. Ctr. v. DOJ*,
  442 F.Supp.3d 37 (D.D.C. 2020) ........................................................................ 23

*Elkins v. FAA*,
  134 F.Supp.3d 1 (D.D.C. 2015) .......................................................................... 18

*Goldberg v. Dep't of State*,
  818 F.2d 71 (D.C. Cir. 1987) ................................................................................ 4

*Gov't Accountability Project v. Dep't of Health & Hum. Servs.*,
  691 F. Supp. 2d 170 (D.D.C. 2010) ...................................................................... 4

*Hansten v. DEA*,
  No. 21-cv-2043-RC, 2022 WL 2904151 (D.D.C. Jul. 22, 2022)........................ 17

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
  608 F.2d 1381  (D.C. Cir. 1979) ........................................................................ 20

*Holy Spirt Assoc. for Unification of World Christianity v. CIA*,
  636 F.2d 838 (D.C. Cir. 1980) ............................................................................ 20

*Juarez v. DOJ*,
  518 F.3d 54 (D.C. Cir. 2008) .............................................................................. 19

*Justice v. IRS*,
  798 F.Supp.2d 43 (D.D.C. 2011) .......................................................................... 7

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ............................................................................ 19

*Maydak v. United States DOJ*,
  218 F.3d 760 (D.C. Cir. 2000) ........................................................................ 6, 7

*Mayer Brown LLP v. IRS*,
  562 F.3d 1190 (D.C. Cir. 2009) .......................................................................... 18

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) .............................................................................. 3

*Morey v. CIA*,
  508 F.3d 1108 (D.C. Cir. 2007) ............................................................................ 8

*Armstrong v. Executive Off. of the President*,
  97 F.3d 575 (D.C. Cir. 1996) .............................................................................. 25

*NLRB v. Robbins Tire*,
  437 U.S. 214 (1978) ............................................................................................. 3

iv

*People for the Am. Way Found. v. Nat'l Park Serv.*,
   503 F.Supp.2d 284 (D.D.C. 2007) ......................................................................... 20

*Pratt v. Webster*,
   673 F.2d 408 (D.C. Cir. 1982) ............................................................................... 16

*Public Employees for Envt'l Responsibility. v. U.S. Section Int'l Boundary & Water Comm'n,
   U.S.-Mexico*,
   740 F.3d 195 (D.C. Cir. 2014) ......................................................................... 16, 18

*Quiñon v. FBI*,
   86 F.3d 1222 (D.C. Cir. 1992) ............................................................................... 23

*Ray v. Turner*,
   587 F.2d 1187 (D.C. Cir. 1978) ............................................................................. 20

*Reps. Comm. for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) ............................................................................... 8, 13

*Rosenberg v. DOD*,
   342 F.Supp.3d 62 (D.D.C. 2018) ........................................................................... 13

*Ryan v. DOJ*,
   617 F.2d 781 (D.C. Cir. 1980) ................................................................................. 5

*Safecard Servs. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ............................................................................... 7

*Shapiro v. United States DOJ*,
   Civ. Action No. 13-555 (RDM), 2016 U.S. Dist. LEXIS 68476 (D.D.C. May 25, 2016) ......... 6

*Tax'n With Representation Fund v. IRS*,
   646 F.2d 666 (D.C. Cir. 1981) ................................................................................. 8

*U.S. Fish & Wildlife Serv. v. Sierra Club*,
   141 S. Ct. 777 (2021) .............................................................................................. 9

*Washington Post Co. v. Special Inspector Gen. for Afghanistan Reconstruction*,
   486 F.Supp.3d 141 (D.D.C. 2020) ............................................................... 9, 10, 11

*Waterman v. IRS*,
   61 F.4th 152 (D.C. Cir. 2023) ........................................................................... 14, 15

**Statutes**

5 U.S.C. § 552 ........................................................................................................... passim

**Other Authorities**

U.S. Department of Veterans Affairs, Office of Inspector General, *Mission-Vision-Values*, ...... 17

## Introduction

Two and a half years ago, Plaintiff National Association of Minority Veterans (NAMVETS) submitted a Freedom of Information Act request to the Department of Veterans Affairs. Because the request sought certain information related to the Department's Office of Inspector General (OIG), the agency referred part of the request to the OIG. When the agency claimed it had no responsive records, NAMVETS sued.

After months of litigation, the agency admitted it had responsive records. It produced highly redacted versions of some of them and withheld others completely. The parties then cross-moved for summary judgment. This Court denied the agency's motion but gave it another chance to justify its withholdings.

In the six months since that order, the agency has continued to make productions, lifting some redactions from some records it previously produced.

But the agency still fails its burden of withholding two categories of responsive records under Exemptions 5 and 7E: (1) the OIG survey questions and responses and related follow up communications use to prepare OIG reports; and (2) two "large [E]xcel spreadsheets" containing information used in preparing the same OIG reports.

The agency fails its burden on Exemption 5 because it does not show that the records are predecisional or deliberate and it does not establish any concrete foreseeable harm from the release of the information.

And it fails its burden under Exemption 7E because it does not show the records were compiled for a law enforcement purposes, that release of the records would disclose techniques, procedures, or guidelines use in law enforcement investigations or prosecutions, or even if it did, that such disclosure can reasonably be expected to risk circumvention of the law.

1

Because the agency fails its burden of justifying its withholdings, this Court should grant summary judgment for NAMVETS and order the agency to produce the two sets of contested records with Exemption 5 and 7E withholdings lifted.

## Facts and Procedural History

The factual background of this dispute is fully detailed in the Court's November 18, 2022 Memorandum Opinion. *See* ECF No. 30 at 2–5.

Since that decision, the agency has continued to make supplemental productions of records that it had asserted earlier in this litigation were exempt from disclosure. These supplemental productions lifted redactions on documents that the agency had previously produced. Declaration of Matthew Strugar ¶¶ 3–5, Exs. A–C. The OIG produced supplemental records on January 11, 2023, January 30, 2023, and March 10, 2023. 3rd Gowins-Bellamy Declaration, ECF No. 37-2 ¶¶ 31–33, Exs. G–I. In fact, despite this litigation being nearly two years old, and despite the agency claiming "the search for responsive records . . . is now complete" as of February 2022, the agency now claims to have *still* not completed its production of records. *See*, *e.g.*, ECF No. 37-18 at 4, 24, 47, 71, 73–76, 91, 97, 133–13 (describing a variety of yet-to-be-released records that "will be released to Plaintiff with b (6) redactions applied").

The agency has moved for summary judgment for a second time. ECF No. 27. NAMVETS now cross-moves for summary judgment.

NAMVETS challenges the withholding of only two categories of records: (1) the OIG survey questions and responses and related follow up communications use to prepared OIG reports (OIG Bates 001-105); and (2) two "large Excel spreadsheets" with information used in

Case No: 1:21-cv-01298-RC
MPA IN SUPPORT OF PLAINTIFF'S MSJ AND IN OPPOSITION TO DEFENDANT'S MSJ

preparing the same OIG reports. And it only challenges the agency's withholdings under Exemption 5 and 7E.

## Legal Standards

FOIA safeguards the American public's right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). "[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

FOIA requires disclosure of agency records when requested unless the records fall within one of the Act's nine narrow exemptions. *See* 5 U.S.C. § 552(b)(1)–(9). If requested information does not fit into one of these enumerated categories, the law requires federal agencies to release the information. *See NLRB v. Robbins Tire*, 437 U.S. 214, 221 (1978). The exemptions "have been consistently given a narrow compass," and information that "do[es] not fall within one of the exemptions [is] improperly withheld[.]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

Courts review an agency's decision to withhold information de novo, and the government bears the burden of proving that a particular exemption applies. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755.

To satisfy its burden to withhold information, the agency "must provide a relatively detailed justification [for its withholding decisions], specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) (internal citations omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious,

the FOIA expressly places the burden 'on the agency to sustain its action.'" *Reporters Comm.*, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). Thus, when claiming one of FOIA's exemptions, the agency bears the burden of proving to a reviewing court that withheld information is "*clearly* exempt." *Birch v. USPS*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (emphasis added).

"Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency seeking summary judgment proves that it has fully discharged its FOIA obligations is summary judgment appropriate." *Gov't Accountability Project v. Dep't of Health & Hum. Servs.*, 691 F. Supp. 2d 170, 173 (D.D.C. 2010). If the agency cannot "carry its burden of convincing the court that one of the statutory exemptions appl[ies]," the law requires the requested records be released. *Goldberg v. Dep't of State*, 818 F.2d 71, 76 (D.C. Cir. 1987).

**Argument**

This Court should order the agency to produce the contested records—the survey questions and responses and related follow up communications, and the two Excel spreadsheets—without withholdings for Exemptions 5 and 7E.

First, by failing to justify the withholdings in the first round of summary judgment, the agency forfeited its right to do so.

Second, the agency fails its burden under Exemption 5 because it does not establish that the contested records are predecisional or deliberative, or that their release would cause foreseeable harm to the agency.

Third, the agency fails its burden under Exemption 7E because it does not show the contested records were compiled for law enforcement purposes; it does not show that release of

4

the records would disclose techniques, procedures, or guidelines used for law enforcement investigations or prosecutions; and even if it did, the agency does not show that disclosure of any such techniques, procedures, or guidelines could reasonably be expected to risk circumvention of the law.

Fourth, NAMVETS requests this Court review *in camera* the contested records to determine whether any of the material is properly withheld under Exemption 5 or 7E because the agency's descriptions of the withheld records fail to show with reasonable specificity if the withholdings fall within those Exceptions.

I.    **Because the Agency Forfeited Its Right to Justify Its Withholdings, It Loses**

The Court should deny the agency's second motion for summary judgment and grant summary judgment to NAMVETS because the agency forfeited the right to justify its withholdings on the initial round of summary judgment motions and no exceptions to the forfeiture rule apply.

As a general rule, an agency's failure to justify a withholding at summary judgment forfeits any argument that the withholding is justified. *Ryan v. DOJ*, 617 F.2d 781, 792 & n.38a (D.C. Cir. 1980) (refusing to allow agency to invoke exemption not previously "raised," proclaiming instead that "an agency must identify the specific statutory exemptions relied upon, and do so at least by the time of the district court proceedings"), *abrogated on other grounds by, Dep't of Interior v. Klamath Water Users Protective Ass'n,* 531 U.S. 1 (2001).

The D.C. Circuit has "[r]ecognized two exceptions [to this rule] for unusual situations, largely beyond the government's control": specifically, "extraordinary circumstances where, from pure human error, the government failed to invoke the correct exemption and will have to release information compromising national security or sensitive, personal, private information

unless the court allows it to make an untimely exemption claim; and where a substantial change in the factual context of the case or an interim development in the applicable law forces the government to invoke an exemption after the original district court proceedings have concluded." *Maydak v. United States DOJ*, 218 F.3d 760, 767 (D.C. Cir. 2000).

This rule applies to belated assertions of exemptions in the district court, too. *Shapiro v. United States DOJ*, Civ. Action No. 13-555 (RDM), 2016 U.S. Dist. LEXIS 68476, at *12 (D.D.C. May 25, 2016) ("Basic principles of fairness, efficiency, and finality, moreover— principles inherent in the rules of civil procedure that apply with extra force in the context of FOIA litigation—counsel in favor of requiring the government to make some threshold showing of good cause to avoid a finding of forfeiture.").

Here, the agency failed to justify the withholding on summary judgment. It never contended that either of the exceptions applies. Instead, the agency staked its entire defense on the argument that the negotiated limitation during the litigation was a somehow a "new" FOIA request and could not be litigated here. It lost that argument. Because it didn't make the argument that either Exemption 5 or 7E applied, it forfeited that argument.

This was not a situation involving "extraordinary circumstances where, from pure human error, the government failed to invoke the correct exemption." *Maydak*, 218 F.3d at 767. It was a calculated litigation decision to bet the summary judgment motion on its "new FOIA" argument. In fact, counsel for the agency *prepared and filed* a *Vaughn* index purporting to justify the withholding only to claim it was misfiled in a notice of errata. ECF Nos. 23-1, 24-1 & 25. Even if it were human error, the agency would still have forfeited the argument because release of records related to OIG recommendations about VA hospital policing do not threaten to

"compromise[e] national security or sensitive, personal, private information." *Maydak*, 218 F.3d at 767.

The agency fails the second exception, too. There was no "substantial change in the factual context of the case or an interim development in the applicable law [that] force[d] the government to invoke [the] exemption[s]." *Id*. The agency made and makes no claim that there was.

NAMVETS recognizes that this Court rejected this argument in the first round of summary judgment and allowed the agency to present serial summary judgment motions. ECF No. 30 at 19–20. That was error that the Court can and should correct here. Allowing the agency to file serial summary judgment motions was error because the Court did not apply the standards for avoiding waiver. ECF No. 30 at 19–20. In any event, NAMVETS reasserts the forfeiture argument to preserve it for appeal.

Giving the agency multiple bites at the apple is bad policy, too. Providing special privileges to one class of litigants undermines faith in the judicial process. Federal courts already provide federal agencies a variety of extratextual advantages in FOIA litigation, from shields against discovery to presumptions of good faith unafforded other litigants. *See Safecard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (agency affidavits or declarations submitted to support claims to exemption given "a presumption of good faith"); *Justice v. IRS*, 798 F.Supp.2d 43, 47 (D.D.C. 2011) (agencies shielded from normal civil discovery in FOIA actions), *aff'd*, 485 F. App'x. 439 (D.C. Cir. 2012). Providing another extratextual structural advantage—where agencies are afforded multiple attempts to meet their burden—would be ripe for gamesmanship. And it is an advantage that would be unimaginable in other contexts or involving other litigants. When a plaintiff in a civil case fails to prove an essential element, he loses; courts do not call it a

mulligan and tell the plaintiff to come back for another shot to see if he can meet his burden on his next attempt. Federal agencies should be held to the same standards as everyone else rather than given chances to lose only until they can win.

Because it forfeited its ability to justify its withholdings, the agency failed its burden. Because it failed its burden, the Court should deny the agency's renewed motion for summary judgment and grant judgment to NAMVETS.

## II.    The Agency Fails its Burden on its Exemption 5 Withholdings

The agency fails its burden of making an adequate showing as to its withholdings under Exemption 5. To withhold records under Exemption 5, the agency must show that the documents are both predecisional and deliberative, meaning the documents reflect "advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated, as well as other subjective documents that reflect the personal opinions of the writer prior to the agency's adoption of a policy." *Tax'n With Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981). The agency must also show that it "'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption." *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).

Not only does the agency fail to show that the requested information is both predecisional and deliberative, its boilerplate assertions that release of the documents will result in foreseeable harm do not meets the agency's burden. That burden requires the agency show that the withheld information satisfies these requirements, and its declarations and *Vaughn* indices are critical in the agency's ability to meet this obligation. *See Morey v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (admonishing the government's failure to provide enough information to aid the court in

determining whether the privilege was properly applied). As detailed below, the agency's

minimal information and weak assertions are not enough to withhold records under Exemption 5

Accordingly, NAMVETS should be granted summary judgment.

### A. The Agency Fails to Meet its Burden for Withholding the Survey and Follow-Up Communications Under Exemption 5

The agency fails to meet its burden of withholding information in the survey and follow-

up communications under Exemption 5 because it does not establish that they are predecisional

or deliberate. Even if they were, the agency's generalized assertions that release of the survey

and follow-up communications will cause foreseeable harm are too generalized to meet the

agency's burden under Exemption 5.

### 1. The Survey and Follow-Up Communications Are Not Predecisional

The agency fails to identify how the OIG's survey and communications are predecisional

and thus exempt from disclosure. A document is predecisional if it was "generated before the

adoption of an agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866

(D.C. Cir. 1980). To determine whether the document was generated before the adoption of an

agency policy, courts look to whether the withholding agency treats the record as its final view

on the matter, and the legal operative effect of the agency's decision. *U.S. Fish & Wildlife Serv.*

*v. Sierra Club*, 141 S. Ct. 777, 786–87 (2021) ("While we have identified a decision's 'real

operative effect' as an indication of its finality, that reference is to the legal, not practical,

consequences that flow from an agency's action.")

The agency's showing that a record is predecisional cannot be "vague and indistinct"

from its assertion that the record is deliberative. *Washington Post Co. v. Special Inspector Gen.*

*for Afghanistan Reconstruction*, 486 F.Supp.3d 141, 169 (D.D.C. 2020). In *Washington Post*, the

agency asserted Exemption 5 to withhold portions of records of interviews (ROIs), which were

9

notes made by an interviewer to obtain information for a report. The agency alleged that the ROIs were predecisional since one of their primary purposes was to obtain information for a "lessons learned report" to make findings and recommendations as part of an ongoing process of agency decisionmaking. *Id*. In finding the agency failed its burden of showing it properly withheld information under Exemption 5, the court found that there was no reference to a decision being made or any policy or action that the government was considering. *Id*. at 169–70. Further, the fact that the agency's *Vaughn* index and declaration said "nothing about whether the interviews themselves were conducted, or the reports were generated, in relation to any anticipated [Special Inspector General] decision or what role the reports would play in any future decision" buttressed the court's finding that the agency failed to meet its burden of showing the records were predecisional. *Id*. at 170.

Similar to the agency in *Washington Post*, the agency here fails to provide a clear understanding of why the survey and follow-up communications are predecisional. The agency's conclusory statements that the survey questions and responses and follow-up communications were used to prepare and write two OIG reports do not, on their own, support its redactions under Exemption 5. ECF No. 37-2 ¶ 46. The agency says nothing about the role the redacted information plays in OIG's continuing decisionmaking process. While the agency cites to paragraphs 42–46 of the Third Gowins-Bellamy Declaration as support for its claim that the withheld information is "pre-decisional and reflect[s] deliberations comprising part of a process by which Office of Inspector General findings and recommendations are formulated," the declaration makes *no* mention of the predecisional nature of the withheld information. *See* ECF Nos. 37-1 at 12, 14; 37-2 ¶¶ 42–46. The agency's description of the records in the *Vaughn* index is no more revealing – it merely summarizes that the information is predecisional because it

contains internal notes made by OIG staff to prepare the reports, questions asked to prepare to write the reports, and responses by which OIG findings and recommendations are formulated. ECF No. 037-3 at 1–9. And the agency's briefing is also void of any discussion of the relationship between the withheld information and the predecisional character of the information. Like the interview notes in *Washington Post*, the agency's conclusory claim that the survey and follow-up communications were be used in preparing a report does not meet the agency's burden. *Washington Post*, 486 F.Supp.3d at 169–70.

Courts find records to be predecisional only when a government entity can, *at a minimum*, identify the larger process to which a record contributes. *See Access Reports v. DOJ*, 926 F.2d 1192 (D.C. Cir. 1991) (upholding Exemption 5 withholdings where withheld records showed the agency's decisionmaking process on moving bills through Congress). Here, the agency fails to link the withheld information and the agency's decisionmaking process. Given the agency's failure to satisfy the first prong of the deliberative process analysis, it fails its burden and the redactions to the survey and follow-up communications should be disclosed the redactions to the survey and follow-up communications should be disclosed.

## 2.   The Survey and Follow-Up Communications Are Not Deliberative

Even if the agency had met its burden of showing this material is predecisional, the agency must still also show the withheld records are deliberative, meaning they are intended to facilitate or assist development of the agency's final position on the relevant issue. *See Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021). The agency must identify what deliberative process is involved and the role played by the documents during that process to invoke Exemption 5. *Citizens for Responsibility & Ethics in Wash. v. United States DOJ*, 45 F.4th 963, 972 (DC. Cir. 2022). The agency must also show the decisionmaking

11

authority vested in the person issuing the disputed documents and the positions in the agency's chain of command occupied by the document's author and recipient. *See Senate of the Com. of P.R. ex rel. Judiciary Comm. v. DOJ*, 823 F.2d 574, 585–86 (D.C. Cir. 1987). As NAMVETS showed in the preceding section, the agency fails to show the deliberative process involved and the role played by the redacted information during that process.

The agency also fails to meet the last two requirements in the deliberative process analysis: that the decisionmaking authority vested in the person issuing the disputed documents and the positions in the agency's chain of command occupied by the document's author and recipient. The Third Gowins-Bellamy Declaration only asserts that the withheld information is OIG survey questions prepared by OIG staff and responded to by VA Chiefs of Police and VHA medical directors, emails between OIG staff and the survey respondents, and emails between OIG staff and the Deputy Undersecretary for Health. ECF No. 37-2 ¶¶ 42–44. The *Vaughn* index provides equally minimal information, explaining that the communications are between VA employees and OIG staff. ECF No. 37-3 at 1–9.[1] These documents do not describe the decisionmaking authority vested in, or chain of command occupied by the survey participants.

As a result, the agency fails to meet its burden of showing the communications are deliberative and the Exemption 5 redactions to the survey and follow-up communications should be disclosed.

---

[1] The *Vaughn* index also indicates that the communications are between VA employees and OIG inspectors but does not differentiate between OIG inspectors and OIG staff. See ECF No. 37-3 at 1, 3, 6.

Case No: 1:21-cv-01298-RC

MPA IN SUPPORT OF PLAINTIFF'S MSJ AND IN OPPOSITION TO DEFENDANT'S MSJ

### 3.  The Agency Fails to Show Foreseeable Harm from Release of the Survey and Follow-Up Communications

The agency's generalized assertions that release of the survey and follow-up communication will inhibit open communications between agency employees and OIG staff do not meet the standard imposed by the statute. *See* ECF Nos. 37-1 at 13; 37-2 ¶ 46; 37-3 at 1–9.

In 2016, due to overuse and abuse of Exemption 5, Congress enacted the FOIA Improvement Act of 2016, which added a requirement that agencies must show that release of the requested information will cause foreseeable harm. The FOIA Improvement Act makes clear that the agency cannot merely speculate that harm might result from disclosure or list general rationales that may apply to broad categories of agency records; the agency must instead particularize the harm that the FOIA Exemption is designed to prevent. *See Amer. Imm. Council v. CBP*, 590 F.Supp.3d 306, 333 (D.D.C. 2022); *see also Rosenberg v. DOD*, 342 F.Supp.3d 62, 79 (D.D.C. 2018).

The agency repeatedly contends that it is reasonably foreseeable that agency employees will not be candid in future communications with the OIG if they fear that the communication may become public, *see* ECF Nos. 37-1 at 13; 37-2 ¶ 46; 37-3 at 1-9, but this is no more than the "perfunctory, sweeping, and undifferentiated declaration that release of every single record withheld would have an 'inhibiting effect' by 'chill[ing] full and frank discussions[.]'" that the D.C. Circuit has found to be insufficient. *Reporters Committee*, 3 F.4th at 372 (quoting the parties' Joint Appendix). Like the FBI in *Reporters Committee*, the agency here does "not explain the particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes (and, therefore, whether and how their release would harm similar deliberations in the future)." *Id*. Plenty of agency communications are public records. The agency's argument that it fears disclosure of communications may prevent candid

conversations among Executive branch employees is more of an argument to repeal FOIA than an argument for withholding these records under Exemption 5 here.

The agency also undermines its own argument with its productions here. Between the last round of summary judgment motions and this one, the agency produced a variety of survey responses while redacting others. Strugar Decl. ¶¶ 3, 5, Exs. A, C. There is no discernable explanation why releasing *some* responses but not others would change how candid agency employees would be with the OIG in the future (or, for that matter, why *some* responses are predecisional and deliberative while others are not).

As this Court has held, the agency "must leave the Court with a clear understanding of what deliberative process is asserted." *See Amer. Imm. Council*, 590 F.Supp.3d at 326. Given the agency's failure to do just that, NAMVETS is entitled to the survey and follow-up communications without redactions under Exemption 5.

### B.    The Agency Fails to Meet its Burden for Withholding the Two Spreadsheets Under Exemption 5

The agency continues to withhold what it calls two Excel spreadsheet under Exemption 5. The agency fails to meet its burden for withholding these spreadsheets in full under Exemption 5 because it fails to establish either spreadsheet is either predecisional or deliberative and fails to particularize the harms that will flow from disclosure of the spreadsheets.

### 1.    The Two Large Spreadsheets Are Not Predecisional or Deliberative

The D.C. Circuit recently held that a chronological collection of statements fell outside the scope of Exemption 5 because it was reasonably segregable from related evaluative commentary. *Waterman v. IRS*, 61 F.4th 152, 160 (D.C. Cir. 2023). "'Purely factual material usually cannot be withheld under Exemption 5 unless it reflects an exercise of discretion and

judgment calls.'" *Id.* at 158 (quoting *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011)).  "Rather, the legitimacy of withholding turns on 'whether the selection or organization of facts is part of an agency's deliberative process.'" *Id.* (quoting *Ancient Coin Collectors*, 641 F.3d at 513).

Because the agency is withholding them in full, NAMVETS is unable to unequivocally discern if any portion of the spreadsheets are properly withheld under Exemption 5. The agency's declaration claims the factual information contained in the spreadsheets justifies withholding these records in their entirety under Exemption 5. ECF No. 37-2 ¶¶ 52, 59. But both the declaration and the agency's *Vaughn* index are so conclusory that a meaningful assessment of the agency's complete withholding of these records under Exemption 5 assertions is impossible. That ambiguity also means the agency has failed to meet its burden of showing that the withholding is proper.[2]

2.       **The Agency Fails to Show Foreseeable Harm from Release of the Two Spreadsheets**

Even if this Court finds that the spreadsheets are predecisional and deliberative, they still must meet the foreseeable harm threshold detailed above. As with the survey, the agency fails to particularize the harms that will occur from release of the documents. *See* ECF No. 37-2 ¶¶ 52–54.Thus, the agency fails its burden of withholding the spreadsheets under Exemption 5. *Reporters Committee*, 3 F.4th at 372.

---

[2] As argued below, NAMVETS respectfully requests this Court conduct an *in camera* review of the Excel spreadsheets to determine if any reasonably segregable information must be released because of the agency's improper Exemption 5 assertions.

Case No: 1:21-cv-01298-RC
MPA IN SUPPORT OF PLAINTIFF'S MSJ AND IN OPPOSITION TO DEFENDANT'S MSJ

III.     **The Agency Fails its Burden of Withholding OIG Records Under Exemption 7E**

To withhold records under Exemption 7E, an agency must show that the information was "compiled for law enforcement purposes . . . [and] that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. 552 (b)(7).

The agency fails to meet this burden for withholding the contested records[3] under Exemption 7E.

A.     **The Agency Fails to Show the Contested Records Were Compiled for Law Enforcement Purposes**

As a threshold requirement, the agency must show that the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); *see also Public Employees for Envt'l Responsibility. v. U.S. Section Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 202–03 (D.C. Cir. 2014). While deference is generally given to agencies whose "principal function is law enforcement," courts "scrutinize with some skepticism the particular purpose claimed" for agencies that have mixed law enforcement and administrative functions. *Id.* at 203 (quoting *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)). Court must carefully consider an agency's claims that the records were compiled for law enforcement purposes; otherwise, "the excessive withholding of agency records which Congress denounced and sought to avoid with the 1974 amendments might well result." *Pratt*, 673 F.2d at 418.

---

[3] NAMVETS does not contest the agency's withholdings of records from the Office of Operations, Security, and Preparedness, Department of Veterans Affairs under Exemption 7E. *See* ECF No. 37-18.

Here, the agency gives this Court no assurances that the OIG records were compiled for law enforcement purposes. The agency's opening brief, *Vaughn* index, and declaration lack any information about the OIG's principal purpose. The OIG's website describes its purpose as "perform[ing] audits, inspections, investigations and reviews that improve the efficiency, effectiveness, and integrity of the Department of Veterans Affairs' programs and services." U.S. Department of Veterans Affairs, Office of Inspector General, *Mission-Vision-Values*, https://www.va.gov/oig/pubs/VA-OIG-Mission-Vision-Values.pdf. The vision then lists four bulletpoints that will guide the OIG in achieving this vision, with only one of the bulletpoints even tangentially related to law enforcement. *Id.* (stating that the OIG "will prevent and address fraud and other crimes, waste and abuse, as well as advance efforts to hold responsible individuals accountable"). In any case, the agency fails to establish that the OIG is a law enforcement agency generally or that these records specifically were compiled for that law enforcement purpose. The agency thus fails to meet the threshold requirement for withholding under Exemption 7E.

**B.      Release of the Records Would Not Disclose Techniques, Procedures, or Guidelines Used for Law Enforcement Investigations or Prosecutions**

Even if this Court finds the agency met the threshold requirement, it still fails to meet Exemption 7E's second requirement: that release of the information would reveal "techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). To meet this requirement, the agency "must at least provide *some* explanation of what procedures are involved and how they would be disclosed" and "that the records contain law-enforcement techniques and procedures that are generally unknown to the public." *Hansten v. DEA*, No. 21-cv-2043-RC, 2022 WL 2904151, at *3 (D.D.C. Jul. 22, 2022) (citing *Citizens for Responsibility*

*& Ethics in Washington v. DOJ*, 746 F.3d 1082, 1102 (D.C. Cir. 2014); *Elkins v. FAA*, 134 F.Supp.3d 1, 4 (D.D.C. 2015)) (emphasis in original).

Like the DEA in *Hansten*, the OIG fails to show how release of the information will reveal how the OIG investigates crime. The agency broadly asserts that the responses to the survey questions will reveal law enforcement techniques and procedures, ECF No. 37-2 ¶¶ 46–49, but it is unclear how freeform responses to questions like, "Which of the following have been paid to police officers at your facility in fiscal year 2017 . . . to recruit and retain police officers?" would reveal a law enforcement *technique*. ECF No. 37-3 at 1-2 (referencing OIG Bates No. 024). That is just one example of many where the OIG asserts Exemption 7E to withhold survey responses where its *only* justification is merely reciting the law.

The agency's reasoning for withholding the first spreadsheet is similarly lacking and fails the agency's burden of withholding the entire spreadsheet under Exemption 7E.[4] *See* ECF Nos. 37-2 ¶ 55; 37-3 at 9–11.

The agency fails to sufficiently inform this Court as to the procedures or techniques that are at stake if the requested information is released, thus failing its burden under Exemption 7E.

### C.   Disclosure of Any Techniques, Procedures, or Guidelines in the OIG Records Cannot Reasonably Be Expected to Risk Circumvention of the Law

The agency also fails to meet the third requirement of Exemption 7E: that disclosure of the withheld information "might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *Public Employees for Envt'l Responsibility*, 740 F.3d at 205 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

---

[4] The agency makes no Exemption 7E assertion for withholding the second spreadsheet. *See* ECF No. 37-3 ¶ 57.

Case No: 1:21-cv-01298-RC
MPA IN SUPPORT OF PLAINTIFF'S MSJ AND IN OPPOSITION TO DEFENDANT'S MSJ

Here, the agency provides no more than a rewording of the statutory standard to justify its reasoning that releasing the information will increase the risk of circumvention of the law. *See* ECF Nos. 37-2 ¶ 55; 37-3 at 9–11. Returning to the example above, the agency does not explain how the response to a question about money paid to police could risk circumvention of the law.

The agency's recitation of the statutory standard fails to meet its burden to justify withholding information under Exemption 7E. This Court should deny the agency's motion for summary judgment on Exemption 7E and grant summary judgment to NAMVETS.

**IV.    Should the Court Believe the Agency Has Not Failed its Burden to Withhold the Survey, the Follow-Up Communications, and the Two Spreadsheets, it Should Inspect These Records *In Camera***

If this Court does not agree that the agency has failed its burden of withholding the survey, the follow-up communications, and the two large spreadsheets under Exemptions 5 and 7E, NAMVETS requests that the Court review them *in camera* to evaluate the agency's Exemption 5 and 7E assertions.

 FOIA provides district courts the option to conduct *in camera* review. 5 U.S.C. § 552(a)(4)(B). The availability of *in camera* review is subject to the court's broad discretion and appropriate when the Court believes it is needed "to make a responsible de novo determination on the claims of exception." *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (citing *Juarez v. DOJ*, 518 F.3d 54, 60 (D.C. Cir. 2008)). Courts in this district generally turn to in camera review where "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims; the number of records involved is relatively small; a discrepancy exists between an agency's affidavit and other information that the agency has publicly disclosed; and when the dispute turns on the contents of the documents, and not the parties' interpretations of

the documents." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F.Supp.2d 284, 307

(D.D.C. 2007) (citation and internal quotation marks omitted).

### A.     The Agency's Declaration Provides Insufficient Detail to Permit Meaningful Review of Exemption Claims

*In camera* review is necessary because the agency's descriptions of the withheld records

are conclusory and merely repeat the language of the statute without providing sufficiently

detailed descriptions. Affidavits must show with reasonable specificity why the documents fall

within the exemption. *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). When an affidavit

merely recites the language of the statute, is drawn in conclusory terms, or is too vague or

sweeping, the court's responsibility to conduct de novo review is frustrated. *Carter v. U.S. Dep't*

*of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987); *Allen v. CIA*, 636 F.2d 1287, 1291 (D.C. Cir.

1980); *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979); *see*

*also Holy Spirt Assoc. for Unification of World Christianity v. CIA*, 636 F.2d 838, 845 (D.C. Cir.

1980) (ordering *in camera* inspection because the document descriptions were "primarily

conclusory and often repeated the terms of the FOIA").

Courts in this district turn to *in camera* inspections when the agency's affidavits fail to

justify the claimed exemptions. In *Bloche v. DOD*, 370 F.Supp.3d 40 (D.D.C. 2019), the Navy

justified withholding records under Exemption 7E by merely stating in their declaration that the

withheld material "identif[ies] Law Enforcement and/or National Security techniques and

procedures that are not widely known" and that disclosure of this information "would diminish

or negate the effectiveness of these techniques and procedures." *Id.* at 58. The Court found this

reasoning "conclusory" because it essentially restated the applicable legal standard in different

words without naming any relevant law enforcement duty, incident, or law that would be easier

to violate upon release of the information. *Id.*

So too here for the survey responses and follow-up communications as well as the two large spreadsheets.

1. **The Agency's Declaration Provides Insufficient Detail to Permit Meaningful Review of Exemption Claims for the Survey Responses and Follow-Up Communications**

As in *Bloche*, the agency's justification for withholding the survey responses and follow-up communications under Exemption 5 simply restates the applicable legal standard without offering additional detailed explanation. The declaration repeatedly states that the agency is withholding the survey responses and follow-up communications under Exemption 5 "to protect deliberative process," specifically of internal communications, notes, and responses. *See* ECF No. 37-2 ¶¶ 35–38. The declaration provides *no* additional explanation beyond that. *Id.* The *Vaughn* index, likewise, sheds no additional light on the basis for withholding under Exemption 5 and just repeats the phrases "predecisional" and "deliberations" as if they were magic words that justified deliberative process withholdings. *See* ECF No. 37-3 at 1–9. The *Vaughn* index's descriptions reveal little as to what the deliberative process is within the documents beyond internal communications between parties that "reflect deliberations comprising part of a process by which OIG findings and recommendations are formulated." *Id.* at 1, 3, 5–6, 8.

The agency's declaration and *Vaughn* index seeks to justify withholding the survey responses and internal email communications through conclusory statements that often just repeat the terms of the FOIA without providing sufficient justification for withholding. When asserting Exemption 5, the agency consistently uses the language "predecisional" and "deliberative" to conclude that the documents are predecisional and deliberative. ECF No. 37-2 ¶¶ 35–38. As in *Bloche*, the agency's repeated use of the legal standard as justification is conclusory. *Bloche*, 370 F.Supp.3d at 58. Beyond vague and conclusory statements that the documents were used to prepare and write two OIG reports, the agency never explains the role

21

the redacted information plays in OIG's continuing decisionmaking process, or the

decisionmaking authority vested in, or chain of command occupied by the survey participants.

Because the agency does not provide the necessary information to justify the claimed exemptions

and relies on the language of the exemptions as justification, *in camera* review is needed to

determine whether the agency properly withheld information from the survey responses and

follow-up communications under Exemption 5.

### 2. The Agency's Declaration Provides Insufficient Detail to Permit Meaningful Review of Exemption Claims for the Two Spreadsheets

Likewise, the VA's affidavit and *Vaughn* index justifying withholding the two

spreadsheets are conclusory and repeat the terms of FOIA, providing insufficient explanation

otherwise. The spreadsheets are withheld under Exemption 5 to "protect[s] deliberative process,

specifically the internal, pre-decisional notes, questions, and comments between OIG staff" and

because they are "pre-decisional findings and recommendations." *See* ECF No. 37-2 ¶¶ 39, 41.

The *Vaughn* index provides no other insight on why the exemptions apply. The language in the

*Vaughn* index continues to use the phrases "deliberative," "deliberations," and "predecisional" to

support its reasoning that the documents should be withheld under Exemption 5. *See* ECF No.

37-3 at 9–10. When justifying Exemption 7, the agency likewise parrots the language of the

statute to justify withholding the documents. The agency withholds the first spreadsheet under

Exemption 7 because the document "would reveal techniques and procedures for law

enforcement investigations and prosecutions or would disclose guidelines for law enforcement

investigations or prosecutions." *See* ECF No. 37-2 ¶ 39. The *Vaughn* index continues to use

generalized phrases related to law enforcement, justifying withholding under 7E because the

spreadsheet contains information about "law enforcement techniques and procedures" specific to

the handling of disruptive behavior, threatening behavior, and assaults and information relevant

to the "tracking and investigation of threatening behavior." *See* ECF No. 037-3 at 12. Incorporating the same arguments as above, because the descriptions parrot the language of the statute and are conclusory, *in camera* review is necessary to determine whether the two large spreadsheets re properly withheld under Exemption 5 or 7E.

### B.       The Number of Contested Documents Is Relatively Small

NAMVETS only asks the Court to review four documents *in camera*. *In camera* review is suitable when the documents are "few in number." *Carter*, 830 F.2d at 393 (quoting *Allen*, 636 F.2d at 1298); *Elec. Privacy Info. Ctr. v. DOJ*, 442 F.Supp.3d 37, 47 (D.D.C. 2020) ("*in camera* inspection may be particularly appropriate when then number of withheld documents is relatively small."); *Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1992) ("another crude, albeit important, factor to be considered is the number of withheld documents"). For instance, just last year this Court ordered *in camera* review for ten documents withheld under the deliberative process exemption. *Am. Immgr. Council*, 590 F.Supp.3d at 335. In doing so, this Court noted "there are a relatively small number of documents at issue" and review would lead to a "speedy resolution." *Id.*

Here, NAMVETS requests *in camera* review of four documents: the survey (OIG Bates Nos. 001–096), the follow-up communications (OIG Bates Nos. 096–107), spreadsheet one, and spreadsheet two. NAMVETS is not requesting review of all the withheld documents including the various withheld VHA and OSP documents. And NAMVETS is not requesting inspection of withholdings under any other exemptions except Exemptions 5 and 7E.

Like *American Immigration Council*, there are only a few documents being requested, and *in camera* review would lead to a speedy resolution.

### C.   Discrepancies Exist between the Agency's Affidavit and Information the Agency Publicly Disclosed

The discrepancies between the agency's declaration, the agency's prior positions in this litigation, and the productions the agency has made also support *in camera* review. While the agency first contended that it has *no* responsive records, it produced almost wholly redacted versions of the survey and responses before the parties' initial round of cross-motions for summary judgment, asserting Exemption 5 and 7E to withhold what appears to be every question and answer in the survey. ECF No. 37-9. But between the last round of summary judgment motions and this round, the agency produced a new set of the survey, this time providing many of the questions and what looks like a random selection of the answers. Strugar Decl. ¶¶ 3, 5, Exs. A, C. The agency's claim that the survey answers would reveal the agency's deliberative process or its law enforcement techniques is undermined by the discrepancy in producing *some* answers but withholding others without any apparent rhyme or reason to the withholding. That discrepancy supports *in camera* review.

### D.   The Dispute Turns on the Content of Document

This dispute is about the content of the documents, not the parties' interpretations of them. NAMVETS disputes whether the Exemptions 5 and 7E withholdings in the contested records are appropriately redacted. For those records for which NAMVETS has partial production—the survey responses and follow-up communications—NAMVETS knows the content of much of the withheld information: the responses to the survey questions.[5] *In camera*

---

[5] The survey responses also have somewhat free-floating boxes of Exemption 5 assertions in various places that do not appear from the rest of the document like they should have text. *See, e.g.*, Strugar Decl. Ex. A at 007–10, 020–24 027, 030. The documents appear to be overredacted and NAMVETS disputes that the Exemption 5 withholdings are proper based on their size and location in the document.

24

review is appropriate because the dispute turns on the contents being withheld and not the parties' interpretation of the documents.

### E.   In Camera Review Is Necessary to Determine the Segregability of Information in the Two Spreadsheets

*In camera* review is appropriate when an agency affidavit is insufficient to determine the segregability of the withheld information. FOIA requires the government to make public any non-exempt material that is "reasonably segregable" from a record that is otherwise legitimately withheld. 5 U.S.C.S. § 552(b). In deciding segregability (or any other question under FOIA), a district court may examine the contents of agency records *in camera*. 5 U.S.C. § 552(a)(4)(B); *Armstrong v. Executive Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996); *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 23 (D.C. Cir. 1984) (noting that one reason for ordering the district court to inspect documents is when "the affidavits afford[] no basis for a conclusion that all reasonably segregable nonexempt portions of the document have been released" and do not even contain an assertion to that effect.)

Here, because of insufficient descriptions of the spreadsheets and because the agency withheld them in full, NAMVETS cannot discern if any portion of the spreadsheets are subject to disclosure, and the agency *Vaughn* index and declaration are unhelpful in helping NAMVETS determine the applicability of Exemption 5 and 7E.

NAMVETS does not contest the agency's withholdings under Exemption 6 and Exemption 3. But it requests that this Court conduct an *in camera* review of the Excel spreadsheets to determine whether any reasonably segregable information must be released due to improper withholdings under Exemptions 5 and 7E.

**Conclusion**

For these reasons, this Court should once again deny the agency's motion for summary judgment and this time grant NAMVETS' motion for summary judgment. This Court should order the agency to produce (1) the OIG survey questions and responses and related follow up communications use to prepared OIG reports (OIG Bates 001-105); and (2) two "large Excel spreadsheets" with information used in preparing the same OIG reports without redactions under Exemption 5 or 7E. At the very least, the Court should review the contested records *in camera* to determine whether the agency's Exemption 5 and 7E withholdings are proper.

Date: May 5, 2023                                      Respectfully submitted,

                                                       /s/ Matthew Strugar
                                                       Matthew Strugar (D.C. Bar No. 1010198)
                                                       Law Office of Matthew Strugar
                                                       3435 Wilshire Blvd., Suite 2910
                                                       Los Angeles, CA 90010
                                                       323-696-2299
                                                       matthew@matthewstrugar.com

Date: May 5, 2023                                      By: /s/ Aisha C. Novasky
                                                       Aisha C. Novasky, CA Bar No. 328120
                                                       novasky@law.ucla.edu
                                                       Sunita Patel, DC Bar No. 1026102
                                                       patel@law.ucla.edu
                                                       Courtney Bachman, NC Bar No. 56710
                                                       bachman@law.ucla.edu
                                                       UCLA School of Law Veterans Legal
                                                       Clinic
                                                       907 Westwood Blvd., Unit 444
                                                       Los Angeles, CA 90024
                                                       Telephone: (310) 792-1498

Case No: 1:21-cv-01298-RC
MPA IN SUPPORT OF PLAINTIFF'S MSJ AND IN OPPOSITION TO DEFENDANT'S MSJ

**Certification of Service**

On May 5, 2023, I filed the above document through this Court's CM/ECF system, which sent notice to all of the counsel of record.

Dated: May 5, 2023                     /s/      Matthew Strugar
                                                    Matthew Strugar

Case No: 1:21-cv-01298-RC
MPA IN SUPPORT OF PLAINTIFF'S MSJ AND IN OPPOSITION TO DEFENDANT'S MSJ