UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF
MINORITY VETERANS,

                Plaintiff,

    v.

U.S. DEPARTMENT OF VETERANS
AFFAIRS,

                Defendant.

Civil Action No. 21-1298 (RC)

**DEFENDANT'S COMBINED [1] REPLY IN SUPPORT OF ITS RENEWED
MOTION FOR SUMMARY JUDGMENT AND [2] MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S RENEWED CROSS-MOTION
<u>FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

ARGUMENT .................................................................................................... 7

I. The Court Should Grant Summary Judgment in the Agency's Favor on the Issues Not Contested by Plaintiff. .................................................................... 7

II. The VA Inspector General Has Not Forfeited Its Right to Justify Its Withholdings. ................................................................................................ 9

III. The VA Office of Inspector General Properly Withheld Material Under FOIA Exemption 5. .............................................................................................. 13

A. Select Survey Responses and Post-Survey Follow-Up Communications Were Properly Redacted Under the Deliberative Process Privilege. ........ 13

B. Disclosure of the Redacted Survey Responses and Follow-Up Communications Would Cause Foreseeable Harm. ................................. 17

C. The Two Large Spreadsheets Were Properly Withheld Under the Deliberative Process Privilege. ............................................................... 19

D. Disclosure of the Two Large Spreadsheets Would Cause Foreseeable Harm. .................................................................................................... 23

IV. The VA Office of Inspector General Properly Withheld Material Under FOIA Exemption 7(E). ........................................................................................ 25

A. Because the Inspector General Compiled the Records for Law Enforcement Purposes, the Records Satisfy Exemption 7's Threshold Requirement. .......................................................................................... 25

B. Select Survey Responses and Follow Up Communications Were Properly Redacted Under Exemption 7(E). ........................................................... 30

C. Parts of the Large Spreadsheet No. 1 Were Also Properly Withheld Under Exemption 7(E). .................................................................................... 33

V. *In Camera* Review Is Neither Necessary Nor Appropriate. ................................. 34

CONCLUSION ................................................................................................... 37

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ancient Coin Collectors Guild v. Dep't of State*,
  641 F.3d 504 (D.C. Cir. 2011) ........................................................................ 22, 23

*August v. FBI*,
  328 F.3d 697 (D.C. Cir. 2003) ........................................................................ 14, 12

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) ........................................................................... 34, 36

*Cole v. Olthoff*,
  Civ. A. No. 19-1070 (DLF), 2021 WL 2555505 (D.D.C. June 22, 2021) ..... 13, 14-15, 16, 12

*Dugan v. Dep't of Just.*,
  82 F. Supp. 3d 485 (D.D.C. 2015) ....................................................................... 14

*Elec. Frontier Found. v. Dep't of Just.*,
  739 F.3d 1 (D.C. Cir. 2014) ................................................................................. 39

*Elkins v. FAA*,
  99 F. Supp. 3d 90 (D.D.C. 2015) ......................................................................... 27

*FBI v. Abramson*,
  456 U.S. 615 (1982) ....................................................................................... 31-32

*Hansten v. DEA,*
  Civ. A. No. 21-2043, 2022 WL 2904151 (D.D.C. July 22, 2022) ........................ 33

*Jefferson v. Dep't of Just.*,
  284 F.3d 172 (D.C. Cir. 2002) .............................................................................. 28

*Joumaa v. Mnuchin*,
  No. 17-2780 (TJK), 2019 WL 1559453 (D.D.C. Apr. 10, 2019) .......................... 27

*Judicial Watch, Inc. v. U.S. DOE*,
  319 F. Supp. 2d 32 (D.D.C. 2004) .................................................................. 13, 12

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ......................................................................... 37, 39

*Lazaridis v. Dep't of Just.*,
  713 F. Supp. 2d 64 (D.D.C. 2010) ....................................................................... 12

*Mapother v. Dep't of Just.*,
  3 F.3d 1533 (D.C. Cir. 1993) ............................................................................... 23

*Maydak v. Dep't of Just.*,
  218 F.3d 760 (D.C. Cir. 2000) ............................................................................. 11

*Mayer Brown L.L.P. v. IRS*,
562 F.3d 1190 (D.C. Cir. 2009) ................................................................ 34

*Montrose Chem. Corp. v. Train*,
491 F.2d 63 (D.C. Cir. 1974) ........................................................... 25, 26

*People for the Am. Way Found. v. Nat'l Park Serv.*,
503 F. Supp. 2d 284 (D.D.C. 2007) ............................................................ 37

*Petrol. Info. Corp. v. Dep't of Interior*,
976 F.2d 1429 (D.C. Cir. 1992) ................................................................ 18

*Pinson v. Dep't of Just.*,
313 F. Supp. 3d 88 (D.D.C. 2018) ............................................ 28, 30-32

*Pub. Emps. for Env't Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*,
740 F.3d 195 (D.C. Cir. 2014) ........................................................... 27, 32

*Rafferty v. NYNEX Corp.*,
744 F. Supp. 324 (D.D.C. 1990) ........................................................ 25, 35

*Reporters Comm. for Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) ............................................. 19, 20, 21, 22

*Reps. Comm. for Freedom of the Press v. FBI*,
548 F. Supp. 3d 185 (D.D.C. 2021) ............................................................ 34

*Ryan v. Dep't of Just.*,
617 F.2d 781 (D.C. Cir. 1980) ........................................................ 19, 21, 12

*Shapiro v. Dep't of Just.*,
Civ. A. No. 13-555, 2016 WL 3023980 (D.D.C. May 25, 2016) ..................... 12

*Shapiro v. Dep't of Just.*,
Civ. A. No. 13-555, 2020 WL 7318014 (D.D.C. Dec. 11, 2020) ..................... 12

*Stonehill v. IRS*,
558 F.3d 534 (D.C. Cir. 2009) ................................................................ 14

*Tax Analysts v. IRS*,
294 F.3d 71 (D.C. Cir. 2002) ................................................................ 28

*Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*,
486 F. Supp. 3d 141 (D.D.C. 2020) ............................................................ 18

*Waterman v. IRS*,
61 F.4th 152 (D.C. Cir. 2023) ................................................................ 24

**Statutes**

5 U.S.C. § 402 ................................................................................... 29, 30

38 U.S.C. § 312 ................................................................................... 27

Defendant U.S. Department of Veterans Affairs ("Defendant," the "VA," or the "Agency") submits this combined reply in further support of Defendant's renewed motion for summary judgment and memorandum in opposition to Plaintiff National Association of Minority Veterans' renewed cross-motion for summary judgment.

The parties' dispositive motions in this Freedom of Information Act ("FOIA") litigation concern Plaintiff's FOIA request to the VA's Office of Inspector General (the "Inspector General," or the "OIG"), as modified during this litigation (hereafter, "Modified FOIA Request"). *See* Mem. Op. (ECF No. 30). Plaintiff's Modified FOIA Request—which is reflected in an August 23, 2021 email from Plaintiff's counsel to Defendant's counsel—sought records concerning three publicly available Inspector General reports on law enforcement and security at the VA.

In response to the request, the VA's Inspector General conducted a search and identified responsive records, most of which originated from or belonged to two other VA components: the Veterans Health Administration and the Office of Operations, Security, and Preparedness (which encompasses agency subunit Office of Law Enforcement and Security). The Inspector General processed and released its responsive records, making withholdings under FOIA Exemptions 3, 5, 6, and 7(E). The VA Inspector General also referred the other records to the two other VA components for processing and direct response to Plaintiff, and both components in turn processed and released the referred records to Plaintiff. The Veterans Health Administration made withholdings under Exemption 5 and 6, and the Office of Operations, Security, and Preparedness made withholdings under Exemption 5, 6, and 7(E).

In Defendant's renewed motion for summary judgment, ECF No. 37-1 (hereafter, "Defendant's Motion"), the VA moved for summary judgment on the ground that the VA Inspector General conducted an adequate search; that the material was properly withheld under FOIA

Exemptions 3, 5, 6, and 7(E) by the three agency components; and that the three agency components properly released all reasonably segregable material. Each VA components provided a supporting declaration and *Vaughn* Index that demonstrated that it had met its obligation under the FOIA.

In Plaintiff's combined opposition to Defendant's renewed motion for summary judgment and renewed cross-motion for summary judgment ("Plaintiff's Combined Filing"), Plaintiff appears to only contest the VA Inspector General's withholdings under Exemptions 5 and 7(E), as well as the segregability of Large Spreadsheets Nos. 1 and 2. Plaintiff's arguments are overwhelmingly based on conclusory assertions, which do not suffice to create a disputed factual issue at the summary judgment stage. Plaintiff also offers little to no relevant case law on which to base its claim that Defendant has not met its burden of justifying the Exemptions and demonstrating that it has released all reasonable segregable material.

Attempting to prevail on summary judgment, Plaintiff instead focuses primarily on a forfeiture argument, contending that the VA Inspector General forever lost the chance to withhold information from the records under Exemptions 5 and 7(E) because the VA Inspector General did not raise and argue them in the VA's first motion for summary judgment. Plaintiff also asks the Court to inspect the Inspector General's records *in camera* to determine whether the withholdings are proper and whether Large Spreadsheets Nos. 1 and 2 contain any reasonably segregable information may be disclosed.

The Inspector General did not forfeit the right to make withholdings under the exemptions. The Inspector General's first motion for summary judgment proceeded on the understanding that the original FOIA request controlled, and when the Court found otherwise in its November 18, 2022 Memorandum Opinion, the Court was well within its discretion to allow the VA to file a

renewed motion for summary judgment to justify withholdings to records responsive to the Modified FOIA Request. Moreover, *in camera* review of the select Inspector General records is neither necessary nor appropriate here because Defendant has satisfied its burden of demonstrating that its withholdings are proper and that all reasonably segregable material has been released with its declaration and *Vaughn* Index.

Because Plaintiff fails to raise a genuine issue of material fact as to any of these issues, summary judgment for the VA is appropriate.

## ARGUMENT

**I.    The Court Should Grant Summary Judgment in the Agency's Favor on the Issues Not Contested by Plaintiff.**

In Plaintiff's Combined Filing, Plaintiff does not contest a number of issues on which Defendant moves for summary judgment. Plaintiff does not challenge the Veterans Health Administration and Office of Operations, Security, and Preparedness's compliance with FOIA in responding to the Modified FOIA Request,[1] thereby limiting the dispute to the VA Inspector General. *See* Pl.'s Combined Filing at 8–10. Regarding the VA Inspector General's compliance with FOIA in responding to the Modified FOIA Request, Plaintiff does not contest the adequacy of the Inspector General's search (*see generally id.*) or its compliance with segregability obligations regarding the survey responses and post-survey follow up communications (*see*

---

[1]    In Plaintiff's Combined Filing, Plaintiff confusingly claims that the Office of Operations, Security, and Preparedness has yet to finish producing records and cites to certain portions of its *Vaughn* Index that relates to a nineteen-page production. *See* ECF No. 39 at 9. But these nineteen pages were re-processed and released to Plaintiff on March 23, 2023. Accordingly, it appears that Plaintiff either failed to actually review the records that the VA produced, or misapprehended the statements in the Office of Operations, Security, and Preparedness's *Vaughn* Index. Considering that Plaintiff decided not to challenge any part of the Veterans Health Administration or Office of Operations, Security, and Preparedness's productions, Plaintiff's confusion ultimately has no relevance to the issues remaining before the Court.

*generally id.* at 16–21, 32).   Moreover, Plaintiff only challenges the Inspector General's withholdings under Exemptions 5 and 7(E), not the withholdings under Exemptions 3 and 6, and the segregability of the two large excel spreadsheets. *See id.* at 8–10, 22, 32.

The VA Inspector General processed 105 pages of documents and four excel spreadsheets responsive to the Modified FOIA Request. 3d Gowins-Bellamy Decl. ¶ 25. These documents comprise four basic categories, and the below list identifies which exemptions Plaintiff contests for the three categories of records for which the Inspector General made withholdings:

a) Confidential Office of Inspector General survey questions and responses and related follow up communications, undertaken in the preparation of published Office of Inspector General reports (OIG Bates 1-105), withheld in part under Exemptions 5, 6, and 7(E).

  ➢ Plaintiff challenges withholdings under Exemptions 5 and 7(E).

  ➢ Plaintiff does not challenge withholdings under Exemption 6.

b) Large excel spreadsheet containing information selected from broader review of VA police records for discussion and review in preparing Office of Inspector General report on VA law enforcement and security (Large Spreadsheet No. 1), withheld in full under Exemptions 5, 6, and 7(E).

  ➢ Plaintiff challenges withholdings under Exemptions 5 and 7(E).

  ➢ Plaintiff does not challenge withholdings under Exemption 6.

c) Large excel spreadsheet containing relevant information selected from broader review of patient health records for discussion and review in preparing an Office of Inspector General report on VA law enforcement and security (Large Spreadsheet No. 2), withheld in full under Exemptions 3, 5, and 6.

  ➢ Plaintiff challenges withholdings under Exemption 5.

  ➢ Plaintiff does not challenge withholdings under Exemptions 3 and 6.

d) Two excel spreadsheets with summary roll-up information from Large Spreadsheets #1 and #2 (OIG Bates 106–107, 108–109), which were released in full.

*See generally* OIG *Vaughn* Index; Pl.'s Combined Filing. For the reasons set forth in Defendant's Motion, Defendant has demonstrated that it is entitled to judgment as a matter of law on these

issues that Plaintiff does not contest. Thus, the Court should grant summary judgment in Defendant's favor on the uncontested issues:

- Any aspect of the responses by the Veterans Health Administration and Office of Operations, Security, and Preparedness (including the exemptions and segregability) to the VA Office of Inspector General's referral for the Modified FOIA Request.

- The adequacy of the Office of the Inspector General's search conducted in response to the Modified FOIA Request.

- The Office of the Inspector General's withholdings under FOIA Exemption 6 as to (a) the confidential survey and related follow up communications; (b) Large Spreadsheet #1; and (c) Large Spreadsheet #2.

- The Office of the Inspector General's withholdings under FOIA Exemption 3 as to Large Spreadsheet No. 2.

- The Office of the Inspector General's release of all reasonably segregable material from the survey responses and post-survey follow up communications (OIG Bates 1–105).

## II.     The VA Inspector General Has Not Forfeited Its Right to Justify Its Withholdings.

Directly challenging the Court's ruling in the November 18, 2022 Memorandum Opinion, Plaintiff argues that the Court should not have permitted the VA to justify exemptions in a renewed motion for summary judgment and that the Court should simply deny the VA Inspector General's withholdings under FOIA Exemptions 5 and 7(E) on the basis that the office has forever lost the chance to do so when it unsuccessfully moved for summary judgment on a threshold issue. *See* Pl.'s Combined Filing at 12–15.

In *Maydak v. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000), the D.C. Circuit noted the general rule that the government "must assert all [FOIA] exemptions at the same time, in the original district court proceedings."  *Id.* at 764. The general rule established applies to situations where an agency raises an exemption for the first time on appeal or for the first time on remand following an appeal. *Id.* at 761 (seeking to defend applicability of other exemptions for the first

time on remand, even though it was not raised in the original proceedings for the district court); *Ryan v. Dep't of Just.*, 617 F.2d 781, 792 (D.C. Cir. 1980) (seeking to raise FOIA Exemption 6 on remand, even though it was not raised in the original proceedings for the district court); *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (seeking to raise exemptions on remand).

"[N]either *Maydak* nor any other D.C. Circuit precedent directly govern[s] the late assertion of FOIA exemptions during the pendency of district court proceedings." *Shapiro v. Dep't of Just.*, Civ. A. No. 13-555, 2020 WL 7318014, at *5 (D.D.C. Dec. 11, 2020); *Shapiro v. Dep't of Just.*, Civ. A. No. 13-555 (RDM), 2016 WL 3023980, at *3 (D.D.C. May 25, 2016) ("*Maydak* and *August* . . . primarily concerned exemptions asserted belatedly at the Court of Appeals level, not before the district court, and so do not directly control the present case."); *Cole v. Olthoff*, Civ. A. No. 19-1070, 2021 WL 2555505, at *3 (D.D.C. June 22, 2021); *see also Lazaridis v. Dep't of Just.*, 713 F. Supp. 2d 64, 70 n.7 (D.D.C. 2010). Instead, the "district court retains the discretion to find that such an untimely assertion has been forfeited." *Shapiro*, 2016 WL 3023980, at *4; *Cole*, 2021 WL 2555505, at *3. Courts typically find the government has forfeited the right to claim an exemption when an agency asserts the exemption for the first time only *after* the district court has already ruled in the other party's favor on an issue. *Cole*, 2021 WL 2555505, at *3; *Jud. Watch, Inc. v. Dep't of Energy*, 319 F. Supp. 2d 32, 34–35 (D.D.C. 2004).

The Court acted well within its discretion in finding that the VA had not forfeited the exemptions and in permitting the VA to file a renewed motion for summary judgment to justify the withholdings. Nov. 18, 2022 Mem. Op. at 18–20. In the first motion for summary judgment, the VA moved for summary judgment on a threshold issue—that before the lawsuit was filed, it had fulfilled its obligations with respect to the original FOIA request, under which no records were produced. *See generally* Def.'s Mot. for Summ. J. (ECF No. 18). As no records were located in

response to the original FOIA request, there were no withholdings to be justified, and the VA Inspector General did not brief the issue of exemptions. *See id.*

In the opinion, the Court disagreed with the VA's threshold argument and instead concluded that the original FOIA request was modified by a post-litigation email from Plaintiff's counsel to Defendant, dated August 23, 2021. *See* Mem. Op. at 13–15. Under Plaintiff theory of case, unlike the theory on which it moved for summary judgment, the VA had produced documents in response to what was viewed as a Modified FOIA Request, and the VA Inspector General would need to justify the exemptions applied to those documents.

This renewed motion for summary judgment is therefore the first time that the VA is moving for summary judgment on the exemptions applied to these documents, and the VA's assertions of the exemptions are timely. This is not a situation where the agency has asserted exemptions for the first time only after the district court has already ruled in the other party's favor on the assertion of other exemptions concerning the same documents, for examples. *Cole*, 2021 WL 2555505, at *3; *Jud. Watch*, 319 F. Supp. 2d at 34–35.

Nor has the VA Inspector General "forfeited" the exemptions, as Plaintiff claims. In the November 18, 2022 Memorandum Opinion, the Court ruled that Defendant was permitted to justify the exemptions for the Modified FOIA Request in a renewed motion for summary judgment, and in so doing correctly recognized that the VA had not forfeited the exemptions. Mem. Op. at 18–21. After all, the VA Inspector General's production letter to Plaintiff made clear that the Agency was withholding material based on the exact same exemptions at issue in Defendant's renewed summary judgment briefing, ECF No. 37-9 at 1–5, and these exemptions were also clearly identified in the redactions in the produced documents, each of which identified the bases for the withholdings, ECF No. 39-3, 39-4, 39-5. Because the Inspector General raised the Exemptions

asserted in this renewed summary judgment motion at the earliest time possible in this litigation (in its production cover letter and on the face of the redacted documents) and has not changed its position since, the VA Inspector General clearly did not forfeit its right to justify these withholdings. The Court properly acted within its discretion in permitting the VA to file a renewed motion for summary judgment, in which it could justify its withholdings for the documents produced in response to the Modified FOIA Request.

The VA Inspector General's assertion of the exemptions was timely, but in any event, the D.C. Circuit has declined to adopt the rigid interpretation of the *Maydak* waiver rule that Plaintiff has advanced in the opposition. *See August*, 328 F.3d at 697; *Stonehill v. IRS*, 558 F.3d 534, 541–42 (D.C. Cir. 2009) ("the waiver rule is not rigidly applied"). In *August*, the D.C. Circuit avoided adopting a "press it at the threshold, or lose it for all times" approach, and instead it has endorsed a "flexible approach" to enforcing the rule in recognition of the reality that FOIA exemptions protect "'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August*, 328 F.3d at 697. Even if such rule were applied, leniency was the proper approach in this case. The government asserted the threshold argument in good faith, rather than ill motive, and the Court's ruling on the cross-motions for summary judgment changed the legal backdrop of the case. Since as a result of the ruling, the VA has promptly justified the exemptions asserted in the documents. Courts in this District routinely exercise discretion to accept belated invocations of FOIA exemptions during the pendency of district court proceedings. *See, e.g., Dugan v. Dep't of Just.*, 82 F. Supp. 3d 485, 501 n.7 (D.D.C. 2015) (denying ATF's invocation of Exemption 7A on summary judgment, but allowing the government to demonstrate the applicability of other FOIA exemptions before entering final judgment, even though defendants did not formally invoke them on summary judgment); *Cole*,

2021 WL 2555505, at *2 (raising additional exemption after first round of motions for summary judgment and before renewed motions for summary judgment was permissible); *Woodward v. U.S. Marshals Serv.*, Civ. A. No. 18-1249, 2022 WL 17961289, at *8 (D.D.C. Dec. 27, 2022) ("many cases involving belated assertions of exemption call for leniency"). Accepting the exemptions is all the more important here due to the harm that would flow from the release of the information the VA Office of Inspector General has withheld under Exemptions 5 and 7A to law enforcement at VA facilities and the Office of Inspector General's oversight efforts.

The Court acted well within its discretion in allowing the filing of a renewed motion for summary judgment to allow the VA Office of Inspector General to justify the withholdings asserted in the documents responsive to the Modified FOIA Request.

### III. The VA Office of Inspector General Properly Withheld Material Under FOIA Exemption 5.

#### A. Select Survey Responses and Post-Survey Follow-Up Communications Were Properly Redacted Under the Deliberative Process Privilege.

The VA Inspector General staff created and administered surveys, and engaged in some post-survey follow up communications, with select groups of individuals in preparing two of the three Inspector General reports. 3d Gowins-Bellamy Decl. ¶¶ 42–44, 46; OIG *Vaughn* Index at 1–8. The VA Inspector General has disclosed to Plaintiff all of the survey questions, as well as many of the survey responses, including all responses comprised of statistical data and survey responses not in narrative form, so long as it could not identify survey takers or disclose law enforcement techniques protected under Exemption 7(E). *See* 4th Gowins-Bellamy Decl. ¶ 10; Def.'s Mot. at 16; ECF Nos. 39-3, 39-4, 39-5. But the VA Office of Inspector General has properly withheld other freeform narrative survey responses, certain post-survey follow-up communications, and internal notes made by Inspector General staff on the survey-related

materials under Exemption 5's deliberative process privilege. 3d Gowins-Bellamy Decl. ¶¶ 42-44, 46; OIG *Vaughn* Index at 1–9.

In Plaintiff's opposition, Plaintiff claims that the VA Office of Inspector General does not show that the communications were pre-decisional because "the agency fails to link the withheld information and the agency's decisionmaking process." Pl.'s Combined Filing at 16–18. Plaintiff also claims that "the agency fails to show the deliberative process involved and the role played by the redacted information during that process." *Id.* at 18–19. Plaintiff further inaccurately describes a D.C. Circuit ruling when claiming that "[t]he agency must also show the decisionmaking authority vested in the person issuing the disputed documents and the positions in the agency's chain of command occupied by the document's author and recipient." *Id.* (citing *Senate of the Com. of P.R. ex rel. Judiciary Comm. ("Puerto Rico") v. Dep't of Just.*, 823 F.2d 574, 585–86 (D.C. Cir. 1987)). Rather, in that decision, the court noted that case law "identifies two factors that can assist the court in determining whether this privilege is available: the 'nature of the decisionmaking authority vested in the officer or person issuing the disputed document,' and the relative positions in the agency's 'chain of command' occupied by the document's author and recipient." *Puerto Rico*, 823 F.2d at 586 (citations omitted). Plaintiff's arguments lack merit for several reasons.

*First*, any challenge by Plaintiff to the pre-decisional nature of the withheld material is belied by the materials Defendant provided in support of its renewed motion. These explain how the surveys were used in the formulation and preparation of two Inspector General reports, which are publicly available. *See* 3d Gowins-Bellamy Decl. ¶¶ 42-44, 46; OIG *Vaughn* Index at 1–9.

The Inspector General staff prepared and provided three confidential surveys to the VA Chiefs of Police and Veterans Health Administration medical directors, who completed the

surveys. 3d Gowins-Bellamy Decl. ¶¶ 42, 46; OIG *Vaughn* Index at 1–9. Post-survey follow-up questions and responses were communicated between Inspector General staff and the survey respondents in March and April 2019 (OIG Bates 34–47), and between Inspector General staff and the Deputy Undersecretary for Health and her staff in December 2018, January 2019, and July 2019 (OIG Bates 34-47). 3d Gowins-Bellamy Decl. ¶¶ 43–44, 46; OIG *Vaughn* Index at 1–9.

The Office of Inspector General provided the surveys concerning VA law enforcement practices and security during audits it conducted as part of its obligations under the Inspector General Act. *See* 3d Gowins-Bellamy Decl. ¶ 46; 3d Gowins-Bellamy Decl. ¶¶ 4–8; OIG *Vaughn* Index at 1–9. They were provided in order to prepare and write two Inspector General reports, which are publicly available: Inadequate Governance of the VA Police Program at Medical Facilities, December 13, 2018 (OIG Report #17-01007-01), and the VA Police Management System Needs Improvement, June 17, 2020 (OIG Report #19-05798-107). 4th Gowins-Bellamy Decl. ¶¶ 7–8; OIG *Vaughn* Index at 1–9.

Together, the survey and the follow up communications reflect internal agency deliberations in the formulation and preparation of Inspector General reports. As explained in further detail in the Third Gowins-Bellamy Declaration and OIG *Vaughn* Index, they are the internal communications between VA Chiefs of Police, Veterans Health Administration medical directors, and the Deputy Undersecretary for Health and her staff and Office of Inspector General inspectors and they reflect deliberations comprising part of a process by which Office of Inspector General makes its findings and recommendations. *See* 3d Gowins-Bellamy Decl. ¶¶ 42–44, 46; OIG *Vaughn* Index at 1–9. None of these intra-agency communications reflect a final agency decision from the Inspector General report. 3d Gowins-Bellamy Decl. ¶ 46; OIG *Vaughn* Index at 1–9. The formal nature of the surveys and the fact that they were, and have remained, confidential

only provide further evidence that "bear on the formulation or exercise of agency policy-oriented judgment" in the preparation of the Inspector General reports. *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1437 (D.C. Cir. 1992) ("prior public availability of information surely does not strengthen an agency's claim to the deliberative process privilege"); OIG *Vaughn* Index at 1–9 (confidential nature of surveys); 3d Gowins-Bellamy Decl. ¶¶ 46–47 (same).

Unlike the agency interviews that were conducted in the case cited by Plaintiff, *Wash. Post Co. v. Special Inspector Gen. for Afghanistan Reconstruction*, 486 F. Supp. 3d 141, 148 (D.D.C. 2020), the VA Office of Inspector General has identified the final policymaking decision that these deliberations predated: the two Inspector General reports. That the preparation of the Inspector General reports was the deliberative process should come as no surprise to Plaintiff—its Modified FOIA Request explicitly requested the materials resulting in the three publicly available reports. *See* Modified FOIA Request, ECF No. 37-8. What is more, unlike the open-ended interviews, the VA Inspector General staff prepared the survey questions specifically elicit responses based on topics and issues they thought important to explore during the audit and ultimately the Inspector General report. *See* 3d Gowins-Bellamy Decl. ¶¶ 42–44, 46; OIG *Vaughn* Index at 1–9.

*Second*, Defendant has shown that the communications were deliberative. Defendant has provided substantial information showing that Inspector General staff prepared the survey questions and follow-up questions based on topics and issues they thought important to explore, and the survey takers who provided responses were the VA Chiefs of Police and Veterans Health Administration medical directors, as well as Deputy Undersecretary for Health and VA employees from that office. 3d Gowins-Bellamy Decl. ¶¶ 42–44; OIG *Vaughn* Index at 1–9. They were providing information to the Inspector General staff, and the VA Inspector General ultimately prepared the reports and made the policy recommendations therein. *Id*.

The D.C. Circuit has found that questionnaires are like this are deliberative and thus properly protected under the deliberative process privilege. *See Ryan v. Dep't of Just.*, 617 F.2d 781, 790-91 (D.C. Cir. 1980). In *Ryan*, the D.C. Circuit considered whether Senators' responses to questionnaires sent by the Attorney General about their procedures for selecting and recommending judicial nominees constituted were protected by the deliberative process privilege. *See id.* at 784-85. The questionnaire and responses were protected by the deliberative process privilege under Exemption 5 so long as responses were not factual and would "reveal aspects of the deliberative process." *Id.* at 784. Consistent with *Ryan*, the VA has disclosed responses or portions of responses that are "statistical data" or "not in narrative form," Def.'s Mot. at 16, that may be closer to factual in nature, rather than deliberative, *e.g.*, OIG Bates 3–8 (ECF No. 39-3 at 3–8) (disclosing survey answers that provide statistical information or closed-ended answers about how long the police chiefs had served in that role at their facility, what official provides their performance rating, and which officials approve the police service budget at their facility). The VA has carried its burden of showing that the redactions applied under the deliberative process privilege were predecisional and deliberative.

### B.    Disclosure of the Redacted Survey Responses and Follow-Up Communications Would Cause Foreseeable Harm.

The VA has also demonstrated that disclosing the redacted information would result in foreseeable harm. *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021). First, the VA explained that release of the redacted information is likely to confuse the public because it concerns contain topics and concerns that were not published in the final report— which contains a summary of the policy judgments and recommendations by the Office of Inspector General based on its investigation. 3d Gowins-Bellamy Decl. ¶ 46; OIG *Vaughn* Index at 1–9. Second, redacted communications reference issues that may be addressed in future Office

of Inspector General reports and therefore release of these raw communications would undermine those ongoing audits and investigations by the Office of Inspector General. *Id.* Third, the redactions are confidential communications from VA employees to Inspector General staff and release would violate assurances of confidentiality and could identify the participating employees. *Id.* Release of these communications would harm the trust the Office of Inspector General has established with employees' and harm future cooperation because if they were released now, in the future agency employees may not feel free to openly communicate with Inspector General staff, instead they would have to limit and edit their communication because it might be released publicly. *Id.* This is especially harmful to Office of Inspector General work because the Inspector General staff would likely lose the trust and cooperation of agency employees and it is essential that agency employees feel free to communicate openly with Inspector General employees so that the Office of Inspector General can collect the information it needs from the agency to ensure that audits and investigations are factual, accurate, and contain helpful and appropriate recommendations. *Id.* The very small number of agency employees who responded to further questions via email could lead to the identification of individuals who provided information to the Office of Inspector General, again harming the trust and cooperation needed to gain employee cooperation in Inspector General investigations. *Id.*

In sum, the release of information under the forgoing circumstances would harm the Office of Inspector General's ability to conduct effective oversight and interferes with the requirements for unhindered and confidential communication envisioned by the Inspector General Act. *Id.*

In the opposition, Plaintiff claims that the VA identifies "generalized assertions that release of the survey and follow-up communication will inhibit open communications between agency employees and [Inspector General] staff" as the only foreseeable harm from disclosure. Pl.'s

Combined Filing at 20 (citing to the VA's motion for summary judgment, Third Gowins-Bellamy Declaration, and OIG *Vaughn* Index). But that assertion is entirely at odds with the VA Inspector General's supporting materials, which describe in great detail the many harms that would be caused by disclosure—as has been already been demonstrated above. *See* 3d Gowins-Bellamy Decl. ¶ 46; OIG *Vaughn* Index at 1–9.

Plaintiff also makes the somewhat confusing argument that "[b]etween the last round of summary judgment motions and this one, the agency produced a variety of survey responses while redacting others" that "[t]here is no discernable explanation why releasing *some* responses but not others would change how candid agency employees would be with the Inspector General in the future (or, for that matter, why *some* responses are predecisional and deliberative while others are not)." Pl.'s Combined Filing at 21.

If anything, the fact that the VA Office of Inspector General has only selectively made withholdings—withholding only certain freeform narrative survey responses and email communications under this exemption, while disclosing all of the questions and many of the responses—supports the conclusion that the VA Office of Inspector General has properly withheld only the communications that would both (a) "reveal aspects of the deliberative process," rather than factual responses, *Ryan*, 617 F.2d at 784; and (b) result in foreseeable harm, *Reps. Comm.*, 3 F.4th at 369.  As the VA Office of Inspector General has explained, it has conducted a line-by-line segregability analysis for the survey responses and follow-up communications, 3d Gowins-Bellamy Decl. ¶ 66, and Plaintiff does not challenge this.

### C.    The Two Large Spreadsheets Were Properly Withheld Under the Deliberative Process Privilege.

The VA Office of Inspector General also withhold in full two large excel spreadsheets under the deliberative process privilege. 3d Gowins-Bellamy Decl. ¶¶ 39, 41, 50, 52, 57, 59; OIG

*Vaughn* Index at 9–13. The spreadsheets are withheld in full due to the discretion and judgment the Inspector General staff exercised in compiling the data based on their broader review of records—one spreadsheet based on a review of thousands of police records, and the other based on a review of thousands of health records. *Id*. In addition, both spreadsheets contain notes, questions, and comments between VA Inspector General staff. 3d Gowins-Bellamy Decl. ¶¶ 39, 41; OIG *Vaughn* Index at 9–13.

While "[p]urely factual material usually cannot be withheld under Exemption 5," this is not so when the agency shows "it reflects an 'exercise of discretion and judgment calls.'" *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (quoting *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1539 (D.C. Cir. 1993)). "[T]he legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain." *Ancient Coin Collectors Guild*, 641 F.3d at 504. The key is "whether the selection or organization of facts is part of an agency's deliberative process." *Id*.

The VA Office of Inspector General's compilation of the spreadsheets fit squarely within this line of cases. To compile Large Spreadsheet No. 1 (72 rows, 29 columns), the Inspector General staff "reviewed thousands of pages of police records" and "each column and each entry in the spreadsheet is a decision to include or exclude factual information and is a determination about whether factual information exists to move forward with a particular finding or recommendation for the [VA]." 3d Gowins-Bellamy Decl. ¶ 52; OIG *Vaughn* Index at 9–11. Likewise, to compile Large Spreadsheet No. 2 (1230 rows, 44 columns), the Inspector General staff "reviewed thousands of pages of veteran patient health records and each column and each entry in the spreadsheet is a decision to include or exclude certain factual information and is a determination about whether factual information exists to move forward with a particular finding

or recommendation for the [VA]." 3d Gowins-Bellamy Decl. ¶ 59; OIG *Vaughn* Index at 11–13. Both spreadsheets and notes therein "were collected to prepare and write the January 2018 [Inspector General] report (#17-04460-84)." OIG *Vaughn* Index at 9–13; 3d Gowins-Bellamy Decl. ¶¶ 50, 57.

The preparation of the spreadsheets reflects discretion and judgment that warrants protection under the deliberative process privilege. In *Ancient Coin Collectors Guild*, the D.C. Circuit upheld the withholding of "factual summaries contained in . . . reports [that] 'were culled by the Committee from the much larger universe of facts presented to it' and reflect[ed] an 'exercise of judgment as to what issues are most relevant to the pre-decisional findings and recommendations.'" 641 F.3d 504, 513 (D.C. Cir. 2011). Likewise, the Inspector General staff has culled through thousands of police and health records and exercised judgment in determining what was relevant to the audit and the preparation of the Inspector General report. 3d Gowins-Bellamy Decl. ¶¶ 50, 52, 57, 59; OIG *Vaughn* Index at 9–13.

The spreadsheets compiled by the Inspector General staff is also analogous to the report compiled by staff in *Mapother v. Dep't of Just.*, 3 F.3d 1533 (D.C. Cir. 1993), which staff had followed a process "cull the relevant documents, extract pertinent facts, organize them to suit a specific purpose, and to identify the significant issues they encountered along the way." *Id.* at 1537–40. The Court upheld the withholding of the compiled report under Exemption 5 as the factual material had been assembled "through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." *Id.* at 1539. The spreadsheets at issue do not involve any type of narrative chronology, which was the limited portion from the report that was deemed not to be protected because it did not involve the same exercise of judgment. *Id.* at 1537–40.

Plaintiff's opposition argues only that, "[b]ecause the agency is withholding them in full, NAMVETS is unable to unequivocally discern if any portion of the spreadsheets are properly withheld under Exemption 5." Pl.'s Combined Filing at 21–22.

To the contrary, the VA Inspector General has provided much information about the two large excel spreadsheets and the basis for invoking Exemptions 5's deliberative process privilege. *See* 3d Gowins-Bellamy Decl. ¶¶ 39, 50, 52 (Large Spreadsheet No. 1); OIG *Vaughn* Index at 9–11 (Large Spreadsheet No. 1); 3d Gowins-Bellamy Decl. ¶¶ 41, 57–59 (Large Spreadsheet No. 2); OIG *Vaughn* Index at 11–13 (Large Spreadsheet No. 2). A review the Inspector General declaration and *Vaughn* Index entries for the spreadsheets altogether—including the information withheld under other exemptions—provides even more information about information from spreadsheets. Moreover, the VA Inspector General has released in full two excel spreadsheets that contain the summary "roll-up" of the information from Large Spreadsheets Nos. 1 and 2, which are OIG Bates 106–107 and 108–109. *See* 3d Gowins-Bellamy Decl. ¶¶ 40, 56; OIG *Vaughn* Index at 11, 13. Plaintiff's failure to provide any case law or any other argument to support its position simply shows that there is no reasonable basis to challenge the withholding and that the VA is entitled to judgment as a matter of law.

Indeed, the only case citation Plaintiff makes is to a part of a recent D.C. Circuit decision that is factually dissimilar from the present one because it consider a portion of a memorandum presenting "a chronological collection of statements." Pl.'s Combined Filing at 21 (citing *Waterman v. IRS*, 61 F.4th 152, 150 (D.C. Cir. 2023)). That is not the type of factual matter at issue here, and this sole citation in itself shows that there is no legal basis to challenge the withholdings of Large Spreadsheet Nos. 1 and 2 under the deliberative process privilege. The VA

Office of Inspector General has demonstrated that withholding the two spreadsheets in full is justified under Exemption 5.

### D.      Disclosure of the Two Large Spreadsheets Would Cause Foreseeable Harm.

In claiming that Defendant has not shown that disclosure of the spreadsheets would cause foreseeable harm, Plaintiff again makes only a conclusory assertion, without any legal support or factual support. The following reflects Plaintiff's entire position on this point:

> Even if this Court finds that the spreadsheets are predecisional and deliberative, they still must meet the foreseeable harm threshold detailed above. As with the survey, the agency fails to particularize the harms that will occur from release of the documents. *See* ECF No. 37-2 ¶¶ 52–54. Thus, the agency fails its burden of withholding the spreadsheets under Exemption 5. *Reporters Committee*, 3 F.4th at 372.

Pl.'s Combined Filing at 22. These types of "conclusory statements are insufficient to withstand a motion for summary judgment." *Rafferty v. NYNEX Corp.*, 744 F. Supp. 324, 327 n.9 (D.D.C. 1990) (citing Fed. R. Civ. P. 56(e)), *aff'd*, 60 F.3d 844 (D.C. Cir. 1995). Defendant stands on the showing of foreseeable harm it has made previously. *See* Def's Mot. at 20; 3d Gowins-Bellamy Decl. ¶¶ 52; OIG *Vaughn* Index at 9–11. There is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law.

As the VA Office of Inspector General's supporting materials have demonstrated, the disclosure of the spreadsheets would cause foreseeable harm, and it is harm specifically contemplated by the deliberative process privilege. *See Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 68–71 (D.C. Cir. 1974) (upholding the withholding under the deliberative process privilege of a compilation of more than 10,000 pages of facts derived from the evidence on record compiled to assist an agency official's decision-making, and emphasizing that "the purpose of exemption 5 is not simply to encourage frank intra-agency discussion of policy, but also to ensure that the mental processes of decision-makers are not subject to public scrutiny").

Release of the Inspector General staff's early-stage compilation of police and health records, as well as the internal notes and communications contained within the spreadsheet, would hamper ongoing and future Inspector General audits and investigations. 3d Gowins-Bellamy Decl. ¶ 52 (Large Spreadsheet No. 1); *id.* ¶ 59 (Large Spreadsheet No. 2). Release of the spreadsheets would subject the mental processes of the Inspector General staff to unwarranted public scrutiny, especially as the spreadsheets contain topics, discussions, and concerns that were not published in the final Inspector General report and that may be addressed in future Inspector General reports, and this could cause public confusion or even harm the Office of Inspector General's credibility. *Id.* Release of the spreadsheets would also harm the necessary internal debate and candid consideration of issues. *Id.* If Inspector General employees expect that their comments, assessments, and deliberations will be publicly disseminated, they will temper their candor and that will harm the Inspector General decision-making process; candid discussion amongst Inspector General audit team members ensures that audits are conducted accurately and appropriately, which also ensures the final report is factually accurate with appropriate recommendations. *Id.* In the future, Inspector General employees may not feel free to communicate openly with team members and supervisors and instead they may limit and edit their open communication because it might be released publicly. *Id.*

These considerations are especially harmful to Office of Inspector General work, which relies upon the trust of VA employees to undercover problems and inefficiencies within the organization and where it is vital that employees be free to communicate while conducting necessary oversight work like audits and investigations. *Id.* In sum, release of Large Spreadsheets Nos. 1 and 2 would not only harm the Inspector General audit and investigation decision-making

process, but the overall ability of the office to conduct oversight and publish work product as required under the Inspector General Act, 38 U.S.C. § 312. *Id.*

In the event Plaintiff tries to belatedly raise new arguments in the forthcoming reply concerning the withholding of the spreadsheets under Exemption 5, the Court should disregard them and consider the arguments based solely the scope of the briefing to date. Plaintiff's reply will be filed in support of his cross motion for summary judgment, whereas Defendant raised these arguments in Defendant's motion for summary judgment—briefing that is closed by Defendant's filing of this reply. *See Joumaa v. Mnuchin*, Civ. A. No. 17-2780 (TJK), 2019 WL 1559453, at *9 (D.D.C. Apr. 10, 2019) (treating the defendant's arguments as conceded where plaintiff failed to address them in the memorandum in opposition, and raised arguments for the first time in the reply in support of the plaintiff's cross-motion for summary judgment), *aff'd*, 798 F. App'x 667 (D.C. Cir. 2020). It is well-established principle that parties may not raise new arguments for the first time in a reply brief, and the VA would be prejudiced as the Agency would have no opportunity to respond as of right were Plaintiff to raise new arguments in its reply brief. *See id.*

## IV.   The VA Office of Inspector General Properly Withheld Material Under FOIA Exemption 7(E).

### A.   Because the Inspector General Compiled the Records for Law Enforcement Purposes, the Records Satisfy Exemption 7's Threshold Requirement.

"To fall within Exemption 7, documents must first meet a threshold requirement: that the records were 'compiled for law enforcement purposes.'" *Pub. Emps. for Env't Resp. ("PEER") v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202–03 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)). In approaching that inquiry, "it is not the nature of the agency that controls, but the character of the records withheld." *Elkins v. FAA*, 99 F. Supp. 3d 90, 98 (D.D.C. 2015).

If an agency's "principal function is law enforcement," the agency's claim that the records at issue clear Exemption 7's threshold requirement is entitled to some deference, *PEER*, 740 F.3d

at 203, in light of the "generally accurate assumption that federal agencies act within their legislated purposes," *Tax Analysts v. I.R.S.*, 294 F.3d 71, 77 (D.C. Cir. 2002) (quoting *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)). But where, as here, there is a "mixed-function agency"—*i.e.*, one whose primary function is not law enforcement—the agency is "subject to an exacting standard when it comes to the threshold requirement of Exemption 7." *Id.*

"In assessing whether records are compiled for law enforcement purposes, this circuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled, and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Jefferson v. Dep't of Just.*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citation omitted). "Records relating to an investigation are one common type of record compiled for law enforcement purposes." *Pinson v. Dep't of Just.*, 313 F. Supp. 3d 88, 113–14 (D.D.C. 2018). Under the D.C. Circuit's two-part test for investigatory records, "the government can show that its records are law enforcement records if (1) the investigatory activity that gave rise to the documents is related to the enforcement of federal laws, and (2) there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Id.* at 114 (quoting *Jefferson*, 284 F.3d at 177) (internal quotation marks omitted). "However, where there is no ongoing investigation, materials may still meet the threshold requirement if they are akin to 'guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation.'" *Id.* (quoting *Tax Analysts*, 294 F.3d at 78). In *Tax Analysts*, the D.C. Circuit held that the Internal Revenue Service's "internal agency material relating to guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation . . . clearly satisf[ied] the 'law enforcement purposes' threshold of Exemption 7." *Tax Analysts*, 294 F.3d at 78.

Here, Defendant has invoked Exemption 7(E) to redact portions of the survey responses and post-survey follow up communications (OIG Bates at 1–33, 48–105), and withhold parts of Large Spreadsheet No. 1.

At the threshold, Defendant has shown that these VA Inspector General records were compiled for law enforcement purposes for purposes of Exemption 7. As part of its statutory mandate, the VA Inspector General audits and investigates the VA's programs and operations, recommends policies to promote their effectiveness, and prevents and detects fraud and abuse. *See* 4th Gowins-Bellamy Decl. ¶ 4 (citing 5 U.S.C. § 402(b)). One of the programs that the VA Inspector General oversees is the VA police force, an armed and uniformed federal law enforcement service that provides security and law enforcement services at VA facilities. *See id.* ¶¶ 5–7. Information that the VA Inspector General has withheld under Exemption 7(E) comes the VA police force or its records, and the VA Inspector General obtained this information when auditing and investigating law enforcement and security at the VA and preparing the Inspector General reports setting forth findings and policy recommendations on these issues. *See id.* ¶ 4.

Two of the surveys (OIG Bates 1-33) were compiled during the audit and investigation conducted by VA Inspector General over the VA Police program operations and were used to write Inspector General Report #17-01007-01, which made findings and policy recommendations concerning VA police responsibilities, performance, staffing, resources, and procedures for appropriately handling VA police investigations. *See* 4th Gowins-Bellamy Decl. ¶ 7. During this process, the VA Inspector General obtained information that includes criminal investigation processes and procedures, including thresholds, law enforcement standard operating procedures and guidelines for investigating a variety of crimes that occur on VA health facility property. *Id.*

The third survey and the related post-survey follow up (OIG Bates 48-105) were compiled during the audit and investigation conducted by VA Inspector General concerning the VA Police program's information management system and were used to write Inspector General Report #19-05798-107, which made findings and policy recommendations on who should manage the VA police records system, whether it meets the police force's needs, and developing a plan to resolve system issues and update program procedures to satisfy information management needs. *See id.* ¶ 8. During this process, the VA Inspector General obtained information about law enforcement databases used by VA police, including how they are used to track crimes and details about how they work, as well as information from VA police chiefs about programmatic weaknesses and how they impact investigations. *Id.* ¶ 8.

The foregoing information the Inspector General staff obtained in the survey responses and the related follow up communications during the course of the investigation and preparation of the Inspector General reports are "akin to 'guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation'" that were deemed to be law enforcement records in *Tax Analysts*. *Pinson*, 313 F. Supp. 3d at 113–14 (quoting *Tax Analysts*, 294 F.3d at 78). As discussed, this information includes standard operating procedures; guidelines for investigating crimes that occur on VA health facility property; procedures for using police databases to investigate, prosecute, and track crimes, and information about how the databases are used; and physical security assessments and the law enforcement systems used to conduct the assessments. 3d Gowins-Bellamy Decl. ¶ 49. These types of records are deemed to be compiled for law enforcement purposes under the Exemption 7 threshold requirement. *See Pinson v. Dep't of Justice*, 313 F. Supp. 3d 88, 114 (D.D.C. 2018) (finding that records "pertain[ing] to how BOP handles threats to security, how it monitors and maintains the

health and safety of its inmates and staff, and how it investigates criminal activity . . . were created by BOP to fulfill its responsibility of protecting inmates and prison staff" were compiled for law enforcement purposes under Exemption 7).

Like the surveys, Large Spreadsheet No. 1 also was compiled during an audit and investigation conducted by VA Inspector General. This one was primarily focused on the management of disruptive and violent behavior in VA facilities and for the purpose of writing Inspector General Report #17-04460-84, which made findings and policy recommendations on establishing employee threat assessment teams, requiring VA police and others attend disruptive behavior committee meetings and training, and ensuring proper documentation and notice when issuing orders of behavioral restriction. *See* 4th Gowins-Bellamy Decl. ¶ 9.

The information compiled in this excel sheet was culled by Inspector General staff from a large universe of police records, VA Office of Law Enforcement and Security physical security assessments and police investigation reports—both of which were compiled for law enforcement purposes. *See* 4th Gowins-Bellamy Decl. ¶ 9; OIG *Vaughn* Index at 9. The police reports concern the investigation of possible crimes on VA property, and thus qualify as investigatory records under the two-part test. *See Pinson*, 313 F. Supp. 3d at 113–14. Likewise, the physical security assessments concern the security of VA property for the ultimate aim of protecting VA patients and others and investigating criminal activity, just like the records in *Pinson*. Indeed, Plaintiff "does not contest" the VA's withholding of these underlying records under Exemption 7(E) by the Office of Operations, Security, and Preparedness. *See* Pl.'s Combined Filing at 23 n.3. Because Large Spreadsheet No. 1 is comprised of records compiled for law enforcement records, Large Spreadsheet No. 1 is also deemed to be compiled for law enforcement purposes. *See FBI v. Abramson*, 456 U.S. 615, 630 (1982) ("Exemption 7 exemption may well remain intact even

though information in a law enforcement record is recompiled in another document for a non-law enforcement function.").[2]

The VA has satisfied the threshold requirement that the Inspector General records with withholdings under Exemption 7(E) were "'compiled for law enforcement purposes.'" *PEER*, 740 F.3d at 202–03 (quoting 5 U.S.C. § 552(b)(7)).

**B.      Select Survey Responses and Follow Up Communications Were Properly Redacted Under Exemption 7(E).**

The VA has sufficiently justified the redactions applied to the survey responses and certain of the follow up communications (OIG Bates 1-33, 48-105) under Exemption 7(E). The VA Inspector General's supporting materials have explained in detail how the disclosure of the redacted information would reveal techniques and procedures for law enforcement investigations and prosecutions or would disclose guidelines for law enforcement investigations or prosecutions. *See* 3d Gowins-Bellamy Decl. ¶ 49; OIG *Vaughn* Index at 1–9. The VA Inspector General gave the confidential survey given to VA chiefs of police and Veterans Health Administration medical directors during an audit and investigation of law enforcement and security at the VA. The VA Inspector General's declaration explains that "[t]he redacted information contains specific details about criminal investigation processes and procedures, including thresholds, details of law enforcement standard operating procedures and guidelines for the process of investigating a variety of crimes that occur on VA health facility property." 3d Gowins-Bellamy Decl. ¶ 49. It also contains details about how each facility conducts investigations." *Id.* What is more, the redacted

---

[2]      In any event, Large Spreadsheet No. 1 also qualifies as a law enforcement record akin to the guidelines, techniques, and procedures for law enforcement investigations and prosecutions, *Pinson*, 313 F. Supp. 3d at 113–14, as it contains, for example, "procedures specific to the handling of disruptive behavior at VA facilities," "procedures related to investigating assaults," and "a law enforcement database used specifically for the tracking and investigation of threatening behavior." OIG *Vaughn* Index at 11.

information contains "specific information about databases used for law enforcement purposes and what information is collected." *Id.* The foregoing specific techniques, procedures and guidelines "vary depending on facility resources and they are not known to the public." *Id.*

Plaintiff's baseless claim that the VA, without supporting details, "broadly asserts that the responses to the survey questions will reveal law enforcement techniques and procedures," Pl.'s Combined Filing at 25, is clearly disproven by the evidence. What is more, the sole survey question that Plaintiff singles out—concerning the payments made to recruit and retain police officers at each of the facilities—has a response that has mostly been disclosed by the VA Inspector General, with the exception of some freeform narrative responses by the VA Chiefs of Police that were redacted under both Exemptions 5 and 7(E). ECF 39-4 at 23–24.

The only other challenge to these Exemption 7(E) redactions consists of Plaintiff's vague reference to a decision in which this Court found that the standard for Exemption 7(E) had not been met. *See* Pl.'s Combined Filing at 24–25 (citing *Hansten v. DEA*, Civ. A. No. 21-2043, 2022 WL 2904151, at *3 (D.D.C. Jul. 22, 2022)). But the circumstances of that case, *Hansen*, bear little similarity to the present case. In *Hansten*, the DEA invoked Exemption 7(E) to withhold completed Form 222s that "are required for every entity seeking to purchase and transfer Schedule I or II drugs," where "the majority, if not all of the DEA registrants issued DEA Forms 222 on a specific date were legitimate pharmacies, doctors, and state functions." 2022 WL 2904151, at *4. The Court concluded that "Form 222 reveals nothing about the agency's law enforcement techniques and procedures, and the type of information collected, as well as the fact that it is collected, is already generally known." *Id.* By contrast, the VA Inspector General here has provided ample information in its supporting materials to support its redactions applied to the survey responses and follow up under Exemption 7(E).

The VA also has demonstrated that disclosure of the redacted survey-related information "could reasonably be expected to risk circumvention of the law." *Reps. Comm. for Freedom of the Press v. FBI*, 548 F. Supp. 3d 185, 196 (D.D.C. 2021). "[C]ircumvention of the law" means "that a law will be violated or that past violators will escape legal consequences." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). That standard "sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). The agency need only "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown*, 562 F.3d at 1194 (cleaned up) (quoting *PHE, Inc. v. Dep't of Just.*, 983 F.2d 248, 251 (D.C. Cir. 1993)). And that showing is not a "highly specific" one. *Id.*

As the Third Gowins-Bellamy Declaration explains, if this redacted information were to be released, "the foreseeable harm is that individuals could circumvent those processes to avoid prosecution." 3d Gowins-Bellamy Decl. ¶ 49; *see also* OIG *Vaughn* Index at 11. "The redacted information contains details about how police databases are used to investigate, prosecute and track crimes and the procedures for the use of those databases." 3d Gowins-Bellamy Decl. ¶ 49. It also "contains details about physical security assessments and the law enforcement system used to conduct the assessments." *Id.* Further, "[t]he redacted information contains details about guidelines for collecting data on risks and facility safety vulnerabilities," "include[ing] specific details on where data is stored in each facility." Release of law enforcement techniques, procedures, guidelines and specific information about databases could reasonably be expected to risk circumvention of the law.

While Plaintiff's opposition again claims that the VA Inspector General offers a mere a rewording of the statute for the showing of harm, Pl.'s Combined Filing at 26, this simply ignores

the record evidence in the Inspector General's declaration and *Vaughn* Index. The VA has justified the withholdings in the survey responses and certain of the follow up communications (OIG Bates 1-33, 48-105) under Exemption 7(E).

     **C.**    **Parts of the Large Spreadsheet No. 1 Were Also Properly Withheld Under Exemption 7(E).**

The VA has also sufficiently justified the redactions applied to withhold portions of Large Spreadsheet No. 1 under Exemption 7(E). The redacted information would reveal techniques and procedures for law enforcement investigations and prosecutions or would disclose guidelines for law enforcement investigations or prosecutions. 3d Gowins-Bellamy Decl. ¶ 55. Specifically, information withheld under Exemption 7(E) redacted contains "techniques and procedures specific to the handling of disruptive behavior at VA facilities" and "thresholds for the involvement of law enforcement," "techniques and procedures related to investigating assaults," and "information about a law enforcement database used specifically for the tracking and investigation of threatening behavior." 3d Gowins-Bellamy Decl. ¶ 55; OIG *Vaughn* Index at 9–11.

In arguing that Defendant has not shown that the Large Spreadsheet No. 1 withholdings fail to meet Exemption 7(E), Plaintiff again makes only a conclusory assertion, without any legal support or factual support. The following reflects Plaintiff's entire position on this point:

> The agency's reasoning for withholding the first spreadsheet is similarly lacking and fails the agency's burden of withholding the entire spreadsheet under Exemption 7E. *See* ECF Nos. 37-2 ¶ 55; 37-3 at 9–11.

Pl.'s Combined Filing at 25. These types of "conclusory statements are insufficient to withstand a motion for summary judgment." *Rafferty v. NYNEX Corp.*, 744 F. Supp. 324, 327 n.9 (D.D.C. 1990) (citing Fed. R. Civ. P. 56(e)), *aff'd*, 60 F.3d 844 (D.C. Cir. 1995).

Plaintiff does not mention Large Spreadsheet No. 1 in the section that challenges the VA's showing of foreseeable harm for the Exemption 7(E) withholdings, Pl.'s Combined Filing

at 25–26, and therefore Plaintiff does not appear to contest this issue. But in any event, the VA Inspector General's supporting materials have met the "relatively low bar," *Blackwell*, 646 F.3d at 42, for showing that the "disclosure of the withheld information 'could reasonably be expected to risk circumvention of the law,'" *Reps. Comm.*, 548 F. Supp. 3d at 196. Disclosure of techniques and procedures for handling disruptive behavior at VA facilities, investigating assaults, and involving law enforcement, as well as information about a law enforcement database for tracking and investigating of threatening behavior could allow individuals to avoid investigation and tracking of threatening behavior and thus could reasonably be expected to risk circumvention of the law. 3d Gowins-Bellamy Decl. ¶ 55; OIG *Vaughn* Index at 9–11.

There is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law. As previously noted, to the extent that Plaintiff tries to improperly raise new arguments in the forthcoming reply in support of Plaintiff's cross-motion for summary judgment concerning the withholdings under Exemption 7(E), the Court should disregard them and consider the arguments based solely the scope of the briefing to date. *See supra.*

## V.     *In Camera* Review Is Neither Necessary Nor Appropriate.

Lastly, Plaintiff contends that, if the Court finds that VA Inspector General has not sustained its burden of justifying the withholdings under Exemptions 5 and 7(E), then Plaintiff requests that the Court review them *in camera* to evaluate the agency's assertions.

Plaintiff quotes from a decision that notes that *in camera* review may be appropriate when "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims; the number of records involved is relatively small; a discrepancy exists between an agency's affidavit and other information that the agency has publicly disclosed; and when the dispute turns on the contents of the documents, and not the parties' interpretations of the documents." Pl.'s

Combined Filing 26–27 (quoting *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 307 (D.D.C. 2007) (citation and internal quotation marks omitted)).

Plaintiff neglects to mention that this same case also says that "courts disfavor *in camera* inspection and it is more appropriate in only the exceptional case." *People for the Am. Way*, 503 F. Supp. 2d at 307. The D.C. Circuit has "made clear that '[w]hen the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate.'" *Larson v. Dep't of State*, 565 F.3d 857, 869–70 (D.C. Cir. 2009) (citations omitted).

For this reason, *in camera* review is neither necessary nor appropriate in this case. The VA Inspector General will of course promptly provide the Court with the relevant records for *in camera* review, should the Court so order.  But here such review is unnecessary because Plaintiff has offered nothing to call into question the VA's showing as to the exemptions and show that this is "the exceptional case" that warrants *in camera* review.  Here, the VA Inspector General has met its burden with the declaration and *Vaughn* Index, as demonstrated above. Accordingly, the Court need not take any further steps in the analysis, given that the VA has carried its burden.

The VA does, however, respond to some of the bizarre and illogical arguments that Plaintiff advances in this section of its Combined Filing requesting *in camera* review. Plaintiff once again claims entirely without support that the VA's justification for withholdings "simply restates the applicable legal standard without offering additional detailed explanation," Pl.'s Combined Filing at 28, which is clearly and demonstrably false. *See supra*. As explained above, Plaintiff's assertion that the VA has not provided sufficient detail to justify the withholdings as to the spreadsheets, as they are withheld in full, is just not accurate. Plaintiff simply chooses to ignore the extensive information in the supporting materials provided by the VA, and Plaintiff's conclusory statements

in the opposition effectively conceded that there is no basis for claiming that the VA Inspector General has failed to meet its burden as to withholdings regarding the spreadsheets. *See supra.*

What is more, there are no discrepancies in the VA Inspector General's declaration. Plaintiff relies on the contention that "between the last round of summary judgment motions and this round, the agency produced a new set of the survey, this time providing many of the questions and what looks like a random selection of the answers." Pl.'s Combined Filing at 31. Again, this is the first time that the VA Inspector General has moved for summary judgment on the Modified FOIA Request and defended its withholdings.  If anything, Plaintiff's limited withholdings show that the VA Inspector General has been careful to make only necessary and appropriate withholdings and to segregate out and release any non-exempt information. The fact that withholdings may look "random" to Plaintiff does not mean there is a discrepancy.

Plaintiff's "confusion" about the withholdings is difficult to understand. As the VA has previously explained, "all survey questions" have been provided to Plaintiff, as have "statistical data" and "portions of survey responses not in narrative form that could identify survey takers or law enforcement techniques." Def.'s Mot. at 16. While Plaintiff notes that some survey responses that "have somewhat free-floating boxes of Exemption 5 assertions in various places that do not appear from the rest of the document like they should have text," Pl.'s Combined Filing at 31, Defendant simply refers Plaintiff to the Inspector General *Vaughn* Index (incorporated by reference in the declaration), which explains that "[p]ortions of the redacted material are internal notes made by [Inspector General] staff to prepare to write the report," OIG *Vaughn* Index at 1. Questions like these could have been addressed by meeting and conferring with the VA prior to renewed summary judgment briefing, but Plaintiff refused to do so—even after representing to the

Court that it would. *Compare* Joint Status Report (ECF No. 33), *with* Joint Status Report at 2–4 (ECF No. 34).

Finally, Plaintiff claims that *in camera* review is necessary to determine segregability of the two large excel spreadsheets. But Defendant has explained that the Large Spreadsheets Nos. 1 and 2 must be withheld in full under Exemption 5 because they contain information that the Inspector General staff culled from a much larger universe of facts and illustrates Inspector General employees' exercise of judgment regarding what information was relevant to the pre-decisional findings and recommendations. *See* 3d Gowins-Bellamy Decl. ¶ 50, 57; OIG *Vaughn* Index at 9–13. Given the basis for the withholding, there is nothing in the spreadsheet that could potentially be segregable, as no part of the spreadsheet could be released without exposing the deliberative process. *See Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 13 (D.C. Cir. 2014) (upholding the withholding of factual material, as the declaration supported finding that it "could not be released without harming the deliberative processes of the government by chilling the candid and frank communications necessary for effective governmental decision-making").

In sum, the VA has justified the Inspector General's withholdings under Exemption 5 and 7(E) and shown that all reasonably segregable material has been released with its declaration and *Vaughn* Index, and this is not "the exceptional case" in which *in camera* review would otherwise be appropriate. As such, *in camera* review of the relevant VA Inspector General records "is neither necessary nor appropriate," *Larson*, 565 F.3d at 869–70, and the Court should deny Plaintiff's request for *in camera* review.

## CONCLUSION

For the reasons set forth above, and those stated in Defendant's Motion, Defendant respectfully requests that this Court grant summary judgment in its favor and deny Plaintiff's cross-motion for summary judgment.

Dated: June 28, 2023
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/ *Christina O'Tousa*
    Christina O'Tousa
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2437
    christina.otousa@usdoj.gov

*Attorneys for the United States of America*