UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS, | |
| Plaintiff, | Civ. No. 21-1298-RC |
| v. | |
| THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | |
| Defendant. | |

**PLAINTIFF NATIONAL ASSOCIATION OF MINORITY VETERANS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND CROSS-MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

Introduction .............................................................................................................. 1

Argument .................................................................................................................. 2

I.      The Agency Forfeited Its Exemption Arguments. ...................................... 2

II.     The Agency Fails its Burden on its Exemption 5 Withholdings. ................... 4

        A.     The Survey Answers Are Not Protected by the Deliberative Process
                Privilege. ...................................................................................................5

        B.     The Follow-Up Communications Are Not Protected by the Deliberative
                Process Privilege.....................................................................................8

        C.     There is No Foreseeable Harm in Release of the Spreadsheets. ........................9

III.    The Agency Fails its Burden of its Exemption 7E Withholdings. ............................ 11

        A.     The OIG Is Not a Law Enforcement Agency. .................................................... 12

        B.     There Are No Techniques, Procedures, or Guidelines Used for Law
                Enforcement Investigations or Prosecutions at Issue, Either. ........................ 12

        C.     None of the Withheld Records Risk Circumvention of the Law. .................... 14

IV.    If the Court Believes the Agency Met its Burden to Withhold the Challenged
        Records, it Should Inspect Them in Camera....................................................... 16

Conclusion ...................................................................................................... 17

## Table of Authorities

**Cases**

*Ancient Coin Collectors Guild v. United States Dep't of State*,
   641 F.3d 504 (D.C. Cir. 2011) ................................................................ 4

*Army Times Publ'g Co. v. Dep't of Air Force*,
   998 F.2d 1067 (D.C. Cir. 1993) ........................................................... 7, 8

*Citizens for Responsibility & Ethics in Washington v. DOJ*,
   746 F.3d 1082 (D.C. Cir. 2014) ............................................................ 13

*Edmonds Inst. v. U.S. Dep't of Interior*,
   460 F.Supp.2d 63 (D.D.C. 2006) ............................................................ 4

*Elkins v. FAA*,
   134 F.Supp.3d 1 (D.D.C. 2015) ............................................................ 13

*Hansten v. DEA*,
   No. 21-cv-2043-RC, 2022 WL 2904151 (D.D.C. Jul. 22, 2022) ............................ 13

*Hardy v. Bureau of Alcohol*,
   243 F.Supp.3d 155 (D.D.C. 2017) ..................................................... 6, 7, 8

*Maydak v. United States DOJ*,
   218 F.3d 760 (D.C. Cir. 2000) ............................................................ 2, 3

*Mayer Brown LLP v. IRS*,
   562 F.3d 1190 (D.C. Cir. 2009) ............................................................ 14

*Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*,
   849 F.Supp.2d 13 (D.D.C. 2012) ............................................................ 4

*People for the Am. Way Found. v. Nat'l Park Serv.*,
   503 F.Supp.2d 284 (D.D.C. 2007) ..................................................... 16, 17
*P
ub. Citizen Health Research Grp. v. FDA*,
   185 F.3d 898 (D.C. Cir. 1999) ............................................................. 2

*Reporters Comm. for Freedom of the Press v. FBI*,
   3 F.4th 350, 361 (D.C. Cir. 2021) .................................................. 4, 9, 10, 11

*Ryan v. DOJ*,
   617 F.2d 781 (D.C. Cir. 1980) ............................................................ 2, 7

*Shapiro v. Dep't of Just.*,
    507 F.Supp.3d 283 (D.D.C. 2020) ............................................................................. 3

*Shapiro v. Dep't of Just.*,
    Civ. A. No. 13-555 (RDM), 2016 WL 3023980 (D.D.C. May 25, 2016) ................................. 3

**Statutes**

5 U.S.C. § 552 (b)(7) ........................................................................................................ 12

5 U.S.C. § 552(a)(8)(A)(i)(I) .............................................................................................. 4

5 U.S.C. § 552(b)(7)(E) ...................................................................................................... 12

**Other Authorities**

H.R. REP. NO. 391, 114th Cong., 2d Sess. 1 .................................................................... 9

# INTRODUCTION

This case was filed more than two years ago and is on its second round of cross-motions for summary judgment. For nearly the first two years of the litigation, the agency continued to make supplemental productions to Plaintiff National Association of Minority Veterans (NAMVETS). After the agency's supplemental productions, the remaining disputes center on the agency's withholdings under two FOIA Exemptions—Exemption 5 and Exemption 7E—to two sets of records: 1) OIG survey responses and related follow up communications use to prepared OIG reports (OIG Bates 001-105); and (2) two "large Excel spreadsheets" with information used in preparing the same OIG reports.

This Court should order the agency to produce those records without withholdings for Exemptions 5 and 7E. For one, the agency waived its right to withhold records under those exemptions by not asserting them in the initial round of summary judgment briefing. The Exemption 5 deliberative-process privilege withholdings are improper because even after four declarations from the agency's declarant, the agency still fails its burden of showing the records are predecisional or deliberative, or that their release would cause foreseeable harm to the agency. The Exemption 7E withholding are improper because the OIG is not a law enforcement agency, the records were not compiled for a law enforcement purpose, release of survey answers and spreadsheets would not disclose techniques, procedures, or guidelines used for law enforcement investigations or prosecutions, and release of survey answers and spreadsheets would not risk circumvention of the law. Finally, if the Court maintains any doubt about the agency's failure to justify its withholdings, it should inspect the records in camera.

**ARGUMENT**

## I.     The Agency Forfeited Its Exemption Arguments.

The agency forfeited its ability to justify its withholdings under any FOIA exemption by refusing to justify its withholdings under any FOIA exemption in the face of NAMVETS' first motion for summary judgment.

The general rule is that an agency forfeits its withholdings by failing to justify them on summary judgment. *Ryan v. DOJ*, 617 F.2d 781, 792 & n.38a (D.C. Cir. 1980). This makes sense; the agency has the burden of justifying its withholdings under FOIA and a failing to justify withholding is a failure to meet a burden. *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).

There are two exceptions to this rule for when the failure to justify the exception was beyond the agency's control: where pure human error would disclose national security or private personal information and where a substantial change in the facts in the interim justifies the change in the agency's position. *Maydak v. United States DOJ*, 218 F.3d 760, 767 (D.C. Cir. 2000).

The agency does not claim that either two exceptions apply. Agency's Reply/Opp. Br., ECF No 43, at 9–11. It simply claims the rule should only be applied only on appeal, if ever. *Id.* The D.C. Circuit has never held that the rule applies only on appeal. And the agency never argues why that would or should be the case, either. If the agency can assert the withholding years into district court litigation and only after losing a round of summary judgment, why not allow the same assertion on appeal? And if the agency cannot assert new exemptions on appeal, why should it be permitted to make new assertions on multiple rounds of summary judgment briefing? An appeal may never happen if the agency is given enough bites at the apple to eventually win in the district

2

court. *See Maydak*, 218 F.3d at 764 (FOIA embodies a goal of "efficient, prompt, and full disclosure of information").

The agency claims other district courts have allowed agencies to bet the case on one argument or withholding, lose, and then assert other bases for withholdings. Agency's Reply/Opp. Br., ECF No 43, at 10. But the agency oversimplifies things. In fact, the agency's primary authority on this point—*Shapiro v. Dep't of Just.*, 507 F.Supp.3d 283 (D.D.C. 2020) (cited with only its Westlaw cite in the agency's brief as Civ. A. No. 13-555, 2020 WL 7318014 (D.D.C. Dec. 11, 2020)) & *Shapiro v. Dep't of Just.*, Civ. A. No. 13-555 (RDM), 2016 WL 3023980 (D.D.C. May 25, 2016)—support NAMVETS' argument more than the agency's. In the *Shapiro* litigation, Judge Moss allowed the FBI to make untimely withholding assertions, consistent with *Maydak*, for documents that would compromise national security or sensitive, personal, private information. *Shapiro*, 2020 WL 7318014, at *4. The plaintiffs read that order to allow the FBI to assert Exemptions 1, 3, 6, 7C, and 7D, but objected to the late invocation of Exemption 5. *Id.* at *4. On the FBI's motion for reconsideration, the court—again consistent with the principles of *Maydak*— allowed the agency's tardy assertions of Exemption 5 to protect attorney work-product and attorney-client privileged material, but *not* deliberative-process privilege assertions. *Id.* at *5–6.

While NAMVETS believes the agency forfeited all exemption assertions by making the calculated decision not to assert them in the initial round of summary judgment motions, this Court could adopt the *Shapiro* court's reasoning and allow, in the spirit of *Maydak*, the agency to make delayed withholding assertions under Exemption 7E but not for deliberative process privilege materials under Exemption 5.

**II.      The Agency Fails its Burden on its Exemption 5 Withholdings.**

The Agency continues to withhold three types of records under Exemption 5's deliberative process privilege protection: narrative-form survey answers, follow-up communications, and excel spreadsheets containing information gleaned from police reports and patient medical records.

Exemption 5 protects records that are protected by the deliberative-process privilege, meaning records that are predecisional and deliberative. The "privilege covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which government decisions and policies are formulated." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (cleaned up). The Agency must release "even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption." *Id.* at 369 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).

While facts alone are typically not deliberative, some purely factual material still receives protection under the deliberative process privilege because the selections of that material is part of the agency's deliberative process. *Ancient Coin Collectors Guild v. United States Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011). This "limited exception to the general principle that purely factual material may not be withheld under Exemption 5 may not be read so broadly, however, as to swallow the rule," *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F.Supp.2d 13, 37 (D.D.C. 2012), and "application of the deliberative process privilege is context-specific." *Edmonds Inst. v. U.S. Dep't of Interior*, 460 F.Supp.2d 63, 70 (D.D.C. 2006).

Here, the survey answers and the follow up communications are purely factual materials whose selection were not part of the agency's deliberative process. And even assuming the facts in the agency's spreadsheet are facts selected as part of the agency's deliberative process, the agency fails its burden of showing a reasonable likelihood of harm from disclosure.

**A.      The Survey Answers Are Not Protected by the Deliberative Process Privilege.**

The agency withholds a variety of supposedly narrative-form survey question answers under Exemption 5. The OIG received survey answers from 88 medical directors and 119 chiefs of police at Veterans Health Administration facilities. ECF No. 37-2, 3rd Gowins-Bellamy Decl. ¶ 15(b)(iv). After initially withholding all the questions and answers, the agency now only withholds some "narrative-form" answers to the survey questions.

 Most of the survey questions appear to offer multiple choice answers with the ability to select "Other." Selecting "other" appears to allow the person being surveyed to input a text-based answer not provided by the multiple-choice answers. For example, question three asks "Which of the following officials or offices provides your performance rating as facility police chief?" ECF No. 40-4 at 3 (Bates 003.) The survey provides the answers "Assistant/associate director; Medical director; Veterans Integrated Service Network; Office of the Deputy Under Secretary for [redacted] for Operations Management; Office of Security and Law Enforcement; Other." *Id.* The results show five survey participants selected "Other." Under "Other Blank Answers:" there are five answers (four wrote, "Deputy Director," while a fifth wrote, "Associate Director of Facility Support"). *Id.* These answers provided by survey participants who selected "Other" are "narrative-form" answers that the agency continues to withhold for most other questions. *See id.* at 8–93 (Bates 008–093.)

The agency also withholds most answers to non-multiple choice survey questions, such question 16: "Please explain the policies and procedures for accepting misconduct complaints against the medical director." *Id.* at 9 (Bates 009).

The agency withholds most "narrative-form" answers, but not all. Question 20, for instance, asks survey participants to, "Please explain the policies and procedures for elevating

investigative decisions implicate the medical director beyond the local level." *Id.* at 11 (Bates 011.)
It shows 27 responses. *Id.* Twenty-five of those are redacted but two others are not. *Id.* at 10–11
(Bates 010–11). One simply says, "See previous explanation," but the other contains both a
complaint and a substantive response: "You're asking the same question repeatedly. We would
notify the network director and possibly the OIG depending upon the allegation." *Id.* at 10 (Bates
010). Redactions of most such "narrative-form" answers is common throughout the production
*See, e.g.*, *id.* at 8 (Bates 008 (Question 10)); 10–11 (Bates 010–11 (Question 20)); 11–12 (Bates
011–12 (Question 21)); 12–13 (Bates 012–12 (Question 23)); 16–18 (Bates 016–18 (Question 27)),
etc.

There is no need to tread new ground here. Another court in this district already rejected
deliberative process assertions in a virtually identical situation. In *Hardy v. Bureau of Alcohol*, 243
F.Supp.3d 155, 159 (D.D.C. 2017), the plaintiff sought survey results from a DOJ OIG
investigation of the Bureau of Alcohol, Tobacco, Firearms and Explosives that the OIG used to
prepare a report. There were 344 survey responses. *Id.* at 172. As here, the agency made public
"the survey questions in their entirety, and the results and data in part," withholding the remaining
parts under Exemption 5. *Id.* The court began its analysis by noting that "survey data is
quintessentially factual information that reveals little about an agency's deliberative process." *Id.*
at 171. And it noted that other courts in this district "have found that survey results are not the kind
of factual information protected from disclosure under Exemption 5." *Id*. (citing *Publ'g Co. v.
Dep't of Air Force*, 998 F.2d 1067, 302 U.S. App. D.C. 432 (D.C. Cir. 1993) & *Ludlam v. United
States Peace Corps.*, 934 F. Supp. 2d 174 (D.D.C. 2013)). Because "OIG ha[d] already produced
in the … Report the survey questions in their entirety, and the results and data in part, to withhold
the remaining survey results and data," the OIG had to "explain how the withheld information is

'different from those released in any relevant respect.'" *Id.* (quoting *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1068 (D.C. Cir. 1993)). Otherwise, "whatever chilling effect may be caused by release of the survey results and data is already present." *Id.* (cleaned up). The agency failed to do that. *Id.* There was little risk that release of withheld survey responses could "be used to identify any particular respondent," either, given that they answer were "anonymized collections of information from 334 individuals." *Id.* at 173. "Even quotes from narrative responses to questions from the survey cannot be tied to any particular survey respondent. Therefore, public disclosure is unlikely in the future to stifle honest and frank communication within the agency." *Id.* (cleaned up).

All that was true in *Hardy* is true here. The survey responses are quintessentially factual information that reveal little about an agency's deliberative process. The agency provides nothing to explain how the withheld information is different from the "narrative-form" answers it has produced, or even how those withheld answers are different in kind of from the multiple-choice answers other survey participants selected. And like the 334 recipients in the *Hardy* survey, the withheld survey answers here are anonymized collections of information from 88 medical directors and 119 chiefs of police at Veterans Health Administration facilities which are unlikely to be tied to any particular survey respondent.

The agency's claim that *Ryan*, 617 F.2d 781, blesses its withholding is wrong. Agency's Reply/Opp. Br., ECF No 43, at 17. *Ryan* involved U.S. Senators' responses to questionnaires sent by the Attorney General about selecting and recommending judicial nominees. The D.C. Circuit found that answers to some question "will be factual, and disclosure of them will not reveal aspects of the deliberative process." *Ryan*, 617 F.2d at 791. But others got at the "personal views or recommendations of a Senator" and were protected. *Id.* But that was because the survey respondent

7

*was doing the deliberating*. *Id.* That's not the case here — these are factual questions and factual answers made to people not involved in the supposed final agency policy (the OIG Reports).

The agency fails to meet its burden of showing the survey results are properly withheld under Exemption 5. They should be disclosed.

### B.       The Follow-Up Communications Are Not Protected by the Deliberative Process Privilege.

All that is true of the survey questions is also true of the follow-up communications. The follow-up communications appear to be just that: emails from OIG to survey participants asking for more information on an answer the participant provided. So, as one example, OIG emailed a survey recipient: "Thank you for completing our survey of VA Police Chiefs. We have a quick follow-up question concerning the VA police information systems' delays impacting cases being prosecuted. Are you aware of any specific examples where the systems' delays impacted the prosecution of a case? If so, can you provide some details?" ECF No. 40-4 at 34 (Bates 034). The recipient, whose answer was not redacted, replies "None that impacted the prosecution, only delayed in submitting." *Id.* But another recipient received the same email from OIG, but his or her response was redacted under Exemption 5. *Id.* at 35 (Bates 035).

As with the survey responses, because the agency already produced the follow up "questions in their entirety, and the results and data in part, to withhold the remaining survey results and data," the agency had to "explain how the withheld information is 'different from those released in any relevant respect.'" *Hardy*, 243 F.Supp.3d at 171 (quoting *Army Times Publ'g Co.*, 998 F.2d at 1068). It must say why it can produce answers that essentially say "No" and not those that (at least presumably) say "Yes" and offer some explanation. The agency did none of that.

Because the agency fails to meet its burden of showing the Exemption 5 withholdings to the follow-up communications are proper, the follow-up communications should be produced with those exemptions lifted.

### C.    There is No Foreseeable Harm in Release of the Spreadsheets.

The Agency also continues to withhold two Excel spreadsheets in full under Exemption 5. The first spreadsheet appears to contain 2,088 cells (72 rows, 29 columns) containing facts compiled from VA Office of Security and Law Enforcement police records. ECF No. 37-2, 3rd Gowins-Bellamy Decl. ¶ 50. The second spreadsheet contains 54,120 cells (1230 rows, 44 columns) containing facts selected from VA patient health records that are somehow related to policing at VA facilities. *Id.* ¶ 57.

Besides the pure facts, the agency asserts that "both spreadsheets contain notes, questions, and comments between VA Inspector General staff." Agency's Reply/Opp. Br., ECF No 43 at 20. Plaintiff does not challenge the withholding of intra-OIG notes, questions, and comments under Exemption 5. It seeks the facts in those spreadsheets.

Despite two rounds of summary judgment briefing and four declarations from the agency's Supervisory Government Information Specialist for the Department of Veterans Affairs, the agency still fails to show the necessary foreseeable harm that FOIA requires for withholding.

"[O]veruse and abuse of Exemption 5 and the deliberative process privilege" was front of mind when Congress amended FOIA in 2016 to add the requirement that agencies must show that release of the requested information will cause foreseeable harm. *Reporters Comm.*, 43 F.4th at 369 (citing H.R. REP. NO. 391, 114th Cong., 2d Sess. 1, 9–10). The amendment requires agencies not only show a record is exempt, but also make "a focused and concrete demonstration of why

disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370.

The D.C. Circuit characterized the following assertion of foreseeable harm not just insufficient, but "wholly generalized and conclusory, just mouthing the generic rationale for the deliberative process privilege itself":

> Disclosure of [material containing or prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations] would have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions between agency personnel and decision makers regarding a decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision.

*Id.*

And it characterized this assertion a "cookie-cutter formulations [that] nowhere explain[s] why actual harm would foreseeably result from release of the specific type of material at issue here" that is "*precisely* the kind of boilerplate, unparticularized, and hypothesized assertion of harm": "Release of this draft report would be harmful as the draft would also reveal the thought and decision-making processes of the [Office of the Inspector General] and may not reflect the agency's final decisions." *Id.* at 371 (emphasis in original).

Compare those insufficient formulations against the agency's assertions of foreseeable harm from disclosure of the two spreadsheets. The agency's declarant provides the same generic rationale for withholding the first spreadsheet that were insufficient in *Reporters Committee*. She declares that if agency staff "expect that their comments, assessments and deliberations will be publicly disseminated, they will temper their candor and that will harm the OIG decision-making process." ECF No. 37-2, 3rd Gowins-Bellamy Decl. ¶ 52. "Release would cause harm because in

the future OIG employees would not feel free to communicate openly with team members and supervisors – instead they would have to limit and edit their open communication because it might be released publicly." *Id.* And release "would harm the necessary internal debate and candid consideration of issues. Candid discussion amongst OIG audit team members ensures that audits are conducted accurately and appropriately, which also ensures the final report is factually accurate with appropriate recommendations." *Id.*

Nothing about any of this is particularly tailored to the spreadsheets or the information contained in them. It is the same "boilerplate, unparticularized, and hypothesized assertion of harm" that the D.C. Circuit has found insufficient. *Reporters Comm.*, 3 F.4th at 371. In fact, one might be "hard pressed to imagine how these assertions differ in any material way from the routine assertions of deliberative process privilege that pre-dated the FOIA Improvement Act." *Id.*

The justification for the second spreadsheet fares no better. ECF No. 37-2, 3rd Gowins-Bellamy Decl. ¶ 57. In fact, it is almost word-for-word identical to the justification for withholding the first spreadsheet, only replacing references to police records with references to patient records. *Compare id*. ¶ 52 with id. ¶ 57. The nearly identical assertion of harm for both spreadsheets underlines the boilerplate and unparticularized nature of the agency's assertion of foreseeable harm.

Because the agency fails its burden of showing foreseeable harm, it fails its burden withholding the spreadsheets under Exemption 5. *Reporters Comm.*, 3 F.4th at 372.

### III.     The Agency Fails its Burden of its Exemption 7E Withholdings.

Exemption 7E protects records "compiled for law enforcement purposes . . . [where] the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for

law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552 (b)(7).

The agency claims virtually every withheld "narrative-form" survey answer and the second spreadsheet are protected by Exemption 7E. But the agency failed to meet its burden for withholding under that Exemption.

### A.     The OIG Is Not a Law Enforcement Agency.

The agency's 7E exemptions fail at the start because the records were not compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7).

Put simply, the OIG is not a law enforcement agency. It's a watchdog. Even when a watchdog watches a law enforcement agency it does not itself become a law enforcement agency. The agency cites no case that has ever found the OIG to be a law enforcement agency. Or any case that has ever found OIG records to be protected by Exemption 7E. Instead, the agency relies on cases involving the Department of Justice and the IRS. Agency's Reply/Opp. Br., ECF No 43, at 26–27. But those are law enforcement agencies. They employ agents who investigate crime, carry weapons, and make arrests. That's not the OIG.

The agency's claim that overseeing law enforcement is itself law enforcement would stretch the conception of "compiled for a law enforcement purpose" beyond any recognizable limit. 5 U.S.C. § 552(b)(7).

### B.     There Are No Techniques, Procedures, or Guidelines Used for Law Enforcement Investigations or Prosecutions at Issue, Either.

The agency also fails its burden of showing the withheld information would reveal "techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E).

The agency never offers even "*some* explanation of what procedures are involved and how they would be disclosed" and "that the records contain law-enforcement techniques and procedures that are generally unknown to the public." *Hansten v. DEA*, No. 21-cv-2043-RC, 2022 WL 2904151, at *3 (D.D.C. Jul. 22, 2022) (citing *Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1102 (D.C. Cir. 2014); *Elkins v. FAA*, 134 F.Supp.3d 1, 4 (D.D.C. 2015)) (emphasis in original).

One of the surveys was made to 88 medical directors at VA Health Administration facilities. What secret law enforcement techniques and procedures are VA medical directors privy to? The agency offers no answer.

Even the surveys made the 119 chiefs of police at VA Health Administration facilities has no risk of revealing secret law enforcement techniques and procedures. A glance at the survey questions makes that clear. "What records management system is currently used at your facility police service to record police activity?" ECF No. 40-4 at 53 (Bates 053). "What information is maintained using Report Exec? Check all that apply." *Id.* at 54 (Bates 054). "How many total arrests were made at your facility by VA police officers in FY 2019, Qtr 1 (October-If you are unable to provide a number, please explain why[)?]" ECF No. 40-4 at 77 (Bates 077). For every question with multiple-choice answers, the agency provides the multiple-choice answers. Surely those don't reveal secret law enforcement techniques and procedures. But virtually every single time a survey recipient hit "Other" and typed in an answer, the agency claims that answer risks revealing secret law enforcement techniques and procedures. The over-assertion of the exemption itself undermines the agency's assertion.

The agency also claims that every single one of the 2,088 cells in the first spreadsheet would reveal secret law enforcement techniques and procedures. Nonsense. The spreadsheet

13

contains facts culled from VA police reports. Not every police report discloses secret law enforcement techniques and procedures and not every fact within a police report reveals secret law enforcement techniques and procedures.

The agency fails its burden of showing every records it withheld under Exemption 7E would reveal secret law enforcement techniques and procedures.

### C.    None of the Withheld Records Risk Circumvention of the Law.

Revealing the narrative-form survey answers will not risk "that a law will be violated or that past violators will escape legal consequences," either. *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

Again, just look to the survey questions. "Which of the following have been paid to police officers at your facility in fiscal year 2017 . . . to recruit and retain police officers?" ECF No. 40-4 at 24 (Bates 024). "Please explain the polices and procedures for accepting misconduct complaints against the medical director." *Id.* at 9 (Bates 009). "What types of misconduct complaints against your police officers are you allowed to investigate?" *Id.* at 12 (Bates 012.) "Which of the following are physically located at your community-based outpatient clinics to provide security services?" *Id.* at 22 (Bates 022). And, as noted above, the agency provides *all* of the pre-selected answers and even an occasional narrative-form answer. Surely the pre-selected multiple-choice answers don't risk circumvention of the law. So, for instance, when asked, "Which of the following are physically located at your community-based outpatient clinics to provide security services?," revealing the pre-selected answers—No One; VA Police; VA Contractor; Local Law Enforcement; Department of Defense; or Federal Protective Service—carries no risk of circumventing the law. *Id.* Neither do three of the 28 narrative-form answers for participants who chose "Other": "police presence at one clinic," "Security Guard," and "Contact security." *Id.*

But each and every one of the 25 redacted responses would, if disclosed, risk that a law would be violated or that past violators will escape legal consequences? No. Again, the overuse of the exemption undermines any use of the exemption.

The agency attempts to bolster the 7E assertions by again painting with an overly broad brush. It claims all the redacted information "contains details about how police databases are used to investigate, prosecute and track crimes and the procedures for the use of those database" and "details about physical security assessments and the law enforcement system used to conduct the assessments." Agency's Reply/Opp. Br., ECF No 43, at 32. Again, just look to the survey questions. "Which of the following have been paid to police officers at your facility in fiscal year 2017 . . . to recruit and retain police officers?" does none of that. ECF No. 40-4 at 24 (Bates 024). Perhaps there are *some* answers to the survey questions that contain the details the agency claims it is protecting. But by asserting the exemption for virtually every narrative-form answer, the agency destroys its own credibility.

If all the narrative-form survey answers is properly withheld under Exemption 7E, so would virtually any government record that has anything remotely to do with law enforcement. The exemption would swallow much of FOIA.

So, too, with the spreadsheet. Unlike the survey responses where Plaintiff has access to redacted versions and can extrapolate from them, the agency withholds all 2,088 cells of the spreadsheet under Exemption 7E. But again, it strains all credulity to assert that each and every of 2,088 facts culled from VA police reports risks allowing circumvention of the law.

**IV.     If the Court Believes the Agency Met its Burden to Withhold the Challenged Records, it Should Inspect Them in Camera.**

Because the agency failed its burden of withholding the survey, the follow-up communications, and the two large spreadsheets under Exemptions 5 and 7E, the Court should grant summary judgment to NAMVETS. In the even the Court believes the agency has met its burden, it should review these records in camera to evaluate the agency's Exemption 5 and 7E assertions.

As argued above, the agency's over application of each exemption casts doubt on all of its assertions. Perhaps that there is some survey answer that, unprompted, really does reveal a law enforcement technique, disclosure of which would risk circumvention of the law. It seems unlikely, but it is at least possible. But not every withheld response could; likely all or none of them do. In camera review can reveal if any do.

All the factors favoring in camera review are present here. *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F.Supp.2d 284, 307 (D.D.C. 2007).

The "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims." *Id.* The declaration offers generic and sweeping justifications for entire categories of documents, many of which contain dozens-to-hundreds of exemption assertions.

"[T]he number of records involved is relatively small." *Id.* It is the survey responses, the few pages of follow-up communications, and the two spreadsheets.

"[A] discrepancy exists between an agency's affidavit and other information that the agency has publicly disclosed." *Id.* The survey responses show the questions, the multiple-choice answers, and some of the narrative-form answers. None of those show any predecisional deliberation, secret law enforcement techniques or procedures, or the risk of any cognizable harm.

The agency's assertion that every single withheld narrative-form survey response involves each of those conflicts with the information the agency has publicly disclosed.

Finally, "[t]he dispute turns on the contents of the documents, and not the parties' interpretations of the documents." *Id.* The parties don't dispute the interpretation of the withheld records. They agree on what they are. The dispute turns on their contents.

## CONCLUSION

The Court should grant NAMVETS' second motion for summary judgment motion and deny the agency's second motion for summary judgment.


Date: August 1, 2023                                          Respectfully submitted,

                                                             /s/ Matthew Strugar
                                                             Matthew Strugar (D.C. Bar No. 1010198)
                                                             Law Office of Matthew Strugar
                                                             3435 Wilshire Blvd., Suite 2910
                                                             Los Angeles, CA 90010
                                                             323-696-2299
                                                             matthew@matthewstrugar.com

                                                             Sunita Patel (D.C. Bar No. 1026102)
                                                             UCLA Veterans Legal Clinic
                                                             907 Westwood Blvd., Unit 444
                                                             Los Angeles, CA 90024
                                                             (310) 792-1498
                                                             patel@law.ucla.edu

                                                             Counsel for Plaintiff National Association of
                                                             Minority Veterans