**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| NATIONAL ASSOCIATION OF MINORITY VETERANS, | : | | |
| | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-1298 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 37, 40 |
| | : | | |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | : | | |
| | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

**I.  INTRODUCTION**

Plaintiff National Association of Minority Veterans (the "Association") brings this action

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the United States

Department of Veterans Affairs (the "VA").  The Association, which represents the interests of

minority veterans, seeks to compel disclosure of VA records pertaining to the policies and

practices of the VA Police Force at Veterans Health Administration facilities.  The Association

claims that these documents were unlawfully withheld by the VA.  Earlier in this case, the

Association and the VA filed competing motions for summary judgment; the Court denied the

VA's motion and granted in part and denied in part the Association's motion.  *See generally*

*Nat'l Ass'n of Minority Veterans v. United States Dep't of Veterans Affs.*, 642 F. Supp. 3d 83

(D.D.C. 2022).  Subsequently, the VA disclosed some of the records the Association seeks but

has withheld others pursuant to FOIA Exemptions 3, 5, 6, and 7(E).  The parties' dispute now

centers solely on (1) redacted answers and follow up communications related to Office of Inspector General ("OIG") surveys, (2) a large excel spreadsheet—withheld in full—containing information compiled from VA Police Force records, and (3) a large excel spreadsheet—withheld in full—containing information compiled from VA patient health records.

Before the Court are the VA's renewed motion for summary judgment, ECF No. 37-1 ("MSJ"), the Association's renewed cross-motion for summary judgment, ECF No. 40-1, ("Cross-MSJ"), and the parties' respective responses and replies. After the parties filed their motions, this Court ordered the VA to submit the withheld and redacted records for *in camera* review. *See In Camera* Review Order, ECF No. 47. After reviewing the parties' briefs and the documents *in camera*, the Court grants in part and denies in part the VA's motion for summary judgment and grants in part and denies in part the Association's motion for summary judgment.

## II.  BACKGROUND

The Court presumes familiarity with the factual and procedural background described in its prior opinion, *see Nat'l Ass'n of Minority Veterans*, 642 F. Supp. 3d at 86, but briefly summarizes subsequent developments as relevant here. After the Court's previous opinion and order, the VA searched for and identified records responsive to the Association's FOIA request. *See* MSJ at 4–5; Cross-MSJ at 2. The VA released some responsive records, but withheld and redacted others under FOIA Exemptions 3, 5, 6, and 7. *See* MSJ at 4–5; Cross-MSJ at 2. Specifically, the VA redacted some questions, answers, and follow up communications related to two OIG surveys and withheld in full two excel spreadsheets compiled in preparation for OIG reports. *See generally Vaughn* Index, ECF No. 37-3; MSJ at 12, 13; Cross-MSJ at 2; Def.'s Reply in Support of Mot. for Summ. J. ("Def.'s Reply") at 6, ECF No. 43; Pl.'s Reply in Support of Cross Mot. for Summ. J. ("Pl.'s Reply") at 1, ECF No. 46. The Association argues that the

VA's withholdings were not justified by FOIA Exemption 5 and Exemption 7(E).  *See* Cross-MSJ at 1; Pl.'s Reply at 1.  Unable to resolve their dispute, both parties moved for summary judgment.  After the parties filed their renewed summary judgment briefs, the Court ordered the VA to submit the withheld and redacted records for *in camera* review.  *See In Camera* Review Order.  With briefing and *in camera* review of the disputed documents complete, the parties' cross-motions are now ripe for resolution.

## III.  LEGAL STANDARD

FOIA is designed "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quotation omitted).  It "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions."  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)).  "FOIA expressly recognizes that important interests are served by its exemptions and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement."  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up).  Nevertheless, "[t]he agency bears the burden of establishing that a claimed exemption applies."  *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).  "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure. . .'"  *Hardy v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (cleaned up) (quoting *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

FOIA cases "are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) (citations omitted).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At the summary judgment stage, the Court must "view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence."  *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (citations omitted).  "Typically, the agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions."  *Shapiro v. U.S. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  Even if a FOIA exemption applies, however, an agency cannot withhold information unless it also "reasonably foresees that disclosure would harm an interest protected by" the relevant exemption.  5 U.S.C. § 552(a)(8)(A)(i)(I); *see Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (explaining the FOIA Improvement Act of 2016's "foreseeable harm" requirement).  And "even where exemptions apply, the VA must take reasonable steps necessary to segregate and release nonexempt information."  *Nat'l Ass'n of Minority Veterans*, 642 F. Supp. 3d at 97 (quotation and citations omitted).

Here, the VA relies on FOIA Exemptions 3, 5, 6, and 7(E) to justify its redactions and withholdings.  *See* MSJ at 4–5.  The Association challenges only the VA's redactions and

withholdings under Exemptions 5 and 7(E); it "does not contest the agency's withholdings under Exemption 6 and Exemption 3."  Cross-MSJ at 2–3, 25.[1]

Exemption 5 authorizes the Government to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  One situation in which records "would not be available" is where those records are protected by the deliberative process privilege.  *Louise Trauma Ctr. LLC v. U.S. Dep't of Just.*, No. CV 20-3517, 2023 WL 6646335, at *2 (D.D.C. Oct. 12, 2023).  "The deliberative process privilege protects documents that reflect an agency's decision-making process."  *Id.* at *3.  "To be protected, however, the document must contain information that is both predecisional and deliberative."  *Id.*  "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position."  *Id.* (quoting *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021) (citation omitted)).  "More specifically, a document is considered deliberative if it 'reflects the give-and-take of the consultative process.'"  *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

---

[1] The Association does not dispute that the VA has performed an adequate search for responsive records.  *See generally* Cross-MSJ.  OIG has submitted a declaration showing that its search was reasonably calculated to uncover all relevant records.  *See* Declaration of Ruthlee Gowins-Bellamy, ECF No. 37-2 ("Gowins-Bellamy Decl.*")*; *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) ("An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" (citation omitted)).  The VA has represented that it searched in the locations where responsive records were likely to be found and obtained the assistance of agency employees who worked on the responsive records.  *See* Gowins-Bellamy Decl. at ¶ 18–21. "[T]he court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Valencia-Lucena*, 180 F.3d at 326 (cleaned up).  There is no genuine dispute with respect to whether the VA performed an adequate search.

Exemption 7(E) protects from disclosure

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).  Hence, a record must satisfy three requirements to qualify for the exemption: (1) the record must be "compiled for law enforcement purposes"; (2) the record's release must disclose techniques, procedures, or guidelines used for law enforcement investigations or prosecutions; and (3) disclosure of those techniques, procedures, or guidelines must "reasonably be expected to risk circumvention of the law."  *See Advancement Project v. U.S. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 142 (D.D.C. 2021).

With respect to Exemption 7(E)'s third requirement—*i.e.*, that disclosure "could reasonably be expected to risk circumvention of the law"—"an Exemption 7(E) claimant must show a risk of circumvention of the law regardless of whether a law enforcement technique, procedure, or guideline is at stake."  *Reps. Comm. for Freedom of Press v. FBI*, No. CV 17-1701, 2022 WL 13840088, at *6 (D.D.C. Oct. 21, 2022) (citing *Pub. Emps. for Env't Resp. v. U.S. Sec., Int'l Boundary and Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 204 n.4 (D.C. Cir. 2014)).  Additionally, Exemption 7(E)'s third requirement, "supplants the FOIA Improvement Act's general requirement that an agency must disclose records unless it is reasonably foreseeable that disclosure would harm the interest the claimed exemption protects."  *Id.*

## IV.  ANALYSIS

### A.  Forfeiture

As an initial matter, the Association argues that the VA has forfeited its right to invoke FOIA's exemptions because the VA failed to raise those exemptions in its first motion for summary judgment.  *See* Cross-MSJ at 5.  The Court disagrees.

In *Maydak v. U.S. Dep't of Just.*, the D.C. Circuit held that, "as a general rule, [the Government] must assert all exemptions at the same time, in the original district court proceedings."  218 F.3d 760, 764 (D.C. Cir. 2000).  Although "the Government generally waives any FOIA exemption it fails to raise at the initial proceedings before the district court," *August v. FBI*, 328 F.3d 697, 698 (D.C. Cir. 2003), "neither *Maydak* nor any other D.C. Circuit precedent directly govern[s] the late assertion of FOIA exemptions during the pendency of district court proceedings," *Shapiro v. United States Dep't of Just.*, 507 F. Supp. 3d 283, 295 (D.D.C. 2020); *see also Lazaridis v. U.S. Dep't of Just.*, 713 F. Supp. 2d 64, 70 n.7 (D.D.C. 2010).  "Courts typically find the government has forfeited the right to claim an exemption when an agency asserts the exemption for the first time only *after* the district court has already ruled in the other party's favor, such as, for instance, in a motion for reconsideration."  *Cole v. Olthoff*, No. 19-cv-1070, 2021 WL 2555505, at *3 (D.D.C. June 22, 2021) (holding that Government did not waive FOIA exemption when court had not yet had a chance to rule on issue); *see also August*, 328 F.3d at 700 (explaining that courts apply a "flexible approach" to waiver of FOIA exemptions and sometimes allow "the government to raise FOIA exemption claims it failed to raise the first time around," especially when Government has not withheld FOIA claims to gain a tactical advantage).  In its first motion for summary judgment, the VA previously argued that it had no responsive records.  *See generally Nat'l Ass'n of Minority Veterans*, 642 F. Supp. 3d at

87–90 ("OIG 'conducted an adequate search for responsive records, which is now complete and

has turned up no responsive records.'" (citation omitted)); Def.'s Reply at 11.  Therefore, the VA

had no previous reason to justify any exemptions.  It is, thus, apparent that the VA's failure to

invoke the FOIA exemptions in its first motion for summary judgment was not an attempt to gain

a strategic advantage.  And as a result, the Court has not previously had the opportunity to rule

on any of the VA's asserted FOIA exemptions.  The exemptions the VA invokes have not been

forfeited.

Furthermore, "the failure to raise specific exemption claims . . . is not a waiver if the

District Court grants leave to amend the *Vaughn* index."  *Louis Trauma*, 2023 WL 6646335 at *4

(cleaned up).  The Court's prior opinion explicitly ordered the VA to file a *Vaughn* index or

other submission to justify its withholdings.  *Nat'l Ass'n of Minority Veterans*, 642 F. Supp. 3d

at 97–98 (citing *Shapiro v. U.S. Dep't of Justice* ("*Shapiro II*"), 177 F. Supp. 3d 467, 469–73

(D.D.C. 2016); and then citing *Cole*, 2021 WL 2555505).  Accordingly, the Court holds that the

VA has not forfeited its right to invoke the FOIA exemptions for its redactions and withholdings.

\*   \*   \*

Having concluded that the VA has not forfeited its right to invoke the FOIA exemptions,

the Court next addresses each of the redacted and withheld documents in turn, applying the VA's

asserted FOIA exemptions.  In considering each of the documents, the Court refers to the

justification for FOIA exemptions provided in the VA's *Vaughn* index.

### B.  OIG Survey Materials

The Court begins with the OIG Survey Materials.  The VA justifies its withholding of

portions of confidential survey questions, responses, and related follow-up email

communications generated in preparation for an OIG report under FOIA Exemptions 5 and 7(E).
*See Vaughn* Index at 1–9.  The Court begins with Exemption 7(E).

### 1. Exemption 7(E)

The VA contends that it appropriately withheld information consistent with FOIA
Exemption 7(E).  Exemption 7(E) protects information "compiled for law enforcement purposes,
but only to the extent that the production of such . . . would disclose techniques and procedures
for law enforcement investigations or prosecutions, or would disclose guidelines for law
enforcement investigations or prosecutions if such disclosure could reasonably be expected to
risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  As relevant here, the VA must
demonstrate that (1) the withheld information was "compiled for law enforcement purposes" and
(2) release would create a risk of enabling the circumvention of the law by revealing law
enforcement techniques, procedures, or guidelines.  *See Advancement Project*, 549 F. Supp. 3d at
142; *FBI v. Abramson*, 456 U.S. 615, 622 (1982).

The Court starts with whether the VA has logically demonstrated that the information it
redacted was "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  "[T]he term
'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency
for law enforcement purposes at some time before the agency invokes the exemption."  *Pub.
Emps. for Env't Resp.*, 740 F.3d at 203; *Advancement Project v. U.S. Dep't of Homeland Sec.*,
No. CV 19-52, 2022 WL 4094061, at *8 (D.D.C. Sept. 7, 2022) ("A record is deemed 'compiled
for a law enforcement purpose' so long as there is (1) a rational 'nexus' between the record and
the agency's law enforcement duties and (2) a connection between the subject of the record and a
possible security risk or violation of federal law.").  "The term law enforcement in Exemption 7
refers to the act of enforcing the law, both civil and criminal and mixed function . . . agencies

that have both civil and criminal enforcement duties still can invoke Exemption 7 as long as they compiled the records for law enforcement purposes."  *Advancement Project,* 2022 WL 4094061 at *8 (cleaned up).  "Law enforcement entails more than just investigating and prosecuting individuals after a violation of the law and includes . . . proactive steps designed to prevent criminal activity and to maintain security."  *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) (cleaned up).

The Association argues that the VA fails to show that the records were compiled for law enforcement purposes because OIG is not a primarily law enforcement agency.  *See* Cross-MSJ at 16–17.  It also asserts in a conclusory manner that the VA failed to show that "these records specifically were compiled for that law enforcement purpose."  *Id.* at 17.  However, the VA argues that the "redacted information contains specific details about criminal investigation processes and procedures, including thresholds, details of law enforcement standard operating procedures and guidelines for the process of investigating a variety of crimes that occur on VA health facility property."  *Vaughn* Index at 2, 4, 7–9.  Courts have frequently concluded that records detailing security operating procedures are "compiled for law enforcement purposes." *See, e.g.*, *Pinson v. Dep't of Just.*, 313 F. Supp. 3d 88, 114 (D.D.C. 2018) (holding records on "how [the Bureau of Prisons] handles threats to security, how it monitors and maintains the health and safety of its inmates and staff, and how it investigates criminal activity . . . were compiled for law enforcement purposes"); *Pub. Emps. For Envtl. Responsibility*, 740 F.3d at 204 ("emergency action plans" describing security precautions for "ensuring dam security during dam emergencies" were "compiled for law enforcement purposes" because plans helped achieve security purpose); *Elec. Priv. Info. Ctr.*, 777 F.3d at 522 (protocol codifying plan for shutting down wireless service during emergencies qualified as record compiled for law enforcement

purposes); *Sack v. U.S. Dep't of Def.*, 823 F.3d 687 (D.C. Cir. 2016) (reports on how to assess

the efficacy of polygraph examinations were compiled for law enforcement purposes).  And,

with the benefit of *in camera* review, the Court agrees that the records concern VA law

enforcement procedures and were compiled for law enforcement purposes.  Because the redacted

information here reflects law enforcement protocols and procedures at VA facilities, it satisfies

the first requirement of FOIA Exemption 7(E).

Having established that the documents were compiled for law enforcement purposes, the

VA must also show that their release would disclose law enforcement techniques, procedures, or

guidelines that "could reasonably be expected to risk circumvention of the law."  5 U.S.C.

§ 552(b)(7)(E).  The Association contends that the VA's *Vaughn* index insufficiently

demonstrates that disclosure would increase the risk of the law's circumvention or hinder law

enforcement functions because the VA "broadly asserts that the responses to the survey

questions will reveal law enforcement techniques and procedures."  Cross-MSJ at 17–18.  "D.C.

Circuit precedent 'sets a relatively low bar for the agency to justify withholding' information

under Exemption 7(E)."  *Skinner v. U.S. Dep't of Just.*, 806 F. Supp. 2d 105, 116 (D.D.C. 2011)

(quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)).  As explained by the Circuit,

Exemption 7(E)

> looks not just for circumvention of the law, but for a risk of circumvention; not
> just for an actual or certain risk of circumvention, but for an expected risk; not
> just for an undeniably or universally expected risk, but for a reasonably expected
> risk; and not just for certitude of a reasonably expected risk, but for the chance of
> a reasonably expected risk.

*Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).  To that end, "[r]ather than

requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E)

only requires that the [agency] demonstrate logically how the release of the requested

information might create a risk of circumvention of the law." *Id.* at 1194 (quotation and alterations omitted).

The VA asserts that release of the information could create a risk of circumvention of the law. *Id.* For instance, the Ruthlee Gowins-Bellamy Declaration explains that "the free form survey responses contain specific information about investigative and law enforcement techniques," which, if released, could enable individuals to "circumvent those processes to avoid prosecution." Ruthlee Gowins-Bellamy Decl. at 15–16. The declaration provides detail, explaining that "[t]he redacted information reveals information about . . . guidelines for handling criminal investigations of misconduct[,] . . . how police databases are used to investigate, prosecute and track crimes[,] . . . physical security assessments[,] . . . [and] facility safety vulnerabilities," among other details. *Id.* And the declaration emphasizes that "specific techniques, procedures and guidelines vary depending on facility resources and they are not known to the public." *Id.* at 16.

With the benefit of *in camera* review, the Court concludes that most—but not all—of the information redacted by the VA could create "a reasonably expected risk" of circumvention of the law if released. *Mayer Brown*, 562 F.3d at 1193. The records contain details on VA law enforcement procedures, and it is logical that individuals could use this information to circumvent law enforcement investigations or VA facility security operations. *See Advancement Project*, 2022 WL 4094061, at *10. For instance, release of the survey responses could reveal vulnerabilities in the VA's computer systems that would allow an individual who committed a crime to avoid or hinder an investigation. Accordingly, the Court is satisfied that most of the redactions the VA has made pursuant to Exemption 7(E) are justified and such information need

not be disclosed pursuant to FOIA.  The Court includes a list of redactions that should *not* have been made at the end of section IV.B.2, below.

### 2. Exemption 5

The Court turns to Exemption 5.  The VA contends that some of the information it has withheld "would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), because the information is protected by the deliberative process privilege, *see* MSJ at 11.  The first requirement for the deliberative process privilege to apply is that the records be pre-decisional.  "To be pre-decisional, the communication (not surprisingly) must have occurred before any final agency decision on the relevant matter."  *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014); *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) ("A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975))).

The relevant "decision" is the OIG's report.  *See Vaughn* Index at 1–9; *cf. Leopold v. Off. of Dir. of Nat'l Intel.*, 442 F. Supp. 3d 266, 276 (D.D.C. 2020) ("Governmental decisions and policies can include the formulation of an agency's statements to the public and other outside entities."); *see also Nat'l Sec. Archive*, 752 F.3d at 463 (suggesting that publication of agency's official history is a decisional document); *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (treating deliberations about official agency statements as pre-decisional).  The redacted survey questions and responses, the VA says, are pre-decisional because they reflect conversations preceding and contributing to the OIG's report.  *See* MSJ at 12; Def.'s Reply at 14–15; *Vaughn* Index at 1.  Given that the survey questions, answers, and

follow-up communications were made before publication of the OIG reports—and were specifically generated to assist in creation of the reports—the Court concludes that they are pre-decisional.

The next question, then, is whether the information the VA redacted is deliberative. "A document is deliberative when it is prepared to help the agency formulate its position and it reflects the give-and-take of the consultative process." *Reps. Comm.*, 3 F.4th at 362 (cleaned up). For instance, in *Reporters Committee*, the D.C. Circuit held that emails between agency personnel discussing implementation of a new policy fell within the deliberative process privilege because "the emails discussed the content of a new policy and alternative paths for its effective implementation." *Id.* at 368. The same reasoning applies here because the survey responses influenced what OIG included in its report.

The VA's *Vaughn* index, the declaration of the VA's Supervisory Government Information Specialist, Ruthlee Gowins-Bellamy, and the Court's *in camera* review satisfy the Court that the VA's redactions protect deliberative information. The Gowins-Bellamy declaration states that the survey questions were prepared "based on topics and issues [OIG staff] thought important to explore" and the responses were sent by "Chiefs of Police and Veterans Health Administration medical directors." Gowins-Bellamy Decl. at 12. The *Vaughn* index explains that the responses "reflect deliberations comprising part of a process by which OIG findings and recommendations are formulated." *Vaughn* Index at 1. Moreover, the *Vaughn* index states that "[p]ortions of the redacted material are internal notes made by OIG staff to prepare to write the [OIG] report." *Id.* Because the *Vaughn* index and declaration logically explain that the information redacted by the VA was part of the "give-and-take of the

14

consultative process," the information is covered by the deliberative process privilege.  *Reps. Comm.*, 3 F.4th at 362 (quoting *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)).

As the D.C. Circuit has explained, however, "[f]inding the deliberative process privilege applicable . . . does not end the matter" because "the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption."  *Id.* at 369 (citing 5 U.S.C. § 552(a)(8)(A)(i)(I)).  To justify withholding, "[a]gencies cannot rely on 'mere 'speculative or abstract fears,' or fear of embarrassment" but "must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations."  *Id.* at 369–70 (quotation omitted).  In addition, "[a] 'perfunctory state[ment] that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the [agency]' will not suffice."  *Id.* at 370 (quotation omitted).  "Instead, what is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  *Id.*

The VA's explanation does not clear this threshold.  The VA contends that, if its records are released, "in the future agency employees may not feel free to openly communicate with OIG staff."  *Vaughn* Index at 1–2.  The VA also explains that "release would violate assurances of confidentiality" and that "OIG staff could lose the trust and cooperation of agency employees."  *Id.* at 2–9.  In *Reporters Committee*, the D.C. Circuit held that this type of general contention that disclosure will harm internal agency communication "will not suffice."  3 F.4th at 370.  In *Reporters Committee*, the FBI attempted to justify its withholding of information related to an FBI Inspector General report on the basis that

> Disclosure of material containing or prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations would have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions between agency personnel and decision makers regarding a decision.  If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision.

*Id.* (brackets omitted).  The D.C. Circuit rejected this prognostication of reasonable harm.  *Id.*

The court explained that the "assertion of harm . . . is wholly generalized and conclusory, just mouthing the generic rationale for the deliberative process privilege itself." *Id.*  The same is true in this case.  Like the FBI in *Reporters Committee*, the VA has not shown how its assertions that disclosure would cause employees to "limit and edit their communication," *Vaughn* Index at 2–5, 7, 9, "differ in any material way from [ ] routine assertions of deliberative process privilege," *Reps. Comm.*, 3 F.4th at 371.  Moreover, the VA does not "explain the particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes (and, therefore, whether and how their release would harm similar deliberations in the future)." *Id.* at 372.[2]  Accordingly, the Court concludes that the VA's conclusory assertion that disclosure would inhibit speech is insufficient.

---

[2] The Court observes that the VA rehashes materially identical deliberative process justifications for all its withholdings.  *Compare, e.g.*, *Vaughn* Index at 1–2 ("agency employees may not feel free to openly communicate with OIG staff") *with id.* at 3 ("employees may not feel free to openly communicate with OIG staff") and *id.* at 5 ("employees may not feel free to openly communicate with OIG staff") and *id.* at 7 ("employees may not feel free to openly communicate with OIG staff") and *id.* at 9 ("employees may not feel free to openly communicate with OIG staff") and *id.* at 10 ("OIG employees would not feel free to communicate openly with team members") and *id.* at 13 ("OIG employees would not feel free to communicate openly with team members").

Moreover, the concern that employees will not feel free to communicate is largely ameliorated here because the VA seeks to withhold personal identifying information, including employees' names, under Exemption 6—which the Association does not oppose.  *See Vaughn* Index at 5; Gowins-Bellamy Decl. at 21.

The VA does further explain that "[r]elease of these responses and communications could confuse the public because they contain topics and concerns that were not published in the final report which would harm OIG's credibility, they contain issues that may be addressed in ongoing future OIG reports and release would interfere with those investigations and audits." *Vaughn* Index at 1, 3, 5, 7, 8.  The problem with the VA's additional justification, however, is that avoidance of public confusion, harm to OIG credibility, or interference with potential investigations are not, by themselves, "interest[s] protected by" FOIA Exemption 5.  *See* 5 U.S.C. § 552(a)(8)(A)(i)(I); *see also, e.g.*, *Pavement Coatings Tech. Council v. U.S. Geological Surv.*, 995 F.3d 1014, 1022 (D.C. Cir. 2021) ("[C]riticism is not a recognized harm against which the deliberative process privilege is intended to protect").  Rather, "[t]he purpose of Exemption 5 is to preserve open and frank discussion . . . in order to enhance the quality of agency decisions." *Inst. for Energy Rsch. v. FERC*, No. CV 22-2114, 2023 WL 6121878, at *6 (D.D.C. Sept. 19, 2023) (quotation and citation omitted); *Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) ("The purpose of exemption 5 is to protect the 'quality of agency decisions.'" (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975))).

In *Pavement Coating Technology Council*, the D.C. Circuit acknowledged that the agency had attempted to justify withholding documents based on the "public confusion" that would ensue from the document's disclosure.  *See* 95 F.3d at 1022.  The Court also acknowledged that it had previously recognized "misperception of agency positions as a ground for withholding deliberative materials."  *Id.*  But the Circuit nonetheless held that the agency had not satisfied its burden.  *Id.* (citing *Judicial Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017)); *see also Petroleum Info. Corp.*, 976 F.2d at 1437 (explaining that "concerns with public confusion . . . could [] be allayed by conspicuously warning FOIA requesters that the

[document] is as yet unofficial").  The Circuit reasoned that the "'ultimate aim [of Exemption 5] is to prevent injury to the quality of agency decisions" and that it was "obligated to construe the exemption narrowly and focus on whether disclosure will harm intra-agency candor and efficiency." *Pavement Coatings Tech. Council*, 995 F.3d at 1022 (cleaned up).  Because the agency did not explain how disclosure would inhibit intra-agency candor, the Circuit held that Exemption 5 did not apply.  *Id.*

Moreover, while the "D.C. Circuit has explained that public confusion is a 'subsidiary rationale' for Exemption 5" it applies primarily to "*premature* exposure to discussions occurring before the policies affecting it had actually been settled upon." *Jud. Watch, Inc. v. U.S. Dep't of Def.*, No. 19-cv-1384, 2021 WL 270503, at *4 n.2 (D.D.C. Jan. 27, 2021) (citing *Petroleum Info. Corp.*, 976 F.2d at 1433 n.5).  This is so because "prematur[e]" disclosure "would be likely to 'stifle honest and frank communication within the agency.'"  *Petroleum Info. Corp.*, 976 F.2d at 1439 (quoting *Coastal States*, 617 F.2d at 866).  This means that "the public confusion rationale has minimal, if any, force" where the agency decision has already been made and exposure is no longer "premature." *Jud. Watch*, 2021 WL 270503, at *4 n.2; *see also Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (rejecting agency's Exemption 5 argument after determining that disclosure was not "premature" and would not be "misleading").  The same is true here because OIG has already released its reports.  The Court understands the Circuit's precedent to indicate that public confusion suffices as a harm justifying withholding under Exemption 5 only where the fear of public confusion would stifle intra-agency dialogue.  Even though the VA has claimed that disclosure could cause public confusion, it has failed to satisfy its burden that release of the survey questions, answers, and follow up communications redacted pursuant to Exemption 5 will harm open discussion.

Furthermore, after reviewing the documents *in camera*, the Court concludes that release of the limited information that is not already exempt from disclosure pursuant to Exemption 7 would not cause any public confusion and would not otherwise stifle agency communications.[3] Accordingly, the Court holds that the VA has not demonstrated reasonable harm and, thus, Exemption 5 does not apply.

\* \* \*

The following table details the redactions that the Court concludes are *not* justified after conducting its *in camera* review.

| Page | Information that is not exempt from disclosure |
|------|-----------------------------------------------|
| 001 | Redactions justified solely by Exemption 5 not exempt. |
| 003 | Redactions justified solely by Exemption 5 not exempt. |
| 005 | Redactions justified solely by Exemption 5 not exempt. |
| 007 | Redactions justified solely by Exemption 5 not exempt. |
| 008 | Bullet points[4] 4 and 6 not exempt by Exemption 5 or Exemption 7.  Redactions justified solely by Exemption 5 not exempt. |
| 009 | Redaction justified solely by Exemption 5 not exempt. |

---

[3] The Court observes that the VA appears to have left some parts of the survey materials redacted in its *in camera* submission.  Specifically, throughout the VA's *in camera* submission there appear to be white text boxes with—what appear to the Court to be—seemingly random number and letter combinations covering parts of the survey materials.  All of these white text boxes correlate to redactions made in the version initially produced to the Association and redacted solely pursuant to Exemption 5.  *See e.g.*, Redacted OIG Survey at 1, ECF No. 37-9.  The numbers in the text boxes do not appear to be sensitive and the Court cannot discern whether the text boxes cover sensitive material.  Regardless, based on the VA's other Exemption 5 redactions and the context of these text boxes, the Court concludes that any information the text boxes may cover is unlikely to stifle internal agency dialogue and is not exempt from disclosure under Exemption 5.  To the extent that these white text boxes cover additional information, the Court expects the VA to remove the text boxes before it produces the documents to the Association.

[4] Bullet points are numbered from the first bullet point highest on each page down.

| 010 | Redaction justified solely by Exemption 5 not exempt.  Bullet point 2 not exempt by Exemption 5 or Exemption 7. |
|---|---|
| 013 | Bullet points 17 and 21 not exempt by Exemption 5 or Exemption 7. |
| 014 | Bullet points 1 and 10 not exempt by Exemption 5 or Exemption 7. |
| 015 | Bullet points 16 and 19 not exempt by Exemption 5 or Exemption 7. |
| 016 | Bullet points 5 and 9 not exempt by Exemption 5 or Exemption 7. |
| 017 | Bullet points 9, 12, and 15 not exempt by Exemption 5 or Exemption 7. |
| 018 | Bullet point 1 not exempt by Exemption 5 or Exemption 7. |
| 019 | Bullet point 10 not exempt by Exemption 5 or Exemption 7. |
| 020 | Redactions justified solely by Exemption 5 not exempt |
| 021 | Redactions justified solely by Exemption 5 not exempt.  Bullet point 3 not exempt by Exemption 5 or Exemption 7. |
| 022 | Redactions justified solely by Exemption 5 not exempt.  Bullet point 27 not exempt by Exemption 5 or Exemption 7. |
| 023 | Redactions justified solely by Exemption 5 not exempt.  Bullet points 6-13 not exempt by Exemption 5 or Exemption 7. |
| 024 | Bullet points 1-7 not exempt by Exemption 5 or Exemption 7. |
| 025 | Redactions justified solely by Exemption 5 not exempt |
| 026 | Redactions justified solely by Exemption 5 not exempt |
| 027 | Redactions justified solely by Exemption 5 not exempt |
| 030 | Redactions justified solely by Exemption 5 not exempt. |
| 031 | Bullet points 3, 5, and 7 not exempt by Exemption 5. |
| 033 | Redaction justified solely by Exemption 5 not exempt. |
| 034 | Redactions justified solely by Exemption 5 not exempt. |
| 035 | Redactions justified solely by Exemption 5 not exempt. |
| 036 | Redaction justified solely by Exemption 5 not exempt. |
| 037 | Redaction justified solely by Exemption 5 not exempt. |
| 038 | Redaction justified solely by Exemption 5 not exempt. |
| 039 | Redaction justified solely by Exemption 5 not exempt.  Redaction justified by Exemption 6 not exempt and is likely mislabeled. |

| 040 | Redaction justified solely by Exemption 5 not exempt. |
|-----|-------------------------------------------------------|
| 042 | Redaction justified solely by Exemption 5 not exempt. |
| 043 | Redaction justified solely by Exemption 5 not exempt. |
| 045 | Redaction justified solely by Exemption 5 not exempt. |
| 046 | Redaction justified solely by Exemption 5 not exempt. |
| 047 | Redaction justified solely by Exemption 5 not exempt. |
| 048 | Redaction justified solely by Exemption 5 not exempt. |
| 050 | Redaction justified solely by Exemption 5 not exempt. |
| 051 | Redactions justified solely by Exemption 5 not exempt.  Bullet points 7, and 10 not exempt by Exemption 5 or Exemption 7. |
| 052 | Redactions justified solely by Exemption 5 not exempt. |
| 053 | Redactions justified solely by Exemption 5 not exempt. |
| 054 | Redactions justified solely by Exemption 5 not exempt. |
| 055 | Redactions justified solely by Exemption 5 not exempt.  Bullet point 7 not exempt by Exemption 5 or Exemption 7. |
| 057 | Bullet points 10, 14, and 19 not exempt by Exemption 5 or Exemption 7. |
| 058 | Bullet points 6, 17, and 23 not exempt by Exemption 5 or Exemption 7. |
| 059 | Redactions justified solely by Exemption 5 not exempt. |
| 060 | Redaction justified solely by Exemption 5 not exempt.  Bullet point 1, 10, 14, and 21 not exempt by Exemption 5 or Exemption 7. |
| 061 | Redaction justified solely by Exemption 5 not exempt.  Bullet point 11 not exempt by Exemption 5 or Exemption 7. |
| 065 | Redaction justified solely by Exemption 5 not exempt.  Bullet point 11 and 17 not exempt by Exemption 5 or Exemption 7. |
| 066 | Redaction justified solely by Exemption 5 not exempt. |
| 067 | Bullet point 18 not exempt by Exemption 5 or Exemption 7. |
| 069 | Redaction justified solely by Exemption 5 not exempt. |
| 070 | Redaction justified solely by Exemption 5 not exempt.  Bullet point 10 not exempt by Exemption 5 or Exemption 7. |
| 071 | Redaction justified solely by Exemption 5 not exempt. |

| 072 | Bullet points 3, 11, and 20 not exempt by Exemption 5 or Exemption 7. |
| 073 | Redaction justified solely by Exemption 5 not exempt.  Bullet points 6, 9, 12, 17, 18, 19, 20, and 22 not exempt by Exemption 5 or Exemption 7. |
| 074 | Bullet points 6, 8, 14, 15, and 20 not exempt by Exemption 5 or Exemption 7. |
| 076 | Bullet point 17 and 26 not exempt by Exemption 5 or Exemption 7. |
| 077 | Bullet points 8, 11, 13, 14, 32, 33, 39, and 42 not exempt by Exemption 5 or Exemption 7. |
| 078 | Bullet points 2, 5, 7, 10, 24, 35,and 42 not exempt by Exemption 5 or Exemption 7. |
| 079 | Bullet points 7, 29, and 40 not exempt by Exemption 5 or Exemption 7. |
| 080 | Bullet points 1, 13, 19, 28, and 41 not exempt by Exemption 5 or Exemption 7. |
| 081 | Bullet points 2, 11, 24, 25, 31, and 37 not exempt by Exemption 5 or Exemption 7. |
| 082 | Bullet points 1, 15, 20, 26, and 34, not exempt by Exemption 5 or Exemption 7. |
| 083 | Bullet points  16, 19, and 31 not exempt by Exemption 5 or Exemption 7. |
| 084 | Bullet points 2, 6, 8, 9, 14, 17, 18, 27, and 31 not exempt by Exemption 5 or Exemption 7. |
| 085 | Bullet points 5, 16, and 32 not exempt by Exemption 5 or Exemption 7. |
| 086 | Redaction justified solely by Exemption 5 not exempt.  Bullet points 2 and 4 not exempt by Exemption 5 or Exemption 7. |
| 087 | Bullet point 7 not exempt by Exemption 5 or Exemption 7. |
| 090 | Bullet points 3 and 9 not exempt by Exemption 5 or Exemption 7. |
| 091 | Bullet points 2, 13, and 14 not exempt by Exemption 5 or Exemption 7. |
| 092 | Bullet point 17 not exempt by Exemption 5 or Exemption 7. |

### C.  Excel Spreadsheet Containing Information from the VA Police Force

The VA has withheld in full a "[l]arge excel spreadsheet . . . that consists of information . . . collected by lower-level staff from the review of VA OSLE police records" pursuant to FOIA Exemption 5 and Exemption 7(E).  *Vaughn* Index at 9.  The Association argues that the exemptions do not apply.

*1. Exemption 7(E)*

The Court begins with Exemption 7.  As explained in greater detail above, to withhold information under Exemption 7(E), the VA must demonstrate: (1) the withheld information was "compiled for law enforcement purposes," (2) the withheld information reveals law enforcement techniques, procedures, or guidelines, and (3) release of the withheld information would create a risk of circumvention of the law.  *See Advancement Project*, 549 F. Supp. 3d at 142.  The VA satisfies all three requirements with respect to some—but not all—of the information contained in the spreadsheet.

The VA explains that the spreadsheet contains information on "procedures specific to the handling of disruptive behavior at VA facilities," "law enforcement techniques and procedures to handle threatening behavior," and "law enforcement techniques and procedures related to investigating assaults."  *Vaughn* Index at 11.  The VA also explains that the spreadsheet contains information about "thresholds for the involvement of law enforcement" as well as information about "a law enforcement database used specifically for the tracking and investigation of threatening behavior."  *Id.*  That information—collected from VA OSLE police records, Gowins-Bellamy Decl. at 16—satisfies the requirements that the information be compiled for law enforcement purposes and discloses law enforcement techniques or procedures.  *See Elec. Priv. Info. Ctr.*, 777 F.3d at 522 ("Law enforcement entails more than just investigating and prosecuting individuals after a violation of the law and includes . . . proactive steps designed to prevent criminal activity and to maintain security." (cleaned up)).

The VA has also cleared the "relatively low bar" requiring that it show that release of the information would risk circumvention of the law with respect to the information in the spreadsheet relating to law enforcement procedures.  *Jud. Watch, Inc. v. Dep't of Just.*, 619 F.

Supp. 3d 69, 78 (D.D.C. 2022).  The VA has explained that "[d]isclosure of this information could allow individuals to avoid investigation and tracking of threatening behavior." *Vaughn Index* at 11; *see also* Def.'s Reply at 33–34.  As explained above, it is logical to infer that individuals could use the disclosure of the VA's security techniques to circumvent VA law enforcement protocols.  For instance, if information about how the VA investigates specific types of crimes were to be made public, an individual who had committed such a crime could use that information to avoid, delay, or hinder his investigation.  Be that as it may, the spreadsheet also contains information such as the dates and locations of specific past incidents requiring the intervention of law enforcement and the type of victim and perpetrator involved in each incident.  Indeed, this category of data comprises much of the information contained in the spreadsheet but would not create a risk of circumvention of the law if released.

With the benefit of *in camera* review, the Court confirms that some of the VA's withholdings made pursuant to Exemption 7(E) are justified while other withholdings are not.  Specifically, spreadsheet cells L2-5, P7-15, P22-26, P28-37, P39-51, P55-57, P60-61, P63-72, S38-39, S41-45, S52-54, S60, S70, and S72 may be withheld pursuant to Exemption 7, but the other spreadsheet cells may not be.  The VA may also redact personal identifying information pursuant to Exemption 6.  All other information in the spreadsheet must be disclosed.

### 2. Exemption 5

The Court briefly addresses whether information in the spreadsheet is exempt from disclosure pursuant to Exemption 5.  Applying the same framework for analyzing Exemption 5 as discussed above, the Court assesses whether the VA has logically or plausibly demonstrated that the withheld information is "pre-decisional."  *See Nat'l Sec. Archive*, 752 F.3d at 463.  As explained above, an official OIG report is a relevant agency "decision" that can be used to

determine whether withheld information is pre-decisional.  *See Leopold*, 442 F. Supp. 3d at 276.

The VA explains that "[t]he data and notes were collected to prepare and write the January 2018

OIG report."  *Vaughn* Index at 9.  Because the information in the spreadsheet was collected in

advance of the OIG report—and for the purpose of helping to prepare the report—the

information is definitionally pre-decisional.  *See Petroleum Info. Corp.*, 976 F.2d at 1434

(document pre-decisional if prepared to assist agency decisionmaker in arriving at decision).

Accordingly, the Court turns to whether the information is "deliberative."

       The Association argues that the information in the VA's first spreadsheet is not

deliberative because it contains purely factual information.  *See* Cross-MSJ at 14–15.  "A

document is deliberative when it is prepared to help the agency formulate its position and it

reflects the give-and-take of the consultative process."  *Reps. Comm.*, 3 F.4th at 362.  While

"[f]actual information is generally not protected by the deliberative process privilege," factual

information is protected by the deliberative process privilege "if its disclosure 'may so expose

the deliberative process within an agency.'"  *Reliant Energy Power Generation, Inc. v. FERC*,

520 F. Supp. 2d 194, 203 (D.D.C. 2007) (quoting *Petroleum Info. Corp.*, 976 F.2d at 1434).

"Where a document contains 'factual material . . . assembled through an exercise in judgment in

extracting pertinent material from a vast number of documents for the benefit of an official

called upon to take discretionary action,' the D.C. Circuit has found Exemption 5 to apply."

*Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs.*, 849 F. Supp. 2d 13, 37 (D.D.C.

2012) (quoting *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993)); *see*

*Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011)

(explaining that "legitimacy of withholding does not turn on whether the material is purely

factual in nature . . . but rather on whether the selection or organization of facts is part of an

agency's deliberative process"). But this "limited exception to the general principle that purely factual material may not be withheld under Exemption 5 may not be read so broadly, however, as to swallow the rule." *Nat'l Whistleblower Ctr.*, 849 F. Supp. 2d at 37. Thus, a record "does not become a part of the deliberative process merely because it contains only those facts which the person making the [record] thinks material. If this were not so, every factual [record] would be protected as part of the deliberative process." *Id.* at 37–38 (quoting *Playboy Enters, Inc. v. U.S. Dep't of Just*, 677 F.2d 931, 935 (D.C. Cir. 1982)).

Here, the VA has explained that "OIG reviewed police records and entered relevant information into an excel spreadsheet, along with deliberative notes, questions and comments between VA OIG staff." *Vaughn* Index at 9. It describes that "[t]he information in this excel spreadsheet is what line-level OIG staff thought was relevant to the audit." *Id.* More explicitly, the information contained in the spreadsheet "reveal[s] the specific topics that the auditors chose to focus on in developing their findings and they reveal what information auditors chose to communicate to supervisors and other co-workers." *Id.* The VA also notes that there is a "column of comments in the excel spreadsheet" that "include[s] information about follow-up questions to agency staff and deliberations and assessments about those follow-up questions." *Id.* at 9–10. The VA's explanation plausibly demonstrates that the spreadsheet is a deliberative record; the data in the spreadsheet clearly reflects the specific topics that the VA thought important to highlight in the OIG report and the notes about those topics even more clearly reflect OIG's reaction to the information. Hence, the Court finds that the deliberative process privilege applies. Once again, however, the VA has not shown that reasonable harm would result from the disclosure of this information as required by 5 U.S.C. § 552(a)(8)(A)(i)(I).

As explained above, information can be withheld under Exemption 5 only if the VA can demonstrate that it "reasonably foresees that disclosure would harm an interest protected by" FOIA Exemption 5.  *Id.*  And boilerplate language about the chilling effect of disclosure is insufficient.  *See Reps. Comm.*, 3 F.4th at 369–70.  As it does with respect to the survey responses, the VA contends that releasing information from the spreadsheet "could confuse the public," "harm OIG's credibility," "hamper ongoing and future OIG audits and investigations," and "harm . . . necessary internal debate" by causing employees to "temper their candor." *Vaughn* Index at 10.  As explained above with respect to the survey communications, these general assertions are insufficient to "explain how disclosure 'would'—not 'could'—adversely impair internal deliberations."  *Reps. Comm.*, 3 F.4th at 369–70.  Moreover, by themselves, the avoidance of public confusion, harm to OIG credibility, or interference with potential investigations are not "interest[s] protected by" FOIA Exemption 5.  *See* 5 U.S.C. § 552(a)(8)(A)(i)(I); *see Pavement Coatings Tech. Council*, 995 F.3d at 1022 (holding that "criticism is not a recognized harm against which the deliberative process privilege is intended to protect" and rejecting "public confusion" or "misperception of agency positions" as sufficient justification for withholding).

After reviewing the spreadsheet *in camera* the Court concludes that release of the information would not stifle agency communication (or, for that matter, cause public confusion or embarrassment).  Accordingly, because the Court holds that Exemption 5 does not protect information in the first spreadsheet from disclosure, such information—not otherwise exempt from disclosure—must be released under FOIA.

### D.  Excel Spreadsheet Containing Information from Health Records

*1.  Exemption 5*

Lastly, the VA has withheld in full a spreadsheet that consists of information OIG staff collected from the review of patient health records.  The only contested basis for withholding this second spreadsheet is Exemption 5.[5]  *See Vaughn* Index at 1; MSJ at 5; Cross-MSJ at 15.  The Court's analysis of these materials largely tracks the analysis for Exemption 5 discussed above.

The information in the spreadsheet is pre-decisional because—according to the VA's *Vaughn* index—"[t]he data and notes were collected to prepare and write the January 2018 OIG report."  *See Vaughn* Index at 12; *Petroleum Info. Corp.*, 976 F.2d at 1434 (document pre-decisional if prepared to assist agency decisionmaker in arriving at decision).  The OIG's report is an agency decision, the information in the second spreadsheet was collected prior to the decision, and the collected information helped OIG come to its decision.  *Petroleum Info. Corp.*, 976 F.2d at 1434.

Whether the information in this spreadsheet is deliberative is a slightly closer call.  As discussed above, purely factual information is not usually exempt from disclosure unless it reflects the deliberative process of the agency.  *See Ancient Coin Collectors Guild*, 641 F.3d at 513.  Whereas the column of comments in the first spreadsheet reflects the thought that went into the choice of data points, the lack of indication that the information in this second spreadsheet was as carefully selected somewhat undermines the VA's assertion that the information reflects the agency's deliberations.  The Court, however, need not decide whether the information is

---

[5] The VA does not assert Exemption 7(E) for this spreadsheet.  *See generally Vaughn* Index at 11–13.  And the Association does not challenge the VA's invocation of Exemption 3 or Exemption 6 to withhold information in this spreadsheet.  *See* Cross-MSJ at 2–3, 25.

deliberative because the VA also fails to demonstrate reasonably foreseeable harm as required by 5 U.S.C. § 552(a)(8)(A)(i)(I).

      With respect to foreseeable harm, the VA asserts that "[r]elease of these records could confuse the public," "harm OIG's credibility," "harm the necessary internal debate and candid consideration of issues," and "temper [employees] candor." *Vaughn* Index at 12–13.  As explained previously, the VA has failed to provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Reps. Comm.*, 3 F.4th at 370.  Rather, the VA has used the same boilerplate language that it provided as justification for its withholding of the survey responses and the first spreadsheet. Furthermore, after reviewing the spreadsheet *in camera*, the Court cannot infer why release of the information in this spreadsheet would hamper inter- or intra-agency conversations in the future.  Accordingly, the Court holds that Exemption 5 does not justify the VA's withholding of materials in this second spreadsheet.

      The Court notes, however, that some information in this spreadsheet—such as the names of patients, other personal identifying information of patients, and details of patients' care—is protected by Exemption 6 and Exemption 3.[6]  Accordingly, any such information may be redacted and withheld.

---

[6] The VA justifies withholding certain information pursuant to Exemption 3 because under 38 U.S.C. § 5701 "[a]ll files, records, reports, and other papers and documents pertaining to any claim under any of the laws administered by the Secretary [of the Department of Veterans Affairs] and the names and addresses of present or former members of the Armed Forces, and their dependents, in the possession of the Department shall be confidential and privileged, and no disclosure thereof shall be made except as provided in this section."  *See* MSJ at 17.  The VA additionally justifies Exemption 3 withholdings based on 38 U.S.C. § 7332 which also limits the disclosure of certain VA patient information.  *Id.* at 18.

## V.  CONCLUSION

As listed in detail above, some of the VA's redactions and withholdings pursuant to Exemption 7(E) were proper and some of the redactions and withholdings were not.  The redactions that are justified need not be disclosed.  By contrast, the VA's withholding of information solely under Exemption 5 was improper and that information is segregable and should be disclosed.  Finally, because the Association does not contest—and there is no genuine dispute about—the VA's assertions with respect to FOIA Exemption 3 and Exemption 6, *see* Cross-MSJ at 3, 25, the Court grants the VA summary judgment with respect to information redacted or withheld under those exemptions.[7]  For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the VA's Motion for Summary Judgment and **GRANTS IN PART** and **DENIES IN PART** the Association's Motion for Summary Judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 27, 2024                                        RUDOLPH CONTRERAS
                                                                                United States District Judge

---

[7] Plaintiff does not appear to contest Defendant's motion for summary judgment with respect to responses by the Veterans Health Administration and Office of Operations, Security, and Preparedness, or the adequacy of the Office of the Inspector General's search.  *See* MSJ at 8–10, 24; *see generally* Cross-MSJ; Def.'s Reply at 9. The Court concludes that there is no genuine dispute of material fact with respect to those issues and will grant the VA summary judgment with respect to those issues.